**Keith Ketterling,** OSB No. 913368
**Steven C. Berman**, OSB No. 951769
**Megan K. Houlihan**, OSB No. 161273
STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone:   (503) 227-1600
Facsimile:   (503) 227-6840
Email:       kketterling@stollberne.com
             sberman@stollberne.com
             mhoulihan@stollberne.com

*Special Assistant Attorneys General for Governor*
*Kate Brown and State of Oregon*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN, and CRYSTAL SHERMAN,<br><br>          Plaintiffs,<br><br>     v.<br><br>GOVERNOR KATE BROWN, in her official capacity, STATE OF OREGON; CITY OF PORTLAND, an Oregon municipal corporation; and MULTNOMAH COUNTY OF OREGON, an Oregon municipal corporation,<br><br>          Defendants. | Case No. 3:20-cv-02226-JR<br><br>**DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**<br><br><br>ORAL ARGUMENT REQUESTED |

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## TABLE OF CONTENTS

LR 7-1 CONFERRAL ........................................................................................... 1

MOTIONS ........................................................................................................... 1

MEMORANDUM OF LAW ................................................................................. 2

    I.      INTRODUCTION ............................................................................. 2

    II.     BACKGROUND ................................................................................ 3

          A.    Governor Brown Responds to COVID-19.................................. 3

          B.    The Oregon Legislature Responds to COVID-19....................... 5

          C.    Plaintiffs Challenge the "Eviction Moratoria."......................... 9

    III.    LEGAL STANDARDS ..................................................................... 11

    IV.    ARGUMENT .................................................................................... 12

          A.    Plaintiffs Do Not Allege Justiciable Claims Against the State or the Governor. ..................................................................................... 12

               1.    The Claims Against the State of Oregon Should Be Dismissed Because the State Is Immune from Suit Under the Eleventh Amendment............................................... 12

               2.    Plaintiffs' Equitable Takings Claim Is Not Justiciable................ 13

               3.    The Governor Is Immune from Takings Claims.......................... 15

               4.    The Governor Has No Authority to Enforce Any of the Existing "Eviction Moratoria." .................................................... 16

                    a.    Claims Based on the Executive Orders Are Moot. .......... 16

                    b.    HB 4213 and HB 4401 Do Not Give the Governor Any Enforcement Authority. ............................................ 17

               5.    Plaintiff Moe Farhoud Lacks Standing. ....................................... 21

          B.    All Plaintiffs' Claims Also Fail on the Merits. ......................... 22

               1.    Plaintiffs Fail to State a Claim for Violation of the Contracts Clause and the Due Process Clause............................. 22

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

2.    Plaintiffs Fail to State a Claim Under the Takings Clause. .......... 25

3.    Plaintiffs Fail to State a Claim Under the Fourth and Fourteenth Amendments. ................................................................. 27

4.    Plaintiffs Fail to State a Claim for Violation of Their Right to Access the Courts...................................................................... 30

C.    Plaintiffs' Surviving Allegations Must Be Made More Definite.............. 31

CONCLUSION................................................................................................................ 33

Page iii - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Kujok,*
  158 F. Supp. 3d 1012 (E.D. Cal. 2016) .................................................. 11

*Am. Rivers v. Nat'l Marine Fisheries Serv.,*
  126 F.3d 1118 (9th Cir. 1997) ...................................................... 16, 17

*Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles,*
  2020 WL 6700568 (C.D. Cal. Nov. 13, 2020) ........................................ 25

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................... 11

*Auracle Homes, LLC v. Lamont,*
  2020 WL 4558682 (D. Conn. Aug 7, 2020) ...................................... 25, 27

*Axos Bank v. Rosenblum,*
  2020 WL 7344594 (D. Or. Dec. 14, 2020) .............................. 19, 20, 21

*Baptiste v. Kennealy,*
  2020 WL 5751572 (D. Mass Oct. 29, 2020) ........................ 14, 25, 27, 31

*Better Hous. for Long Beach v. Newsom,*
  452 F. Supp. 3d 921 (C.D. Cal. 2020) .......................................... 26, 29

*Cedar Point Nursery v. Hassid,*
  —U.S.—, 2020 WL 6686019 (U.S. Nov. 13, 2020) ............................. 28

*Cedar Point Nursery v. Shiroma,*
  923 F.3d 524 (9th Cir. 2019) ...................................................... 28, 29

*Chicago, B. & Q.R. Co. v. City of Chicago,*
  166 U.S. 226 (1897) ................................................................... 13

*Christopher v. Harbury,*
  536 U.S. 403 (2002) ............................................................... 30, 31

*Church of Scientology v. United States,*
  506 U.S. 9 (1992) ..................................................................... 16

*Church v. Missouri,* 913 F.3d 736 (8th Cir. 2019) ................................ 20

*City of New York v. Beretta U.S.A. Corp.,*
  524 F.3d 384 (2d Cir. 2008) ..................................................... 30, 31

Page iv - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

*Cnty. of Butler v. Wolf,*
2020 WL 2769105 (W.D. Pa. May 28, 2020)..............................................................15

*Delong Corp. v. Or. State Highway Comm'n,*
343 F.2d 911 (9th Cir. 1965) ....................................................................................13

*El Papel LLC v. Inslee,*
2020 WL 8024348 (W.D. Wash. Dec. 12, 2020) ................................................14, 25

*Elmsford Apartment Assocs., LLC v. Cuomo,*
469 F. Supp.3d 148 (S.D.N.Y 2020) .............................................................25, 27, 31

*Erlich v. Glasner,*
418 F.2d 226 (9th Cir. 1969) ....................................................................................21

*Ex parte Young,*
209 U.S. 123 (1908)...........................................................................................passim

*FCC v. Fla. Power Corp.,*
480 U.S. 245 (1987)...................................................................................................26

*Flagg Bros. v. Brooks,*
436 U.S. 149 (1978)...................................................................................................29

*HAPCO v. City of Philadephia,*
2020 WL 5095496 (E.D. Pa. Aug. 28, 2020) ............................................................25

*Heights Apartments, LLC v. Walz,*
2020 WL 7828818 (D. Minn. Dec. 31, 2020)...............................................25, 27, 31

*Home Building & Loan Ass'n v. Blaisdell,*
290 U.S. 398 (1934).....................................................................................23, 24, 25

*Hotop v. City of San Jose,*
982 F.3d 710 (9th Cir. 2020) ....................................................................................30

*Hund v. Cuomo,*
2020 WL 6699524 (W.D.N.Y. Nov. 13, 2020) ....................................................14, 21

*Knick v. Township of Scott, Pa.,*
—U.S.—, 139 S. Ct. 2162 (2019)......................................................13, 14, 15, 16

*L.J. Gibson, Beau Blixseth v. Credit Suisse AG,*
2016 WL 4033104 (D. Id. July 27, 2016).................................................................22

*Ladd v. Marchbanks,*
971 F.3d 574 (6th Cir. 2020) ....................................................................................16

Page v - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

*Los Angeles Cnty. Bar Ass'n v. Eu,*
   979 F.2d 697 (9th Cir. 1992) .................................................................. 18, 19

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992).................................................................................. 17

*McHenry v. Renne,*
   84 F.3d 1172 (9th Cir. 1996) .................................................................. 12

*Or. Rest. & Lodging Ass'n v. Brown,*
   2020 WL 6905319 (D. Or. Nov. 24, 2020)............................................. 14

*Pena v. Gardner,*
   976 F.2d 469 (9th Cir. 1992) (per curiam) ........................................... 15

*Penn Central Transportation Co. v. City of New York,*
   438 U.S. 104 (1978)................................................................................. 26

*Pennhurst State Sch. & Hospital v. Halderman,*
   465 U.S. 89 (1984).................................................................................. 12

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
   506 U.S. 139 (1993)................................................................................ 15

*RK Ventures, Inc. v. City of Seattle,*
   307 F.3d 1045 (9th Cir. 2002) ................................................................ 21

*Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency,*
   581 F.3d 1169 (9th Cir. 2009) ................................................................ 11

*Ruckelshaus v. Monsanto Co.,*
   467 U.S. 986 (1984)................................................................................ 14

*S. Pac. Transp. Co. v. Brown,*
   651 F.2d 613 (9th Cir. 1980) .................................................................. 18

*Sato v. Orange Cnty. Dep't of Educ.,*
   861 F.3d 923 (9th Cir. 2017) .................................................................. 11

*Seminole Tribe of Fla. v. Florida,*
   517 U.S. 44 (1996).................................................................................. 12

*Seven Up Pete Venture v. Schweitzer,*
   523 F.3d 948 (9th Cir. 2008) ............................................................. 15, 16

*Shroyer v. New Cingular Wireless Servs., Inc.,*
   622 F.3d 1035 (9th Cir. 2010) ................................................................ 11

Page vi - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)............................................................................. 20

*Soldal v. Cook Cnty., Ill.*,
    506 U.S. 56 (1992)....................................................................... 27, 29

*Suffolk Cnty. Jail v. Rouse*,
    129 F.3d 649 (1st Cir. 1997)............................................................ 30

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)........................................................................... 18

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    535 U.S. 302 (2002)........................................................................... 26

*Talleywhacker, Inc. v. Cooper*,
    465 F. Supp.3d 523 (E.D.N.C. 2020) .............................................. 14

*Todd v. Oregon*,
    2014 WL 1217964 (D. Or. Mar. 19, 2014)...................................... 13

*Torres v. Hill*,
    2004 WL 2624687 (D. Or. Nov. 17, 2004)...................................... 12

*Trump v. Hawaii*,
    —U.S.—, 138 S. Ct. 377 (2017)...................................................... 17

*United States v. Jacobsen*,
    466 U.S. 109 (1984)........................................................................... 27

*United States v. Karo*,
    468 U.S. 705 (1984)........................................................................... 28

*Willowbrook Apartment Assocs., LLC v. Mayor & City Council of Baltimore*,
    2020 WL 36399991 (D. Md. July 6, 2020) ..................................... 14

*Xponential Fitness v. Arizona*,
    2020 WL 3971908 (D. Ariz. July 14, 2020)..................................... 14

*Yee v. City of Escondido, Cal.*,
    503 U.S. 519 (1992)........................................................................... 26

**Statutes**

42 U.S.C. § 1983........................................................................... 23, 26

Or. Rev. Stat. § 90.325.......................................................................... 10

Page vii - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

Or. Rev. Stat. § 90.369 ................................................................................................. 10

U.S. Constitution, Amendment I ................................................................................... 36

U.S. Constitution, Amendment IV ................................................................................ 33

U.S. Constitution, Amendment V ................................................................................. 15

U.S. Constitution, Amendment XI ................................................................................ 13

U.S. Constitution, Article I, § 10 ................................................................................. 27

**Other Authorities**

Executive Order 20-03 ..................................................................................................... 3

Executive Order 20-11 ..................................................................................................... 4

Executive Order 20-12 ..................................................................................................... 4

Executive Order 20-13 ..................................................................................... 4, 10, 19

Executive Order 20-37 ..................................................................................................... 4

Executive Order 20-56 ..................................................................................... 5, 10, 19

Executive Order 20-67 ..................................................................................................... 5

Executive Order 21-05 ..................................................................................................... 5

Oregon House Bill 4204 ................................................................................................ 23

Oregon House Bill 4213 ....................................................................................... passim

Oregon House Bill 4401 ....................................................................................... passim

**Rules**

FRCP 12(b)(1) ....................................................................................................... 11, 12

FRCP 12(b)(6) ................................................................................................................. 12

FRCP 12(e) ............................................................................................................. 13, 38

FRCP 12(h)(3) ................................................................................................................. 11

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## **LR 7-1 CONFERRAL**

Pursuant to LR 7-1, counsel for the State of Oregon ("State") and Governor Kate Brown

("Governor") certify that on February 19, 2021, they conferred with counsel for Plaintiffs by

telephone and made a good-faith effort to resolve the disputes raised in this motion.  Despite the

parties' good-faith efforts, the parties have been unable to resolve those disputes.

## **MOTIONS**

The State and the Governor make the following motions pursuant to Federal Rule of Civil

Procedure ("FRCP") 12 against Plaintiffs' First Amended Complaint (Dkt. No. 17, "Complaint"

or "Compl.").

Pursuant to FRCP 12(b)(1):

- The State moves, under the Eleventh Amendment to the Constitution of the United States, to dismiss all claims against it.

- The Governor moves, under the Eleventh Amendment to the Constitution of the United States, to dismiss Plaintiffs' takings claim.

- The Governor moves to dismiss each of Plaintiffs' claims against her as nonjusticiable under Article III of the Constitution of the United States.

- The State and the Governor move to dismiss Plaintiff Moe Farhoud for lack of standing.

Pursuant to FRCP 12(b)(6), the State and the Governor move to dismiss each of

Plaintiffs' claims for failure to state a claim for which relief can be granted.

Pursuant to FRCP 12(e), the State and the Governor move to make multiple allegations in

Plaintiffs' complaint more definite.  Specifically, the State and the Governor move to make more

definite:

- Allegations throughout the Complaint regarding "Eviction Moratoria."  Rather than refer collectively to "Eviction Moratoria," the Complaint should set forth each separate government act, ordinance or law challenged by Plaintiffs and how each Defendant's separate act, ordinance, or law allegedly violates Plaintiffs' rights.

Page 1 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

- The allegations in paragraphs 13 and 14 of the Complaint, regarding the Sherman Plaintiffs' properties. Those allegations should specify whether the Shermans own the properties individually or through a business entity or entities, and the locations of the properties.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

In response to the global pandemic of the novel infectious coronavirus ("COVID-19") and the wildfires that struck Oregon during the summer of 2020, the Governor, the Oregon Legislature, Multnomah County, and the City of Portland took steps temporarily to limit evictions. Plaintiffs, property owners in Oregon, seek equitable relief declaring those state and local protections unconstitutional. In a single action, Plaintiffs challenge state statutes, gubernatorial executive orders, and Multnomah County and City of Portland ordinances, which Plaintiffs refer to collectively as the "Eviction Moratoria."

Plaintiffs' claims against the State and the Governor fail, for multiple reasons. This case is not justiciable as to either the State or the Governor. Under the Eleventh Amendment, the State is immune from suit in federal court. As to any alleged taking, equitable relief is unavailable, and the Eleventh Amendment also provides the Governor with immunity from any takings claim. Further, there is no live dispute between Plaintiffs and the Governor because the Governor's Executive Orders restricting residential evictions have expired, and the Governor has no independent enforcement authority under the challenged legislation still in effect. Finally, Plaintiff Moe Farhoud lacks standing because his alleged claims belong to his business entities, and not to Mr. Farhoud individually.

Although the Court need not reach the merits on any of Plaintiffs' claims, none can survive past the pleading stage. Plaintiffs' complaint is one of many that landlords have filed

Page 2 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

across the country in response to state and local government eviction moratoria enacted to protect the public during the pandemic. Federal courts consistently have rejected the legal theories that Plaintiffs raise here. Plaintiffs' claims have no viable underlying legal theory, and Plaintiffs' case may be dismissed on that basis as well.

## II.    BACKGROUND

Plaintiffs challenge executive orders issued by the Governor, two bills passed by the Oregon Legislature, and ordinances adopted by both Multnomah County ("County") and the City of Portland ("City"). Plaintiffs conflate those separate actions—by different governmental actors—under the collective rubric of "Eviction Moratoria." To assist the Court, the State and the Governor provide an overview of their challenged actions. In summary, in the immediate aftermath of the outbreak of the pandemic, the Governor took the lead in addressing the eviction crisis by issuing a series of executive orders. Then, while in special session, the Oregon Legislature passed two bills providing protections to tenants. The Governor's executive orders have expired. On a statewide level, the two acts passed by the Oregon Legislature are the only "eviction moratoria" still in effect.

### A.    Governor Brown Responds to COVID-19.

COVID-19 threatens the lives, health, and economic wellbeing of people around the world, as well as in Oregon. To protect the well-being of Oregonians, the Governor acted swiftly to respond to the pandemic's outbreak. On March 8, 2020, the Governor declared a state of emergency due to the public health threat posed by COVID-19. *See* Executive Order ("EO") 20-03.[1] In the following months, the Governor acted decisively to slow the spread of

---

[1] Governor Brown's executive orders are available at https://www.oregon.gov/gov/admin/pages/executive-orders.aspx.

Page 3 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

COVID-19 in Oregon and to mitigate the health and economic impacts of the global pandemic. Among other things, she ordered limitations on social gatherings, school closures, bans of on-site consumption of food and drink at restaurants, and postponement of nonurgent medical procedures to conserve personal protective equipment and hospital beds. *See* EO 20-37 (summarizing Governor Brown's response to the pandemic).

The Governor was particularly concerned with ensuring that Oregonians stayed at home to the greatest extent possible to limit transmission of the virus. On March 23, 2020, the Governor ordered Oregonians to "Stay Home, Save Lives," directing people to stay at home when possible, closing specified retail businesses, and requiring social distancing measures. EO 20-12. To ensure that tenants could remain at home, the Governor put in place eviction protections. The first of these protections, implemented by EO 20-11, prohibited law enforcement officers from enforcing residential tenant eviction notices and orders.[2]

On April 1, 2020, the Governor issued EO 20-13, ordering a temporary 90-day moratorium on evictions based on nonpayment of rent. The order did not relieve tenants from the obligation to pay rent, utility charges, or any other service fees and charges except for penalties arising from nonpayment of rent during the moratorium.

In early September 2020, Oregon suffered its worst wildfire season in history. Hundreds of thousands of Oregonians were temporarily displaced, thousands of homes were destroyed, over a million acres of land were burned, and at least 11 people were killed in fires that erupted across the state. Health-endangering smoke covered Oregon for days. The fires compounded concerns about the spread of COVID-19, as many people who evacuated or fled ended up

---

[2] Plaintiffs do not challenge EO 20-11.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

sheltering in tight quarters where physical distancing was impossible.  For many Oregonians, the fires worsened the detrimental financial effects of the COVID-19 crises, shuttering businesses and further jeopardizing livelihoods.  This heightened the risk of eviction for many Oregonians whose jobs and businesses were impacted by the fires.

On September 28, 2020, the Governor issued EO 20-56, ordering another temporary moratorium on evictions for nonpayment in response to the continuing pandemic and the wildfires.  The order extended the eviction moratorium through December 31, 2020.  Again, the order did not relieve tenants from any payment obligation except for penalties arising from nonpayment during the eviction moratorium period.

On December 17, 2020, the Governor extended the state of emergency through March 3, 2021.  EO 20-67.  The Governor did not, however, modify the temporary eviction moratorium imposed by EO 20-56.  *See* EO 20-67 § 2(b)(7) (continuing EO 20-56 without modification); *see also* EO 21-05 § 2(c) (reiterating that EO 20-56 expired on December 31, 2020).  Accordingly, the temporary eviction moratorium ordered by the Governor expired at the beginning of 2021.  In other words, there currently are no executive orders in place limiting or restricting evictions.

>    **B.      The Oregon Legislature Responds to COVID-19.**

In three special sessions in 2020, the Oregon Legislature enacted laws to help address the impact of the pandemic.  As pertinent here, the legislature enacted two laws that restrict evictions and provide protections to tenants, House Bill 4213 ("HB 4213") and House Bill 4401 ("HB 4401").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

HB 4213 was passed during the first special session, and became effective June 30, 2020.[3]  The substantive provisions of HB 4213 were enacted "to protect the public health, safety and welfare," and are of "limited scope and duration."  HB 4213 § 1(2).

HB 4213 prohibits landlords from taking specified actions based on a tenant's nonpayment balance during the emergency period of April 1, 2020, through September 30, 2020.  HB 4213 §§ 3, 5.  Most significantly, HB 4213 prohibits a landlord from evicting a tenant for nonpayment of rent, and from assessing any fee or penalty on a tenant's nonpayment.  HB 4213 §§ 3(2)(a)-(d), 5(2)(a)-(c), 5(3).  HB 4213 applies to residential and commercial tenancies.[4]

HB 4213 further establishes that, after the emergency period, tenants with an outstanding nonpayment balance have a six-month grace period, ending on March 31, 2021, to pay the balance.  HB 4213 §§ 3(6), 5(4).  If, in accordance with HB 4213 § 3(7) or § 5(5), a landlord gives the tenant notice that the emergency period has ended and that the tenant has a nonpayment balance, the grace period is available to the tenant, provided that the tenant notifies the landlord that the tenant intends to use the grace period to pay balances due.  HB 4213 §§ 3(8)(a), 5(6)(a).  HB 4213 tolls the statute of limitations until March 31, 2021, for landlords' claims against residential tenants based on nonpayment of rent.  HB 4213 § 7.

Under HB 4213, if a landlord violates sections 3 or 5 of HB 4213, a tenant may obtain injunctive relief to recover possession or address any other violation of the statute.  HB 4213 §§ 3(11), 5(9).  A tenant also may recover from the landlord an amount up to three months'

---

[3] The text of HB 4213, and information about the bill's passage, is available on the Oregon Legislature's website, at https://olis.oregonlegislature.gov/liz/2020S1/Measures/Overview/HB4213.

[4] Sections 3–4 and 7 of HB 4213 apply to residential tenancies.  Sections 5 and 6 apply to commercial tenancies.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

periodic rent plus any actual damages.  *Id.*  This private right of action is the only express

enforcement mechanism created by HB 4213; the statute gives no independent enforcement

authority to the Governor.  By HB 4213's own terms, the operative provisions of HB 4213,

Sections 3 and 5, are repealed on March 31, 2021.  HB 4213 §§ 4, 6.

The Oregon Legislature adopted HB 4401 on December 21, 2020, and the statute became

effective December 23, 2020.[5]  HB 4401 modifies HB 4213 as to *residential* evictions.[6]  HB

4401 extends the emergency period for residential tenants specified in HB 4213 until

December 31, 2020.  HB 4401 § 8.  HB 4401 further extends through June 30, 2021, the

emergency period, the moratorium on residential evictions for nonpayment, the prohibition on

late fees on unpaid rent, and the six-month grace period created by HB 4213, if one of two things

occurs:  either a landlord fails to deliver to the tenant a notice informing the tenant of the tenant's

right to temporary protection against eviction for nonpayment; or the tenant delivers to the

landlord a declaration of financial hardship.  HB 4401 § 7(1).  The form of notice for the

landlord to provide the tenant, and the form of the declaration for the tenant to provide the

landlord, are set forth in the law.  HB 4401 § 7(1)–(3).

HB 4401 retains the private cause of action for tenants created by HB 4213.  If a landlord

violates the eviction prohibition in HB 4401, a tenant may obtain injunctive relief to recover

possession or address any other violation and may recover from the landlord an amount equal to

---

[5] The text of HB 4401 and information about the bill's passage, is available on the Oregon
Legislature's website, at https://olis.oregonlegislature.gov/liz/2020S3
/Measures/Overview/HB4401.

[6] HB 4401 does not modify the substantive provisions of HB 4213 applicable to commercial
evictions.  As for commercial evictions, the substantive provisions of HB 4213 will be repealed
effective March 31, 2021.  HB 4213 § 6.

Page 7 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S
MOTION TO DISMISS**

three months' periodic rent plus any actual damages.  HB 4401 § 7(8)(a)(A).  The tenant also has

a defense to an action for possession by the landlord.  HB 4401 § 7(8)(a)(B).  Like HB 4213, HB

4401 creates no other enforcement mechanism and gives no independent enforcement authority

to the Governor.

Section 8 of HB 4401 makes further changes to HB 4213.  For example, HB 4401 adds a

provision that if a tenancy terminates before the end of the grace period, a landlord may claim

from the security deposit or last month's rent deposit an amount to repay the unpaid rent balance

that accrued during the emergency period.  *See* HB 4401 § 8 (adding a new § 3(6)(a) to

HB 4213).  The bill extends the statute of limitations for a landlords' claim against a residential

tenant based on nonpayment of rent through July 2, 2021.  HB 4401 § 17.  The eviction

moratorium extension in HB 4401, including the private right of action, are repealed effective

July 1, 2021.  HB 4401 § 23.[7]

In addition to its protections for tenants, HB 4401 establishes a landlord compensation

fund to compensate residential landlords for 80 percent of the past-due rent of qualified tenants.

HB 4401 § 2(1).  Landlords must apply to take advantage of the fund and voluntarily agree to

forgive the remaining 20 percent of the unpaid rent due from qualified tenants.  HB 4401

§ 2(1)(a)–(d).  In other words, the compensation fund is entirely optional; landlords have no

obligation to waive any part of unpaid rent that accrues during the emergency period.

In summary, under current law, a landlord cannot evict a residential tenant for

nonpayment of rent until April 1, 2021.  However, if the tenant provides the landlord with notice

that the tenant has incurred a loss in income since the outbreak of the pandemic, or the landlord

---

[7] HB 4401 also extends the repeal date of Section 3 of HB 4213 from March 31, 2021, to
September 1, 2021.  HB 4401 § 24.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

fails to send the tenant a notice of the tenant's rights against evictions, then the landlord cannot evict the tenant for nonpayment until July 1, 2021.  A residential tenant has a private right of action against a landlord who violates the eviction moratorium.  The law provides for no other enforcement mechanism.  These tenant protections expire (and the provisions of law providing tenant protections are repealed) by September 1, 2021.  The law also provides landlords with the opportunity to obtain compensation from a state fund for 80% of the total amount of unpaid rent, if the landlord agrees to forgive the remaining rent balance owing.

HB 4213 and HB 4401 do not require landlords to provide housing free of charge. Although HB 4213 and HB 4401 protect tenants from fees and penalties for late payments, nothing in HB 4213 or HB 4401 relieves a tenant of the obligation to pay all duly owed rent. HB 4213 and HB 4401 only extend the time-period for a tenant to pay.  Moreover, the eviction moratorium in HB 4213, as amended by HB 4401, applies only to evictions for nonpayment of rent due to loss of income arising after the outbreak of the pandemic and resulting economic downturn.  HB 4213, as modified by HB 4401, does not prohibit for-cause evictions for reasons other than nonpayment of rent, such as for participating in illegal activity or the tenant's violation of statutory duties.  *See, e.g.*, Or. Rev. Stat. ("ORS") § 90.325 (setting forth tenant duties); ORS § 90.369 (discussing acts and omissions justifying termination of tenancy).  As HB 4401 makes explicit, a tenant "can still be evicted for violations of the rental agreement, other than nonpayment of rent."  HB 4401 § 7(3)(a).

### C.      Plaintiffs Challenge the "Eviction Moratoria."

In the Complaint, Plaintiffs challenge city, county, state executive, and state legislative actions, which Plaintiffs collectively refer to as "Eviction Moratoria."  Compl. ¶ 2.  These so-called Eviction Moratoria include EO 20-13 and EO 20-56, which, as noted above, have expired.

Page 9 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

The Eviction Moratoria also include HB 4213 and HB 4401.  Plaintiffs briefly describe the individual government actions that make up the Eviction Moratoria (Compl. ¶¶ 2, 21–32), but Plaintiffs do not specify how each ordinance, resolution, order, and statute separately impacts them.

Based on the amalgamated harm that the Eviction Moratoria supposedly cause, Plaintiffs bring five claims against the City, County, the State, and the Governor.  First, Plaintiffs assert a violation of the Contracts Clause, Article I, Section 10 of the United States Constitution.  Compl. ¶¶ 34–41.  Second, Plaintiffs assert violations of the Fifth and Fourteenth Amendments to the United States Constitution based on an alleged "*per se* taking" of Plaintiffs' property without just compensation.  Compl. ¶¶ 42–49.  Third, Plaintiffs assert a violation of the Fourteenth Amendment, which appears to be a substantive due process claim, based on allegedly confiscatory price controls that fail to provide Plaintiffs a "fair and reasonable" return on their properties.  Compl. ¶¶ 3, 50–57.  Fourth, Plaintiffs assert a violation of the Fourth and Fourteenth Amendments based on a supposed "seizure" of Plaintiffs' property.  Compl. ¶¶ 1, 3, 58–64.  Finally, Plaintiffs assert a violation of the right of access to the courts guaranteed by the First and Fourteenth Amendments.  Compl. ¶¶ 65–73.

The State and the Governor bring this motion to dismiss because they are not proper parties.  Additionally, the Takings Clause claim is not properly before the Court, and at least one plaintiff, Moe Farhoud, lacks standing.  These jurisdictional defects prevent the Court from reaching the merits of the claims against the State and the Governor.  Although the Court need not reach the merits of Plaintiffs' claims, Plaintiffs' Complaint also fails to state any viable cause of action under any of the constitutional provisions that Plaintiffs invoke.  At the very least, Plaintiffs should make their claims more definite by clarifying the nature of their property

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

interests and how each separate government act, ordinance, or law making up the "Eviction Moratoria" affects Plaintiffs' rights.

## III.   LEGAL STANDARDS

FRCP 12(b)(1) allows a defendant to move to dismiss a case for "lack of subject-matter jurisdiction." FRCP 12(b)(1). When a defendant correctly identifies a jurisdictional defect, "the court must dismiss the action." FRCP 12(h)(3). A defendant may raise justiciability issues such as sovereign immunity, mootness, and standing through a motion to dismiss under FRCP 12(b)(1). *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion."); *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1172–73 (9th Cir. 2009) (mootness); *Alexander v. Kujok*, 158 F. Supp. 3d 1012, 1017 (E.D. Cal. 2016) (standing).

FRCP 12(b)(6) allows a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FRCP 12(b)(6). A complaint fails to state a claim when there is no cognizable legal theory or the factual allegations are insufficient to support a claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In addition, the "complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim lacks facial plausibility when the plaintiff does not plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

FRCP 12(e) permits a court to order a party to provide "a more definite statement of a pleading" where the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." FRCP 12(e). A court will grant a motion to make more definite where a complaint

Page 11 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

"does not include clear and concise allegations, and it is impossible to readily identify the issues of the . . . claims alleged." *Torres v. Hill*, 2004 WL 2624687, at *1 (D. Or. Nov. 17, 2004).  A party may be required to make a more definite statement where the allegations in the complaint fail to adequately specify which of multiple defendants were responsible for the alleged wrongs suffered by a plaintiff.  *McHenry v. Renne*, 84 F.3d 1172, 1175–76 (9th Cir. 1996).

## IV.    ARGUMENT

### A.    Plaintiffs Do Not Allege Justiciable Claims Against the State or the Governor.

#### 1.    The Claims Against the State of Oregon Should Be Dismissed Because the State Is Immune from Suit Under the Eleventh Amendment.

The Eleventh Amendment articulates the doctrine of sovereign immunity.  It provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Supreme Court has held that, under the Eleventh Amendment's text, a federal court may not entertain a suit brought by citizens against their own states.  *Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89, 98 (1984).  The Supreme Court further has interpreted the Eleventh Amendment's protection as extending to suits invoking federal question jurisdiction.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996).  The prohibition applies to all claims, whether seeking equitable relief or damages.  *Id.* at 58.  Although a state may waive its sovereign immunity by consenting to suit in federal court, the waiver must "be unequivocally expressed."  *Pennhurst*, 465 U.S. at 99.

Plaintiffs have sued the State.  The State has not consented to suit in federal court for federal constitutional claims.  *See Delong Corp. v. Or. State Highway Comm'n*, 343 F.2d 911,

Page 12 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

912 (9th Cir. 1965) (holding "that Oregon has not consented to be sued in federal court or otherwise waived its immunity under the Eleventh Amendment"); *Todd v. Oregon*, 2014 WL 1217964, at *4 (D. Or. Mar. 19, 2014) (concluding that the State had not waived sovereign immunity for federal constitutional claims). Accordingly, as required by the Eleventh Amendment, the Court should dismiss all of Plaintiffs' claims against the State.

### 2. Plaintiffs' Equitable Takings Claim Is Not Justiciable.

Plaintiffs' takings claim cannot proceed against the State (or the Governor, as explained more fully below) for the additional reason that Plaintiffs cannot obtain the relief they seek in this Court. Plaintiffs do not seek damages for this claim; they seek only declaratory and injunctive relief. Compl. ¶¶ 46–48. The Supreme Court made clear in *Knick v. Township of Scott, Pennsylvania*, —U.S.—, 139 S. Ct. 2162 (2019), that equitable relief under the Takings Clause is not available in federal court. Because Plaintiffs seek only equitable relief in their takings claim, it must be dismissed.

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend V. That clause was made applicable to the states through the Fourteenth Amendment. *Chicago, B. & Q.R. Co. v. City of Chicago*, 166 U.S. 226, 241 (1897). There are established limits on takings claims in federal court applicable here.

In *Knick*, the Supreme Court held that equitable relief is unavailable in federal court for takings claims. As the Court explained:

> Today, because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking.

Page 13 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

*Knick*, 139 S. Ct. at 2176; s*ee also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)

("Equitable relief is not available to enjoin an alleged taking of private property for a public use,

duly authorized by law, when a suit for compensation can be brought against the sovereign

subsequent to the taking").

Applying *Knick*, courts consistently have rejected takings claims seeking equitable relief.

More specifically, courts have rejected takings-based challenges to COVID-19-related legislation

and governmental actions imposing eviction moratoria and other temporary restrictions on

actions by landlords against tenants. *See, e.g.*, *El Papel LLC v. Inslee*, 2020 WL 8024348, at

*12–*13 (W.D. Wash. Dec. 12, 2020) (applying *Knick* in rejecting a Takings Clause challenge

seeking to enjoin Washington State and Seattle eviction moratoria); *Baptiste v. Kennealy*, 2020

WL 5751572, at *3–4 (D. Mass Oct. 29, 2020) (applying *Knick* to a Takings Clause challenge

seeking to enjoin statewide eviction moratorium and holding that "even if plaintiffs could prove

a taking had occurred, they would not be entitled to injunctive relief").[8] This Court likewise

---

[8]*See also Talleywhacker, Inc. v. Cooper*, 465 F. Supp.3d 523, 541 (E.D.N.C. 2020) (applying *Knick* and rejecting Takings Clause challenge seeking equitable relief to enjoin governor's executive orders temporarily closing music venues during pandemic); *Or. Rest. & Lodging Ass'n v. Brown*, 2020 WL 6905319, at *5 (D. Or. Nov. 24, 2020) (rejecting restaurant association's takings challenge to executive order restricting in-person dining because injunctive relief "is not the appropriate remedy"); *Hund v. Cuomo*, 2020 WL 6699524, at *5  (W.D.N.Y. Nov. 13, 2020) (rejecting musician's takings challenge for equitable relief to state prohibitions on live music performances in response to COVID-19 pandemic because "Hund may not obtain injunctive relief if a process is available through which he may obtain compensation for any taking"); *Xponential Fitness v. Arizona*, 2020 WL 3971908, at *9 (D. Ariz. July 14, 2020) (rejecting fitness club owners' takings argument in motion for temporary restraining order against governor's executive order temporarily closing fitness studios during pandemic because "even if the [executive order] did violate Plaintiffs' Fifth Amendment rights, Plaintiffs would not be entitled to injunctive relief"); *Willowbrook Apartment Assocs., LLC v. Mayor & City Council of Baltimore*, 2020 WL 36399991 at *4 (D. Md. July 6, 2020) (rejecting landlords' takings argument in motion for a temporary restraining order against local governments' temporary prohibitions on rent increases because, "as multiple courts have explained, the proper remedy for a Takings violation is not injunctive relief"); *Cnty. of Butler v. Wolf*, 2020 WL 2769105, at *4

Page 14 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S
MOTION TO DISMISS**

should decline to consider the Takings Clause claims by Plaintiffs, which seek only equitable relief.

### 3.    The Governor Is Immune from Takings Claims.

Plaintiffs' takings claim against Governor Brown also fails for the additional reason that the Eleventh Amendment prohibits takings claims against state actors, in their official capacity, in federal court.  The Eleventh Amendment prohibits federal court actions for damages (or other retroactive relief) brought by a citizen against a state official acting in her official capacity.  *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam).  There is, however, a "narrow" exception to a state official's sovereign immunity carved out by *Ex parte Young*, 209 U.S. 123 (1908).  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (describing "narrow" exception).  If "the plaintiffs seek *prospective injunctive relief* against the state official for a violation of federal law, the Eleventh Amendment does not bar the action."  *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 953 (9th Cir. 2008) (emphasis added).

Takings claims do not fall within the narrow *Ex parte Young* exception because, as *Knick* held, injunctive relief is not available under the Takings Clause.  *Knick*, 139 S. Ct. at 2176.  Even before the Supreme Court's opinion in *Knick*, it was settled Ninth Circuit law that a takings claim in federal court seeking wholly injunctive relief from a state officer was barred by the Eleventh Amendment.  *Seven Up*, 523 F.3d at 956.  The Ninth Circuit reasoned that equitable claims under the Takings Clause are the functional equivalent of damages claims because any

---

(W.D. Pa. May 28, 2020) ("Here, the declaratory relief sought by Plaintiffs—that the Governor's business shutdown orders effectuated an unconstitutional taking—would be the functional equivalent of injunctive relief.  The Supreme Court's decision in *Knick* forecloses such relief.").

Page 15 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

claim regarding "'just compensation' is on all fours with traditional monetary damages." *Id.*
Accordingly, Takings Clause claims "cannot qualify as claims for prospective relief, and *Ex parte Young* consequently does not apply." *Id.*; *see also Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (explaining that if plaintiffs could obtain a declaration that a state violated the Takings Clause, they could use that order to require the state to pay them for its alleged taking of their property, which "isn't a proper workaround to the States' sovereign immunity").

*Knick* bars the equitable relief Plaintiffs seek here.  Moreover, the Eleventh Amendment specifically precludes any relief against the Governor, in her official capacity, for the alleged takings.  Plaintiffs' takings claim is not properly before the Court and must be dismissed.

### 4.    The Governor Has No Authority to Enforce Any of the Existing "Eviction Moratoria."

In addition to the jurisdictional defects identified above, this case is not justiciable as to the Governor because she has no enforcement authority over any existing "Eviction Moratoria." First, EO 20-13 and EO 20-56 have both expired, and therefore any claims based on the executive orders are moot.  Second, the Governor has no authority to enforce HB 4213 or HB 4401, and therefore Plaintiffs' alleged injury is not traceable to the Governor nor would the relief that Plaintiffs seek against the Governor redress that injury.

### a.    Claims Based on the Executive Orders Are Moot.

"A claim is moot if it has lost its character as a present, live controversy." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).  Federal courts do not have jurisdiction to opine "upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Id.* (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).  If, for example, "an event occurs that

Page 16 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

prevents the court from granting effective relief, the claim is moot and must be dismissed." *Id.*
In *American Rivers*, the Ninth Circuit dismissed a challenge to a 1994–1998 biological opinion
issued by the National Marine Fisheries Service where that biological opinion had been
superseded by a 1995 biological opinion. *Id.* at 1124. Similarly, in a case where an executive
order expired by its own terms, the United States Supreme Court vacated the judgment and
remanded to the Ninth Circuit "with instructions to dismiss as moot the challenge to [the
executive order]." *Trump v. Hawaii*, —U.S.—, 138 S. Ct. 377 (2017). This case is no different.
The executive orders are no longer in effect, having expired by their own terms, and the
challenge to them is moot.[9]

### b.    HB 4213 and HB 4401 Do Not Give the Governor Any Enforcement Authority.

The claims against the Governor based on HB 4213 and HB 4401 also are not justiciable.
The statutes do not give the Governor any independent enforcement authority. For that reason,
Plaintiffs have not alleged, and cannot allege, any actual or imminent injury that is fairly
traceable to actions by the Governor and that the Court could redress with a favorable ruling.
*See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (setting out standing requirements
under Article III of the Constitution).

A plaintiff must allege and establish more than a hypothetical fear to obtain a ruling that a
statute is unconstitutional. Threatened enforcement of a statute gives rise to an injury-in-fact that
allows a plaintiff to obtain declaratory and injunctive relief only "under circumstances that

---

[9] Moreover, as discussed above, under the Eleventh Amendment, a plaintiff may seek only
prospective declaratory or injunctive relief against state officers in their official capacities. To
the extent Plaintiffs seek equitable relief against the Governor regarding the *expired* executive
orders, those claims are unequivocally barred by the Eleventh Amendment.

Page 17 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

render the threatened enforcement sufficiently imminent.*"  Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  Suits against a state official to challenge a state statute require some "threat of enforcement" by that state official.  *S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 614 (9th Cir. 1980).

For example, in *Southern Pacific Transportation Co. v. Brown*, several railroads sued the Oregon attorney general to enjoin enforcement of a statute that restricted employers' attempts to negotiate settlements with employees who were injured in work-related accidents. 651 F.2d at 614.  The Ninth Circuit dismissed the railroads' claims.  The court reasoned that Oregon law did not establish that the attorney general "could prosecute a violation of the challenged act or compel the district attorneys to prosecute or refrain from doing so." *Id.* at 614.  Any advice that the attorney general might give on whether the statute was constitutional "would not insulate the plaintiffs from prosecution if this advice were rejected by the district attorneys." *Id.* at 615. Therefore, not only was the attorney general's connection to enforcement of the statute insufficient to satisfy *Ex parte Young*, the suit presented "no justiciable controversy" because "the attorney general's power to direct and advise does not make the alleged injury fairly traceable to his action." *Id.*

For the same reasons as in *Brown*, Plaintiffs fail to state a justiciable claim against the Governor or even show that their claim against her falls within an exception to the general prohibition on suits against state officials.  To come within the *Ex parte Young* exception for suits against state officers in their official capacities, the plaintiff must name a state officer who has "some connection with the enforcement of the [allegedly unconstitutional] act."  *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (alteration in original) (quoting *Ex parte Young*, 209 U.S. at 157).  "This connection must be fairly direct; a generalized duty to

Page 18 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.*; *see also Ex parte Young*, 209 U.S. at 157 ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act[.]").

Judge Hernández's recent decision in *Axos Bank v. Rosenblum*, 2020 WL 7344594 (D. Or. Dec. 14, 2020), also provides useful guidance here. In *Axos Bank*, the plaintiff brought an as applied challenge to House Bill 4204 ("HB 4204") against the Attorney General. HB 4204 created a temporary moratorium on mortgage foreclosures. HB 4204 was companion legislation to HB 4213 (the first eviction moratorium) and was enacted contemporaneously with HB 4213. In *Axos Bank*, the plaintiff alleged that the statute unconstitutionally interfered with the plaintiff's ability to foreclose on commercial loans and to collect late fees from the borrowers and guarantors. The plaintiff in *Axos Bank* alleged claims similar to those alleged by Plaintiffs here—seeking equitable relief under 42 U.S.C. § 1983 for, among other things, alleged Contracts Clause and Due Process violations.

Judge Hernández ruled that the plaintiff lacked standing to challenge the statute and that any decision on the merits of the case would be an impermissible advisory opinion. 2020 WL 7344594, at *2. Judge Hernández reasoned that the statute did not confer any express authority on the Attorney General to enforce HB 4204. Rather, the statute was "designed to be enforced through its private right of action," and only the commercial borrowers and guarantors—who were not parties to the case—could enforce the private right. *Id.* at * 3. The plaintiff thus could not sustain any direct injury from an action by the Attorney General, as required to establish standing and an actual case or controversy. *Id.*

Page 19 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

Absent any threat of enforcement by the Attorney General, the plaintiff could argue only that the Attorney General had a generalized duty to enforce the law.  However, citing *Ex parte Young*, Judge Hernández ruled that the Eleventh Amendment does not allow suit against state officers who lack a more direct connection to enforcement of a challenged statute.  Accordingly, he concluded that the Eleventh Amendment also independently barred the plaintiff's claims.  *Id.* at *4.

As with the statute at issue in *Axos Bank*, the challenged legislation here—HB 4213 and HB 4401—creates a mechanism for enforcement:  the private right of action.  *See* HB 4401 § 7(8)(A)(a) ("If a landlord violates this section or section 3, chapter 13 [of HB 4213], [a] tenant may obtain injunctive relief to recover possession or address any other violation and may recover from the landlord an amount equal to three months' periodic rent plus any actual damages").  It is specifically a *private* right of action, provided to *private* parties.  Enforcement of the private right of action belongs with affected individuals, not with the Governor.[10]  Because there is no threat, and no viable potential threat, that the Governor could enforce HB 4213 or HB 4401 against Plaintiffs, a remedy is unavailable to Plaintiffs in federal court.  *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976) ("[A] federal court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."); *see also Church v. Missouri*, 913 F.3d 736 (8th Cir. 2019) (holding that the Missouri governor's general enforcement authority or ability to appoint members of the Missouri State Public Defender's

---

[10] HB 4401 also provides an affirmative defense for any tenant against whom a landlord seeks a wrongful eviction or otherwise violates HB 4401.  § 8(a)(B).  As with the private right of action, this defense belongs to the private individual, not the Governor.

Page 20 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

Commission was not a basis for an *Ex parte Young* action against the governor to compel an increase in Missouri's indigent defense budget); *Hund v. Cuomo*, 2020 WL 6699524 (S.D.N.Y. 2020) (holding that New York State Governor Cuomo was immune from suit under Eleventh Amendment because he did not have enforcement authority over the challenged governmental restrictions limiting public gatherings in response to the COVID-19 pandemic).

In sum, Plaintiffs' case against the Governor fails for the same reason the plaintiffs' case against the Attorney General failed in *Axos Bank*.  Plaintiffs cannot allege any actual or imminent injury that is fairly traceable to any enforcement action by the Governor or that is redressable by the Court.  Plaintiffs' current allegations fail to establish that Plaintiffs have standing or overcome Eleventh Amendment immunity, such that the Court may adjudicate their claims against the Governor.

### 5.    Plaintiff Moe Farhoud Lacks Standing.

Plaintiff Moe Farhoud lacks standing because his claims belong to his businesses, not to him individually.  Plaintiffs allege that Mr. Farhoud owns "approximately 1200 apartment units" through his "controlling interests in 44 distinct legal entities which own his apartment buildings." Compl. ¶ 8.  Plaintiffs Stark Firs Limited Partnerships, Aldar Village, Inc., Star Krest, Inc., and Ash Street Courtyard LLC are four of Mr. Farhoud's entities alleged to have sustained losses because of "the eviction moratoria." *Id.* ¶¶ 9–12.

An individual lacks standing to pursue claims under 42 U.S.C. § 1983 for harm to the business in which the individual holds an interest.  Those claims belong to the business. *Erlich v. Glasner*, 418 F.2d 226, 227–28 (9th Cir. 1969); *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002) ("In general, shareholders lack standing to assert an individual § 1983 claim based on harm to the corporation in which they own shares").  The rule

Page 21 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

applies with equal force regardless of the structure of the entity. *See, e.g.*, *L.J. Gibson, Beau Blixseth v. Credit Suisse AG*, 2016 WL 4033104, at *21 (D. Id. July 27, 2016) ("An individual member of a limited liability company lacks standing to pursue individual claims against third parties when those injuries are derivative of the limited liability company's injuries").

Mr. Farhoud's claims are entirely derivative of his companies' alleged injuries. Plaintiffs have alleged that his apartment buildings are held through "44 distinct legal entities." The claims alleged—for impairment of contract, takings, and seizure of property—arise from the entities' interests in the apartment buildings. They are not personal to Mr. Farhoud. He lacks standing to pursue those claims and, accordingly, he may not proceed as a party in this case.[11]

## B.    All Plaintiffs' Claims Also Fail on the Merits.

If the Court concludes that it has jurisdiction and Plaintiffs' claims are justiciable, Plaintiffs claims against the State and the Governor still should be dismissed. The claims fail to set out a cognizable legal theory or factual allegations that entitle Plaintiffs to relief.[12]

### 1.    Plaintiffs Fail to State a Claim for Violation of the Contracts Clause and the Due Process Clause.

In their first claim for relief, Plaintiffs assert that the State and the Governor violated the Contracts Clause[13] by substantially impairing Plaintiffs' contracts with their tenants. Compl.

---

[11] Plaintiffs Tyler Sherman and Chrystal Sherman also may lack standing for the same reason. As set forth in section IV.C, the allegations about their properties—and whether the Shermans own those properties individually or through one or more entities—are vague and should be made more definite. Defendants may move to dismiss the Shermans on the same standing grounds once those allegations are clarified.

[12] The State and the Governor also join the FRCP 12(b)(6) motions filed by the City and the County to the extent the City and County's arguments apply equally to the claims against the State and the Governor.

[13] The Contracts Clause provides that no state shall pass any "Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10.

Page 22 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

¶ 37.  In their third claim for relief, Plaintiffs further assert that the State and the Governor have denied them due process, in violation of the Fourteenth Amendment, by imposing arbitrary and confiscatory price controls that deny Plaintiffs a "fair and reasonable" return.  Compl. ¶¶ 3, 51–53.  The Supreme Court's decision in *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934), disposes of both claims.

In *Blaisdell*, the plaintiffs were mortgagees seeking to foreclose on defaulted borrowers. *Id.* at 416, 425.  They brought a constitutional challenge to a Minnesota law that was enacted in April 1933, in response to the economic crisis of the Great Depression.  That law altered the relief available to the plaintiffs for foreclosures of mortgages and execution sales of real estate. *Id.* at 416.  Specifically, the plaintiffs challenged a provision that authorized the district court of the county to extend the period of redemption from foreclosure sales "for such additional time as the court may deem just and equitable," but in no event beyond May 1, 1935. *Id.*  The state courts upheld the statute as an emergency measure despite "conceding that the obligations of the mortgage contract were impaired." *Id.* at 420.

On appeal, the United States Supreme Court distinguished between a law that renders contracts "invalid, or releases or extinguishes them," and a law that merely alters the available remedy. *Id.* at 431.  The latter could withstand a constitutional challenge based on "control which the state retains over remedial processes" and the state's "authority to safeguard the vital interests of its people." *Id.* at 434.  The policy of protecting contracts against impairment, embodied in the Contracts Clause, "presupposes the maintenance of a government by virtue of which contractual relations are worth while,—a government which retains adequate authority to secure the peace and good order of society." *Id.* at 435.

Page 23 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

Applying these principles to the Minnesota law, the Supreme Court concluded, based on the state legislature's express findings and judicially noticeable facts, that "[a]n emergency existed in Minnesota which furnished a proper occasion for the exercise of the reserved power of the state to protect the vital interests of the community." *Id.* at 444.  The extension of the period of redemption "was addressed to a legitimate end; that is, the legislation was not for the mere advantage of particular individuals but for the protection of a basic interest of society." *Id.* at 445.  The legislation did not impair "the integrity of the mortgage indebtedness" but simply delayed the time when the plaintiffs could obtain possession for nonpayment and granted borrowers equitable relief from penalties. *Id.* at 445–46.  The Supreme Court also found it significant that "[t]he legislation is temporary in operation" and "is limited to the exigency which called it forth." *Id.* at 447.  For these reasons, the Minnesota law did not violate the Contracts Clause, nor, for the same reasons, did it violate the Due Process Clause. *Id.* at 447–48.

There is no meaningful difference between the Minnesota law at issue in *Blaisdell* and the Oregon legislation that Plaintiffs challenge here.  Like the Minnesota law, HB 4213 and HB 4401 do not invalidate Plaintiffs' contracts.  The legislation simply delays the time at which Plaintiffs may obtain possession for nonpayment and grants tenants equitable relief from nonpayment penalties.  Moreover, HB 4213 and HB 4401 are temporary, self-repealing measures.  They benefit no one individual but rather serve the protection of a basic interest of society:  stopping the spread of COVID-19.  Accordingly, HB 4213 and HB 4401 do not violate the Contracts Clause or the Due Process Clause.

Courts across the country have upheld similar measures by states to address the COVID-19 pandemic.  For example, in *Heights Apartments, LLC v. Walz*, the court dismissed Contracts Clause and substantive due process claims challenging the Minnesota governor's executive

Page 24 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

orders restricting residential evictions.  2020 WL 7828818, at *11–13, *17 (D. Minn. Dec. 31,

2020).  In *Baptiste*, the court likewise denied a motion for a preliminary injunction because

landlords were not likely to prevail on their Contracts Clause or due process claims against

Massachusetts legislation temporarily prohibiting them from serving notices to quit, initiating

summary process actions, and evicting tenants who were not paying rent.  2020 WL 5751572, at

*14, *24–26.[14]  Plaintiffs' complaint offers the Court no reason to depart from these well-

reasoned decisions.

### 2.    Plaintiffs Fail to State a Claim Under the Takings Clause.

In Plaintiffs' second claim for relief, they assert that the State and the Governor have

violated the Fifth and Fourteenth Amendments because the Eviction Moratoria constitute a *per*

*se* taking.[15]  Compl. ¶¶ 42–49.  They allege that a "*per se* taking" has occurred because the

Eviction Moratoria "represent a physical occupation of the Plaintiffs' premises without just

compensation."  Compl. ¶ 44.  Additionally, they allege a "*per se* taking" because Plaintiffs are

---

[14] *See also Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp.3d 148 (S.D.N.Y 2020)
(holding, on summary judgment, that New York State's Governor's executive order creating
temporary eviction moratorium did not violate Contracts Clause or Due Process Clause); *Auracle
Homes, LLC v. Lamont*, 2020 WL 4558682 (D. Conn. Aug 7, 2020) (denying landlords' motion
for preliminary injunction against Connecticut eviction moratorium because landlords were
unlikely to succeed on the merits of their Contracts Cause and Due Process claims); *HAPCO v.
City of Philadephia*, 2020 WL 5095496, at *5–11 (E.D. Pa. Aug. 28, 2020) (relying on *Blaisdell*
to deny preliminary injunction on plaintiffs' Contracts Clause claim against City of Philadelphia's
temporary legislation enacted in response the COVID-19 pandemic and designed
to allow residents to remain in their homes, and also denying injunction on the plaintiffs' Due
Process Claim); *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 2020 WL
6700568, at *7 (C.D. Cal. Nov. 13, 2020) ("[T]he court joins at least four other courts that have
found eviction moratoria reasonable in light of the COVID-19 pandemic at the preliminary
injunction stage, notwithstanding the lack of any provision for partial rent payments."); *El Papel*,
2020 WL 8024348 (relying on *Blaisdell* to deny preliminary injunction against City of Seattle
and Washington State's temporary eviction moratoria in response to COVIC-19 pandemic).
[15] The Takings Clause of the Fifth Amendment provides that no "private property shall be taken
for public use, without just compensation."  U.S. Const. amend. V.

Page 25 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S
MOTION TO DISMISS**

deprived "of their rights to exclude others—including tenants who have not paid their rent, utilities, or other charges—from Plaintiffs' properties when those individuals no longer have any rights to possession."  Compl. ¶ 45.  Plaintiffs allege no other kind of taking.

The Supreme Court distinguishes between categorical, possessory *per se* takings and "regulatory takings" that involve more fact-specific inquiries.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002); *Better Hous. for Long Beach v. Newsom*, 452 F. Supp. 3d 921, 928 (C.D. Cal. 2020).  The Supreme Court already has held that "statutes regulating the economic relations of landlords and tenants are not *per se* takings."  *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987).  If the landlord originally invited the tenant to occupy the premises subject to a lease, statutes regarding rent charges do not categorically violate the Takings Clause.  *See id.* at 252–53 ("[I]t is the invitation, not the rent, that makes the difference."); *see also Yee v. City of Escondido, Cal.*, 503 U.S. 519, 529 (1992) ("When a landowner decides to rent his land to tenants, the government may place ceilings on the rents the landowner can charge or require the landowner to accept tenants he does not like without automatically having to pay compensation."  (citations omitted)).

Rent control provisions and restrictions on terminating tenancies are examined solely under the regulatory takings test set out in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).  *See Yee*, 503 U.S. at 522–23 ("But where the government merely regulates the use of property, compensation is required only if considerations such as . . . the extent to which [the regulation] deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole.").  Plaintiffs have not pled a regulatory taking or attempted to

Page 26 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

allege specific facts regarding the burden that HB 4213 and HB 4401 place on them.  The alleged

taking claim thus fails as a matter of law.[16]

### 3.    Plaintiffs Fail to State a Claim Under the Fourth and Fourteenth Amendments.

In their fourth claim for relief, Plaintiffs assert that the State and the Governor have

violated their Fourth and Fourteenth Amendment rights by interfering with Plaintiffs' possessory

interests in their properties.[17]  Compl. ¶¶ 58–64.  To state a claim for an unreasonable seizure of

property under the Fourth Amendment, a plaintiff must allege "some meaningful interference

with an individual's possessory interests in that property."  *Soldal v. Cook Cnty., Ill.*, 506 U.S.

56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  The Fourth

Amendment prescribes "only governmental action; it is wholly inapplicable to a search or

seizure, even an unreasonable one, effected by a private individual not acting as an agent of the

Government or with the participation or knowledge of any governmental official."  *Jacobsen*,

466 U.S. at 113 (internal quotation marks omitted).  Plaintiffs fail to allege either a meaningful

interference with a possessory interest or that a government actor caused the interference.

---

[16] Courts consistently have rejected *per se* takings claims brought by landlords against state and
local eviction moratoria.  *See, e.g., Elmsford Apartment Assocs.*, 469 F. Supp. 3d at 162–63
(holding, on summary judgment, that New York State's temporary eviction moratorium does not
constitute a *per se* taking); *Auracle Homes*, 2020 WL 4558682, at *13–14 (holding that landlords
were unlikely to prevail on argument that Connecticut's eviction moratorium is a *per se* taking);
*Baptiste*, 2020 WL 5751572 at * 20 (holding that landlords were unlikely to prevail on argument
that Massachusetts eviction moratorium is a *per se* taking); *Heights*, 2020 WL 7828818 at *14
(dismissing landlords' *per se* takings claim against Minnesota governor's executive orders
establishing temporary eviction moratorium).

[17] The first clause of the Fourth Amendment provides that the "right of the people to be secure in
their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be
violated."  U.S. Const. amend. IV.

Page 27 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S
MOTION TO DISMISS**

First, Plaintiffs do not allege meaningful interference with their possessory interest in their properties. The root of their claim is that tenants currently occupy Plaintiffs' property and that Plaintiffs have no current ability to evict the tenants for nonpayment. Compl. ¶ 9. Even in the face of HB 4213 and HB 4401, Plaintiffs continue to have the same interest as they did before enactment of the statutes. They still own their properties, and they still are entitled to collect rent after the statutory grace period ends.

The Supreme Court has held that even an actual trespass to someone's property "is neither necessary nor sufficient to establish a constitutional violation." *United States v. Karo*, 468 U.S. 705, 713 (1984). In *Karo*, government agents placed a tracking device in a can of ether that a defendant later stored inside his home without knowing the device was in the can. *Id.* at 710. The Supreme Court concluded that causing the device to enter the defendant's home did not constitute a seizure because, "[a]lthough the can may have contained an unknown and unwanted foreign object, it cannot be said that anyone's possessory interest was interfered with in a meaningful way." *Id.* at 712.

The Ninth Circuit relied on *Karo* to conclude that a regulation allowing access onto private property does not violate the Fourth Amendment. In *Cedar Point Nursery v. Shiroma*, the Ninth Circuit considered a regulation that allowed union organizers to enter agricultural employers' property to talk with agricultural employees and solicit their support. 923 F.3d 524, 527 (9th Cir. 2019), *cert. granted on other grounds sub nom. Cedar Point Nursery v. Hassid*, —U.S.—, 2020 WL 6686019 (U.S. Nov. 13, 2020). The court held that, under *Karo*, the access regulation did not substantially interfere with the employers' possessory interest in their land. *Id.* at 535. As in *Cedar Point*, even if HB 4213 or HB 4401 has some impact on Plaintiffs' "right to

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

exclude," this does not rise to the level of a meaningful interference with their possessory interests in their property. *Id.*

On top of this deficiency, Plaintiffs fail to allege that a government actor has interfered with their property. This case resembles *Better Housing for Long Beach v. Newsom*, where the court addressed a California law that required landlords seeking to terminate a tenancy for "no-fault just cause" to provide tenants with relocation assistance. 452 F. Supp. 3d at 926. The assistance could be a direct payment to the tenant of one month's rent or waiver of the tenant's final month of rent. *Id.* A landlord organization sued the California governor, alleging that the relocation assistance law violated the Fourth Amendment's protection against unreasonable seizures.

The court dismissed the claim, holding that the law merely transferred private property between private parties: "[P]assing or signing a bill that may lead to the transfer of private property between private parties does not gives rise to a Fourth Amendment Claim." *Id.* at 936; *see also Flagg Bros. v. Brooks*, 436 U.S. 149, 164–65 (1978) (holding that action by private parties pursuant to state statute was not state action). The same is true in this case. HB 4213 and HB 4401 simply allow some private parties (tenants) to continue occupying the private property of other private parties (Plaintiffs) and to delay making rent payments to those latter private parties without penalties. The passage or signing of such laws does not constitute an interference by a state actor that gives rise to a Fourth Amendment violation.[18] Accordingly, Plaintiffs' Fourth Amendment claim fails as a matter of law.

---

[18] Plaintiffs do not appear to allege that the State or the Governor has searched their property. They allege only a "seizure," which does not depend on Plaintiffs having a reasonable expectation of privacy. *See Soldal*, 506 U.S. at 66 ("We thus are unconvinced that any of the Court's prior cases supports the view that the Fourth Amendment protects against unreasonable

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

4.    **Plaintiffs Fail to State a Claim for Violation of Their Right to Access the Courts.**

In their fifth claim for relief, Plaintiffs assert that the State and the Governor violated Plaintiffs' rights under the Petition Clause of the First Amendment[19] and the Due Process Clauses of the Fifth and Fourteenth Amendments by abridging their access to the courts. Compl. ¶¶ 66–73. Plaintiffs allege that the Eviction Moratoria prevent Plaintiffs from securing possession of their properties through civil proceedings, securing judgments of restitution, and securing breach-of-contract judgments. Compl. ¶ 67. Plaintiffs' allegations do not show that they are being deprived of any constitutional rights.

Courts have held that the right of access "exists in the presence of an underlying cause of action and is not violated by a statute that provides a complete defense to a cause of action or curtails a category of causes of action." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397–98 (2d Cir. 2008) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Withdrawal of a particular form of relief, "—above and beyond what is necessary to correct the violation of federally protected rights—does not diminish the right of access." *Suffolk Cnty. Jail v. Rouse*, 129 F.3d 649, 660 (1st Cir. 1997). "In a nutshell," although a plaintiff has a constitutional right to court access, "there is no complementary constitutional right to receive or be eligible for a particular form of relief." *Id.* A statute thus will not violate the right of access or right to

---

seizures of property only where privacy or liberty is also implicated."). If Plaintiffs did allege an unconstitutional search based on the requirement that Plaintiffs disclose information about their tenants and rental units, the case *Hotop v. City of San Jose* would require dismissal of the claim. 982 F.3d 710, 713–14 (9th Cir. 2020) (holding that landlords have no privacy interest in business records relating to their properties and tenancies").

[19] The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

petition unless it serves to "impede" or "entirely foreclose" the "general use of the courts by would-be plaintiffs." *Beretta*, 524 F.3d at 398; *see also Christopher*, 536 U.S. at 414–15 (recognizing that the right of access to courts does not create a substantive right to a cause of action).

HB 4213 and HB 4401 do not impede or entirely foreclose Plaintiffs' use of the courts. The statutes simply delay Plaintiffs' ability to evict tenants for nonpayment and recover unpaid rent. Nothing in the Constitution guarantees Plaintiffs a right to evict for nonpayment, collect rent, or pursue any other preferred form of relief within their chosen timeframe. Accordingly, Plaintiffs' fifth cause of action fails to state a claim.[20]

### C. Plaintiffs' Surviving Allegations Must Be Made More Definite.

 Defendants' third set of motions against Plaintiffs' complaint are to make some of Plaintiffs' allegations more definite, pursuant to FRCP 12(e):

- Plaintiffs' allegations regarding "Eviction Moratoria" should set forth each separate government act, ordinance or law, challenged by Plaintiffs and how each Defendant's separate act, ordinance, or law affects Plaintiffs' rights.

- Plaintiffs' allegations in paragraphs 13 and 14 of the Complaint should specify whether the Shermans own the properties individually or through a business entity or entities, and the locations of the properties.

---

[20]Federal district courts repeatedly have rejected First Amendment/access to the courts claims similar to the claim alleged by Plaintiffs here. *See, e.g.*, *Elmsford Apartment Assocs.*, 469 F. Supp. 3d at 174 ("Since 'mere delay' to filing a lawsuit cannot form the basis of a Petition Clause violation when the plaintiff will, at some point, regain access to legal process, the Plaintiffs' right to collect both the monetary remedies and injunctive relief they would seek through an eviction proceeding has not been 'completely foreclosed' by [the New York Governor's executive order]." (citations omitted)); *Baptiste*, 2020 WL 5751572 at *25–27 (holding that landlords were not reasonably likely to prevail on their claim that Massachusetts' temporary eviction moratorium infringed on First Amendment right to petition or access courts); *Heights Apartments*, 2020 WL 7828818, at *13 ("Because the EOs foreclose the Landlords' ability to obtain only one kind of relief and only does so temporarily, the EOs do not violate the Petition Clause.").

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

The Court needs to address these motions for a more definite statement only if the Court concludes that Plaintiffs' claims are justiciable, and that Plaintiffs have alleged viable claims.

Defendants cannot "properly prepare a response" to two sets of allegations in Plaintiffs' Complaint.  FRCP 12(e).  Plaintiffs use the phrase "Eviction Moratoria" to collectively describe City and County ordinances, executive orders from the Governor, and two separate statutes passed by the legislature.  Compl. ¶ 2.  Plaintiffs then assert, repeatedly, that these combined "Eviction Moratoria" violate Plaintiffs' rights and seek declaratory relief against all Defendants enjoining the "Eviction Moratoria."  The phrase "Eviction Moratoria" appears at least 60 times in Plaintiffs' Complaint.

The flaw with Plaintiffs' repeated use of the phrase "Eviction Moratoria" is that "Eviction Moratoria" fails to set forth with any detail how any individual Defendant's alleged act violates Plaintiffs' constitutional rights.  From the Complaint, it is impossible to discern which Defendant's acts or legislation cause specific harm to Plaintiffs.  Moreover, as alleged, Plaintiffs demand that the Court enjoin the Governor (or the State) for ordinances adopted by the City and County (and, similarly, that the Court enjoin the City and County for actions taken by the Governor and the Legislature).  Plaintiffs' "Eviction Moratoria" allegations are, in essence, an attack on "the Government."  But "the Government" is not a monolithic entity.  Here, Plaintiffs have alleged claims against three distinct governmental bodies—the State, County, and City— and against the Governor.  Each Defendant has distinct powers and authority.  Plaintiffs have failed to allege with the requisite specificity how *each* Defendant's actions are unconstitutional.

Plaintiffs' allegations against the "Eviction Moratoria" should be made more definite for the additional reason that Plaintiffs should be required to allege which extant laws, ordinances, and executive orders Plaintiffs are currently seeking to enjoin.  The challenged Executive Orders

Page 32 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

and the local governments' ordinances all have expired.  Claims against those Executive Orders and ordinances are moot.  Yet, Plaintiffs still appear to demand equitable relief against those "Eviction Moratoria."

Plaintiffs' allegations regarding the Shermans' property also should be made more definite, for two reasons.  First, Plaintiffs fail to allege whether each of the Shermans' properties are owned individually or through business entities.  Accordingly, it is impossible to discern from the Complaint whether the Shermans, like Mr. Farhoud, lack standing and are not proper plaintiffs.  The Shermans should not be permitted to invoke the Court's jurisdiction if they are not proper plaintiffs here.  Second, Plaintiffs' allegations regarding the Shremans fail to set forth where the properties are located within the State of Oregon.  For example, if the properties are located outside of Multnomah County or the City of Portland, then the City and County are not proper defendants as to the Shermans' claims.

## CONCLUSION

For the reasons set forth above, the State and the Governor respectfully request that the Court dismiss Plaintiffs' claims against them as nonjusticiable or, in the alternative, dismiss each of Plaintiffs' claims for failure to state a cause of action upon which relief can be granted.  To the extent any of Plaintiffs' claims survive the Rule 12(b) motions, the State and the Governor request that the Court require Plaintiffs to make their allegations more definite.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

DATED this 8th day of March, 2021.

                    Respectfully submitted,

                    STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.

                    By: s/Keith Ketterling

                        **Keith Ketterling**, OSB No. 913368
                        **Steven C. Berman**, OSB No. 951769
                        **Megan K. Houlihan**, OSB No. 161273

                    209 SW Oak Street, Suite 500
                    Portland, OR  97204
                    Telephone:  (503) 227-1600
                    Facsimile:  (503) 227-6840
                    Email:      kketterling@stollberne.com
                                  sberman@stollberne.com
                                  mhoulihan@stollberne.com

                    *Special Assistant Attorneys General for Governor Kate Brown and State of Oregon*

Page 34 - **DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**