JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
B. Andrew Jones, OSB No. 091786
Senior Assistant County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone:  (503) 988-3138
Facsimile:   (503) 988-3377
Email: andy.jones@multco.us
    *Of Attorneys for Defendant Multnomah County*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST INC., ASH STREET COURTYARD, LLC, TYLER SHERMAN and CRYSTAL SHERMAN, | Civil No. 3:20-cv-02226-JR |
| Plaintiffs, | DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS |
| v. | **FRCP 12(b)(1)** |
| GOVERNOR KATE BROWN, in her official capacity; STATE OF OREGON; CITY OF PORTLAND, an Oregon municipal corporation; and MULTNOMAH COUNTY OF OREGON, an Oregon municipal corporation, | **Oral Argument Requested** |
| Defendants. | |

Page 1 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

## STATEMENT ON CONFERRAL

In compliance with Local Rule 7-1, Defendant Multnomah County certifies that the parties conferred via telephone conference on Wednesday, March 3rd, 2021 and made a good faith effort to resolve the dispute and were unable to do so.

## I.      MOTION

Multnomah County respectfully moves the Court, pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction.  Plaintiffs' claims against Multnomah County for past actions are mooted by the passage of County Ordinance 1292, and claims for prospective declaratory or injunctive relief on speculation are not ripe. Further, Plaintiff Moe Farhoud does not have standing to bring individual claims.

Additionally, Multnomah County respectfully moves the Court, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims on the grounds that the Amended Complaint fails to state a claim on which relief can be granted.

## II.     TIMELINE OF COVID-19 EMERGENCY RESPONSES

On February 28, 2020, a month after the first confirmed case in the United States of novel coronavirus, COVID-19,[1] the Oregon Health Authority reported the state's first presumptive positive case.[2]  Days prior the Center for Disease Control had reported potential community

---

[1]Center for Disease Control & Prevention, Press Release, January 21, 2020 – "*First Travel-related Case of 2019 Novel Coronavirus Detected in United States*" https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html
[2] Oregon Heath Authority, Press Release, February 28, 2020 – "Oregon Announces First Presumptive Case of Novel Coronavirus" https://www.oregon.gov/oha/ERD/Pages/Oregon-First-Presumptive-Case-Novel-Coronavirus.aspx

Page 2 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

spread of the virus in California[3], and even with aggressive travel restrictions already in place, CDC officials warned "we expect we will see community spread in this country," and "it's not a question of "if" anymore … it's a question of when, and how many people will have severe illness."[4]

Faced with a rapidly spreading, highly contagious airborne virus that causes serious illness or death, our elected officials charged with guarding and protecting our safety and health took action.[5]  After declaring a statewide emergency on March 8, 2020,[6] co-defendant Governor Kate Brown issued multiple orders in rapid succession limiting large public gatherings,[7] closing schools[8] and prohibiting in-person operations by businesses and social groups.[9]

On March 22nd, 2020 Governor Brown issued an order prohibiting law enforcement officers in Oregon from serving, delivering, or acting on process for residential evictions for nonpayment.[10]  On April 1, 2020, she followed with Executive Order 20-13 and a ninety (90) day moratorium on residential and non-residential evictions,[11] which she later rescinded after the legislature passed House Bill 4213 codifying the eviction moratorium through September 30,

---

[3] Center for Disease Control & Prevention, February 26th, 2020 – "CDC Confirms Possible Instance of Community Spread of COVID-19" https://www.cdc.gov/media/releases/2020/s0226-Covid-19-spread.html
[4] Transcript for the CDC Telebriefing Update on COVID-19, February 26th, 2020 https://www.cdc.gov/media/releases/2020/t0225-cdc-telebriefing-covid-19.html
[5] Each of the orders, rules, statutes, ordinances, and resolutions are publically available and not a matter of dispute, and Multnomah County respectfully request the Court take judicial notice of same.  *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025, note 2 (9th Cir. 2006).
[6] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-03.pdf
[7] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-05.pdf
[8] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-08.pdf
[9] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-07.pdf
[10] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-11.pdf
[11] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-13.pdf

Page 3 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

2020 and giving a six month grace period.[12]  Governor Brown extended eviction protections following the expiration of HB 4213 by further executive order,[13] and has extended the general statewide declaration of emergency through May 2nd, 2021.[14] Days before Plaintiffs commenced this action, the State legislature passed HB 4401 providing additional protections to renters affected by the COVID-19 pandemic, along with a fund through which landlords could seek monetary relief.

Multnomah County's elected officials have also taken action in response to the COVID-19 emergency.  Multnomah County Chair Deborah Kafoury declared an emergency relating to COVID-19 on March 11, 2020.[15]  On March 17, 2020, anticipating the substantial loss of income and wages resulting from the closure of businesses, and the importance of residents maintaining housing to allow sheltering in place and stopping the spread of COVID-19, the Chair amended her order to temporarily limit eviction of any tenant who demonstrates substantial loss of income because of COVID-19 mitigation measures and notifies the landlord of the inability to pay.[16] The Emergency Rule expired by its own terms April 10, 2020.[17]  On March 19, 2020, the Multnomah County Board of County Commissioners adopted County Ordinance 1282 ratifying the Chair's emergency declaration and halting evictions for nonpayment in Multnomah County, though not for "within an incorporated city that has adopted a more restrictive ordinance."[18]

---

[12] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-30.pdf
[13] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-56.pdf
[14] https://www.oregon.gov/gov/Documents/executive_orders/eo_21-05.pdf
[15] https://multco.us/file/86668/download
[16] https://multco.us/file/86777/download
[17] See Note 14, supra.
[18]
https://multco.us/file/86852/download#:~:text=This%20Ordinance%20shall%20be%20known,C
OVID%2D19%20Eviction%20Moratorium.%E2%80%9D&text=The%20purpose%20of%20the
%20COVID,economic%20effects%20of%20COVID%2D19.

Page 4 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

Three days later Governor Brown's broader statewide Executive Order 20-11 precluding officers from acting on process on evictions for nonpayment went into effect.

On April 16, 2020, the Board passed Ordinance 1284, suspending Ordinance 1282 so as to align with Executive Order 20-13, with an additional period of repayment following the end of the latest of 20-13 or any County residential moratorium.[19]  The State Legislature passed HB 4213 on June 30, 2020, and on September 24, 2020, Multnomah County repealed and replaced 1282 and 1284 with Multnomah County 1287 which enacted House Bill 4213 into County Code with an accompanying repayment period following January 8, 2021 or the first day of the end of the County's declared emergency as extended by the Board.[20]

 Throughout 2020, the Board has extended the Chair's declaration of emergency on multiple occasions owing to the continued health risks and economic impacts posed by COVID-19.[21]  The extensions, in particular the extensions late in 2020, came in the face of rising case numbers throughout the fall in Oregon.[22]

On January 14th, 2021, Multnomah County's Board adopted Ordinance 1292 rescinding Ordinance 1287 in light of HB 4401's passage and the interest in uniform standards.  Multnomah County and its duly elected Board maintain authority under state law and its home rule charter to take necessary action to respond to the unprecedented health, safety, and economic challenges presented by the COVID-19 pandemic.

---

[19] https://multco.us/file/87808/download
[20] https://multco.us/file/92212/download
[21] See Multnomah County Resolution 2020-19 (https://multco.us/file/87657/download) 2020-59 (https://multco.us/file/90075/download), 2020-80 (https://multco.us/file/92208/download), and 2020-110 (https://multco.us/file/94175/download).

[22] https://www.oregon.gov/oha/covid19/Documents/DataReports/Weekly-Data-COVID-19-Report.pdf

Page 5 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

### III.    POINTS AND AUTHORITIES

#### A.    Rule 12(b)(1) - Plaintiffs Lack Standing For Claims Against Multnomah County

A justiciability challenge is appropriately raised pursuant to Rule 12(b)(l), as the question is jurisdictional.  *Chandler v. State Farm Mut. Auto Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010).  To invoke this Court's jurisdiction under Article III, each named Plaintiff must establish standing, namely: (1) the plaintiff has an injury that is concrete, particularized, and actual or imminent; (2) that injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the court can redress that injury with a favorable decision against that defendant. *Arizona Christian Sch.*, 563 U.S. 133, 134, 131 S.Ct. 1436 (2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130 (1992).

#### 1.    The Claims Against Multnomah County Are Moot

The doctrine of mootness is "standing set in a time frame," requiring the jurisdictional elements exist from an action's filing to its conclusion.  *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003).  Mootness requires continuous assessment, looking to "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief."  *S. California Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.,* 558 F.3d 1028, 1035 (9th Cir. 2009), citing *Gator.com Corp. v. L.L. Bean, Inc.,* 398 F.3d 1125, 1129 (9th Cir.2005).

The requirement of continued standing throughout the matter applies with equal force to a claim for declaratory relief.  *Native Vill. of Noatak v. Blatchford,* 38 F.3d 1505, 1514 (9th Cir. 1994), overruled on other grounds by *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019).  Federal courts lack jurisdiction to issue declaratory judgments when changes have mooted the controversy. See *Spencer v. Kemna*, 523 U.S. 1, 18,

Page 6 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

118 S. Ct. 978, 988, 140 L. Ed. 2d 43 (1998) (Article III courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong").

One such change is legislative action.   *Chambers*, 941 F.3d at 1197.  A legislative action ceasing the activity at the heart of a controversy "creates a presumption the action is moot, unless there is a reasonable expectation that the legislative body is likely to enact the same or substantially similar legislation in the future."   *Id.* This presumption of mootness, rooted in governmental good faith, makes legislative action distinct from voluntary cessation by a private or non-legislative actor.  *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 419 (9th Cir. 2020)("the voluntary cessation of challenged acts by a private party is not entitled to the presumption of good faith enjoyed by legislative bodies"), *Rosebrook v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014)(distinguishing between legislative acts and non-legislative policy changes).  Whether the legislative enactment removes the activity in question, as opposed to amends the law or ordinance for continuing in substantial similar form, is material. *Cuviello v. City of Vallejo*, 944 F.3d 816, 824 (9th Cir. 2019).

Plaintiffs' Amended Complaint seeks declaratory and injunctive relief against Multnomah County Ordinances 1282, 1284, and 1287 and the Chair's Executive Order.  (ECF 17, ¶2).  Each action pertaining to residential evictions was rescinded or repealed by subsequent legislative action by the Multnomah County Board, culminating with Ordinance 1292.  The County's stated intention in Ordinance 1292 - to cease County action in the face of House Bill 4401 – changes the circumstances have forestalled the controversy as to Multnomah County. Plaintiffs' claims are moot and subject to dismissal.

Page 7 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

2.    **Prospective Declaratory Claims Against Multnomah County Are Not Ripe**

Similarly to mootness, ripeness is standing set in time, overlapping with the injury in fact element of standing. *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010). The doctrine exists "to identify those matters that are premature for judicial review because the injury at issue is speculative, or may never occur." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir.2014). While mootness bars claims against repealed or rescinded County actions, ripeness bars claims for prospective declaratory relief for events yet to occur.

The Amended Complaint seeks a traditional injunction barring any defendant from "taking any action to implement, enforce, or extend the Eviction Moratoria" (ECF 17, page 23, Paragraph B), as well a mandatory injunction requiring defendants "to design and implement a plan to adequately compensate Plaintiffs and all other similarly situated individuals." *Id.* As to Multnomah County there is neither an ordinance to enjoin nor a basis for compelling the County to implement any plans[23]. To the extent Plaintiffs claims seek a declaration or equitable relief against any prospective action(s) in response to COVID-19, such claims are not ripe.

3.    **Plaintiff Moe Farhoud Does Not Allege Facts Showing Individual Standing**

Plaintiff Moe Farhoud alleges injury owing to his ownership of "controlling interests in 44 distinct legal entities which own his apartment buildings." (ECF 17, ¶8). An ownership interest in a corporate entity is not sufficient to confer individual standing. See *R.K. Ventures v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002)(corporate shareholders do not have standing

---

[23] Plaintiffs' request for Defendants to take affirmative action requires a heightened showing of need and the facts clearly favor their position. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878-879 (9th Cir. 2009), *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

Page 8 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

to sue individually for injury to corporation absent personal direct and independent harm).

Plaintiff Farhoud's individual claims should be dismissed.

B.     **Rule 12(b)(6) – Plaintiffs Fail to State A Claim**

Under Rule 12(b)(6) the complaint is construed in Plaintiffs' favor, all factual allegations taken as true. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Though Plaintiff is entitled to factual inferences, the court need not accept legal conclusions as fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Dismissal is proper if the complaint, taken as true, does not plead a cognizable legal theory or does not set forth sufficient facts to support a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d 1240, 2142 (9th Cir. 2011).

Plaintiffs bring four claims under 42 U.S.C. §1983 for deprivation of Constitutional rights.  The claims seek to enjoin one of the fundamental roles of politically accountable elected officials – to guard and protect the safety and health of "the people" through State[24] exercise of the police power.  *South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (Mem), 207 L.Ed.2d 154 (Roberts, C.J., concurring), citing *Jacobsen v. Commonwealth of Massachusetts*, 197 U.S. 11, 26, 25 S.Ct. 358 (1905), see also *Crowley v. Christensen,* 137 U. S. 86, 89, 34 L. ed. 620, 621, 11 Sup. Ct. Rep. 13, (1890) ('The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community.').

---

[24] Multnomah County, through its duly elected Chair and Board of County Commissioners, exercises police powers so over matter of County Concern consistent with Oregon's Constitutional delegation.  Or. Const., Art. VI, Section 10, Multnomah County Home Rule Charter, Chapter 2.

Page 9 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

Oregon and its subdivisions and municipalities are not alone in delaying residential evictions in an attempt to stem the tide of a pandemic that has to date killed five hundred thousand and infected more than twenty eight million in this country alone.[25]  This Court need not write on a blank slate, as sister districts have considered substantially similar causes of action challenging delays on residential evictions, and found such restrictions to be constitutional exercises of the police power in the face of the COVID-19 pandemic.  So too, here.

### 1.    Contracts Clause

Plaintiffs bring their first claim for relief under Article 1, Section 10 of the United States Constitution which bars passage of "a Law impairing the Obligation of Contracts."  While the clause applies to all contracts, it recognizes "societies exercise a positive control … over the inception, construction and fulfillment of contracts, as over the form and measure of the remedy to enforce them."  *Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 428-429, 54 S.Ct 231* (1934), citing *Ogden v. Saunders*, 25 U.S. 213, 286, 6 L.Ed. 606, 12 Wheat. 213 (1827). The Contracts Clause recognizes "the reservation of essential attributes of sovereign power is also read into the contracts as a postulate of the legal order." *Id.* at 435. In keeping with this reality, not every law affecting a pre-existing contract violates Article 1, Section 10.  *Sveen v. Melin,* 138 S.Ct. 1815, 1821, 201 L.Ed.2d 180 (2018).

To support a Contracts Claim, Plaintiffs must first demonstrate a substantial impairment on the contract, looking to whether the law undermines the contractual bargain, interferes with the reasonable expectations of the contracting parties, and whether it prevents party(ies) from

---

[25] Center for Disease Control, COVID 19 DATA Tracker, located at https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days

Page 10 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

safeguarding or reinstating their rights.  *Id.*, citing *Allied Structural Steel v. Spannaus*, 438 U.S. 234, 246, 98 S.Ct. 2716 (1978).  One relevant question is "whether the industry the complaining party has entered into has been regulated in the past" as a regulated industry has a greater expectation of further regulation in assessing the impact.  *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697 (1983).

Residential rentals are such an industry, heavily regulated under state and local law.  See Oregon Residential Landlord Tenant Act ("ORLTA"), ORS 90.100 *et seq*, ORS 105.105 – 105.168, Portland Comprehensive Code, 30.01.085. Several district courts have determined an eviction delay that does not alter the tenant's ultimate payment obligation does not substantially impair the contract.  See *Heitz Apartments LLC v. Walz*, --F.Supp.3d ---, 2020 WL 7828818. *12, (December 31, 2020, D.Minn 2020), *HAPCO v. City of Philadelphia*, , —— F.Supp.3d ——, ——, 2020 WL 5095496, *7-8 (E.D. Pa. Aug. 28, 2020); *Auracle Homes, LLC v. Lamont*,—— F.Supp.3d ——, ——, 2020 WL 4558682, *17 (D. Conn. Aug. 7, 2020); *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F.Supp.3d 148, 155–56 (S.D.N.Y. 2020).  None of the now-rescinded County ordinances relieved the tenant's obligation, and as such do not substantially impair the Plaintiffs' contractual right, merely the temporal remedy.

Even assuming an impairment, a law 'drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose''' does not violate the Contracts Clause. *Sveen*, 138 S. Ct. at 1822. quoting *Energy Rsrvs. Grp., Inc.*, 459 U.S. at 411–12.  The court looks to ensure 'the State is exercising its police power, rather than providing a benefit to special interests.'" *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).  Courts ordinarily "defer to legislative judgment as to the necessity and reasonableness of a particular

measure," where, as here, neither the state nor city are contracting parties. *Energy Rsrvs. Grp., Inc.*, 459 U.S. at 413.

In the face of a civil emergency, a law that temporarily delays a financial obligation or postpones a remedy bears the requisite relationship to a legitimate public purpose. *Blaisdell*, 290 U.S. 398, 416-418. District courts across the country have found temporary eviction moratoriums bear the rational relationship as in *Blaisdell*. *El Papel LLC v. Inslee*, 2020 WL 8024348 1, 7-8 (W.D. Wash Dec. 2, 2020,), *Baptiste v. Kennealy*, --F.Supp.--, 2020 WL 5751572, 1, *3, *19 (D. Mass. Sept. 25, 2020), *Apartment Association of Los Angeles County, Inc. v. City of Los Angeles*, --F.Supp.3d, 2020 WL 6700568, 1, 7-8 (C.D. Cal November 13, 2020)

The County's prior ordinances and orders were in the face of an unprecedented public health emergency. They were temporary, did not relieve tenants of their obligations to pay rent, and were consistent with actions taken across this state and this country to respond to the emergency and try to stem the tide of a potentially deadly respiratory illness. The restrictions bear the requisite connection to this legitimate purpose and do not violate Article 1, Section 10.

### 2.    Takings Clause

Plaintiffs' next claim is under the Fifth Amendment takings clause, incorporated through the Fourteenth Amendment, providing no "private property be taken for public use, without just compensation." Plaintiffs seek equitable remedies, which are not available for a Takings Clause claim. *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2176–77 (2019); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 714–15 (1999). Indeed, this Court has already ruled injunctive relief unavailable on a Takings Clause claim challenging COVID-19

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

restrictions. *Oregon Restaurant and Lodging Association v. Brown*, -- F.Supp.2d --, 2020 WL 6905319 1, 6 (D. Or. Nov. 24, 2020)

Plaintiffs also do not plead a cognizable federal takings claim.   Plaintiffs Amended Complaint alleges that the respective actions of Defendants constitute a *per se* taking, meaning the eviction restrictions are either a "permanent physical invasion" or "completely deprive an owner of '*all* economically beneficial use.'"  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538, 125 S.Ct. 2074 (2005), citing *Loretto v. Teleprompter Manhattan CATV Corp*., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).[26]

Neither category is present.  The County ordinances were clearly temporary in nature and have since been rescinded, lacking the requisite permanence of a Fifth Amendment taking.  See *Block v. Hirsh*, 256 U.S. 135, 156, 41 S.Ct. 458 (1921)("public exigency will justify the legislature in restricting property rights in land to a certain extent without compensation ... [a] limit in time, to tide over a passing trouble, well may justify a law that could not be upheld as a permanent change").

Next, nothing in the ordinances compelled the physical intrusion onto Plaintiffs' property necessary to constitute a *per se* taking.  *Loretto*, 458 U.S. at 440, see also *Yee v. City of*

---

[26] A regulatory taking claim outside these two "relatively narrow" categories looks at "the economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment backed opportunities," as well as whether the regulation "amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good'"  *Lingle*, 544 U.S. at 538-539, citing *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 125, 98 S.Ct. 2646 (1978).  Plaintiff has not pled a regulatory takings claim.

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

*Escondido, Cal*, 503 U.S. 519, 527, 112 S.Ct. 1522 (1992)(rent control statutes did not amount to physical occupation as "[landlord's] tenants were invited by [landlords], not forced upon them by the government").  Plaintiffs' claim that the loss of a right to exclude is a permanent physical invasion is also contrary to the law of this Circuit.  *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 532-533 (9th Cir. 2019).

Finally, as noted above, the economic benefit to the landlord – i.e. the payment of rent – still remains in force under the rescinded County ordinances.  Plaintiffs have not shown the requisite deprivation of economically beneficial use, even assuming a loss of late fees or penalties, to meet even the looser elements of a regulatory taking not pled here.  *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018)("loss of some income because of regulation does not itself establish a taking").  Plaintiffs have not pled a cognizable Fifth Amendment Claim against Multnomah County.

### 3.    Fourteenth Amendment

Next, Plaintiffs bring a claim under the Due Process Clause of the Fourteenth Amendment, arguing "the price set for rental housing by the Eviction Moratoria is arbitrary and fails to meet constitutional standards" in failing to "provide a 'fair and reasonable' return."  (ECF 17, ¶¶ 50-57).  The reasoning applicable to the Contracts Clause claim – laws of temporary duration in the face of emergency that leave intact the obligations of contracting parties, albeit with delayed remedies – applies with equal force to a substantive due process claim.  *Blaisdell*, 290 U.S. at 447-448.  Further, Multnomah County's ordinances have been rescinded in light of State legislative action and as such cannot have become arbitrary by dint of changes of time or circumstance to state a cognizable claim.  *Abie State Bank v. Weaver,* 282 U.S. 765, 51 S.Ct 252 (1931).

Page 14 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

4.      **Fourth Amendment**

Plaintiffs claim that temporarily delaying the ability to evict tenants to whom Plaintiffs have already given exclusive possession to Plaintiffs' property violates the Fourth Amendment's guarantee of "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable … seizures." (ECF 17, ¶¶58-64). This position is at odds with the law of this Circuit.

First, nothing in the County's rescinded ordinances constituted a seizure, which requires "some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). In contrast with the *de minimis* invasion contemplated under the Fifth Amendment, the Fourth Amendment requires the physical invasion be meaningful, and is not implicated if a trespass does not "interfere with anyone's possessory interest in a meaningful way." *Cedar Point Nursery*, 923 F.3d at 535, citing *United States v. Karo*, 468 U.S. 705, 712-713, 104 S.Ct. 3296 (1984). Further, the person(s) causing the physical invasion must be fairly chargeable to governmental actors as opposed to private parties. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("state action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor").

The Ninth Circuit ruled a state regulation requiring commercial farm operations to permit union organizers to access the premises during specific dates and times did not constitute a Fourth Amendment seizure. *Cedar Point Nursery*, 923 F.3d at 536. Here, the "intrusion" at issue is tenants to whom Plaintiffs have already leased portions of their premises. Additionally,

Page 15 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

state law regulating the interactions between landlords and tenants does not equate to state action

necessary for a Fourth Amendment claim. See *Ballinger v. City of Oakland,* 398 F.Supp.3d 560,

574-575 (N.D. Cal. Aug 2, 2019), citing *Am. Mfrs.*, 526 U.S. at 52, 119 S.Ct. 977; *Flagg Bros.,*

*Inc. v. Brooks*, 436 U.S. 149, 164–66, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (ordinance requiring

landlords to pay relocation assistance was not state action for purpose of Fourth Amendment),

*Better Housing for Long Beach v. Newsom*, 452 F.Supp.3d 921, 936 (C.D. Cal. Mar 11,

2020)(same).

### 5.       First Amendment

Finally, Plaintiffs claim that temporary restrictions on eviction and forcible entry and

detainer proceedings unconstitutionally restrict their rights to petition under the First

Amendment. Again, the now-rescinded ordinances were temporary in nature during the period

of emergency and applied facially to the use of particular remedies of eviction and forcible entry

and detainer. They do not affect the landlord's ability to evict for reasons other than

nonpayment. Such a change in remedies (or even a delay) do not deprive Plaintiffs of their First

Amendment rights, and have a rational basis rooted in the public health emergency. *Heights*

*Apartments*, 2020 WL 7828818 citing *Sosna v. Iowa*, 419 U.S. 393, 410, 95 S.Ct. 553

(1975)(delay in eviction proceedings did not violate First Amendment), *Baptiste*, 2020 WL

5751572 at 12 (petitioners unlikely to prove delay in eviction proceedings would not pass

rational basis scrutiny under First Amendment). These claims against Multnomah County are

also subject to dismissal.

### 6.       Plaintiffs Have Not Adequately Pled Causation

Finally, the Amended Complaint has not pled a sufficient causal connection between any

alleged harm and Multnomah County. Multnomah County is liable only when its policies are the

Page 16 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS

"moving force" behind a constitutional deprivation. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427 (1985). Plaintiffs must plead and prove facts showing the governmental policy at issue was both the "but for" cause and proximate cause of the injury. Pointing to a municipal policy action or inaction as a "but-for" cause is not enough; the policy must be the proximate cause of the section 1983 injury. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996).

Here, Plaintiffs bring actions against the State, the County, and the City of Portland, and have not specified how Multnomah County in particular has acted in a way that proximately caused any deprivation. Indeed, broader state action has been in place throughout the pendency of the COVID-19 response, and it is unclear how Plaintiffs contend the County has deprived them of their rights as opposed to other parties or non-parties. The claim is subject to dismissal with leave to replead.

## IV.    CONCLUSION

Defendant Multnomah County respectfully requests the Court dismiss this action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as there is no live case or controversy. Additionally, Defendant Multnomah County respectfully requests the Court dismiss any remaining claims under Fed. R. Civ. P. 12(b)(6).

DATED this 8th day of March, 2021.

Respectfully submitted,

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

**/s/ B. Andrew Jones**

B. Andrew Jones, OSB No. 091786
Senior Assistant County Attorney
   *Of Attorneys for Defendant Multnomah County*

Page 17 – DEFENDANT MULTNOMAH COUNTY'S MOTION TO DISMISS