NAOMI SHEFFIELD, OSB #170601
Sr. Deputy City Attorney
naomi.sheffield@portlandoregon.gov
MICHAEL JETER, OSB #165413
Assistant Deputy City Attorney
michael.jeter@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Telephone: (503) 823-4047
Fax: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN, and CRYSTAL SHERMAN**, | **Case No. 3:20-cv-02226-JR** |
| Plaintiffs, | **DEFENDANT CITY OF PORTLAND'S FRCP 12(B)(1) AND 12(B)(6) MOTION TO DISMISS** |
| v. | |
| **GOVERNOR KATE BROWN, in her official capacity; STATE OF OREGON; CITY OF PORTLAND, an Oregon municipal corporation; and MULTNOMAH COUNTY OF OREGON, an Oregon municipal corporation**, | |
| Defendants. | |

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

# TABLE OF CONTENTS

MOTIONS ........................................................................................................................1

MEMORANDUM OF LAW .........................................................................................1

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND ...............................................................................2

    A.    COVID-19 presented and continues to present significant risks to public health and economic stability. ........................................................................3

    B.    The City of Portland acted to protect renters placed at significant risk by the COVID-19 pandemic. ...................................................................................4

    C.    The City's Ordinances have expired. ...........................................................8

III.  THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS PURSUANT TO FRCP 12(B)(1) BECAUSE IT LACKS SUBJECT MATTER JURISDICTION. ........................8

    A.    Plaintiffs' claims for prospective declaratory and injunctive relief are moot because the City Ordinances are no longer in effect...................................9

    B.    Plaintiffs lack standing because their alleged injury is not traceable to the City Ordinances nor would relief against the City redress their alleged injury............11

IV.  Plaintiffs have failed to state claims for which relief may be granted under FRCP 12(b)(6). .......................................................................................................13

    A.    Plaintiffs' Contract Clause claim fails because the City Ordinances did not substantially impair their contractual relationship with tenants and the City's actions were nonetheless reasonable in advancing a significant public purpose...14

        1.    Plaintiffs' contracts have not been substantially impaired by the City Ordinances. ............................................................................................15

        2.    The City Ordinances address the significant and legitimate interest of protecting housing during a public health and economic emergency....... 17

        3.    Any adjustments to Plaintiffs' rights were reasonably tailored to protect the public health and welfare during the COVID-19 pandemic. .............. 17

    B.    Plaintiffs have failed to state a plausible takings claim. .......................................19

        1.    Summary of takings legal framework. ...................................................... 19

        2.    Plaintiffs fail to allege a plausible *per se* regulatory takings claim because Plaintiffs have not been completely deprived of all economically beneficial use of their property nor required to suffer a permanent physical invasion thereof........................................................................................ 20

            a.    Plaintiffs enjoy continued beneficial economic use of their property ......................................................................................... 21

            b.    The City Ordinances did not require Plaintiffs to suffer a permanent physical invasion of their property.............................. 22

Page ii – TABLE OF CONTENTS

3.      Plaintiffs' takings claim seeks only equitable relief which is unavailable in federal court. ........................................................................................ 23

C.      The Court should dismiss Plaintiffs' substantive due process claim because it is duplicative of their other claims. ........................................................................24

D.      The City Ordinances did not constitute an unreasonable seizure of Plaintiffs' property. .......................................................................................................25

E.      Plaintiffs' allegations that the City Ordinances interfered with their ability to bring a specific type of action at the specific time they desired does not state a First Amendment violation. .............................................................................27

**CONCLUSION** .............................................................................................................**29**

Page iii – TABLE OF CONTENTS

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Albright, v. Oliver,*
  510 U.S. 266 (1994)......................................................................................... 24
*Allen v. Wright,*
  468 U.S. 737 (1984)......................................................................................... 13
*Allied Structural Steel Co. v. Spannaus,*
  438 U.S. 234 (1978)..................................................................................... 14, 16
*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013)............................................................................................. 9
*Am. Cargo Transp., Inc. v. United States,*
  625 F.3d 1176 (9th Cir. 2010) ........................................................................... 9
*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
  526 U.S. 40 (1999)........................................................................................... 26
*Apartment Ass'n of Los Angeles Cty., Inc. v City of Los Angeles,*
  No. CV 20-05193 DDP, 2020 WL 6700568 (C.D. Cal. Nov. 13, 2020)............ 17, 19
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................... 14
*Auracle Homes, LLC v. Lamont,*
  478 F. Supp. 3d 199 (D. Conn. 2020)...................................................... 16, 17, 19
*Ballinger v. City of Oakland,*
  398 F. Supp. 3d 560 (N.D. Cal. 2019) .............................................................. 27
*Baptiste v. Kennealy,*
  No. 1:20-cv-011335-MLW, 2020 WL 5751572 (D. Mass. Sept. 25, 2020)............... 17, 19, 28
*Bennett v. Spear,*
  520 U.S. 154 (1997)......................................................................................... 12
*Better Housing for Long Beach v. Newsom,*
  452 F. Supp. 3d 921 (C.D. Cal. 2020) .............................................................. 27
*Blum v. Yaretsky,*
  457 U.S. 991 (1982)......................................................................................... 26
*Board of Trustees of Glazing Health and Welfare Trust v. Chambers,*
  941 F.3d 1195 (9th Cir. 2019) ..................................................................... 9, 10
*Borough of Duryea, Pa. v. Guarnieri,*
  564 U.S. 379 (2011).......................................................................................... 27
*Bridge Aina Le'a, LLC v. Land Use Comm'n,*
  950 F.3d 610 (9th Cir. 2020) ...................................................................... 20, 21
*Brown v. Azar,*
  No. 1:20-CV-03702-JPB, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) ................... 28
*Burke v. Barnes,*
  479 U.S. 361 (1987)........................................................................................... 9

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

*Cedar Point Nursery v. Shiroma,*
  923 F.3d 524 (9th Cir. 2019) ............................................................... 20, 26
*Chicago Bd. of Realtors, Inc. v. Chicago,*
  819 F.2d 732 (7th Cir. 1987) ....................................................................... 16
*Christopher v. Harbury,*
  536 U.S. 403 (2002)...................................................................................... 27
*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983).......................................................................................... 8
*Colony Cove Props., LLC v. City of Carson,*
  640 F.3d 948 (9th Cir. 2011)......................................................................... 3
*Cook v. Brown,*
  364 F. Supp. 3d 1184 (D. Or. 2019) ............................................................ 9
*Cousins v. Lockyer,*
  568 F.3d 1063 (9th Cir. 2009) .................................................................... 13
*Cross Culture Christian Ctr. v. Newsom,*
  445 F. Supp. 3d 758 (E.D. Cal. 2020).......................................................... 10
*Del Monte Dunes at Monterey, Ltd. v. City of Monterey,*
  95 F.3d 1422 (9th Cir. 1996) ....................................................................... 21
*Elmsford Apartment Associates, LLC v. Cuomo,*
  469 F. Supp. 3d 148 (S.D.N.Y. 2020)..................................................... 16, 28
*Energy Reserves Grp., Inc. v. Kansas Power & Light Co.,*
  459 U.S. 400 (1983)........................................................... 14, 15, 17, 18
*Erlich v. Glasner,*
  418 F.2d 226 (9th Cir. 1969) ....................................................................... 12
*F.C.C. v. Fla. Power Corp.,*
  480 U.S. 245 (1987)...................................................................................... 20
*HAPCO v. City of Philadelphia,*
  482 F. Supp. 3d 337 (E.D. Pa. 2020) ................................................ 16, 17, 19
*Harborview Fellowship v. Inslee,*
  No. 3:20-CV-05518-RJB, 2021 WL 662390 (W.D. Wash. Feb. 19, 2021) ............ 10
*Heights Apartments, LLC v. Walz,*
  No. 20-CV-2051 (NEB/BRT), 2020 WL 7828818 (D. Minn. Dec. 31, 2020).......... 17, 28
*Home Bldg. & Loan Ass'n v. Blaisdell,*
  290 U.S. 398 (1934)............................................................... 14, 18, 25
*Inmates of Suffolk Cnty. Jail v. Rouse,*
  129 F.3d 649 (1st Cir. 1997).......................................................................... 28
*Knick v. Twp. of Scott,*
  139 S. Ct. 2162 (2019)............................................................................ 19, 24
*Kwan v. SanMedica Int'l,*
  854 F.3d 1088 (9th Cir. 2017) ..................................................................... 14
*Lazy Y Ranch Ltd. v. Behrens,*
  546 F.3d 580 (9th Cir. 2008) ....................................................................... 13
*Lewis v. Continental Bank Corp.,*
  494 U.S. 472 (1990)................................................................................... 9, 20
*Lingle v. Chevron U.S.A. Inc.,*

Page v – TABLE OF AUTHORITIES

544 U.S. 528 (2005)......................................................................................... 20, 21

*Loretto v. Teleprompter Manhattan CATV Corp.,*
458 U.S. 419 (1982)................................................................................ 20, 22, 23

*Lucas v. S.C. Coastal Council,*
505 U.S. 1003 (1992)...................................................................................... 20, 21

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)................................................................................... 8, 11, 12

*Morkal v. Fed. Home Loan Mortg. Corp.,* No. 6:12-CV-01401-AA,
2014 WL 2041364 (D. Or. May 8, 2014) ................................................................ 3

*Murr v. Wisconsin,*
137 S. Ct. 1933 (2017).......................................................................................... 22

*Nelsen v. King Cty.,*
895 F.2d 1248 (9th Cir. 1990) ............................................................................... 8

*Nken v. Holder,*
556 U.S. 418 (2009).............................................................................................. 11

*Northern Transp. Co. v. Chicago,*
99 U.S. 635 (1879)................................................................................................ 23

*Ogden v. Ontario Or. City Police Dept.,*
No. 2:20-cv-02262-YY, 2021 WL 602709 (D. Or. Feb. 12, 2021) ...................... 24

*Owen v. City of Portland,*
236 F. Supp. 3d 1288 (D. Or. 2017) .................................................................... 11

*Pa. coal Co. v. Mahon,*
260 U.S. 393 (1922).............................................................................................. 20

*Patel v. Penman,*
103 F.3d 868 (9th Cir. 1996) ............................................................................... 24

*Pumpelly v. Green Bay Co.,*
13 Wall. (80 U.S.) 166, 20 L.Ed. 557 ................................................................. 23

*RK Ventures, Inc. v. City of Seattle,*
307 F.3d 1045 (9th Cir. 2002) ............................................................................. 12

*Ruckelshaus v. Monsanto Co.,*
467 U.S. 986 (1984).............................................................................................. 24

*Santa Monica Food Not Bombs v. City of Santa Monica,*
450 F.3d 1022 (9th Cir. 2006) ............................................................................... 3

*Sosna v. Iowa,*
419 U.S. 393 (1975).............................................................................................. 28

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016).......................................................................................... 11

*Spoklie v. Montana,*
411 F.3d 1051 (9th Cir. 2005) ............................................................................. 25

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.,*
560 U.S. 702 (2010).............................................................................................. 24

*Sure-Tan, Inc. v. NLRB,*
467 U.S. 883 (1984).............................................................................................. 27

*Sveen v. Melin,*
138 S. Ct. 1815 (2018).......................................................................................... 15

Page vi – TABLE OF AUTHORITIES

*Troy Ltd. v. Renna,*
    727 F.2d 287 (3d Cir. 1984)........................................................................... 16
*Turner v. City and County of San Francisco,*
    788 F.3d 1206 (9th Cir. 2015) ...................................................................... 13
*U.S. Trust Co. v. New Jersey,*
    431 U.S. 1 (1977).............................................................................. 15, 17, 19
*United States Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980)......................................................................................... 8
*United States v. 14.02 Acres of Land More or Less in Fresno Cty.,*
    547 F.3d 943 (9th Cir. 2008) .......................................................................... 3
*United States v. Jacobsen,*
    466 U.S. 109 (1984)...................................................................................... 26
*United States v. Karo,*
    468 U.S. 705 (1984)...................................................................................... 26
*Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark,*
    310 U.S. 32 (1940)........................................................................................ 17
*Williamson v. Lee Optical of Oklahoma Inc.,*
    348 U.S. 483 (1955)...................................................................................... 25
*Woods View II, LLC v. Kitsap County,*
    484 Fed. App'x 160 (9th Cir. June 13, 2012) ............................................. 12

Federal Statutes

Pub. L. No. 116-136 (2020) ................................................................................ 6
Pub. L. No. 116-260, § 502 (2020) ..................................................................... 6
U.S. Const. amend. I ......................................................................................... 27
U.S. Const., Art. I, § 10 .................................................................................... 14

Federal Rules

Fed. R. Evid. 201................................................................................................ 3
FRCP 12(b)(1)..................................................................................................... 1
FRCP 12(b)(6)............................................................................................... 1, 13

Federal Regulations

Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19,
    85 Fed. Reg. 55,292 (Sept. 4, 2020) .............................................................. 6
Temporary Halt in Residential Evictions to Prevent the further Spread of COVID-19,
    86 Fed. Reg. 8,020 (Feb. 3, 2021) ................................................................. 6

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

## CERTIFICATE PURSUANT TO LOCAL RULE 7-1

Counsel for defendant City of Portland certifies that counsel for defendant City of Portland and counsel for Plaintiffs conferred by telephone on March 4, 2021 and have made good faith effort to resolve the issues in dispute. The parties have been unable to resolve the disputes raised in this motion.

## MOTIONS

Defendant City of Portland ("the City") moves to dismiss Plaintiffs' Amended Complaint in its entirety on several separate and independent grounds pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, the City asks the Court to:

1. Dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction to consider Plaintiffs' claims against the City. Specifically, Plaintiffs have not alleged facts that support standing against the City because their alleged harms are not fairly traceable to the City's actions nor would the alleged harms be redressed by Plaintiffs' requested relief from the City. Additionally, Ordinance 189890 and Ordinance 190156 are both expired, rendering Plaintiffs' claims against the City moot.

2. In the alternative, dismiss each of Plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Faced with significant health and economic crises, the City acted quickly to protect the public health and welfare. Among other steps, the City enacted an eviction moratorium to prevent spikes in evictions that would threaten residents' safety and security during the COVID-

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

19 pandemic. The City ultimately enacted two eviction moratoria—Ordinance 189890[1] and Ordinance 190156[2] (collectively, the "City Ordinances"). The City Ordinances were enacted in connection with Multnomah County ("County"), to ensure that all tenants in the City received the same protections during the COVID-19 pandemic. Now, as the State of Oregon ("State") has enacted protections for tenants across the State, including tenants within the City, the City Ordinances have expired.

Plaintiffs ask this Court for prospective relief declaring that the expired City Ordinances were unconstitutional and requesting that implementation and enforcement of these City Ordinances be enjoined. Plaintiffs' claims against the City are not justiciable. Plaintiffs lack standing to bring claims against the City, as their alleged harm is not fairly traceable to any City action and is not redressable by a decision against the City. Even if Plaintiffs had standing, their claims are moot because the City Ordinances are no longer in effect. If the Court were to reach the merits, Plaintiffs' claims fail as a matter of law, because the City Ordinances were constitutionally permissible exercises of the City's police power in response to a public health and economic emergency.

## II.    FACTUAL BACKGROUND

Plaintiffs bring claims relating to actions taken by Governor Brown, the State, the County, and the City. Plaintiffs combine multiple executive orders, state legislative actions, and County and City Ordinances. They direct their claims collectively at the "Eviction Moratoria" without regard to the substance, scope, or the current effectiveness of any particular action. This factual background details the City's relevant actions and parses out the related actions of the County, State, and federal government.

---

[1] *See* Am. Compl. Ex. 2, ECF 17-1 (incorporating Ordinance 189890 into the Amended Complaint).
[2] *See* Am. Compl. Ex. 9, ECF 17-1 (incorporating Ordinance 190156 into the Amended Complaint).

Page 2 –   DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

A.    **COVID-19 presented and continues to present significant risks to public health and economic stability.[3]**

In early January 2020, the world first became aware that COVID-19 was causing serious illness and death. By the end of January, the World Health Organization had declared COVID-19 a Public Health Emergency of International Concern.[4] At this same time, the United States Secretary of Health and Human Services declared a Public Health Emergency, as spread of COVID-19 in the United States was identified.[5] By the end of February, Oregon had its first confirmed cases of COVID-19.[6]

On March 8, 2020, Governor Kate Brown declared a State of Emergency to begin preparing for the greater spread of COVID-19.[7] On March 11, 2020, the World Health Organization characterized COVID-19 as a global pandemic.[8] On March 12, 2020, Portland Mayor Ted Wheeler declared a State of Emergency due to the COVID-19 pandemic.[9] On that same day, Governor Brown significantly limited in-person gatherings to prevent the spread of COVID-19 and directed the closure of K-12 schools.[10] As a result of the COVID-19 emergency,

---

[3] The Court should take judicial notice of the existence and contents of the information and reports issued by the World Health Organization, as well as Federal, State, County, and City government regarding COVID-19. Under Federal Rule of Evidence 201, a court shall judicially notice a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) & 201(c)(2). On that basis, courts routinely take judicial notice documents in the public record. *See, e.g., Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 n 3, 4 (9th Cir. 2011); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *Morkal v. Fed. Home Loan Mortg. Corp.*, No. 6:12-CV-01401-AA, 2014 WL 2041364, at *2 (D. Or. May 8, 2014). Additionally, "[j]udicial notice is appropriate for records and reports of administrative bodies." *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) (citations and internal quotation marks omitted);
[4] Declaration of Naomi Sheffield ("Sheffield Decl."), ¶ 1, Ex. 1.
[5] Sheffield Decl., ¶ 2, Ex. 2.
[6] Sheffield Decl., ¶ 3, Ex. 3.
[7] Sheffield Decl., ¶ 4, Ex. 4.
[8] Sheffield Decl., ¶ 5, Ex. 5.
[9] Sheffield Decl., ¶ 6, Ex. 6.
[10] Sheffield Decl., ¶¶ 7-8, Exs. 7-8.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

large and small events in the City were cancelled, movie theaters, restaurants, gyms, spas, and other retail services and outlets closed or limited access. As a result of the significant public health measures that were necessary to address the spread of COVID-19, it was foreseeable that there would be significant economic impacts and job losses. The COVID-19 pandemic and the resulting consequences to public health and economic security continue to this day. Governmental entities at all levels have adjusted and modified responses to ensure public health and safety and to address economic repercussions.

B.    **The City of Portland acted to protect renters placed at significant risk by the COVID-19 pandemic.**

On March 17, 2020, Mayor Ted Wheeler, with Multnomah County Chair Deborah Kafoury, announced executive orders establishing a moratorium on residential evictions in the City and County due to the COVID-19 pandemic.[11]

On March 18, 2020, the Portland City Council passed Ordinance 189890. (Am. Compl., Ex. 2, ECF 17-1 at 7–11). The City Council recognized the economic impact that closures, cancellations, postponements, job loss, and sick leave related to COVID-19 would have on working families. (*Id*. at ¶¶ 11–13). Ordinance 189890 was passed:

> to promote stability and fairness within the residential rental market in the City during the COVID-19 pandemic outbreak, and to prevent avoidable homelessness thereby serving the public peace, health, and public welfare and to enable tenants in the City, whose income and ability to work is affected due to COVID-19, to remain in their homes.

(*Id*. at ¶ 13). The City Council recognized the importance of uniformity in the law across the City, noting that "it is imperative to provide all residents of Multnomah County, and all residents of the City of Portland throughout the tri-county area, uniform and consistent rules governing the

---

[11] Sheffield Decl., ¶¶ 9-10, Exs. 9-10.

Page 4 –   DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

moratorium on residential evictions." (*Id.* at ¶ 20).

Consistent with the expressed intent of ensuring uniformity, Ordinance 189890 provided, in relevant part, that,

> All residents of the City of Portland, wherever located in the tri-county area, shall be governed by the moratorium on residential evictions on the same terms as set forth in Multnomah County's Addendum to Executive Rule No. 388 issued on March 17, 2020 . . . and as further codified by Multnomah County by ordinance.

(*Id.* at ¶ a). On March 19, 2020, the Multnomah County Board of Commissioners adopted County Ordinance 1282, which codified the County's eviction moratorium. (Am. Compl., Ex. 1, ECF 17-1, 1–6).

County Ordinance 1282 applied directly to tenants and landlords in most of Portland, which is within Multnomah County. (*Id.*). Additionally, through Ordinance 189890, Multnomah County Ordinance 1282 was extended to apply to tenants and landlords in the limited pockets of Portland located in Clackamas County and Washington County. (Am. Compl., Ex. 2, ECF 17-1, 6-11). Substantively, Ordinance 189890 prohibited a landlord from evicting certain tenants for nonpayment of rent, fees, utilities, and other services charges paid directly to the landlord. (Am. Compl., Ex. 1, ECF 17-1, 1-6). To benefit from the moratorium, tenants were required to give notice and specified documentation that they or a family member had "suffered a substantial loss in income" as a result of COVID-19. (*Id.*). It also provided a six-month grace period for a tenant to repay unpaid rent, fees, or utility charges. (*Id.*). Ordinance 189890 did not relieve tenants of liability for unpaid rent, fees, or utility charges. (*Id.*). Multnomah County Ordinance 1282 provided a cause of action for affected tenants or an evicted member of an affected tenant's household, as well as the County. (*Id.*). Ordinance 189890 also provided for enforcement under the City's Emergency Code, PCC 15.08.040. (Am. Compl., Ex. 2, ECF 17-1, 7-11).

On March 22, 2020, Governor Brown issued a statewide executive order prohibiting law enforcement officers from serving notices for termination of tenancy for nonpayment or

Page 5 –   DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

termination without cause. (Am. Compl., Ex. 3, ECF 17-1 at 12-14).[12] On April 1, 2020,
Governor Brown issued a statewide moratorium on residential and non-residential evictions due
to COVID-19. (Am. Compl., Ex. 4, ECF 17-1 at 15-20). On April 16, 2020, the Multnomah
County Board of Commissioners passed Multnomah County Ordinance 1284, which suspended
Multnomah County Ordinance 1282. This ensured that the rights and obligations of tenants and
landlords in Multnomah County aligned with the Governor's executive order and ensured
uniformity in the state-wide residential eviction moratorium. (Am. Compl., Ex. 5, ECF 17-1 at
21-23). Upon suspension of Multnomah County's eviction moratorium, Portland Ordinance
189890 was automatically suspended, allowing the statewide moratorium to govern residential
eviction in all parts of Portland.

On June 30, 2020, Oregon enacted House Bill 4213 establishing a temporary eviction
moratorium through September 30, 2020. (Am. Compl., Ex. 6, ECF 17-2 at 1-5).[13] In
anticipation of the expiration of the protection provided by House Bill 4213, Multnomah County
Board of Commissioners adopted Ordinance No. 1287, which extended eviction protections in
Multnomah County. (Am. Compl., Ex. 7, ECF 17-2 at 6-11). On September 28, Governor Brown
signed Executive Order 20-56, which extended the state-wide eviction moratorium from
September 30, 2020 through December 31, 2020. (Am. Compl., Ex. 8, ECF 17-2 at 12-17).

---

[12] Additionally, on March 27, 2020, the President signed the Coronavirus Aid, Relief, and
Economic Security Act. (Pub. L. No. 116-136 (2020) (the "CARES Act"). The CARES Act
included a 120-day prohibition on the initiation of eviction proceedings for "covered dwellings,"
which were defined as those that participated in certain federal programs or had certain federally
backed loans. *Id.* § 4024.

[13] On September 4, 2020, the Center for Disease Control and Prevention issued an Agency Order
temporarily halting residential evictions for certain qualifying tenants to prevent the further
spread of COVID-19 effective through December 31, 2020. (Temporary Halt in Residential
Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020)).
This federal eviction moratorium was extended by legislation, (Consolidated Appropriations Act,
2021, Pub. L. No. 116-260, § 502 (2020)), and subsequently extended again by agency action
until March 31, 2021. (Temporary Halt in Residential Evictions to Prevent the further Spread of
COVID-19, 86 Fed. Reg. 8,020 (Feb. 3, 2021)).

Page 6 –   DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO
DISMISS

On September 30, 2020, the Portland City Council passed Ordinance 190156. (Am. Compl., Ex. 9, ECF 17-2 at 18-22). Ordinance 190156 again recognized the importance of uniform protections for all residents of the City. (*Id*. at ¶ 14). This Ordinance applied Multnomah County's moratorium, codified in Multnomah County Ordinance 1287, "in all areas of the City of Portland" and mandated that all Portland residents, "wherever located in the tri-county area, shall be governed by the moratorium on residential evictions on the same terms as set forth in Multnomah County's Ordinance No. 1287 issued on September 24, 2020, as amended from time to time[.]" (*Id*.). Like Ordinance 189890, Ordinance 190156 extended Multnomah County's eviction moratorium to include the small pockets of the City within Washington and Clackamas Counties.

In substance, Ordinance 190156 prohibited landlords from terminating a rental agreement, initiating an eviction proceeding, or otherwise interfering with a tenant's continued possession of a dwelling unit for nonpayment of rent, late charges, utility or services charges, or certain other charges described in the rental agreement. (Am. Compl., Ex. 7, ECF 17-2 at 8-11). It also prohibited landlords from assessing late fees or penalties for the specified nonpayments or reporting them to a credit reporting agency. (*Id*.). Ordinance 190156 provided a six-month grace period for repayment of any nonpayment balance after the emergency period. (*Id*.). In addition to the protections related to nonpayment, Ordinance 190156 prohibited landlords from delivering a termination notice without cause or filing an eviction action based on a termination without cause. (*Id*.). Even while Ordinance 190156 was in effect: landlords could seek judgment against the tenant for amounts due under their contracts; landlords could proceed with a for-cause eviction actions other than for nonpayment; and landlords were not required to forgive the rent or other payments owed by the tenant to the landlord under the rental agreement, except for prohibiting late fees. (*Id*.).

///

Page 7 –  DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

C.    **The City's Ordinances have expired.**

Ordinance 189890 was effective from March 18, 2020 until it was suspended in connection with Multnomah County Ordinance 1282 on April 16, 2020, and ultimately expired upon the repeal of Multnomah County Ordinance 1282 on September 24, 2020.  On December 21, 2020, Oregon passed HB 4401, which extended the state-wide eviction moratorium in certain circumstances until June 30, 2021. On January 14, 2021, again deferring to the uniform statewide eviction moratorium set forth in HB 4401, the Multnomah County Board of Commissioners rescinded Multnomah County Ordinance 1287 effective February 1, 2021. (Am. Compl., ¶ 32, ECF 17). Portland Ordinance 190156, which applied Multnomah County Ordinance 1287 to the limited areas within the legal boundaries of Portland, but outside of Multnomah County, expired on February 1, 2021. Ordinance 190156 was in effect from September 30, 2020 through February 1, 2021. The City currently has no ordinance in effect that prohibits the eviction of residential tenants for nonpayment.

## III.    THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS PURSUANT TO FRCP 12(B)(1) BECAUSE IT LACKS SUBJECT MATTER JURISDICTION.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the thresh[]old requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "[T]he doctrine of standing" is one of the "landmarks" that differentiates a constitutional case or controversy from an abstract dispute. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Mootness and standing are two sides of the same coin. "[T]he interest required of a litigant to attain standing is essentially the same as the interest required to maintain a claim under the mootness doctrine." *Nelsen v. King Cty.*, 895 F.2d 1248, 1250 (9th Cir. 1990). In short, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted). Here, Plaintiffs' claims against the City,

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

seeking only prospective relief, are moot because the City Ordinances are both expired. Moreover, even if Plaintiffs' claims were not moot, Plaintiffs have not alleged facts that would support standing against the City.

A. **Plaintiffs' claims for prospective declaratory and injunctive relief are moot because the City Ordinances are no longer in effect.**

The Article III "case-or-controversy requirement subsists through all stages of federal judicial proceedings[.]" *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citations and internal quotation marks omitted); *see also Cook v. Brown*, 364 F. Supp. 3d 1184, 1189 (D. Or. 2019) ("The test for mootness in the declaratory judgment context is whether there is a substantial controversy between parties with adverse legal interests that are sufficiently immediate to warrant declaratory relief."). It is not sufficient "that a dispute was very much alive when suit was filed[.]" *Lewis*, 494 U.S. at 477. Rather, "[t]he parties must *continue* to have a 'personal stake in the outcome' of the lawsuit." *Id*. at 478 (emphasis added); *see also Burke v. Barnes*, 479 U.S. 361, 363 (1987) ("We therefore analyze this case as if respondents had originally sought to litigate the validity of a statute which by its terms had already expired"). Here, both the City Ordinances have expired by their terms. Plaintiffs' claims for declaratory and injunctive relief—prospective relief—relating to the City Ordinances are moot.

While a "voluntary cessation of challenged conduct does not necessarily render a case moot," the Ninth Circuit "treat[s] the voluntary cessation of challenged conduct by government officials 'with more solicitude . . . than similar action by private parties.'" *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (quoting *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010)). The Court "should presume that the repeal, amendment, or expiration of legislation will render an action

Page 9 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id*. at 1199. Plaintiffs, as the "party challenging the presumption of mootness" must show based on the record, not speculation, that there "is a reasonable expectation of reenactment." *Id*.

Here, Ordinance 190156 expired with the repeal of Multnomah County Ordinance No. 1287.[14] (*See* Am. Compl., Ex. 9, ECF 17-2, at 20; Am. Compl. ¶ 32, ECF 17; *see also* Sheffield Decl. ¶ 11, Ex. 11 (explaining of Ordinance 190156, "[t]his Ordinance expired on February 1, 2021")). Plaintiffs do not allege, nor could they, that there is any reasonable expectation that the City will re-enact a temporary eviction moratorium, as the issue has been addressed by state legislation. *Glazing Health*, 941 F.3d at 1198. The mere fact that regulations and laws have been continually evolving due to the quickly changing risks associated with COVID-19 is insufficient to overcome the presumption of mootness. *See Harborview Fellowship v. Inslee,* No. 3:20-CV-05518-RJB, 2021 WL 662390, at *5 (W.D. Wash. Feb. 19, 2021) (explaining that plaintiffs had not showed "that the Governor is 'reasonably expected to reenact' the hard attendance caps for indoor services," despite arguments that "the restrictions have changed over time and so the cap could be restated[.]"); *Cross Culture Christian Ctr. v. Newsom*, 445 F. Supp. 3d 758, 766 n.2 (E.D. Cal. 2020) (denying "as moot the portion of Plaintiffs' motion that seeks to temporarily enjoin either order's prohibition of drive-in services" because of official clarification that drive-in services were permitted with some restrictions). Plaintiffs ask this Court to declare the City Ordinances unconstitutional and enjoin their implementation, enforcement, or extension. (Am. Compl. at 23, ECF 17). Because no City eviction moratorium has been in effect since February 1, 2021, Plaintiffs' claims against the City are moot and should be dismissed.[15]

---

[14] Ordinance 189890 similarly expired upon the repeal of Multnomah County Ordinance 1282, on September 24, 2020.

[15] It is also notable that Ordinance 190156, which was in effect when Plaintiffs filed this action, is only enforceable by a private right of action. (Am. Compl., Ex. 9, ECF 17-2 at 18-22). "[T]he

Page 10 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

B.    **Plaintiffs lack standing because their alleged injury is not traceable to the City Ordinances nor would relief against the City redress their alleged injury.**

For the Court to exercise its jurisdiction, Plaintiffs must satisfy the "irreducible constitutional minimum" known as standing. *Lujan*, 504 U.S. at 560. Standing has three requirements. The first requirement of standing is that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. (internal citation omitted). Second, "there must be a causal connection between the injury and the conduct complained of" such that the injury is fairly traceable to the defendant and not "result [of] the independent action of some third party not before the court." *Id.* (citations omitted). Third, it must be "likely," and not merely "speculative," that the injury will be redressed by a favorable decision from the court. *Id.* at 561. At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

As an initial matter, Plaintiffs Tyler and Crystal Sherman do not allege that they own rental properties within the City of Portland or that were ever subject to the City Ordinances. (Am. Compl. ¶ 13, ECF 17 (alleging ownership of units "throughout Oregon")). Mr. Farhoud also lacks standing because he is attempting to assert claims based on harm to his businesses, not himself. Mr. Farhoud does not allege any direct injury. Instead, he asserts an ownership interest in apartments through his "controlling interest in 44 distinct legal entities which own his apartment buildings." (Am. Compl. ¶ 8, ECF 17). It was the "distinct legal entities," including

---

Ordinance at issue is not enforced by the City, and there is nothing further for the City to do to implement the Ordinance." *Owen v. City of Portland*, 236 F. Supp. 3d 1288, 1298 (D. Or. 2017). An injunction against implementation or enforcement of the City Ordinances is, therefore, inappropriate. *Id*.; *see also Nken v. Holder*, 556 U.S. 418, 428 (2009) (explaining that an injunction "is a means by which a court tells *someone* what to do or not to do").

Page 11 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

Stark First Limited Partnership, Aldar Village, Inc., Star Krest, Inc. and Ash Street Courtyard LLC (the "Farhoud Entities"), not Mr. Farhoud, that were allegedly injured by the City Ordinances. (*Id*. at ¶¶ 9-12).

"In general, shareholders lack standing to assert an individual § 1983 claim based on harm to the corporation in which they own shares." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002); *see also Erlich v. Glasner*, 418 F.2d 226, 227-28 (9th Cir. 1969). This limitation applies regardless of the corporate structure of the entity. *See Woods View II, LLC v. Kitsap County*, 484 Fed. App'x 160, 161 (9th Cir. June 13, 2012) (holding that sole member of limited liability company lacked standing to pursue § 1983 claims because the individual "was not injured directly and independently of the limited liability company and therefore lacks standing to pursue individual claims"). Mr. Farhoud, whose only alleged injury is derivative of the injury from the four entities, does not have standing to bring a separate Section 1983 claim against the City.

Finally, because the Farhoud Entities are located within Multnomah County, the City Ordinances did not impact them. The City Ordinances did not impose limitations or obligations beyond those set forth in the Multnomah County Ordinances. Rather, the City Ordinances ensured that the Multnomah County Ordinances applied to the entire City, including small pockets located outside of Multnomah County. The Farhoud Entities, which were not separately impacted by the City Ordinances, do not satisfy either of the latter two elements of standing.

For standing, an injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court[.]" *Bennett v. Spear,* 520 U.S. 154, 167 (1997) (citing *Lujan,* 504 U.S. at 560–61). The Farhoud Entities' alleged injury—the inability to collect rent or evict tenants who have failed to pay rent—is not fairly traceable to the City Ordinances. The Farhoud Entities all assert that they own properties "located in the City of Portland *and* Multnomah County." (Am. Compl. ¶ 9–12, ECF 17 (emphasis added)). The Farhoud Entities did not suffer any injury due to the City Ordinances,

Page 12 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

because the City Ordinances simply repeated what was already true—the Farhoud Entities' properties were subject to the Multnomah County Ordinances. The Farhoud Entities do not allege that they have properties or tenants in the limited pockets of Portland within Washington County or Clackamas Counties—the areas impacted by the City Ordinances. Instead, the Farhoud Entities were subject to the Multnomah County Ordinances by direct application. They were not harmed by the City Ordinances.

Similarly, relief against the City would not redress the Farhoud Entities' alleged injuries. *See Allen v. Wright*, 468 U.S. 737, 759 n.24 (1984), *abrogated on other grounds Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), (noting that when the requested relief is "simply the cessation of the allegedly illegal conduct[,] . . . the 'redressability' analysis is identical to the 'fairly traceable' analysis."). The Farhoud Entities, owning property in Multnomah County, were directly regulated by the Multnomah County Ordinances. Relief with respect to the City Ordinances would not redress their harm. Even if Plaintiffs' claims were not moot, Plaintiffs each lack standing with respect to the City. The Court should dismiss Plaintiffs' claims for that independent reason.

## IV.   PLAINTIFFS HAVE FAILED TO STATE CLAIMS FOR WHICH RELIEF MAY BE GRANTED UNDER FRCP 12(B)(6).

Even if this Court had jurisdiction, it should nonetheless dismiss each of Plaintiffs' claims because Plaintiffs fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to relief that is plausible on its face.'" *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)). While the Court "must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party . . . conclusory allegations of law and unwarranted inferences are insufficient to avoid" dismissal. *Id.* (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)). The Court must consider whether Plaintiffs' well-pleaded

Page 13 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

factual allegations "plausibly give rise to an entitlement to relief." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Plaintiffs bring five claims for relief; each seeking a declaration that the City has violated Plaintiffs' constitutional rights and requesting an injunction. Plaintiffs assert that the City Ordinances violated their rights under the Contracts Clause, constituted an unconstitutional taking in violation of the Fifth Amendment, violated due process under the Fourteenth Amendment, constituted an unreasonable seizure under the Fourth Amendment, and violated their First Amendment right to petition the courts for redress of grievances. Even if Plaintiffs' claims were justiciable, the allegations against the City do not plausibly entitle Plaintiffs to relief.

### A. Plaintiffs' Contract Clause claim fails because the City Ordinances did not substantially impair their contractual relationship with tenants and the City's actions were nonetheless reasonable in advancing a significant public purpose.

The Contract Clause proscribes states from passing "any Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10. While the language "is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434 (1934)). In an emergency, the question "is whether the power possessed embraces the particular exercise of it in response to particular conditions." *Blaisdell*, 290 U.S. at 426. The test for determining whether the City Ordinances run afoul of the Contract Clause first considers the threshold question of whether the City Ordinances "operated as a substantial impairment of a contractual relationship." *Energy Reserves*, 459 U.S. at 411 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). If the City Ordinances constitute a substantial impairment, then the Court must consider: (1) whether the City had "a significant and legitimate public purpose" in enacting the City Ordinances; and (3) whether the "adjustment" of rights is based on "reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption."

*Id.* at 411-12 (quoting *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 22 (1977)). Here, the City Ordinances do not meet the threshold requirement of a substantial impairment. But importantly, even if this requirement were met, the City Ordinances served the significant government purpose of limiting the impacts related to a public health and economic emergency caused by the unprecedented COVID-19 pandemic and were reasonably tailored to advance this purpose.

1. **Plaintiffs' contracts have not been substantially impaired by the City Ordinances.**

Substantial impairment requires the Court to consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018). Here, because the City Ordinances imposed temporary regulations in an area that is already highly regulated by state and local law, they did not substantially impair Plaintiffs' contracts with tenants.

Plaintiffs' assert that the City Ordinances substantially impair their contracts by:

(a) allowing tenants to remain in possession of the premises notwithstanding their nonpayment of rent, utilities, and other charges;

(b) prohibiting Plaintiffs from recovering amounts, such as late fees and other penalties, meant to compensate Plaintiffs for the time value of their money owed resulting from tenants' failure to pay rent, utilities, and other charges when due;

(c) prohibiting Plaintiffs from enforcing tenants' payment obligations by seeking breach-of-contract judgments for debts owed; and

(d) prohibiting Plaintiffs from taking any other actions to recover possession of their premises so as to protect themselves from the increased costs and decreased revenue these circumstances create.

(Am. Compl. ¶ 37, ECF 17). Each of these allegations appear to be general to the "Eviction Moratoria," but are not specific to the City Ordinances. The City Ordinances, if at all, affected Plaintiffs' contracts by allowing tenants to remain in possession of the premises despite

Page 15 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

nonpayment of rent during the emergency period and prohibited late fees or penalties for nonpayment during that emergency period.

In considering whether an impairment is substantial, courts consider past regulation of the particular industry. *Spannaus*, 438 U.S. at 242 n.13. "[T]he landlord-tenant relationship is, if nothing else, heavily regulated." *Chicago Bd. of Realtors, Inc. v. Chicago*, 819 F.2d 732, 736-37 (7th Cir. 1987) (explaining that tenant-protective measures, such as limits on late fees and maintenance requirements, are subject to lesser scrutiny under the substantial impairment standard); *see also Troy Ltd. v. Renna*, 727 F.2d 287, 297 (3d Cir. 1984) (an enlargement "of an already-regulated tenancy is probably not an impairment at all"); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 351-52 (E.D. Pa. 2020) (while landlords "did not expect that these specific regulations would be enacted," there is no dispute that "residential leases have been heavily regulated for many years"); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 224 (D. Conn. 2020).

The City Ordinances, which provided an eviction moratorium and ban on late fees during parts of March 12, 2020 through February 1, 2021, were temporary measures that "merely postpone[ed] the date on which landlords may commence" eviction proceedings and collect full rent. *HAPCO*, 482 F. Supp. 3d at 352; *see Elmsford Apartment Associates, LLC v. Cuomo*, 469 F. Supp. 3d 148, 172 (S.D.N.Y. 2020) ("The eviction moratorium does not eliminate the suite of contractual remedies available to the Plaintiffs; it merely postpones the date on which landlords may commence summary proceedings against their tenants."). In fact, as discussed above, the City's Ordinances were identical to the County, simply extending them throughout the City. And the City Ordinances, when in effect, largely existed within the framework of similar moratoriums in existence at the state and federal level. These were temporary restrictions on obtaining payment or evicting tenants. The restrictions existed within an already highly regulated framework of landlord-tenant law. The City Ordinances did not substantially impair Plaintiffs' contractual rights.

Page 16 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO
        DISMISS

2.  **The City Ordinances address the significant and legitimate interest of protecting housing during a public health and economic emergency.**

"[R]emedying of a broad and general social or economic problem" is a significant public purpose that justifies impairing private contracts. *Energy Reserves*, 459 U.S. at 411–12. Protecting the economy is a significant public purpose. *See Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark*, 310 U.S. 32, 38–39 (1940) (the "authority retained by the state over contracts to safeguard the vital interests of its people . . . extends to economic needs . . . ."). A public purpose has consistently been recognized when the government must implement temporary measures in response to an emergency. *See U.S. Trust*, 431 U.S. at 22 n.19 (explaining that both the existence of an emergency and the limited duration of the policy are factors, although not dispositive factors, in determining the existence of a legitimate public purpose).

Here, the City Ordinances were passed to address the significant public purpose of keeping people housed during a global pandemic that resulted in unprecedented job losses and economic uncertainty. *See, e.g., Auracle Homes*, 478 F. Supp. 3d at 225; *HAPCO*, 482 F. Supp. 3d at 353-54; *Apartment Ass'n of Los Angeles Cty., Inc. v City of Los Angeles*, No. CV 20-05193 DDP, 2020 WL 6700568, at *5 (C.D. Cal. Nov. 13, 2020) ("No party disputes that the Moratorium was enacted in pursuit of a legitimate public purpose."); *Baptiste v. Kennealy*, No. 1:20-cv-011335-MLW, 2020 WL 5751572, at *17 (D. Mass. Sept. 25, 2020) (same); *Heights Apartments, LLC v. Walz*, No. 20-CV-2051 (NEB/BRT), 2020 WL 7828818, at *12 (D. Minn. Dec. 31, 2020). The City Ordinances were designed to ensure that people remain in their housing to limit the spread of COVID-19 and protect public health. They further sought to temper the economic fallout caused by COVID-19. There can be no reasonable dispute that the City had a significant public purpose in passing the City Ordinances.

3.  **Any adjustments to Plaintiffs' rights were reasonably tailored to protect the public health and welfare during the COVID-19 pandemic.**

The City Ordinances addressed a significant threat to public health and economic stability

Page 17 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

that would result from mass evictions during a public health crisis. The steps taken by the City provided protections that were reasonably tailored to reduce the spread of COVID-19 that would result from loss of housing. The City Ordinances simultaneously helped limit the additional public health and safety risks that would result from significant increases in homelessness. When a governmental entity is not a party to the contracts, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at 412-13. Here, given the magnitude of the public health and economic emergencies and the reasonableness of the City Ordinances, as discussed below, there is no reason for the Court to deviate from this deference.

The reasoning set forth in *Blaisdell* directly supports the reasonableness of the City Ordinances. During the economic fallout of the Great Depression, Minnesota passed a mortgage moratorium. *Blaisdell*, 290 U.S. at 416. This moratorium automatically extended the period of redemption for foreclosure sales and empowered county courts to grant further "just and equitable" extensions. *Id*. During these extensions, mortgagee-purchasers would be unable to take possession or gain title to the property. *Id*. at 418. Mortgagors in default had a two-year extension of the redemption period provided they made payments equal to reasonable rental value. *Id*. at 417 n.1.

Analyzing plaintiff-mortgagee's Contract Clause claim in *Blaisdell*, the Court found that the conditions of the Minnesota mortgage moratorium were reasonable, noting (1) the existence of a state of emergency; (2) that the law addressed "the protection of a basic interest of society," not particular individuals; and (3) that the law was temporary. *Id.* at 444-45. The Court specifically noted that the relevant conditions of the moratorium were not unreasonable. These included a continuation of indebtedness, continued validity of a deficiency judgment, the obligation to pay reasonable rent, and the fact that most mortgagees were "small investors" rather than persons "seeking homes or the opportunity to engage in farming." *Id.* at 445-46. Subsequently, the Supreme Court has clarified that none of the specific *Blaisdell* considerations

Page 18 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

is a limitation on the authority of the government. Specific requirements, are "subsumed in the overall determination of reasonableness." *U.S. Trust Co.*, 431 U.S at 22 n.19.

There can be no question that the City faced a significant emergency—unique and convergent threats to both public health and the economy. The City Ordinances were temporary measures designed specifically to address these emergencies—both in substance and duration. The City Ordinances addressed the basic interests of society—protecting public health and preventing the spread of COVID-19. They were not designed for the benefit of particular individuals. For these reasons, courts across the country have confirmed that temporary eviction moratoria were appropriate and reasonable responses to addressing the health and economic crises associated with COVID-19. *Apartment Ass'n of Los Angeles Cty*, 2020 WL 6700568 at *7-8; *Baptiste*, 2020 WL 5751572, *19; *Auracle Homes*, 478 F. Supp. 3d at 225-26; *HAPCO*, 482 F. Supp. 3d at 354–56. This court should not diverge from the well-reasoned opinions of these other jurisdictions and should dismiss Plaintiffs' Contract Clause claim.

### B.   Plaintiffs have failed to state a plausible takings claim.

Plaintiffs alleged bases for their *per se* regulatory takings claims are without merit. The *per se* categories of regulatory takings claims are available under narrow circumstances requiring that the property owner either be deprived of *all* economically viable use of their property or suffer a *permanent physical invasion* of their property. Plaintiffs do not allege that either circumstance occurred. Additionally, Plaintiffs seek only injunctive and declaratory relief; neither remedy is an available form of relief for their takings claim. Generally, the only available remedy for a takings claim is just compensation, which Plaintiffs have not requested.

### 1.   Summary of takings legal framework.

"The Takings Clause of the Fifth Amendment states that 'private property [shall not] be taken for public use, without just compensation.'" *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) (alterations in original). "A classic taking occurs when the 'government directly

Page 19 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO
        DISMISS

appropriates private property or ousts the owner from his domain.'" *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020), *cert. denied sub nom. Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, No. 20-54, 2021 WL 666361 (U.S. Feb. 22, 2021) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). "Beyond a classic taking, the Supreme Court has recognized that 'if regulation goes too far it will be recognized as a taking.'" *Id.* (quoting *Pa. coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

"There are three types of regulatory action the Court has recognized, 'each of which 'aims to identify regulatory actions that are functionally equivalent to the classic taking.'" *Id.* (quoting *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530–31 (9th Cir. 2019)). "Two types of regulatory actions—*Loretto* and *Lucas* takings—are *per se* takings." *Id.* The first category of *per se* takings is "where government requires an owner to suffer a permanent physical invasion of her property." *Lingle*, 544 U.S. at 538 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)). The second category of *per se* takings is where the regulation "completely deprive[s] an owner of '*all* economically beneficial us[e]' of her property." *Id.* (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)). *Penn Central* takings are the third type of regulatory taking, which are also referred to as "partial" regulatory takings. *Id.* at 538-39.

These three categories "share a common touchstone" which is to "identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Id.* at 539.

2.    **Plaintiffs fail to allege a plausible *per se* regulatory takings claim because Plaintiffs have not been completely deprived of all economically beneficial use of their property nor required to suffer a permanent physical invasion thereof.**

In this case, Plaintiffs have only alleged *per se* regulatory takings. (*See* Am. Compl. ¶¶ 44–45, ECF 17). The Supreme Court has established that "statutes regulating the economic relations of landlords and tenants are not *per se* takings." *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) (citing *Loretto*, at 458 U.S. at 440). Further, Plaintiffs have not alleged a classic

Page 20 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

taking nor have they alleged a partial regulatory taking under *Penn Central*.[16] The City's actions here do not fall within either category of a *per se* regulatory taking. First, the City Ordinances did not deprive Plaintiffs of *all* economically beneficial use of their property. Second, the City Ordinances did not require Plaintiffs to suffer a permanent physical invasion of their property.

    a.  **Plaintiffs enjoy continued beneficial economic use of their property**

Plaintiffs' allegations do not resemble a cognizable *per se* takings claim, and Plaintiffs have not been deprived of all beneficial economic use of their property. Plaintiffs allege, in relevant part, that the City Ordinances "constitute a *per se* taking because they deprive Plaintiffs of their rights to exclude others." (Am. Compl. ¶ 45, ECF 17). Once more, for a regulatory action to fall within this category of regulatory taking it must "completely deprive[s] an owner of '*all* economically beneficial us[e]' of her property." *Lingle*, 544 U.S. at 538 (quoting Lucas, 505 U.S. at 1019). "This is a 'relatively narrow' and relatively rare taking category, confined to the 'extraordinary circumstance when *no* productive or economically beneficial use of land is permitted.'" *Bridge Aina Le'a*, 950 F.3d at 626 (internal citations omitted) (quoting *Lingle*, 544 U.S. at 538, and *Lucas*, 505 U.S. at 1017). "Government regulations that constitute such a taking are typically those that require land to be left substantially in its natural state." *Id.* (citing *Lucas*, 505 U.S. at 1018).

Here, the City Ordinances did not deprive Plaintiffs of all economically beneficial use of their land. "[T]he *existence* of permissible uses determines whether a development restriction denies a property owner economically viable use of his property." *Del Monte Dunes at*

---

[16] To the extent the First Amended Complaint could be construed to allege a classic takings, such a claim has not and cannot be plausibly alleged. Even when accepting all the allegations in the First Amended Complaint as true, the Eviction Moratoria are not a direct appropriation of Defendants' property. *See Lingle*, 544 U.S. at 537.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

*Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1432 (9th Cir. 1996), *aff'd*, 526 U.S. 687 (1999) (emphasis added). The residential uses of the properties remain. The City Ordinances did not require Plaintiffs to return their property to a natural state, nor did they required that Plaintiffs cease the residential use of their property. *See Murr v. Wisconsin*, 137 S. Ct. 1933, 1949 (2017) (concluding that the challenged regulations did not deprive the landowners of all economically beneficial use because "[t]hey can use the property for residential purposes" and "[t]he property has not lost all economic value"). Therefore, Plaintiffs' *per se* takings claim based on an alleged deprivation of their right to exclude others from Plaintiffs' property should be dismissed with prejudice.

> b. **The City Ordinances did not require Plaintiffs to suffer a permanent physical invasion of their property.**

Because Plaintiffs' properties have not suffered a permanent physical invasion, Plaintiffs have failed to state a cognizable *Loretto per se* regulatory takings claim. Plaintiffs allege, in relevant part, that the "Eviction Moratoria constitute a *per se* taking claim under applicable U.S. Supreme Court case law because the Eviction Moratoria represent a physical occupation of Plaintiffs' premises without just compensation." (Am. Compl. ¶ 44, ECF. 17).

First, Plaintiffs omit the key operative language for a viable *per se* taking claim—that there be a *permanent* physical invasion. Assuming for argument's sake that there was a physical invasion, the City Ordinances are not permanent—in fact, they are no longer in effect. That fact alone is sufficient to dismiss Plaintiffs' *per se* regulatory takings claim.

Second, the City Ordinances did not require a physical invasion of Plaintiffs' property. A physical invasion would be, for example, where a law requires landlords to permit cable companies to install cable facilities in their apartment complexes. *See Loretto*, 458 U.S. at 421. The City Ordinances required no such physical invasion. A taking occurs "when the physical intrusion reaches the extreme form of a permanent physical occupation." *Id*. at 427. For example, where a defendant's construction, pursuant to state authority, of a dam permanently flooded the

Page 22 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

plaintiff's property, a taking had occurred. *Id.* (citing *Pumpelly v. Green Bay Co.*, 13 Wall. (80 U.S.) 166, 20 L.Ed. 557). The Supreme Court explained "without qualification, that 'where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution.'" *Id.* (quoting *Pumpelly*, 13 Wall. (80 U.S.) at 181). The Supreme Court has consistently reemphasized "the importance of a physical occupation by distinguishing a regulation that merely restricted the use of private property." *Id.* For example, where construction of a temporary dam denied plaintiffs access to their premises, no taking had occurred "because the obstruction only impaired the use of plaintiffs' property." *Id.* (citing *Northern Transp. Co. v. Chicago*, 99 U.S. 635 (1879)). A *per se* taking is found *only* where there was a permanent physical invasion. *Id.* (collecting cases). The physical character of takings includes occupations of land such as installations of "telegraph and telephone lines, rails, and underground pipes or wires[.]" *Id.* at 430 (collecting cases).

Even accepting all the factual allegations in the Amended Complaint as true and construing all reasonable inferences in Plaintiffs' favor, at most, the City Ordinances regulated the economic relationship between landlords and tenants and temporarily affected the residential use of Plaintiffs' property. Such regulatory effects fall short of satisfying either category of *per se* regulatory takings. Because the City Ordinances never deprived Plaintiffs of all economically beneficial use of Plaintiffs' property nor required a permanent physical invasion thereof, Plaintiffs' takings claims should be dismissed.

### 3.    Plaintiffs' takings claim seeks only equitable relief which is unavailable in federal court.

Even if Plaintiffs had adequately alleged a *per se* takings claim, equitable relief under the Takings Clause is unavailable in federal court. Plaintiffs do not seek just compensation for any alleged taking, rather, they request only declaratory and injunctive relief. (*See* Am. Compl. ¶¶ 46–48, ECF 17). The Supreme Court has made clear that the proper remedy for a taking is just

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

compensation, and that equitable relief is unavailable to enjoin an alleged taking of private property for public use. *See Knick*, 139 S. Ct. at 2176; *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984). Therefore, Plaintiffs have failed to state a claim upon which this Court could grant relief because the only relief Plaintiffs request is unavailable.

C. **The Court should dismiss Plaintiffs' substantive due process claim because it is duplicative of their other claims.**

As an initial matter, Plaintiffs' substantive due process claim under the Fourteenth Amendment fails because such a claim is not available as an add-on to other alleged constitutional violations. *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) ("The first problem with using substantive due process to do the work of the Takings Clause is that we have held it cannot be done."). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* (internal quotation marks omitted); *see also Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996); *overruled on other grounds by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007). Plaintiffs have brought claims that the City Ordinances violate the Contract Clause, the Petition Clause, the Takings Clause, and the Fourth Amendment. Even though Plaintiffs' claims fail under each of these constitutional provisions, the Plaintiffs may not bring a separate substantive due process claim. *See Albright, v. Oliver,* 510 U.S. 266, 274–75 (1994) (dismissing Fourteenth Amendment claim without consideration of the merits of Fourth Amendment claim); *Ogden v. Ontario Or. City Police Dept.*, No. 2:20-cv-02262-YY, 2021 WL 602709, at *2 (D. Or. Feb. 12, 2021) (even though plaintiff's complaint did not state a claim for relief under the Fourth Amendment, his "allegations implicate the Fourth Amendment right to be free from unlawful search and seizure, and plaintiff may not purs[u]e a substantive due process claim.").

Additionally, Plaintiffs' substantive due process claim fails for the same reasons as their

Page 24 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

Contract Clause claim. "Substantive due process provides no basis for overturning validly enacted state statutes unless they are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Spoklie v. Montana*, 411 F.3d 1051, 1059 (9th Cir. 2005) (quotation marks omitted). "The day is gone when [the Supreme Court] uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." *Williamson v. Lee Optical of Oklahoma Inc.,* 348 U.S. 483, 488 (1955).

This principle was demonstrated in a directly analogous situation in *Blaisdell*. There, the Court summarily disposed of a corresponding due process claim where there was no Contract Clause violation. *Blaisdell*, 290 U.S. at 448–49. The Court explained,

> We are of the opinion that the Minnesota statute . . . does not violate the contract clause. . . .Whether the legislation is wise or unwise as a matter of policy is a question with which we are not concerned. *What has been said on that point is also applicable to the contention presented under the due process clause.*

*Id*. (emphasis added). "[B]ecause Due Process Clause claims are assessed using a less exacting standard than Contracts Clause claims," for the same reasons the City Ordinances do not violate the Contract Clause, they "are not arbitrary or irrational." *HAPCO*, 482 F. Supp. F.3d at 356.

Plaintiffs' substantive due process claim is not allowed where other, more specific constitutional provisions apply. However, even if Plaintiffs' Fourteenth Amendment claim were appropriate, they have not alleged sufficient facts to demonstrate that the City Ordinances were arbitrary and unreasonable. For each of these reasons, the Court should dismiss Plaintiffs' Fourteenth Amendment claim against the City.

D.     **The City Ordinances did not constitute an unreasonable seizure of Plaintiffs' property.**

Plaintiffs allege that the City Ordinance amounted to an unreasonable seizure in violation

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

of the Fourth Amendment. To establish a seizure, Plaintiffs must plausibly allege "that a seizure occurred and that it was unreasonable." *Cedar Point Nursery*, 923 F.3d at 534, *cert. granted on other grounds sub nom. Cedar Point Nursery v. Hassid*, 2020 WL 6686019 (U.S. Nov. 13, 2020). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Further, the Constitution constrains only state action. *Blum v. Yaretsky*, 457 U.S. 991, 1002-1004 (1982). "[S]tate action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). Here, Plaintiffs have not adequately alleged that the City Ordinances amounted to a seizure of their property or that a state actions caused the alleged seizure.

"The existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated . . . for an actual trespass is neither necessary nor sufficient to establish a constitutional violation." *United States v. Karo*, 468 U.S. 705, 712-13 (1984). A regulation that simply requires a private property owner to allow a third-party access to their property does not constitute a seizure. *Cedar Point Nursery*, 923 F.3d at 527. In *Cedar Point*, the court found that the limitation on plaintiffs' "right to exclude" persons from their property did not substantially interfere with the property owner' possessory interest in the land. *Id*. at 535–36. The City Ordinances' temporary restrictions on Plaintiffs' right to evict plaintiffs similarly did not substantially interfere with their possessory interest. *See id.* at 536 (finding no seizure when access regulations may impact a property owner's right to exclude, but where the alleged intrusion is not "constant, uncontrollable, . . . unpredictable, damaging, and stressful"). Here, Plaintiffs maintained ownership in their property. Plaintiffs maintained a right to obtain the rent owed to them for tenant's use of their property. And Plaintiffs maintained the ability to evict

Page 26 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

and remove tenants for cause for reasons other than nonpayment of rent. Because the City Ordinances' temporary restrictions did not substantially interfere with Plaintiffs' possessory interest, the City Ordinances did not result in a seizure of property or violate the Fourth Amendment.

Even if the City Ordinances constituted a seizure, other courts in the Ninth Circuit have rejected similar arguments that regulation of the landlord tenant relationship constitutes state action, necessary for finding a constitutional violation. *See Ballinger v. City of Oakland,* 398 F. Supp. 3d 560, 574-575 (N.D. Cal. 2019) (requiring landlords to pay relocation assistance was not state action for purpose of Fourth Amendment), *Better Housing for Long Beach v. Newsom*, 452 F. Supp. 3d 921, 936 (C.D. Cal. 2020) ("[P]assing or signing a bill that may lead to the transfer of private property between private parties does not give[] rise to a Fourth Amendment Claim."). For this independent reason, the Court should dismiss Plaintiffs' Fourth Amendment claim.

E.    **Plaintiffs' allegations that the City Ordinances interfered with their ability to bring a specific type of action at the specific time they desired does not state a First Amendment violation.**

The First Amendment's Petition Clause provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has sometimes stated that "'[t]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97 (1984)).[17]

Any right to access courts, does not similarly guarantee that Plaintiffs have a right to their

---

[17] While it is not clear that the First Amendment provides the basis for the right to access courts, *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002), the Supreme Court has acknowledged that right-to-access claims serve to "provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

preferred remedy. *See Inmates of Suffolk Cnty. Jail v. Rouse*, 129 F.3d 649, 660 (1st Cir. 1997) (holding that there is no constitutional right to a specific form of relief); *Elmsford*, 469 F. Supp. 3d at 174 (the fact that the available remedy "is not [plaintiffs'] preferred remedy is of no moment"). Here, the City Ordinances simply delayed Plaintiffs' ability to obtain just one type of relief. Plaintiffs can still access the courts. The City Ordinances did not prohibit Plaintiffs from bringing a breach of contract claim to obtain a money judgment from tenants. Moreover, even eviction actions were not foreclosed by the City Ordinances. Instead, Plaintiffs could file an eviction action for many reasons other than nonpayment of rent. And, upon expiration of the City Ordinances, which occurred on February 1, 2020, the City Ordinances did not restrict Plaintiffs from filing an eviction action.

The delay resulting from the City's Ordinances, was "best characterized as a constitutionally-permissible delay in the Landlords' ability to evict, not a constitutionally-impermissible 'total deprivation.'" *Heights Apartments, LLC v. Walz*, 2020 WL 7828818, *13–14 (quoting *Sosna v. Iowa*, 419 U.S. 393, 410 (1975)); *see also See Elmsford*, 469 F. Supp. 3d at 173–75 (concluding that New York's eviction moratorium did not violate the Petition Clause because the moratorium was a mere delay and landlords had other avenues of redress available); *Baptiste*, 2020 WL 5751572, at *25-26 (applying Due Process analysis to plaintiffs' Petition Clause claim and finding that the eviction moratorium satisfied rational basis review); *Brown v. Azar*, No. 1:20-CV-03702-JPB, 2020 WL 6364310, at *14-17 (N.D. Ga. Oct. 29, 2020) (upholding the CDC Moratorium because plaintiffs could bring a breach of contract claim and because the moratorium was a mere delay).

Even when the City Ordinances were in effect, Plaintiffs had the ability to evict tenants for most for-cause evictions and could bring claims for breach of contract and seek judgment, if appropriate. And importantly, because the Plaintiffs' ability to file eviction actions generally was merely delayed by the City Ordinances, their right to petition claim fails. The Court should dismiss Plaintiffs' First Amendment claim.

Page 28 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

## **CONCLUSION**

Plaintiffs lack standing to seek relief against the City. And even if standing existed at the time this lawsuit was filed, Plaintiffs' claims against the City are moot. Therefore, the Court should dismiss Plaintiffs' claims for lack of jurisdiction. Moreover, none of Plaintiffs' five claims state a claim for which relief can be granted. For this separate reason, the Court should dismiss each of Plaintiffs' claims against the City.

DATED: March 8, 2021.

Respectfully submitted,

/s/ *Naomi Sheffield*

NAOMI SHEFFIELD, OSB #170601
Sr. Deputy City Attorney
naomi.sheffield@portlandoregon.gov
MICHAEL JETER, OSB #165413
Assistant Deputy City Attorney
michael.jeter@portlandoregon.gov
*Of Attorneys for Defendant City of Portland*

Page 29 – DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS