**JOHN DILORENZO, JR., OSB #802040**
johndilorenzo@dwt.com
**AARON K. STUCKEY, OSB #954322**
aaronstuckey@dwt.com
**EVAN CHRISTOPHER, OSB #183214**
evanchristopher@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

     Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN,** and **CRYSTAL SHERMAN,**<br><br>               **PLAINTIFFS,**<br><br>    v.<br><br>**GOVERNOR KATE BROWN,** in her official capacity; **STATE OF OREGON; CITY OF PORTLAND,** an Oregon municipal corporation; and **MULTNOMAH COUNTY OF OREGON,** and Oregon municipal corporation,<br><br>               **DEFENDANTS**. | Case No. 3:20-CV-02226-JR<br><br>**PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**<br><br><br>**Oral Argument Requested** |

PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     LEGAL STANDARD.................................................................................................. 1

III.    ARGUMENT............................................................................................................... 2

        A.      Plaintiffs have standing to proceed against Governor Brown ............................... 2

                1.      Governor Brown is an appropriate defendant under *Ex parte Young* because she has a direct relationship with HB 4401 and is the only state officer capable of redressing Plaintiffs' injuries. ........................................ 3

                        a.      Plaintiffs' injury is "fairly traceable" to Governor Brown because HB 4401 does not have a specific state enforcement provision; the Governor has a "substantial public interest" in using her general enforcement powers to give effect to the law; and the Governor was the chief architect of the statewide eviction moratorium, establishing a "direct connection." .................................. 4

                        b.      The Governor is the only individual capable of redressing Plaintiffs' injuries caused by the state moratorium, so she is the only appropriate state defendant to Plaintiffs' claims.................... 7

                2.      The Governor is not immune from Plaintiffs' takings claim because Plaintiffs seek prospective injunctive relief, which only the Governor can provide in response to an order from this Court. ........................................ 9

        B.      Plaintiffs have standing to proceed against the County and the City. .................. 10

                1.      Repeal of an ordinance in response to threatened or actual litigation does not moot a case.......................................................................................... 12

                2.      That the statewide moratorium was the only operative moratorium for much of 2020 does not mean that the County and City moratoria were not both effective—and therefore subject to injunctive relief. ....................... 13

        C.      Plaintiffs allege a cognizable Contracts Clause claim because *Blaisdell* does not control, and the Eviction Moratoria effect a substantial and unreasonable impairment of Plaintiffs' rental agreements. ...................................................... 14

                1.      This case differs from *Blaisdell* in one, critical respect: HB 4401 does not provide for the payment of reasonable rent to landlords during the period of the eviction moratorium...................................................................... 14

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

2.     The municipal moratoria violate Plaintiffs' Contracts Clause rights because they substantially impair the obligations of Plaintiffs' rental agreements and do not do so in a "reasonable" way............................... 17

D.     Plaintiffs allege a cognizable takings claim........................................................ 20

1.     Plaintiffs properly allege a *per se* taking. .................................. 21

2.     Even if this Court disagrees with Plaintiffs' *per se* takings analysis, this Court should nonetheless grant Plaintiffs leave to re-plead their claims.. 23

3.     Federal courts can enjoin takings pursuant to the Fifth Amendment, and this Court should do so here..................................................................... 24

E.     Plaintiffs' price control claim under the Fourteenth Amendment is not a substantive due process claim and need not be dismissed because Plaintiffs advance additional causes of action..................................................................... 26

F.     Plaintiffs state a cognizable Fourth Amendment claim because the Eviction Moratoria constitute a meaningful governmental interference with their properties............................................................................................................... 29

1.     The Eviction Moratoria resulted in a meaningful interference with Plaintiffs' possessory interests in their properties by preventing Plaintiffs from excluding tenants who have not paid rent. ...................................... 30

2.     Defendants' seizure of Plaintiffs' properties by means of the Eviction Moratoria was unreasonable because the property interests the seizure invaded are significant, and the risk that Plaintiffs would be erroneously deprived of those interests outweighs any burden on the government of affording Plaintiffs due process. ............................................................ 31

3.     No exigent circumstances exist justifying the deprivation of Plaintiffs' property rights without due process. ........................................................ 34

G.     Plaintiffs state an Access claim under the First Amendment because the Eviction Moratoria do not adjust underlying rights and duties but, rather, prevent Plaintiffs from asserting their existing legal rights............................................................ 36

H.     This Court should deny the Governor's remaining Rule 12 motions because the First Amended Complaint is sufficiently clear. ................................................... 37

IV.    CONCLUSION.................................................................................................................. 38

CERTIFICATE OF COMPLIANCE ................................................................................. 39

Page ii - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agins v. City of Tiburon*,
  447 U.S. 255, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980)........................................26

*Allied Artists Picture Corp. v. Rhodes*,
  679 F.2d 656 (6th Cir. 1982) ...............................................................................6, 7

*Am. Cargo Transp., Inc. v. United States*,
  625 F.3d 1176 (9th Cir. 2010) ................................................................................12

*Arkansas Game and Fish Com'n v. U.S.*,
  568 U.S. 23, 133 S. Ct. 511, 184 L. Ed. 2d 417 (2012)....................................23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).......................................1

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 U.S. 1955, 167 L. Ed. 2d 929 (2007)..........................................1

*Bell v. City of Boise*,
  709 F.3d 890 (9th Cir. 2013) ...................................................................................12

*Boler v. Earley*,
  865 F.3d 391 (6th Cir. 2017) .....................................................................................8

*Campanelli v. Allstate Life Ins. Co.*,
  322 F.3d 1086 (9th Cir. 2003) ................................................................................17

*Cedar Point Nursery v. Hassid*,
  141 S. Ct. 844, 208 L.Ed.2d 414 (2020)................................................................22

*Cedar Point Nursey v. Shiroma*,
  923 F.3d 524 (9th Cir. 2019) ......................................................................... *passim*

*Chem. Producers & Distribs. Ass'n v. Helliker*,
  463 F.3d 871 (9th Cir. 2006) ..................................................................................12

*Chevron, USA v. Cayetano*,
  224 F.3d 1030 (9th Cir. 2000) ................................................................................27

*Christopher v. Harbury*,
  536 U.S. 403, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002)......................................36

Page iii - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018
                              DAVIS WRIGHT TREMAINE LLP
                                 1300 S.W. Fifth Avenue, Suite 2400
                                    Portland, Oregon  97201-5610
                              (503) 241-2300 main · (503) 778-5299 fax

*College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
   527 U.S. 666, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999)......................................................21

*Coral Constr. Co. v. King County*,
   941 F.2d 910 (9th Cir. 1991) ..............................................................................................12

*Doe v. Lawrence Livermore Nat. Laboratory*,
   131 F.3d 836 (9th Cir. 1997) ................................................................................................3

*Dolan v. City of Tigard*,
   512 U.S. 374, 114 S. Ct. 2309, 129 L.Ed.2d 304 (1994)......................................................21

*E. Spire Communications, Inc. v. Baca*,
   269 F. Supp 3d 1310 (D. N.M. June 12, 2003)....................................................................17

*East N.Y. Sav. Bank v. Hahn*,
   326 U.S. 230, 66 S. Ct. 69, 90 L. Ed. 34 (1945)............................................................15, 16

*Ex parte Young*,
   209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).......................................................... *passim*

*Federal Power Commission v. Hope Natural Gas*,
   320 U.S. 591, 64 S. Ct. 281, 88 L. Ed. 333 (1944)....................................................27, 28, 29

*Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*,
   493 U.S. 331, 110 S. Ct. 661, 107 L. Ed. 2d 696 (1990).........................................................2

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)......................................................12

*Fuentes v. Shevin*,
   407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)...........................................................32

*Graham v. Connor*,
   490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).....................................................31

*Green v. Mansour*,
   474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985)............................................................9

*Hall v. City of Santa Barbara*,
   797 F.2d 1493 (9th Cir. 1986) ..................................................................................24, 25, 26

*Hawaii Housing Authority v. Midkiff*,
   467 U.S. 229, 104 S. Ct. 2321, 81 L. Ed. 2d 186 (1984)..........................................24, 25, 26

*Home Bldg. & Loan Ass'n v. Blaisdell*,
   290 U.S. 398, 54 S. Ct. 231, 78 L. Ed. 413 (1934)................................................14, 15, 16, 17

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*In re Permian Basin Area Rate Cases*,
   390 U.S. 747, 88 S. Ct. 1344, 20 L. Ed. 2d 312 (1968)..........................................................27

*Kaiser Aetna v. United States*,
   444 U.S. 164, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1979)..........................................................21

*Knick v. Township of Scott, Pennsylvania*,
   --- U.S. ---, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019)..........................................................10

*Ladd v. Marchbanks*,
   971 F.3d 574 (6th Cir. 2020) ............................................................................................9, 10

*Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*,
   535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002)........................................................2

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982)......................................20, 21, 23, 24

*Los Angeles County Bar Ass'n v. Eu*,
   979 F.2d 697 (9th Cir. 1992) ........................................................................................3, 4, 5

*Lucas v. South Carolina Coastal Council*,
   505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)..............................................20, 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)........................................................4

*Matthews v. Eldridge*,
   424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)................................................32, 33, 34

*Mendiondo v. Centinela Hosp. Medical Center*,
   521 F.3d 1097 (9th Cir. 2008) ..............................................................................................1

*Monell v. Dept. of Social Services of City of New York*,
   436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)..........................................................14

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ................................................................................................1

*Nebbia v. People of New York*,
   291 U.S. 502, 54 S. Ct. 505, 78 L. Ed. 940 (1934)................................................................27

*Old Dominion Land Co. v. United States*,
   269 U.S. 55, 46 S. Ct. 39, 70 L. Ed. 162 (1925)....................................................................24

*Pennell v. City of San Jose*,
   485 U.S. 1, 108 S. Ct. 849, 99 L. Ed. 2d 1 (1988)................................................................27

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Planned Parenthood of Idaho, Inc. v. Wasden*,
  376 F.3d 908 (9th Cir. 2004) ...................................................4

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) .................................................12

*Ross v. City of Berkeley*,
  655 F. Supp. 820 (N.D. Cal. Feb. 25, 1987) ...........................24

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .................................................1

*Sandoval v. County of Sonoma*,
  912 F.3d 509 (9th Cir. 2018) .................................................32

*Seven Up Pete Venture v. Schweitzer*,
  523 F.3d 948 (9th Cir. 2008) ...................................................9

*Shell Petroleum, N.V. v. Graves*,
  709 F.2d 593 (9th Cir. 1983) ...................................................2

*Soldal v. Cook County, Ill.*,
  506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992)......26, 30

*Sveen v. Melin*,
  --- U.S. ---, 138 S. Ct. 1815, 201 L. Ed. 2d 180 (2018)....14, 17, 18, 19

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
  535 U.S. 302, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002)........23

*Tennessee v. Lane*,
  541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004)......36, 37

*U.S. v. General Motors Corporation*,
  323 U.S. 373, 65 S. Ct. 357, 89 L. Ed. 311 (1945)..................23

*U.S. v. Jacobsen*,
  466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)..........30

*U.S. v. James Daniel Good Real Property*,
  510 U.S. 43, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993)........ *passim*

*U.S. v. Ojeda*,
  276 F.3d 486 (9th Cir. 2002) .................................................35

*U.S. v. Petty Motor Co.*,
  327 U.S. 372, 66 S. Ct. 596, 90 L. Ed. 729 (1946)..................23

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*U.S. v. Struckman,*
    603 F.3d 731 (9th Cir. 2010) ...................................................................35

*United States v. United States District Court,*
    407 U.S. 297, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972)...............................35

*Virginia Office for Protection and Advocacy v. Stewart,*
    563 U.S. 247, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011)....................3, 7

*W.B. Worthen Co. ex rel Bd. of Com'rs of Street Imp. Dist. No. 513 of Little Rock,*
    *Ark. v. Kavanaugh,*
    295 U.S. 56, 55 S. Ct. 555, 79 L. Ed. 1298 (1935).....................................15, 16, 17

*Welsh v. Wisconsin,*
    466 U.S. 740, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984).........................35

*WildEarth Guardians v. U.S. Dept. of Agriculture,*
    795 F.3d 1148 (9th Cir. 2015) ...................................................................4

## State Cases

*Birkenfeld v. City of Berkeley,*
    550 P.2d 1001 (Cal. Sup. Ct. 1976) ..........................................................28

*Borger Management, Inc. v. Abel Hernandez-Cruz, et al.,*
    No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020) ..........................36

*Elkhorn Baptist Church v. Brown,*
    366 Or. 506, 466 P.3d 30 (2020) ...............................................................7

*Hazell v. Brown,*
    238 Or App 487, 242 P.3d 743 (2010).......................................................13

*Property Owners Ass'n of North Bergen v. North Bergen Tp.,*
    378 A.2d 25 (N.J. Sup. Ct. 1977)...............................................................28

*State v. Hecker,*
    109 Or. 520, 221 P. 808 (1923) .................................................................13

## Federal Statutes

28 U.S.C. §§ 1346(a) and 1491...................................................................10

42 U.S.C. § 1983.........................................................................................14, 30

## State Statutes

ORS 91.225...................................................................................................17

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

ORS 203.040.................................................................................................................11

ORS 401.165 to 401.236............................................................................................8

ORS 401.168.........................................................................................................7, 9

ORS 401.192(1)....................................................................................................7, 8

ORS 737.207...............................................................................................................17

ORS 757.210...............................................................................................................17

ORS chapter 79...........................................................................................................17

ORS chapter 90...........................................................................................................17

ORS chapter 401..........................................................................................................7

ORS chapter 731.........................................................................................................17

ORS chapter 756.........................................................................................................17

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................1

Fed. R. Civ. P. 12(e)...................................................................................................37

**Regulations**

Chief Justice Order No. 20-016, *In the Matter of Imposing "Level 2" and "Level 3" Restrictions on Court Operations* (May 15, 2020)............................................34

**Legislative History**

House Bill 4213............................................................................................................7

House Bill 4401............................................................................................................2

**Constitutional Provisions**

OR. Const., Art. V, § 10..............................................................................................6

U.S. Const. Art. I, § 10........................................................................................14, 29

**Other Authorities**

Thomas W. Merrill, *Property and the Right to Exclude*, 77 Neb. L. Rev. 730 (1998)......................................................................................................................21

4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## I.    INTRODUCTION

Defendants amply summarized the legal and factual background underlying Plaintiffs' claims in their respective motions (which Plaintiffs will refer to as "State's Motion," "County's Motion," and "City's Motion," accordingly).  Plaintiffs see little need to expand on Defendants' remarks in that regard.  Rather, Plaintiffs would note that the only material facts in front of this Court are those alleged in the First Amended Complaint ("FAC") and those apparent from the face of the legislative enactments at issue in this litigation.  This Court need look no further to conclude that Plaintiffs have stated claims for violations of their constitutional rights caused by Defendants' unprecedented and unlawful overreach in the form of the Eviction Moratoria.

## II.    LEGAL STANDARD

A defendant may move under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failing to state a claim upon which relief can be granted.  Dismissal under that rule is appropriate "only where the complaint lacks a cognizable legal theory [or does not have] sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, to survive a motion to dismiss under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint need not contain "detailed factual allegations" to survive a Rule 12 motion; rather, it need only allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 U.S. 1955, 167 L. Ed. 2d 929 (2007).  When courts evaluate whether a complaint satisfies this standard, all allegations of material fact are accepted as true, "as well as all reasonable inferences to be drawn therefrom." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A "facial" challenge to subject matter jurisdiction under Rule 12(b)(1) assumes the truth of all well-pleaded allegations and is subject to the same standards as a motion under Rule 12(b)(6). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## III.    ARGUMENT

### A.    Plaintiffs have standing to proceed against Governor Brown

The State and Governor Brown claim that Plaintiffs are without standing to proceed against them because the Eleventh Amendment to the U.S. Constitution forbids it.  They further argue that Plaintiff Moe Farhoud does not have standing to proceed against any party because his status as a sole owner of the entity plaintiffs is insufficient under the Ninth Circuit's "shareholder standing" rule to justify his party status.

Plaintiffs concede that the Eleventh Amendment does apply to Plaintiffs' claims against the State.  But Eleventh Amendment immunity is not automatic, and a state, once sued, must either affirmatively raise the defense of sovereign immunity or consent to the suit and address the claims on their merits.  *See Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 619, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002).  The State could have chosen the latter route here and defended its eviction moratorium on its merits; it did not.  Plaintiffs thus concede that the State may now be dismissed.

Plaintiffs further acknowledge that the Ninth Circuit's "shareholder standing" rule may well bar Plaintiff Moe Farhoud from pursuing any claims in this litigation "on prudential . . . grounds."  *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983) ("Generally, a shareholder does not have standing to redress an injury to the corporation.").  Plaintiffs note, however, that other circuits have reached the opposite conclusion and that the U.S. Supreme Court has not yet settled the question.  *See Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335–38, 110 S. Ct. 661, 107 L. Ed. 2d 696 (1990) (explaining circuit split and Seventh Circuit's exception to shareholder standing rule).  But because this Court is bound by the decisions of the Ninth Circuit, and because Mr. Farhoud's personal involvement is not necessary for this Court to rule in Plaintiffs' favor, Plaintiffs will not press this argument further.

Notwithstanding the above, the remaining plaintiffs (which, for ease, will continue to be referred to as "Plaintiffs") may nonetheless proceed against the state eviction moratorium, now limited to just 2020 House Bill 4401 ("HB 4401"), because Plaintiffs have standing with respect

Page 2 - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

to Governor Brown. Eleventh Amendment immunity may apply to state officers who are sued in their official capacities, but the Eleventh Amendment is not without exceptions: pursuant to *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), a party may sue a state official in her official capacity as long as the suit alleges an ongoing violation of federal law and seeks only prospective injunctive relief and such ancillary relief as may be appropriate. *See Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997) ("In what has become known as . . . the *Ex parte Young* doctrine, a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity.") (internal citation omitted).

Governor Brown challenges Plaintiffs' right to proceed against her on two grounds: first, she claims that *Ex parte Young* does not apply because her executive orders imposing the earlier iterations of the moratoria were mooted by HB 4401, and HB 4401 does not invest her with any enforcement authority; second, she claims that she is immune from takings claims because just compensation is the only remedy for a takings claim, and she cannot be sued for damages of any kind under *Ex parte Young*. Plaintiffs take each argument in turn.

## 1. Governor Brown is an appropriate defendant under *Ex parte Young* because she has a direct relationship with HB 4401 and is the only state officer capable of redressing Plaintiffs' injuries.

*Ex parte Young* allows a private litigant to seek an injunction in federal court against a state official prohibiting the official from enforcing a state law that allegedly violates the federal constitution. "*Ex parte Young* rests on the 'obvious fiction' that such a suit is not really against the State, but rather against an individual who has been 'stripped of his official or representative character' because of his . . . conduct[.]" *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 267, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011) (Roberts, C.J., dissenting) (internal citations omitted). Because of this "fiction" at the heart of *Ex parte Young*, the state official sued "must have some connection with the enforcement of the allegedly unconstitutional act[,]" and, most critically, she must have the power to stop the constitutional violation if ordered to do so by the court. *See Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Although part of the *Ex parte Young* analysis, the "connection" requirement has less to do with *Ex parte Young* and more to do with a party's standing. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (evaluating proper defendants under Eleventh Amendment implicates questions of standing). Thus, to establish the "connection" requirement under *Ex parte Young*, "a plaintiff must show that '(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision.'" *WildEarth Guardians v. U.S. Dept. of Agriculture*, 795 F.3d 1148, 1154 (9th Cir. 2015) (citing, *inter alia*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

Plaintiffs have alleged an injury that is concrete, particularized, and actual—the Governor does not contend otherwise. The Governor trains her fire on whether that injury is "traceable" to her and whether she could redress that injury.

        **a.**        **Plaintiffs' injury is "fairly traceable" to Governor Brown because HB 4401 does not have a specific state enforcement provision; the Governor has a "substantial public interest" in using her general enforcement powers to give effect to the law; and the Governor was the chief architect of the statewide eviction moratorium, establishing a "direct connection."**

The Governor is correct in one regard: her role under HB 4401 is not the same as the attorney general's role in *Ex parte Young* under the enactment at issue in that case. But since the Supreme Court decided *Ex parte Young*, the federal courts have expanded the bases pursuant to which an executive state official's conduct may satisfy the "traceability" element of standing in the context of *Ex parte Young* claims. At least three of those bases are applicable to Plaintiffs' claims.

First, and most directly, the Ninth Circuit has, in earlier cases, allowed plaintiffs' claims challenging statutes to proceed against the governor and attorney general of a state when the challenged statute "is simply not the type of statute that gives rise to enforcement proceedings." *See Eu*, 979 F.2d at 704. Under those circumstances, it is enough that the Governor is "giving

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

effect" to the challenged statute, as long as the Governor has some "specific connection to the challenged statute." *Id.* In *Eu*, the L.A. County Bar Association sued the Governor over a state law setting the number of judges; because that kind of law could not be "enforced" by any state official like the law in *Ex parte Young*, the Ninth Circuit held that it was enough that the law is "currently being given effect by state officials, including . . . [Governor Wilson]" and that "[Governor] Wilson has a duty to appoint judges to any newly-created judicial positions[.]" *Id.* ("The lack of any enforcement proceeding by . . . Wilson against the Bar Association under the challenged [law] does not preclude this suit.").

Similar circumstances exist here. HB 4401 does not have *any* state enforcement role, so the lack of any enforcement power for the Governor should not preclude suit against her. No one official is charged with enforcement of HB 4401 simply because it is not the kind of statute that needs state enforcement; rather, the law prohibits landlords from filing claims against nonpaying tenants, *see* HB 4401 §§ 8(2)(b), (f); directs courts to summarily dismiss any nonpayment claims landlords do file, *see* HB 4401 § 7(6); and creates a cause of action for tenants to assert against landlords should landlords attempt to violate the filing moratorium, *see* HB 4401 § 7(8)(a)(A). It is enough, under the reasoning in *Eu*, that the Governor is "giving effect" to HB 4401 because, as explained in greater detail below, she does have a "specific connection" to HB 4401: she created the first statewide eviction moratorium by executive order, and HB 4401 merely follows her lead and puts that moratorium into statute. On top of that, like in *Eu*, the Governor plays some role in how the enactment is executed: she must implement HB 4401's landlord assistance program via the Oregon Housing and Community Services Department ("OHCS"), to whom HB 4401 grants the administrative responsibility. Plaintiffs allege HB 4401's landlord assistance program further cements the infringement caused by the moratorium provisions, creating the specific connection between the Governor and the challenged statute, as required by *Eu*. Indeed, Governor Brown actually has more of a "specific connection" to HB 4401 than California's Governor Wilson did to the challenged law in *Eu* because HB 4401 is merely a final legislative expression of a policy choice the Governor made for Oregonians in the months preceding the bill's adoption.

Page 5 - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Second, Plaintiffs' injury is "fairly traceable" to Governor Brown because she is charged by the Oregon Constitution with "tak[ing] care that the Laws be faithfully executed[,]" *see* OR. CONST. Art. V, § 10, and there is a "substantial public interest" in the continued operation of the eviction moratorium that "places a significant obligation upon the Governor to use [her] general authority to see that state laws are enforced." *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n. 5 (6th Cir. 1982). That approach to traceability was relied on by the Sixth Circuit in its decision upholding claims against the governor of Ohio challenging the constitutionality of a state statute regulating the marketing of motion pictures in that state. That statute, like the law in *Eu* and HB 4401, lacked any "specific state enforcement provisions[.]" *Id.* Starting at that point, the Sixth Circuit then reasoned that no other state official was an appropriate defendant under *Ex parte Young*, and "the substantial public interest in enforcing . . . the legislation [at issue] places a significant obligation upon the Governor to use his general authority to see that state laws are enforced." *Id.* (internal citations omitted). For those reasons, the plaintiffs in *Allied Artists* were permitted to proceed against the governor there.

Under *Allied Artists*, a plaintiff need only demonstrate the lack of enforcement provisions and a "substantial public interest" in order to sue the Governor pursuant to her constitutional role as head of the executive branch and the individual responsible for giving effect to state laws. *See* OR. CONST. Art. V, § 10 ("[She] shall take care that the Laws be faithfully executed."). HB 4401 almost certainly qualifies under this standard; the language of the law itself makes clear that it is of the utmost public importance. FAC, Ex. 11, §1 (statute intended to "carry out the significant and legitimate public purpose of responding to the declaration of a state of emergency"); *id.* at § 26 (statute considered "necessary for the immediate preservation of the public peace, health and safety"). Furthermore, the Governor has publicly attested to the importance of the statewide eviction moratorium. *See, e.g.,* Executive Order 20-56 ("Throughout this crisis, making sure that Oregonians can remain in their homes has been an essential part of Oregon's COVID-19 emergency response."). Finally, common sense dictates that the statewide eviction moratorium, and HB 4401 in particular, meet the "substantial public interest" standard within the context of

4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

the COVID-19 emergency.  Plaintiffs can therefore also establish "traceability" to the Governor under the standard in *Allied Artists*.

Third, and finally, Plaintiffs' harm is traceable to the Governor because the Governor has a significant and direct connection with HB 4401 arising from her role as the architect of the first statewide eviction moratorium.  The Governor's Executive Order 20-11 ("EO 20-11"), which she issued in March of 2020, would go on to become the model for HB 4401; every version of the moratorium that followed, including EO 20-56 and 2020 House Bill 4213, followed the original outline of EO 20-11.  FAC, Exs. 3, 6, 8.  That is as direct a connection as might be found, and it is a unique one: had there not been a statewide emergency, the Governor could never have legislated on her own and therefore "enacted" the first version of a law the Legislative Assembly would go on to adopt as a statute.  Thus, applying *Ex parte Young* to these circumstances will preserve the "narrow" and unique nature of that exception to Eleventh Amendment sovereign immunity.  *See Stewart*, 563 U.S. at 266.

> **b.    The Governor is the only individual capable of redressing Plaintiffs' injuries caused by the state moratorium, so she is the only appropriate state defendant to Plaintiffs' claims.**

In addition to the above, the Governor is the proper defendant here is because she is the only individual person with the power to redress the harms caused by the statewide moratorium. Similar to the reasoning above, this reasoning is closely tied to the existing state of emergency: under ORS chapter 401, the Governor is granted the sweeping authority to exercise "all police powers vested in the state by the Oregon Constitution[.]"  ORS 401.168.  Put another way: anything the Legislative Assembly can do outside of an emergency the Governor can do during an emergency.  *See also Elkhorn Baptist Church v. Brown*, 366 Or. 506, 524, 466 P.3d 30 (2020) (Governor's power under ORS 401.168 "refers to 'the whole sum of inherent sovereign power which the state possesses'") (internal citation omitted).  That vast authority includes the power to set aside existing laws if their operation would impair application of her emergency orders.  ORS 401.192(1); *Elkhorn Baptist Church*, 366 Or. at 527.

Page 7 - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

For that reason, under the unique circumstances of this case, the Governor is a proper defendant here because the Governor is the only state official with the power to either render HB 4401's requirements inoperative or to order compensation to Plaintiffs under ORS 401.192(1).[1] Both approaches would redress Plaintiff's harms, and only the Governor can accomplish those actions in response to an order from this Court—and, again, she can only do so because Oregon remains within the state of emergency the Governor herself declared.

This reasoning is similar to that relied upon by the Sixth Circuit in the cases arising out of the Flint, MI water scandal. *See Boler v. Earley*, 865 F.3d 391, 413 (6th Cir. 2017). The court in *Boler* did not discuss the "traceablility" issue, *see infra* at A.1.a, but instead focused its attention on whether Governor Snyder could provide prospective relief to the plaintiffs. There was also an emergency declaration at issue in *Boler*, and the declaration remained ongoing. 865 F.3d at 413. The Sixth Circuit held, because the city residents attempted "to direct the Governor's conduct in providing services to [p]laintiffs affected by the Flint water crisis[,]" which the court determined was "relief . . . properly characterized as prospective," that "*Ex parte Young* applies to the claims made against Governor Snyder[.]" *Id.* The court in *Boler* was focused was on whether Governor Snyder could actually grant the prospective relief sought. Thus, according to the Sixth Circuit's formulation in *Boler*, whether litigation can proceed against the state officer in question has less to do with "traceability" and more to do with "redressability."

Once again, the reasoning of the federal circuit court is equally applicable here. There is only one state official with the wherewithal to redress Plaintiffs' injuries: Governor Brown. She is invested with powers of breathtaking and historic scope, and those powers remain ongoing. For that reason, she can redress Plaintiffs' harms. For the reasons above, those harms are fairly traceable to the Governor. And the Governor does not dispute that Plaintiffs' harms are actual,

---

[1] "All rules and orders issued under authority conferred by ORS 401.165 to 401.236 shall have the full force and effect of law both during and after the declaration of a state of emergency. All existing laws, ordinances, rules and orders inconsistent with ORS 401.165 to 401.236 shall be inoperative during the period of time and to the extent such inconsistencies exist."

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

particularized, and concrete.  Thus, Plaintiffs satisfy every prong of standing within the frame of *Ex parte Young*, and the Governor is a proper—indeed, the only proper—individual state official defendant to this action.

**2.      The Governor is not immune from Plaintiffs' takings claim because Plaintiffs seek prospective injunctive relief, which only the Governor can provide in response to an order from this Court.**

Finally, Governor Brown claims that she is immune from takings claims because the only remedy for a takings claim is just compensation, which is akin to a damages award, and she is immune from suits for damages in federal court under the Eleventh Amendment.  But Governor Brown fails to note the unique nature of Plaintiffs' claims, arising out of the unique situation in which Plaintiffs and the Governor find themselves: because the Governor's statewide emergency declaration remains in effect and she therefore continues to have access to the full suite of police powers otherwise only available to the Legislative Assembly, *see* ORS 401.168, the Governor *can* respond to an order of this court requiring her to modify HB 4401 by designing a system for compensating landlords and therefore can provide relief other than an award of damages.

The Governor relies on a handful of cases in support of her position, but all of those cases can be distinguished.  First, in both *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948 (9th Cir. 2008) and *Ladd v. Marchbanks*, 971 F.3d 574 (6th Cir. 2020), the plaintiffs were asserting inverse condemnation claims for injuries that were already completed.  That is, the harms were not ongoing.  *See, e.g., Seven Up Pete Venture*, 523 F.3d at 956 ("It is impossible to characterize the [inverse condemnation] relief sought by the Venture as prospective.").  Thus, the rulings in *Seven Up* and *Ladd* were rooted in the Eleventh Amendment—which, as explained above, is no impediment to Plaintiffs' position—not the Fifth Amendment.  The ongoing nature of Plaintiffs' harm is essential to the viability of their claim because it brings the added heft of the Supremacy Clause, under which federal courts can prevent state officials from continuing to violate supreme federal law.  *See Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.").

4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Similarly, *Knick v. Township of Scott, Pennsylvania*, --- U.S. ---, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019) is of no avail to the Governor for the simple reason that "the Court's opinion in *Knick* says nothing about sovereign immunity . . . [because] the defendant in *Knick* was a municipality, so it had no sovereign immunity to assert." *Ladd*, 971 F.3d at 579. Thus, the only "authority" in *Knick* is the *dicta* that "[a]s long as just compensation remedies are available—as they have been for nearly 150 years—injunctive relief [for a taking] will be foreclosed." 139 S. Ct. at 2179. But that is not controlling here for two reasons: (a) it is *dicta* that was not part of the holding of *Knick* given the defendant there did not have sovereign immunity, and (b) the Court goes on to qualify that *dicta* as applying to the *federal* government. *See id.* ("Federal courts will not invalidate an otherwise lawful uncompensated taking when the property owner can receive complete relief through a Fifth Amendment claim brought under the Tucker Act."). The second statement makes clear that the "150 years" in the first statement refers to the Tucker Act, passed in 1871 and codified at 28 U.S.C. §§ 1346(a) and 1491, *which only applies to claims against the federal government*. The Tucker Act does not open the Court of Federal Claims to those seeking relief against states, and the *dicta* in *Knick* therefore does not apply to Plaintiffs' claims here.

For each of the above reasons, the Governor is not immune from Plaintiffs' takings claim or any of Plaintiffs' claims seeking prospective injunctive relief against her pursuant to *Ex parte Young*.

**B.    Plaintiffs have standing to proceed against the County and the City.**

Both the County and the City claim that Plaintiffs cannot demonstrate standing as to them because their municipal eviction moratoria are no longer in effect. The City also argues that the properties at issue in this litigation are located within both the City of Portland and Multnomah County—but not Clackamas or Washington Counties—and therefore the City cannot be liable to Plaintiffs. Because Plaintiffs can address the City's concern briefly, they address it first.

The City claims that its ordinances were not operative within those parts of the City of Portland located within Multnomah County because the County's ordinances were operative, so the City's ordinances only applied "in the limited pockets of Portland within Washington County

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

or Clackamas Count[y.]" City Response at 13. That argument is based on a faulty premise: as a matter of law, Multnomah County's eviction moratorium was without legal effect in the City of Portland until the City of Portland adopted that ordinance as its own. *See* ORS 203.040 ("Except by consent of the governing body or the electors of a city and except in cities not regularly operating as such through elected governmental officials, ordinances adopted under ORS 203.030 to 203.075 in exercise of the police power shall not apply inside an incorporated city."). Moreover, this controlling principle of state law is in accord with the plain language of the City's Ordinance adopting the County's moratorium: "Multnomah County's moratorium on residential evictions . . . shall apply in all areas of the City of Portland. All residents of the City of Portland, wherever located in the tri-county area, shall be governed by the moratorium on residential evictions[.]" Portland City Ordinance No. 190156. The fact (and the law) is that Plaintiffs were subject to three, overlapping moratoria: first the City's, then the County's (via the City's consent to that enactment, *see* ORS 203.040), and then the Governor's.

The overlapping nature of the several Eviction Moratoria is also why Plaintiffs' claims against the County and City are not moot simply because the state eviction moratorium is the only enactment presently operating on Plaintiffs' properties. Both the County and the City put their own moratoria in place; the County only repealed its moratorium—which had the effect of repealing the City's moratorium—in part because of the passage of HB 4401 and because of the risk of liability to the County posed by this lawsuit. FAC ¶ 32. That is why Plaintiffs also sued the County and City: because at the time this lawsuit was filed, Plaintiffs were subject to all three moratoria and were seeking this Court's intervention to prevent all three jurisdictions' continuing violations of federal law. Plaintiffs may therefore proceed against the County and City for two reasons: the County's repeal (which became the City's repeal, due to the language of the City's ordinance) of the local moratoria does not satisfy the "voluntary cessation" doctrine of mootness, and the distinction between which law was "operative" versus which law was "effective" supports Plaintiffs' claims for injunctive relief against all parties.

Page 11 - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

      1.      **Repeal of an ordinance in response to threatened or actual litigation does not moot a case.**

Although courts typically presume that a government is acting in good faith when it changes its policy, *see Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010), "when the Government asserts mootness based on such a change[,] it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citing *Bell v. City of Boise*, 709 F.3d 890, 898–99 & n. 13 (9th Cir. 2013)). "[A] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [challenged enactment]." *Coral Constr. Co. v. King County*, 941 F.2d 910, 928 (9th Cir. 1991). Whereas "[a] *statutory* change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed[,]" *see Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006) (emphasis added) "[b]y contrast, 'repeal or amendment of an *ordinance* by a local government . . . does not necessarily deprive a federal court of its power to determine the legality of the practice at issue[.]'" *Rosebrock*, 745 F.3d at 971 (quoting *Bell*, 709 F.3d at 899) (emphasis added). Where the "[d]efendants have failed to meet their heavy burden to make it 'absolutely clear that the allegedly wrongful behavior—the alleged unconstitutional enforcement of the [o]rdinances—could not reasonably be expected to recur[,]" their repeal of the challenged enactment is "insufficient to moot [p]laintiffs' . . . claims for prospective relief." *Bell*, 709 F.3d at 901 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)).

Both the County and the City claim that the County's repeal of County Ordinance No. 1287—which simultaneously effected a repeal of the City's moratorium, *see* City's Motion at 10—mooted this controversy. Not so. Both the County and the City "bear the heavy burden of showing" that they cannot reasonably be expected to enact similar tenant protections; that must be "absolutely clear." *See Friends of the Earth*, 528 U.S. at 189. Neither municipality has made such a showing—nor could they, under the circumstances. Both entities—the City has hitched

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

its wagon to the County's star here—have demonstrated their willingness to change their local

laws in response to this lawsuit. Put simply: that they have done it before is the best evidence

that they will do it again. Moreover, no state statute divests the County or City of the power to

impose new moratoria, and there is no expressly preemptive language in HB 4401. FAC, Ex. 11.

Nor have the County or City rescinded their emergency declarations related to the COVID-19

pandemic. The County and City therefore have the power, and they have already demonstrated

they have the willingness, to change the law if it appears this lawsuit is no longer an obstacle.

For that reason, unless the County and City affirmatively represent that they will enact no further

moratoria in the future, their collective repeal of their municipal moratoria does not satisfy the

"voluntary cessation" doctrine and does not moot this lawsuit.

> **2.    That the statewide moratorium was the only operative moratorium for much of 2020 does not mean that the County and City moratoria were not both effective—and therefore subject to injunctive relief.**

Finally, Plaintiffs note that even had the County and City not repealed their moratoria, the

existence of HB 4401 and its predecessor, HB 4213, do not relieve the City and County of their

liability for imposing their own unconstitutional moratoria. That the statewide moratorium may

have been operative does not mean that the County and City moratoria were not also effective

and valid sources of law. Oregon law recognizes this operative/effective distinction. *See Hazell

v. Brown*, 238 Or App 487, 497–99, 242 P.3d 743 (2010) ("'A measure may become a law on a

determined date, and yet that law may not go into active operation until some later date or until

the happening of *some contingency*.'") (emphasis added) (quoting *State v. Hecker*, 109 Or. 520,

546–47, 221 P. 808 (1923)). The County and City moratoria were *effective* for nine months in

2020 and for January of 2021. The County and City remain liable for the constitutional harms

inflicted on Plaintiffs during that time, and they remain proper defendants to Plaintiffs' request

for injunctive relief preventing them from enacting similar effective moratoria in the future—

notwithstanding any operative statewide moratorium.[2]

---

[2] Even if this Court is unwilling to grant injunctive relief against the County and City, this Court should
not dismiss Plaintiffs' claims against those parties without granting Plaintiffs leave to amend their claims

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**C.    Plaintiffs allege a cognizable Contracts Clause claim because *Blaisdell* does not control, and the Eviction Moratoria effect a substantial and unreasonable impairment of Plaintiffs' rental agreements.**

In addition to the jurisdictional arguments raised above, all Defendants raise additional arguments going to the merits of Plaintiffs' claims.  In attacking Plaintiffs' claims under Article I, section 10 of the U.S. Constitution—the Contracts Clause—Governor Brown argues this case is controlled by *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 54 S. Ct. 231, 78 L. Ed. 413 (1934).  For their part, the County and the City engage with the Contracts Clause standard, arguing that the municipal moratoria do not "substantially impair" Plaintiffs' rental agreements, but, if they do, that impairment is reasonable and therefore survives Contracts Clause scrutiny. Plaintiffs address each argument in turn.

**1.    This case differs from *Blaisdell* in one, critical respect: HB 4401 does not provide for the payment of reasonable rent to landlords during the period of the eviction moratorium.**

Governor Brown claims that "there is no meaningful difference between the . . . law at issue in *Blaisdell*" and HB 4401.  State's Motion at 24.  In arguing that HB 4401 is functionally the same as the statute at issue in *Blaisdell*, the Governor effectively concedes that HB 4401 does "substantially impair" Plaintiffs' contracts—the first step of the Contracts Clause analysis—but argues that any impairment is "an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'"  *See Sveen v. Melin*, --- U.S. ---, 138 S. Ct. 1815, 1822, 201 L. Ed. 2d 180 (2018).  The kernel of the *Blaisdell* decision is that the foreclosure moratorium was a reasonable response to the Great Depression.  290 U.S. at 424–31.  The Governor advances the same reasoning here: given the circumstances of the COVID-19 pandemic, requiring Plaintiffs to house tenants free of charge for over a year without any compensation or income to support that housing is a reasonable impairment of Plaintiffs' rental agreements.

---

and seek damages against them.  Both entities may be sued for damages in federal court under 42 U.S.C. § 1983 and are not subject to Eleventh Amendment sovereign immunity.  *See generally Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The Governor fails to see the difference between the enactment at issue in *Blaisdell* and HB 4401; that difference is critical, and it is why this case is controlled by *W.B. Worthen Co. ex rel Bd. of Com'rs of Street Imp. Dist. No. 513 of Little Rock, Ark. v. Kavanaugh*, 295 U.S. 56, 55 S. Ct. 555, 79 L. Ed. 1298 (1935). There, the Court reached the exact opposite conclusion as in *Blaisdell*, assessing a foreclosure moratorium enacted for the same reason, at close to the same time, to address the same "legitimate public purpose." But the moratorium in *Worthen* was held to be *unreasonable* because the state legislature, in enacting the moratorium, showed a "studied indifference" to the interests of obligees. *East N.Y. Sav. Bank v. Hahn*, 326 U.S. 230, 234, 66 S. Ct. 69, 90 L. Ed. 34 (1945). That is because the moratorium challenged in *Blaisdell* made some accommodation to mortgagees—it required mortgagors to pay the equivalent of "rent" during the moratorium period and required a "proper showing of necessity" before staying the foreclosure. *Worthen*, 295 U.S. at 63. That was not the case in *Worthen*. *Id.* ("None of these restrictions, nor anything approaching them, is present in this case."). Thus, the Court, in *East New York Savings Bank*, characterized the enactment in *Worthen* as displaying a "studied indifference" to the needs of property owners and announced a test for when that "studied indifference" is present: where the government can show that action was the result of "[1] frequent reconsideration, [2] intensive study of the consequences of what has been done, [3] readjustment to changing conditions, and [4] safeguarding the future on the basis of reasonable forecasts," the government action is not the result of "studied indifference" and possesses the requisite "reasonableness" to survive Contracts Clause scrutiny. 326 U.S. at 234–35. Where those factors are absent, and where an eviction or foreclosure moratorium looks more like that in *Worthen* than that in *Blaisdell*, the moratorium is unreasonable and unconstitutional.

HB 4401's eviction moratorium is unreasonable and thus violates the Contracts Clause for the very reason the foreclosure moratorium in *Worthen* could not pass muster: the law makes zero accommodation for landlords, including Plaintiffs. By showing what the Supreme Court has labeled "studied indifference" to the needs of landlords, the eviction moratorium constitutes an unreasonable and substantial impairment of Plaintiffs' rental agreements. The moratorium is

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

not the product of "the empiric process of legislation at its fairest[.]"  *East N.Y. Sav. Bank*, 326

U.S. at 234.  Rather, it is the product of a closed legislative session with almost no public input,

done over one day, and without the benefit of ongoing study and analysis.  Thus, there has been

no "frequent reconsideration."  *Id.*  There were frequent renewals and reauthorizations, but the

basic outline of the eviction moratorium—no evictions, no late fees, grace period following the

end of the pandemic—went largely unchanged for most of 2020.  When the Eviction Moratoria

were actually revised, they were made *worse* for Plaintiffs.  The most significant change to HB

4401 from HB 4213 was the elimination of Plaintiffs' erstwhile rights to pursue judgments for

breach of contract against tenants.  Similarly, there has also been no "readjustment to changing

conditions"—at least not in a way that has ever made the Eviction Moratoria more reasonable to

obligees.  HB 4401 imposed, for the first time, a requirement that tenants actually state, under

penalty of law, that they are withholding rent because they lack the means to pay it.  *See* FAC,

Ex. 11.  But that is cold comfort for Plaintiffs who, also by terms of HB 4401, cannot challenge

or otherwise probe the veracity of those statements.  Thus, the Eviction Moratoria remain overly

broad, freeing all tenants statewide from the obligation of paying rent, whether they can afford to

or not.  That hardly amounts to a "readjustment to changing conditions," much less the requisite

reasonableness the Eviction Moratoria must demonstrate to evade constitutional scrutiny.

There has also been no "intensive study of the consequences of what has been done."  To

establish that any study was undertaken for purposes of this motion, the Governor must rely on

the facts alleged in the First Amended Complaint or the face of the enactments at issue here—

and neither source supports that either the Governor or Legislative Assembly acted accordingly.

For the same reason, the Governor has not undertaken efforts to "safeguard[] [Plaintiffs'] future

on the basis of reasonable forecasts"—because the state government has not made *any* forecasts,

reasonable or otherwise.  *See* FAC ¶¶ 19–33. The state's eviction moratorium—now in the form

of HB 4401—shows the very same "studied indifference" to Plaintiffs as the enactment at issue

in *Worthen* showed to obligees there: there is no requirement that tenants pay any amount of rent

to Plaintiffs—much less a court-determined "reasonable" rent, as in *Blaisdell*—nor are tenants

4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

required to make any "proper" showing of necessity, as Plaintiffs cannot demand *any* showing from tenants to support their hardship declarations.  For that reason, *Worthen*, not *Blaisdell*, is the controlling Supreme Court precedent here, and *Worthen* counsels that this Court must enjoin HB 4401 to prevent an unreasonable infringement of Plaintiffs' Contracts Clause rights.

> **2.      The municipal moratoria violate Plaintiffs' Contracts Clause rights because they substantially impair the obligations of Plaintiffs' rental agreements and do not do so in a "reasonable" way.**

Apart from advancing similar arguments as Governor Brown concerning whether or not the County and City moratoria are "reasonable," the County and City also claim their enactments do not "substantially impair" Plaintiffs' contracts.  The County and City premise their reasoning on the assertion that residential housing is a "highly regulated" industry, so any impairments of residential rental contracts are presumed to be insubstantial.  The County and City thus bypass the three-part test for "substantial impairment" from *Sveen* altogether.

The County and City rely on the notion that residential housing is "highly regulated." The industries typically considered to be "highly regulated" are insurance and public utilities. *See, e.g., Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir. 2003); *E. Spire Communications, Inc. v. Baca*, 269 F. Supp 3d 1310 (D. N.M. June 12, 2003).  Compared to those industries, residential housing is not "highly regulated" at all.  There is no state rental commissioner, *see* ORS chapter 731 (setting role and duties of Oregon Insurance Commissioner) much less an entire state agency devoted to overseeing residential housing, *see* ORS chapter 756 (setting role and duties of Public Utility Commission).  The prices of rental housing are not set at the state level.  *Compare* ORS 91.225 *with* ORS 737.207 and 757.210.  And no jurisdiction—not the City, County, or State—maintains a comprehensive database of landlords, much less tenants. Residential housing therefore bears none of the hallmarks of other "highly regulated" industries.

At most, the County and City can point to ORS chapter 90, the Residential Landlord and Tenant Act, as well as scattered provisions of the county and city codes.  But the presence of some enactments applicable to an industry does not make that industry "highly regulated."  The Uniform Commercial Code, found in ORS chapter 79, regulates all contracts for the sale of

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

goods—but every business that engages in the sale of goods is not "highly regulated." Neither is residential housing. For that reason, this Court should consult the three-factor test from *Sveen* to determine whether the County and City moratoria[3] constitute a "substantial impairment" of Plaintiffs' rental agreements.

When determining whether governmental action works a "substantial impairment" of private contracts, courts consider "the extent to which [1] the law undermines the contractual bargain, [2] interferes with a party's reasonable expectations, and [3] prevents the party from safeguarding or reinstating his rights[.]" *Sveen*, 138 S. Ct. at 1821.

The contracts at issue here are standard residential rental agreements. FAC ¶ 35. The main bargain at the center of those agreements is simple: tenants pay rent, and, in exchange, they are entitled to possession of the premises. Like most contracts, the contracts at issue here contain additional terms the parties can bring to bear on one another in the event one or the other fails to comply with that essential bargain. For example, in non-moratorium times, Plaintiffs would face legal consequences in the event they dispossess any of their tenants who are current on rent and in compliance with the other terms of the rental agreement: the tenants could sue for breach of contract, and they could avail themselves of statutory remedies to secure an award of damages and penalties against Plaintiffs. On the other side of the ledger, if their tenants fail to pay rent, Plaintiffs could also sue for breach of contract, Plaintiffs could seek to recover late fees or other penalties for nonpayment, and Plaintiffs could normally retake possession of their properties by availing themselves of the state's forcible entry and detainer statutes and re-let them to tenants willing to pay rent.

The reason the local eviction moratoria violate the Contracts Clause is because they leave in place every term providing benefits to tenants and take away almost every term providing

---

[3] Because Governor Brown conceded that HB 4401 created a "substantial impairment" by focusing only on the "reasonableness" element, Plaintiffs do not address that issue here. But Plaintiffs do note that the statewide moratorium shares the qualities of the County and City moratoria amounting to a "substantial impairment" by waiving tenants' duties to pay timely rent or face eviction, late penalties, and claims for payment of back rent.

Page 18 - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

benefits to Plaintiffs.  Plaintiffs are left with no legal recourse to pursue tenants' violations of the key payment provisions of their rental agreements, but Plaintiffs' tenants are entitled to remain in possession regardless of whether they have paid rent or other expenses.  The local moratoria thus impair the obligations of Plaintiffs' rental agreements in three regards: (1) preventing Plaintiffs from retaking possession whenever their tenants fail to pay rent or other expenses; (2) preventing Plaintiffs from charging their tenants late fees or other penalties for nonpayment of rent or other expenses; and (3) preventing Plaintiffs from pursuing judgments for breach-of-contract against their tenants while the tenants remain in possession by virtue of the eviction moratoria.

Each of the above impairments easily clears the threshold for "substantiality" in *Sveen*. 138 S. Ct. at 1821.  ***First***, each impairment undermines the contractual bargain at the center of the rental agreements: rent for possession.  FAC ¶ 36.  By taking those rights from Plaintiffs but leaving tenants' rights to retain possession of Plaintiffs' premises intact, the municipal moratoria undermine Plaintiffs' contractual bargains with their tenants.

***Second***, the municipal moratoria interfere with Plaintiffs' reasonable expectations with regard to their rental agreements because, like all landlords, Plaintiffs expected that they would be able to continue to charge their tenants rent in exchange for possession.  Plaintiffs cannot do that.  That Plaintiffs may, at some unspecified point in the future, at least attempt to recoup all of the accumulated back rent from tenants does not change this analysis.  Plaintiff's likelihood of recovering those amounts is close to zero percent.  *See* FAC ¶ 3.  Thus, regardless of the local eviction moratoria's contemplation of some future rent reconciliation, they nevertheless work a substantial impairment of Plaintiffs' rental agreements because they interfere with Plaintiffs' reasonable expectations to receive payment in exchange for possession of their properties.

***Third***, for the very same reasons that the municipal moratoria interfere with Plaintiffs' reasonable expectations, the municipal moratoria also prevent Plaintiffs from taking any action to safeguard or reinstate their interests: that is, the municipal moratoria do not merely work a temporary delay of Plaintiffs' rights to monthly rent and other expenses, with Plaintiffs simply having to wait to receive all outstanding amounts at some future date.  The municipal moratoria

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

eviscerate a year and a half's worth of revenue—not just profits, but *revenue*.  Even if Plaintiffs do eventually obtain that revenue, Plaintiffs will have been deprived of the interest it would have earned over the past fifteen months; without the ability to sue and secure post-judgment interest, Plaintiffs will never recover those sums.  Moreover, the municipal moratoria do not even purport to allow Plaintiffs to sue for recovery of late fees or penalties that would have otherwise been assessed to tenants for late payments or nonpayment of rent and other expenses.  *See* FAC, Exs. 7, 9.  Thus, setting aside the practical value of the illusory safeguards the local moratoria purport to provide with respect to rent and other expenses, *as a matter of law*, Plaintiffs have no recourse for safeguarding or reinstating their rights to amounts compensating them for the time-value of money they are lawfully owed.  For that reason, and for those listed above, Plaintiffs' agreements with their tenants have been substantially impaired by the County's and City's local moratoria.  That impairment is unreasonable for the same reason the statewide moratorium is unreasonable, which is also why the moratorium in *Worthen* was unreasonable: each of the moratoria shows "studied indifference" to the needs of Plaintiffs.  They therefore all violate the Contracts Clause.

        **D.**       **Plaintiffs allege a cognizable takings claim.**

The Governor, County, and City all argue that Plaintiffs fail to state a plausible claim for a *per se* taking under either *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982) or *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992).  Defendants claim that Plaintiffs' allegations fail to establish either that the Eviction Moratoria amount to a permanent physical occupation or a complete deprivation of any economically beneficial use.

The City takes its arguments against Plaintiffs' takings claim a step further and argues that Plaintiffs cannot seek equitable relief under the Fifth Amendment—that the only remedy for a public taking of private property is just compensation.

All Defendants overstate the case law on this subject and fail to account for situations, as in this case, in which governments have so overstepped their police powers as to require restraint from the federal courts.  Several decisions of the U.S. Supreme Court and the Ninth Circuit lend

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

support to Plaintiffs' claims and establish the plausibility of Plaintiffs' allegations under the Fifth Amendment.

> ### 1.    Plaintiffs properly allege a *per se* taking.

The Supreme Court has acknowledged the existence of two categories of *per se* takings—regulations that are automatically "compensable without case specific inquiry into the public interest advanced in support of the restraint." *Lucas*, 505 U.S. at 1015.  "The first [category] encompasses regulations that compel the property owner to suffer a physical 'invasion' of his property. . . . The second . . . is where regulation denies all economically beneficial or productive use of land." *Id.*  The first category of regulations is deserving of special attention because it "does not simply take a single 'strand' from the 'bundle' of property rights: it chops through the bundle, taking a slice of every strand." *Loretto*, 458 U.S. at 435.  The second category, however, takes only one "strand" of the bundle of property rights: the right to use. *Id.* ("Property rights in a physical thing have been described as the rights 'to possess, use and dispose of it.'"); *see also Lucas*, 505 U.S. at 1017 ("[T]otal deprivation of beneficial use is, from the landowner's point of view, the equivalent of a physical appropriation.  For what is the land but the profits thereof?") (internal citations, quotation marks omitted).

The right to exclude others from one's property is both a foundational and an essential aspect of property ownership. *Dolan v. City of Tigard*, 512 U.S. 374, 394, 114 S. Ct. 2309, 129 L.Ed.2d 304 (1994); *Kaiser Aetna v. United States*, 444 U.S. 164, 179–80, 100 S. Ct. 383, 62 L.Ed.2d 332 (1979) (right to exclude others is one of the "essential sticks" in the bundle of property rights).  Indeed, "the hallmark of a protected property interest is the right to exclude others." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999).  It is the "*sine qua non*" of property rights, as, without it, all other rights in property are "purely contingent."  Thomas W. Merrill, *Property and the Right to Exclude*, 77 Neb. L. Rev. 730, 730–31 (1998).

In *Cedar Point Nursey v. Shiroma*, 923 F.3d 524 (9th Cir. 2019), the plaintiff growers argued that a state law allowing labor organizations limited access onto the growers' properties

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

for roughly 120 days a year effected a *per se* taking because it was akin to physical invasion. 923 F.3d at 532–33.  The Ninth Circuit disagreed, noting that the state's regulation "would [not] constitute a *per se* taking because the sole property right affected by the regulation is the right to exclude." *Id.* at 532.  However, one member of the panel dissented specifically on the grounds that any regulation affecting the "right to exclude" ought to be treated as a *per se* taking.  *Id.* at 538 (Leavy, J., dissenting) ("[T]he Access Regulation allowing ongoing access to Growers' private properties, multiple times a day for 120 days a year is a physical, not regulatory, occupation because the 'right to exclude' is 'one of the most fundamental sticks' in the bundle of property rights.").  On November 13, 2020, the United States Supreme Court granted review of the Ninth Circuit's decision in *Cedar Point*, *see Cedar Point Nursery v. Hassid*, 141 S. Ct. 844, 208 L.Ed.2d 414 (Mem) (2020), suggesting the Court intends to carefully examine the *Cedar Point* majority's reasoning and potentially adopt Judge Leavy's view that such an abridgment of the right to exclude amounts to a *per se* taking violating the Fifth and Fourteenth Amendments. On March 22, 2021, the Court heard oral argument in *Cedar Point*, and several of the Justices' questions indicated the Court's willingness to rule in favor of the growers.

The Eviction Moratoria are, in many respects, much more extreme than the enactment at issue in *Cedar Point*: whereas in *Cedar Point* the regulations permitted access only 120 days per year, and even then only during certain, articulated hours of the day, *see* 923 F.3d at 528, the Eviction Moratoria allow non-paying tenants to remain in possession of Plaintiffs' properties 24 hours a day, 7 days a week, 365 days of the last year.  Further, the *Cedar Point* regulations also provided pre-deprivation notice to property owners, *see id.*, a feature that is conspicuously absent from the Eviction Moratoria.  Rather than provide tenants in need with an affirmative defense or a safe harbor from eviction, which would have included a pre-deprivation notice and hearing to Plaintiffs through normal court operations, *see* section F.2, *infra*, Defendants elected to stop all evictions across the state at once—without any advance notice to Plaintiffs.

For those reasons, Plaintiffs properly allege a *per se* taking.

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

2.      **Even if this Court disagrees with Plaintiffs' *per se* takings analysis, this Court should nonetheless grant Plaintiffs leave to re-plead their claims.**

"When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002) (internal citation omitted). "Thus, compensation is mandated when a leasehold is taken and the government occupies the property for its own purposes, even though that use is temporary." *Id.* (citing, *inter alia, U.S. v. General Motors Corporation*, 323 U.S. 373, 65 S. Ct. 357, 89 L. Ed. 311 (1945)). Compensation is required for a temporary taking even when accomplished in times of great national emergency. *See Arkansas Game and Fish Com'n v. U.S.*, 568 U.S. 23, 32, 133 S. Ct. 511, 184 L. Ed. 2d 417 (2012) ("In support of the war effort, the Government took temporary possession of many properties[, and these] exercises of government authority, the Court recognized, qualified as compensable temporary takings.").

A physical occupation of property occurs when every "'strand' from the 'bundle' of property rights" has been "chop[ped] through . . . taking a slice of every strand[.]" *Loretto*, 458 U.S. at 435. The condemnation of a leasehold interest—that is, a government's appropriation of a term lease to use the lease premises for its own purposes—is a physical occupation of property amounting to a compensable taking. *General Motors Corp.*, 323 U.S. at 376; *U.S. v. Petty Motor Co.*, 327 U.S. 372, 66 S. Ct. 596, 90 L. Ed. 729 (1946).

The Eviction Moratoria satisfy the standard for a physical occupation, and thus a *per se* taking, because they "chop[] through the bundle" of Plaintiffs' property rights, "taking a slice of every strand" identified in *Loretto*:

> First, the owner has no right to possess the occupied space himself, and also has no power to exclude the occupier from possession and use of the space. . . . Second, the permanent physical occupation of property . . . denies the owner any power to control the use of the property; he not only cannot exclude others, but can make no nonpossessory use of the property. . . . Finally, even though the owner may retain the bare legal right to dispose of the occupied space by transfer or sale, the permanent occupation of that space

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

> by a stranger will ordinarily empty the right of any value, since the
> purchaser will also be unable to make any use of the property.

458 U.S. at 435–36.  While *Loretto* is best known for establishing the categorical requirement

that *permanent* physical occupations require compensation regardless, the Court there also noted

that *temporary* physical occupations can also give rise to takings claims.  *Id.* at 435 n. 12.  *See*

*also Arkansas Game*, 568 U.S. at 32–33.  If this Court is unwilling to allow Plaintiffs to proceed

under the *per se* theory advanced in *Cedar Point* and currently before the U.S. Supreme Court, it

should nonetheless grant Plaintiffs leave to re-plead their Fifth Amendment claims as an *ad hoc*,

temporary taking under the cases cited above.

### 3. Federal courts can enjoin takings pursuant to the Fifth Amendment, and this Court should do so here.

Finally, the City has asserted that the exclusive remedy the Fifth Amendment's Takings

Clause provides is just compensation.  But federal courts can enjoin government attempts to take

private property when the government fails to satisfy the "public use" requirement of the Takings

Clause.  *See Ross v. City of Berkeley*, 655 F. Supp. 820, 839–40 (N.D. Cal. Feb. 25, 1987).  The

standard for court intervention in the deliberate exercise of eminent domain powers is admittedly

high: "deference to the legislature's 'public use' determination is required 'until it is shown to

involve an impossibility.'"  *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 240, 104 S. Ct.

2321, 81 L. Ed. 2d 186 (1984) (citing *Old Dominion Land Co. v. United States*, 269 U.S. 55, 66,

46 S. Ct. 39, 70 L. Ed. 162 (1925)).

However, the Ninth Circuit has suggested "that this extremely rigorous standard [from

*Midkiff*] is possibly inappropriate in cases where the taking did not occur pursuant to a deliberate

exercise of the state's eminent domain authority."  *Ross*, 655 F. Supp. at 840 (citing *Hall v. City*

*of Santa Barbara*, 797 F.2d 1493, 1502 (9th Cir. 1986)).  Indeed, the Ninth Circuit in *Hall* notes

that "[t]he *Midkiff* Court left open the possibility that less deference would be afforded where

government does not intend to effect a taking than where it does."  797 F.2d at 1503 (citing

*Midkiff*, 467 U.S. at 241).  The Ninth Circuit explained that

> [i]t makes considerable sense to give greater deference to the
> legislature where it deliberately resorts to its eminent domain

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

> power than where it may have stumbled into exercising it through
> actions that incidentally result in a taking. In the former case, the
> court is validating the will of the legislature; in the latter, it may be
> thwarting the legislative will by ordering compensation where the
> legislature had no intention of engaging in a compensable
> transaction.

*Id.* at 1503 n. 25.

Of paramount importance here is that Plaintiffs could succeed under either the stringent standard of *Midkiff* or the more relaxed standard alluded to in *Hall* and left open by the Court in *Midkiff*. **First**, Plaintiffs have alleged facts capable of showing that Defendants could not have "*rationally . . . believed* that the [Eviction Moratoria] would promote [their] objective" absent some form of compensation to landlords. *Midkiff*, 467 U.S. at 242 (emphasis in original). That is, without payment of tenants' back rent, tenants are doomed to ultimately be evicted. FAC ¶ 3. Moreover, the looming July 1, 2021 deadline ensures that tenants will face mass evictions during the course of the COVID-19 pandemic. Thus, by their plain language, the Eviction Moratoria do not satisfy the "public use" requirement because they "involve an impossibility." *Midkiff*, 467 U.S. at 240. Because the Eviction Moratoria are patently incapable of achieving their professed "public use," they violate the public use requirement of the Takings Clause and may be enjoined.

**Second**, the Eviction Moratoria were not an intended use of the Defendants' eminent domain powers because none of those enactments demonstrate an "intention of engaging in a compensable transaction." *Hall*, 797 F.2d at 1503 n.25. Rather, Defendants maintain the fantasy that tenants will be able to repay their back rent and no taking will occur; that argument is not in accord with the facts alleged. *See* FAC ¶ 3. At this stage, this Court must accept those facts, and any reasonable inferences therefrom, as true. Thus, the Eviction Moratoria are closer to the kind of government action that the Ninth Circuit described in *Hall*: rather than deliberately exercising their eminent domain powers, a legislative exercise to which this Court ought to afford a degree of deference under *Midkiff*, Defendants have instead "stumbled into exercising [eminent domain] through actions that incidentally result in a taking" and thus "had no intention of engaging in a compensable transaction." 797 F.2d at 1503 n. 25. For that reason, *Midkiff*—which involved an

express exercise of the legislature's eminent domain power—does not control here, and a less deferential standard may apply.[4]  Because Plaintiffs allege facts sufficient to state a claim under the heightened standard of *Midkiff*, they also allege facts sufficient to do so under any standard that may be more forgiving.  Plaintiffs therefore properly state a claim for injunctive relief under the Fifth Amendment.

> **E.    Plaintiffs' price control claim under the Fourteenth Amendment is not a substantive due process claim and need not be dismissed because Plaintiffs advance additional causes of action.**

While Governor Brown does not appear to move against Plaintiffs' claim asserted under the Fourteenth Amendment's Due Process Clause, both the County and the City move to dismiss that claim on the grounds that, as a substantive due process claim, it must be dismissed because it is duplicative of Plaintiffs' other claims.[5]

Both the County and the City mischaracterize Plaintiffs' allegations.  Plaintiffs' claim is not duplicative of their other causes of action, nor is it subject to dismissal because other portions of the U.S. Constitution provide for more specific remedies for the injuries alleged.  Plaintiffs allege the municipal moratoria violate the long-standing and well-developed standard for price controls under the Fourteenth Amendment—no other constitutional provision has been held to address price controls, and Plaintiffs are not obliged to proceed under any other constitutional provision.  That the County and City moratoria violate several of Plaintiffs' constitutional rights is not a problem for Plaintiffs—it is a problem for the County and the City.  *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 62, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.  Where such multiple violations are alleged, we are not in the habit of identifying as

---

[4] The Ninth Circuit in *Hall* suggested—but stopped short of establishing—that the appropriate standard may be borrowed from *Agins v. City of Tiburon*, 447 U.S. 255, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980), that is: whether the government action "substantially advance[s] legitimate state interests[.]"  797 F.2d at 1502.

[5] Although Governor Brown does not assert these arguments in her motion to dismiss, Plaintiffs note that their responses to the County's and City's motions apply equally to the statewide moratorium.

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

a preliminary matter the claim's 'dominant' character.  Rather, we examine each constitutional provision in turn.")

"An ordinary rent control law is constitutionally indistinguishable from a price control law."  *Chevron, USA v. Cayetano*, 224 F.3d 1030, 1043 (9th Cir. 2000) (Fletcher, J., concurring) ("Rent control involves a price charged for real property, just as price control involves a price charged for personal property.").  "The standard for determining whether a state price-control regulation is constitutional under the Due Process Clause [of the Fourteenth Amendment] is well established:  'Price control is unconstitutional if arbitrary, discriminatory, or demonstrably irrelevant to [a] policy the legislature is free to adopt.'"  *Pennell v. City of San Jose*, 485 U.S. 1, 11, 108 S. Ct. 849, 99 L. Ed. 2d 1 (1988) (internal citations omitted, alterations normalized).

Whether a price-control regulation is "arbitrary" depends on whether the prices fixed under the regulatory scheme afford the regulated entities a "just and reasonable" return or are confiscatory—that is, too low for the regulated entities to receive a "just and reasonable" return. *Nebbia v. People of New York*, 291 U.S. 502, 530, 54 S. Ct. 505, 78 L. Ed. 940 (1934) (setting out, for the first time, the "arbitrary, discriminatory, or irrelevant" standard and holding that the maximum prices set for milk were not "arbitrary" because they afforded farmers, distributors, and retailers a "just" return).

Courts have relied on varying tests and standards to determine whether a price control regulation affords a "just and reasonable" return, *see, e.g., Chevron USA*, 224 F.3d at 1043–45 (Fletcher, J., concurring) (cataloguing cases), but the Supreme Court—and lower courts—have consistently relied on one specific test as meeting this constitutional standard: that articulated in *Federal Power Commission v. Hope Natural Gas*, 320 U.S. 591, 603, 64 S. Ct. 281, 88 L. Ed. 333 (1944) (the *Hope* doctrine).  *See In re Permian Basin Area Rate Cases*, 390 U.S. 747, 769–70, 88 S. Ct. 1344, 20 L. Ed. 2d 312 (1968) ("[Any] maximum rates must be calculated for a regulated [commodity] in conformity with the pertinent constitutional limitations.  Price control is unconstitutional if arbitrary, discriminatory, or demonstrably irrelevant to the [legitimate state policy].  Nonetheless, *the just and reasonable standard of the Natural Gas Act 'coincides with*

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*the applicable constitutional standards*.") (emphasis added) (internal citations omitted).  The *Hope* Doctrine is the Supreme Court's construction of the "just and reasonable" standard from the Natural Gas Act.  *Hope Natural Gas*, 320 U.S. at 603.  Thus, the *Hope* Doctrine represents the constitutional standard for whether the price set by a price control is "arbitrary" and therefore determines whether a price control passes constitutional muster.

Multiple state supreme courts have held that the *Hope* Doctrine applies to rent control, as it is a form of price control.  *See, e.g., Birkenfeld v. City of Berkeley*, 550 P.2d 1001, 1027 (Cal. Sup. Ct. 1976) ("The [rent control] provisions are within the police power if they are reasonably calculated to eliminate excessive rents and at the same time provide landlords with a just and reasonable return on their property.") (citing, *inter alia*, *Hope Natural Gas*, 320 U.S. at 602); *Property Owners Ass'n of North Bergen v. North Bergen Tp.*, 378 A.2d 25, 29 (N.J. Sup. Ct. 1977) ("In ordinary circumstances, price controls which do not permit an economically efficient operator to obtain a 'just and reasonable' return on his investment are deemed confiscatory.").

The County and City moratoria have created circumstances from which Plaintiffs cannot escape: absent any meaningful rent assistance from the government, tenants have accrued a year or more of back rent that they are required to repay immediately on July 1, 2021.  Tenants who could not afford to pay rent as it became due are not likely to be able to pay accumulated rent on the deadline the County and City have imposed.  FAC ¶ 3.  As a result, Plaintiffs are unlikely to receive rent for the months during which the municipal moratoria were in effect.  *Id.*  For many units, the municipal moratoria thus set the effective controlled rent at $0 for over a year.  *Id.* at ¶ 52.  That is a price control.

And that price control fails under the *Hope* doctrine because Plaintiffs have alleged facts showing that they cannot

> pay their mortgages; pay debt service on past capital projects; maintain, repair, and otherwise keep up their properties under applicable housing codes; pay utilities—in many cases, on their tenants' behalf; pay property taxes to the very entities that are limiting Plaintiffs' ability to pay anything; pay property management costs; and still project enough confidence in the their

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

businesses to attract investors, suppliers, and other business partners.

FAC ¶ 52.   Those allegations are sufficient to allege a violation of the *Hope* doctrine:

> [T]here be enough revenue not only for operating expenses but also for the capital costs of the business.  These include service on the debt and dividends on the stock.  By the standard the return to the equity owner should be commensurate with returns on investments in other enterprises having corresponding risks.  That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital.

*Hope Natural Gas*, 320 U.S. at 603.

For that reason, in addition to alleging violations of the Contracts Clause of Article I, section 10 and the Takings Clause of the Fifth Amendment, Plaintiffs also sufficiently allege that the municipal moratoria violate the Due Process Clause of the Fourteenth Amendment because County and City moratoria amount to confiscatory price controls that fail to provide Plaintiffs a "just and reasonable" return on their properties.

>    **F.**    **Plaintiffs state a cognizable Fourth Amendment claim because the Eviction Moratoria constitute a meaningful governmental interference with their properties.**

Defendants take a scattershot approach to attacking Plaintiffs' Fourth Amendment claim. Their arguments generally focus on whether Plaintiffs allege the "meaningful interference" with their properties required for government action to be considered a seizure and also whether their allegations sufficiently demonstrate something more than private interference.  All Defendants compare the Eviction Moratoria to more acceptable forms of housing regulation, including "just cause" evictions and relocation fees.

Where Defendants' arguments fall short is in their failure to walk through every step of the Fourth Amendment analysis and in their overreliance on both the Ninth Circuit's decision in *Cedar Point* and the Supreme Court's decision in *Karo*—cases that are distinguishable from the circumstances here because the "interferences" at issue there were nothing like those at issue in this case.  Thus, it is not *Cedar Point* or *Karo* that supplies the relevant rule of decision here— rather, it is *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 114 S. Ct. 492, 126 L. Ed. 2d

4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

490 (1993).  In that case, the state government civilly seized an individual's rental property and continued to operate the property as a rental; the government decided who the renters would be and what amount of rent they would pay.  That the property contained renters did not convert the government action into private action, nor did it avoid the conclusion that the government action was a seizure under the Fourth Amendment.  *Id.* at 52, 62.

The Fourth Amendment of the Constitution "protects property as well as privacy[,]" including those "possessory interests where neither privacy nor liberty [is] at stake."  *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992).  Thus, "seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the [Fourth] Amendment has taken place."  *Id.* at 68.  Additionally, "the [Fourth] Amendment's protection applies in the civil context as well."  *Soldal*, 506 U.S. at 67.

To succeed on a claim that a government's seizure of property in a noncriminal context violates the Fourth Amendment and thus entitles a plaintiff to relief under 42 U.S.C. § 1983, the plaintiff must show that a seizure occurred and that the seizure was unreasonable.  *Soldal*, 506 U.S. at 61–62.  A seizure occurs when the government effects "some meaningful interference with an individual's possessory interests in [the] property" in question.  *U.S. v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).  A seizure is unreasonable in the civil context if the seizure fails to comply with the Due Process clauses of the Fifth and Fourteenth Amendments and no exigent circumstances apply.  *James Daniel Good Real Property*, 510 U.S. at 52, 62.

> **1.    The Eviction Moratoria resulted in a meaningful interference with Plaintiffs' possessory interests in their properties by preventing Plaintiffs from excluding tenants who have not paid rent.**

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *Jacobsen*, 466 U.S. at 113.  The government effects a "meaningful interference" with real property when it makes decisions about occupancy, rent, and eviction.  *James Daniel Good Real Property*, 510 U.S. at 49 ("The Government does not, and could not, dispute that the seizure of Good's home and 4-acre parcel deprived him of

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

property interests[.] . . . By the Government's own submission, the seizure gave it the right to charge rent, to condition occupancy, and even to evict the occupants."); *see also id.* at 54 ("The seizure deprived Good of valuable rights of ownership, including the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents.").

Defendants' unwarranted, mass civil seizures of Plaintiffs' properties accomplished by the Eviction Moratoria amount to a "meaningful interference" with Plaintiffs' properties under *James Daniel Good* because the moratoria allow Defendants to decide who occupies Plaintiffs' properties, whether those individuals need to pay, when the individuals must pay rent arrearages and whether those individuals may be evicted. In essence, Defendants possess and control the properties as if the properties were Defendants'. As in *James Daniel Good Real Property*, the Eviction Moratoria have deprived Plaintiffs of "valuable rights of ownership, including . . . the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents." 510 U.S. at 54. Under any sensible construction of the Fourth Amendment, that amounts to a "meaningful interference."

> **2.    Defendants' seizure of Plaintiffs' properties by means of the Eviction Moratoria was unreasonable because the property interests the seizure invaded are significant, and the risk that Plaintiffs would be erroneously deprived of those interests outweighs any burden on the government of affording Plaintiffs due process.**

As a general proposition, determining whether a seizure is reasonable requires a court to balance the nature and the quality of the intrusion on the Fourth Amendment interests implicated by the government's actions against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). In the specific context of civil seizures of real property not made as part of a criminal investigation, the reasonableness inquiry begins with whether the government's challenged actions afforded the plaintiff sufficient due process as measured by the Fifth and Fourteenth Amendments. *James Daniel Good Real Property*, 510 U.S. at 52 ("Here the Government seized property not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself. Our cases establish that government action of this consequence must comply with the Due Process Clauses of the Fifth

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

and Fourteenth Amendments."); *see also Sandoval v. County of Sonoma*, 912 F.3d 509, 522 (9th Cir. 2018) ("When the government seeks to obtain property through forfeiture, it must comply not only with the demands of the Fourth Amendment but also with those of the Due Process Clause.") (Watford, J., concurring).

Under most circumstances, pre-deprivation notice and a hearing are required to comply with constitutional notions of due process. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 81–82, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972). However, the Supreme Court has recognized that some exceptions may be allowed in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Id.* at 82 (internal quotation marks omitted). In determining whether a civil seizure is exempt from the requirement that the government provide pre-deprivation notice and a hearing, "[t]he three-part inquiry set forth in *Matthews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), provides guidance[.]" *James Daniel Good Real Property*, 510 U.S. at 53. Applying *Matthews*, courts must consider (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, including the likely value of additional safeguards; and (3) the government's interest at stake, including the administrative burden that additional procedural requirements would impose. 424 U.S. at 335.

The Eviction Moratoria amount to an unreasonable seizure of Plaintiffs' properties because they materially invaded nearly all of Plaintiffs' possessory interests in those properties without giving Plaintiffs the benefits of notice or a hearing. Rather that rendering a mass *diktat* effectively converting all rental housing in the state into government housing, Defendants could have proceeded cautiously, on a case-by-case basis, affording Plaintiffs opportunities for notice and a hearing through the normal operation of the state courts. Had the Eviction Moratoria given tenants unable to afford rent as a result of the pandemic—or as a result of the government's shuttering of their employers—an affirmative defense to eviction that tenants could assert by phone or video under oath, Defendants would not only have provided Plaintiffs with notice and a hearing, but they would have minimized chances for Plaintiffs to be erroneously deprived of

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

their property interests by, for example, tenants who could afford to pay rent but choose not to. Unfortunately, the Eviction Moratoria were not so nuanced in their application, and the effect on Plaintiffs has been a seizure of their real property with no notice, no hearing, and no due process.

Neither do the Eviction Moratoria satisfy the *Matthews* standard for circumstances in which the absence of a pre-deprivation hearing is justified and due process therefore satisfied. ***First***, Plaintiffs' interests affected by the official action are "private interest[s] of historic and continuing importance." *James Daniel Good Real Property*, 510 U.S. at 53–54. The official action impacts every "strand" in the property ownership "bundle of rights," including, as was true in *James Daniel Good Real Property*, "the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents." *Id.* at 54. In prior cases, the Court has "held that the loss of kitchen appliances and household furniture was significant enough to warrant a predeprivation hearing." *Id.* (citing *Fuentes*, 407 U.S. at 70–71). If the personal property in one home was sufficient, surely the possession of dozens of homes meets the *Matthews* standard for a sufficiently important private interest.

***Second***, the risk of erroneous deprivations of the above rights is profound: it was not until December 23, 2020—the effective date of HB 4401—that the Eviction Moratoria even required tenants to state their actual need for eviction protection. But even that requirement cannot protect Plaintiffs against the erroneous deprivation of their rights to either receive rent or retake possession because HB 4401 does not permit Plaintiffs (or courts) to test the veracity of tenants' statements through the standard eviction process. Tenants need present no evidence to support their statements—and Plaintiffs can offer no evidence to contradict them. By dispensing with any hearing altogether, the Eviction Moratoria dramatically—and unnecessarily—increased the risk that Plaintiffs will be deprived of their property interests only for the benefit of tenants who are capable of paying their rent, or some portion thereof. For that reason, the second *Matthews* factor also favors Plaintiffs.

***Third***, *Matthews* requires this Court to consider the government's interest—not in seizing the properties at all, but, rather, in seizing the properties *before the opportunity for a hearing*.

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*James Daniel Good Real Property*, 510 U.S. at 56.  This factor exposes how needlessly intrusive the Eviction Moratoria are, as it was not enough for Defendants to seize Plaintiffs' properties in the normal course of the state court eviction process, which would have allowed Plaintiffs notice and a hearing.  Instead, Defendants chose to seize all of Plaintiffs' units at once, with no notices and no hearings.  That approach was unnecessary.  While Defendants, in the early stages of the pandemic, may have had a reason to keep tenants out of eviction courts that had not yet scaled up their use of technologies to allow for remote appearances, that concern evaporated months after the Eviction Moratoria were imposed—but the moratoria never changed.  Landlords, tenants, and their lawyers have been attending eviction court remotely for nearly a year.  *See* Chief Justice Order No. 20-016, *In the Matter of Imposing "Level 2" and "Level 3" Restrictions on Court Operations* (May 15, 2020) (allowing remote or "hybrid" appearances for eviction cases starting June 1, 2020).  It would have been little, if any, additional administrative burden for Defendants to provide Plaintiffs with notice and a hearing, and Defendants' public health interest in keeping Plaintiffs and their tenants out of court is vanishingly small as courts make use of technology to accommodate hearings.  For that reason, the third *Matthews* factor favors Plaintiffs as well.  The Eviction Moratoria thus fail to meet the *Matthews* standard justifying post-deprivation hearings and, as a result, they constitute unreasonable civil seizures that violate the Fourth Amendment.

> ### 3.    No exigent circumstances exist justifying the deprivation of Plaintiffs' property rights without due process.

As with every Fourth Amendment claim, a civil seizure may be considered "reasonable," and therefore within the boundaries of the Fourth Amendment, if some "exigent circumstances" exist to justify the lack of due process.  *See James Daniel Good Real Property*, 510 U.S. at 62 ("Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property[.]").  "The exigent circumstances exception is premised on 'few in number and carefully delineated' circumstances in which 'exigencies of the situation' make the needs of [government] so compelling that the [seizure] is objectively reasonable under the Fourth Amendment."  *U.S. v.*

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Struckman*, 603 F.3d 731, 743 (9th Cir. 2010) (quoting *United States v. United States District Court*, 407 U.S. 297, 318, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972)) (internal citation omitted). Exigent circumstances must amount to some "real[,] immediate[,] and serious consequences" if the challenged action is postponed, *see Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984), and "[t]he government bears the burden of showing specific and articulable facts to justify the finding of exigent circumstances." *U.S. v. Ojeda*, 276 F.3d 486, 488 (9th Cir. 2002).

While it is for Defendants to establish the existence of "real, immediate, and serious" consequences requiring Defendants to seize Plaintiffs properties immediately and without any judicial imprimatur, Plaintiffs would note that for the very reasons that the Eviction Moratoria cannot justify the denial of pre-deprivation notice and a hearing listed above, they also are not justified by the existence of exigent circumstances. There was simply no need for Defendants to act with the level of invasive force they did by means of the Eviction Moratoria. Rather than effect a mass civil seizure of every residential rental property in Oregon, Defendants could have provided all tenants in the state a "safe harbor" from eviction under certain circumstances and, in so doing, provided Plaintiffs with the level of due process the Constitution requires.

Thus, the Eviction Moratoria are qualitatively different from the enactments at issue in the cases Defendants cite holding that garden-variety housing regulations are not seizures under the Fourth Amendment. Were the Eviction Moratoria that kind of regulation, Plaintiffs would not have asserted this claim. Rather, the Eviction Moratoria operate like the actions at issue in *James Daniel Good Real Property*, where the government civilly seized an individual's rental property and made decisions about the operation of the property as though the property belonged to the government. That the property in question was occupied by a tenant did not transform the government's conduct into private action. For that reason, the conduct was a seizure. Because the seizure was not accompanied by notice and a hearing, it was unreasonable, and no exigent circumstances justified dispensing with notice and a hearing, which the government could have provided. All of those conditions are present here. Accordingly, Plaintiffs allege a valid Fourth

4836-9872-8671v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Amendment claim, and this Court should deny Defendants' motions seeking to dismiss that claim.

### G. Plaintiffs state an Access claim under the First Amendment because the Eviction Moratoria do not adjust underlying rights and duties but, rather, prevent Plaintiffs from asserting their existing legal rights.

Defendants uniformly mischaracterize Plaintiffs' fifth and final claim as though it were directed to a change in the underlying law; that is, each Defendant argues that Plaintiffs have no constitutional right to assert a particular claim for a particular remedy if the substantive law no longer provides for that claim or remedy. Defendants are mistaken. The underlying law has not changed; the substantive law continues to provide for claims of breach of contract or restoration of possession, and the remedies of eviction and damages remain available. What the moratoria accomplished was not changing the substantive law but, rather, unconstitutionally preventing Plaintiffs from availing themselves of that law—and therein lies Plaintiffs' access claim. That is the reasoning that has supported the creation and protection of the right of access to the courts in prior cases. *See, e.g., Christopher v. Harbury*, 536 U.S. 403, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002); *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004); *Borger Management, Inc. v. Abel Hernandez-Cruz, et al.*, No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020).

Thus, it remains a breach of Plaintiffs' rental agreements for their tenants to fail to pay rent but remain in possession of Plaintiffs' properties; the rental agreements are still enforceable and valid contracts, the rent is still owed (and accrues every month), and tenants remain liable for the rent debt. The only thing the moratoria has changed is that Plaintiffs cannot pursue claims in state court adjudicating tenants' liability for that debt and resulting in judgments for that debt in Plaintiffs' favor—even if those judgments are held in abeyance or otherwise not executed during the pandemic. Plaintiffs cannot even *file* those claims. And that inability to file matters because every other creditor in this state can file their claims, can litigate their claims to final judgment, and can even collect on their judgments—because the law of breach of contract has not changed. Only Plaintiffs' right to avail themselves of that law has changed. By depriving Plaintiffs of the

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

same courts and the same law as every other similarly situated creditor, the Eviction Moratoria violate Plaintiffs' "fundamental right of access to the courts[.]" *Lane*, 541 U.S. at 533–34. For that reason, Plaintiffs state a cognizable First Amendment claim, and this Court should deny all of Defendants' motions arguing to the contrary.[6]

## H. This Court should deny the Governor's remaining Rule 12 motions because the First Amended Complaint is sufficiently clear.

Governor Brown also asks this Court, pursuant to Fed. R. Civ. P. 12(e), to order Plaintiffs to clarify their allegations in two respects:

> Plaintiffs' allegations regarding "Eviction Moratoria" should set forth each separate government act, ordinance[,] or law[] challenged by Plaintiffs and how each Defendant's separate act, ordinance, or law affects Plaintiffs' rights.

> Plaintiffs allegations in paragraphs 13 and 14 of the Complaint should specify whether [Plaintiffs Tyler and Crystal] Sherman[] own the properties individually or through a business entity or entities, and the locations of the properties.

State's Motion at 31.

No order from this Court is needed to address the Governor's concerns. Indeed, the First Amended Complaint includes exactly the information the Governor seeks. *See* FAC ¶¶ 21–32 (setting forth each separate government act and how each act affects Plaintiffs' rights); *see also* ¶ 13 ("Plaintiffs Tyler and Crystal Sherman own 22 housing units throughout Oregon."). Each of the Eviction Moratoria shares the same attributes that led to Plaintiffs' injuries. *See id.* at ¶ 2. To the extent the Governor is unsure which moratorium was operative at which time, Plaintiffs include that information as well. *See id.* at ¶¶ 21–32. Moreover, her moratorium is operative on Plaintiffs still, making her liability clear. *See id.* at ¶¶ 29–30. Finally, the Governor need not be

---

[6] Concurrent with this Combined Response, Plaintiffs have filed a Motion for Partial Summary Judgment on their Fifth Claim for Relief asking this Court to grant judgment in Plaintiffs' favor ruling, as a matter of law, that HB 4401 impermissibly infringes on Plaintiffs' rights to access the courts and enjoining the statute's Court Access Prohibitions. To the extent those arguments are relevant or helpful to the Court's decision here, Plaintiffs incorporate them into this response.

4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

concerned with respect to Tyler and Crystal Sherman, as their properties are located "throughout Oregon" and thus subject to HB 4401.  *Id.* at ¶ 13.

## IV.    CONCLUSION

For all of the above reasons, this Court should grant in part the State of Oregon's Motion to Dismiss itself as a defendant but otherwise deny the rest of Defendants' Rule 12 motions.

DATED this 8th day of April, 2021.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: s/ *John DiLorenzo, Jr*
    John DiLorenzo, Jr. OSB #802040
    Email:  johndilorenzo@dwt.com
    Aaron K. Stuckey, OSB #954322
    Email:  aaronstuckey@dwt.com
    Evan Christopher, OSB #183214
    Email:  evanchristopher@dwt.com
    1300 SW Fifth Avenue, Suite 2400
    Portland, OR 97201
    Telephone:  (503) 241-2300
    Facsimile:  (503) 778-5299

    *Counsel for Plaintiffs*

Page 38 - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under this Court's April 7, 2021 order on Plaintiffs' Motion for Leave to File an Over-length Response because it contains 14,549 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DAVIS WRIGHT TREMAINE LLP

By: s/ *John DiLorenzo, Jr*
    John DiLorenzo, Jr. OSB #802040
    Aaron K. Stuckey, OSB #954322
    Evan Christopher, OSB #183214

*Counsel for Plaintiffs*

Page 39 - PLAINTIFFS' COMBINED RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS
4836-9872-8671v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax