**JOHN DILORENZO, JR., OSB #802040**
johndilorenzo@dwt.com
**AARON K. STUCKEY, OSB #954322**
aaronstuckey@dwt.com
**EVAN CHRISTOPHER, OSB #183214**
evanchristopher@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN,** and **CRYSTAL SHERMAN,**<br><br>               **PLAINTIFFS**,<br><br>     v.<br><br>**GOVERNOR KATE BROWN,** in her official capacity; **STATE OF OREGON; CITY OF PORTLAND,** an Oregon municipal corporation; and **MULTNOMAH COUNTY OF OREGON,** and Oregon municipal corporation,<br><br>               **DEFENDANTS**. | Case No. 3:20-CV-02226-JR<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
4844-5079-0626v.9 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

Page

**LR 7-1 CERTIFICATE OF COMPLIANCE** ...................................................................... 1

**MOTION** .................................................................................................................. 1

**MEMORANDUM OF LAW** ........................................................................................ 1

**I.    FACTUAL BACKGROUND** .............................................................................. 1

**II.    LEGAL STANDARD** ....................................................................................... 3

**III.    ARGUMENT** ................................................................................................... 3

    A.    Intermediate scrutiny applies to the Court Access Prohibitions because the right to access the courts is fundamental, and courts evaluating burdens on that right apply a "searching" level of review. .............................................................................. 5

    B.    The Court Access Prohibitions cannot survive intermediate scrutiny because the substantial harm they inflict on Plaintiffs does not materially advance any government interest, however significant. .............................................................. 7

        1.    Neither of the asserted interests in *Borger* finds support in the history of HB 4401 or in public statements the Governor made in support of her executive orders that first created the Court Access Prohibitions. ........... 10

        2.    Measured against the nonexistent government interest supporting the need for the Court Access Prohibitions, the harsh effects of the Court Access Prohibitions on Plaintiffs shows the lack of "fit" between the Governor's ends and the means she has chosen to achieve them. ............................... 11

**IV.    CONCLUSION** ............................................................................................... 13

4844-5079-0626v.9 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ............................................................3

*Board of Trustees of State Univ. of N.Y. v. Fox*,
    492 U.S. 469, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) ............................................8, 11, 12

*Christopher v. Harbury*,
    536 U.S. 403, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002) ................................................4, 5, 7

*Edenfield v. Fane*,
    507 U.S. 761, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993) ..............................................7, 8, 10

*Greater New Orleans Broad. Ass'n., Inc. v. U.S.*,
    527 U.S. 173, 119 S. Ct. 1923, 144 L. Ed. 2d 161 (1999) ......................................................11

*Jesinger v. Nevada Fed. Credit Union*,
    24 F.3d 1127 (9th Cir. 1994) ..................................................................................................3

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137, 2 L. Ed 60 (1803) ..............................................................................3

*Metromedia, Inc. v. City of San Diego*,
    453 U.S. 490, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981) ........................................................12

*Mississippi Univ. for Women v. Hogan*,
    458 U.S. 718, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982) ......................................................11

*Moreland v. Las Vegas Metro. Police Dep't*,
    159 F.3d 365 (9th Cir. 1998) ..................................................................................................3

*Nixon v. Shrink Missouri Government PAC*,
    528 U.S. 377, 120 S. Ct. 897, 145 L. Ed. 2d 886 (2002) ..........................................................8

*Retail Digital Network, LLC v. Prieto*,
    861 F.3d 839 (9th Cir. 2017) ..................................................................................................8

*Tennessee v. Lane*,
    541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004) ............................................3, 5, 6, 7

*U.S. v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ............................................................................................7, 8

4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Witt v. Dept. of Air Force*,
    527 F.3d 806 (9th Cir. 2008) ................................................................11

**State Cases**

*Borger Management, Inc. v. Abel Hernandez-Cruz, et al.*,
    No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020) ................................. *passim*

*Elkhorn Baptist Church v. Brown*,
    366 Or 506, 466 P3d 30 (2020) ................................................................2

*Napolski v. Champney*,
    295 Or 408, 667 P2d 1013 (1983) ..............................................................6

**State Statutes**

ORS 105.105 ................................................................................................2

ORS 105.140(2) ...........................................................................................4

ORS 105.168 ................................................................................................2

ORS 401.165 to 401.236 ..............................................................................3

ORS 401.168 ................................................................................................2

ORS 401.192(1) ......................................................................................2, 3

ORS chapter 90 ...........................................................................................4

ORS chapter 105 ....................................................................................9, 12

ORS chapter 401 .........................................................................................2

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................1

**Regulations**

Chief Justice Order No. 20-016, *In the Matter of Imposing "Level 2" and "Level 3" Restrictions on Court Operations* (May 15, 2020) ...........................................9

Presiding Judge Order 2001-00000, *In the Matter of Implementing CJO 20-047 in FED Proceedings* (Nov. 18, 2020) .............................................................9

Page iii - PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## LR 7-1 CERTIFICATE OF COMPLIANCE

Counsel for Plaintiffs Moe Farhoud; Stark Firs Limited Partnership; Alder Village, Inc.; Star Krest, Inc.; Ash Street Courtyard LLC; Tyler Sherman; and Crystal Sherman (collectively, "Plaintiffs") conferred with counsel for Defendant Governor Kate Brown via telephone, and the parties discussed their positions in detail in a good faith effort to resolve the issues raised by the Motion as required by LR 7-1(a), but they were unable to do so.

## MOTION

Plaintiffs move under Fed. R. Civ. P. 56(a) for partial summary judgment on their Fifth Claim for Relief, as detailed below.  In support, Plaintiffs submit the following memorandum of law, the concurrently filed Declarations of John DiLorenzo ("DiLorenzo Decl."), Moe Farhoud ("Farhoud Decl."), and Crystal Sherman ("Sherman Decl.") (including exhibits thereto), and the records and filings in this matter.

## MEMORANDUM OF LAW

Plaintiffs have raised challenges to each of the Eviction Moratoria imposed by each of the Defendants in this action on the grounds that the separate and collective effect of those moratoria has been an unlawful abridgement of several different substantive rights secured by the U.S. Constitution.  However, this narrow motion focuses only on Plaintiffs' fifth claim—that the provisions of HB 4401 actively preventing Plaintiffs from accessing the state courts violate the First Amendment's guarantee of Plaintiffs' right to petition the courts of this state for the redress of their civil grievances.  This Motion for Partial Summary Judgment is appropriate because no factual development is necessary for this Court to rule that, as a matter of law, HB 4401 unfairly and unlawfully closes the courthouse doors on Oregon landlords, including Plaintiffs, and keeps them from taking even modest, half-measures to protect their properties and livelihoods.  For that reason, HB 4401 violates the First and Fourteenth Amendments and must be enjoined.

## I.      FACTUAL BACKGROUND

Nearly every version of the Eviction Moratoria imposed some restrictions on Plaintiffs' right to access the courts.  *See* First Amended Complaint ("FAC") Exs. 1–11.  But HB 4401 took

Page 1 - PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

those restrictions to a new extreme.  HB 4401 was adopted by the Oregon Legislative Assembly

on December 21, 2020.  *Id.* at Ex. 11.  Governor Brown signed the bill shortly thereafter, and she

continues to give the law effect to this day.  As explained in greater detail below, HB 4401 both

prevents Plaintiffs from initiating *and* requires courts to dismiss any claims—whether they be for

restitution of possession or recovery of past-due amounts—based on nonpayment of rent where a

tenant has submitted a hardship declaration.

Plaintiffs collectively have at least 85 tenants owing past-due rent.  Farhoud Decl. ¶ 4;

Sherman Decl. ¶ 3.  The provisions of HB 4401 at issue in this motion have prevented Plaintiffs

from petitioning Oregon's courts for any relief in the face of this reduction in revenue.  Because

Plaintiffs are prohibited from taking any steps to even *begin* the process of recovering possession

of their units or payment of tenants' past-due rent, the July 1, 2021 "end" of HB 4401's eviction

moratorium is a mirage—the time it will take Plaintiffs to file 85-plus cases, litigate those cases

to completion, secure favorable judgments, and execute on those judgments will push Plaintiffs'

recovery dates to well beyond the timeline HB 4401 purports to establish.  *See generally* ORS

105.105 to ORS 105.168 (requiring up to 30 days' notice, several days for service of process, up

to two weeks to set a court appearance, and four days before issuance of a writ of execution even

after a favorable judgment has issued).

Plaintiffs bring this motion solely against Governor Brown because she is the only party,

indeed, the only single person in this state, with the power to redress Plaintiffs' harms.  Although

that would not be true in normal times, it is a unique feature of the Governor's extensive,

unilateral powers pursuant to the emergency statutes in ORS chapter 401 to which she continues

to have access in light of the ongoing state of emergency.  Thus, pursuant to ORS 401.168, she is

invested with the full "police power" of the Legislative Assembly necessary to manage resources

in a statewide emergency.[1]  Pursuant to ORS 401.192(1), she can even set aside existing statutes

---

[1] "During a state of emergency, the Governor has complete authority over all executive agencies of state
government and the right to exercise, within the area designated in the proclamation, all police powers
vested in the state by the Oregon Constitution in order to effectuate the purposes of this chapter."  ORS
401.168(1); *see also Elkhorn Baptist Church v. Brown*, 366 Or 506, 524, 466 P3d 30 (2020) ("The term

4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

if they are inconsistent with actions she feels are necessary to respond to or prevent a worsening calamity.[2]  The Governor could set aside the offending provisions of HB 4401 *today*.  That is why she is a party to this lawsuit, why she is the only defendant to this claim, and why Plaintiffs have asked this Court to order the Governor to do so.

## II.    LEGAL STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment under the law governing the claim in question.  *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "Issues of fact do not preclude [partial] summary judgment unless they are material to the substantive claim" asserted.  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

## III.    ARGUMENT

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever [that individual] receives an injury.  One of the first duties of government is to afford that protection."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L. Ed 60 (1803).  As a result, multiple provisions of the Bill of Rights safeguard what the Supreme Court has called "the fundamental right of access to the courts[.]"  *Tennessee v. Lane*, 541 U.S. 509, 533–34, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004).  Indeed, "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct

---

'police power' refers to 'the whole sum of inherent sovereign power which the state possesses[.]'") (internal citations omitted).

[2] "All rules and orders issued under authority conferred by ORS 401.165 to 401.236 shall have the full force and effect of law both during and after the declaration of a state of emergency.  All existing laws, ordinances, rules and orders inconsistent with ORS 401.165 to 401.236 shall be inoperative during the period of time and to the extent such inconsistencies exist."  ORS 401.192(1).

4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414–15, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002).

HB 4401 impermissibly abridges Plaintiffs' rights to petition the courts of this state for redress of their civil wrongs because HB 4401 prohibits Plaintiffs from filing any nonpayment eviction cases for purposes of:

(1) securing a bond or undertaking to guarantee the payment of accrued rent, which is not only permitted but typically required[3] when a tenant asks to delay adjudication of a claim for summary eviction, *see* HB 4401, § 7(6) ("The court shall enter a judgment dismissing a complaint for possession filed . . . before the end of the grace period based solely on a nonpayment balance" if the landlord did not provide, or the tenant has signed, a hardship declaration);

(2) filing a claim for, securing, or even beginning the process of securing, a judgment of restitution of possession, which could be held in abeyance throughout the period of the COVID-19 emergency, *see id.* (requiring immediate dismissal before any judgment can issue); *see also id.* at § 8(2)(b) (landlords may not "initiate" claims for possession); or

(3) filing a claim for, securing, or even beginning the process of securing, a judgment for breach of contract for unpaid rent, *see id.* at § 8(2)(f) ("Before the end of the grace period . . . a landlord may not . . . [f]ile an action to recover the nonpayment balance.").

The above provisions, which effectively prohibit Plaintiffs from accessing the courts (the "Court Access Prohibitions"), violate Plaintiffs' First and Fourteenth Amendment rights because, under the intermediate scrutiny applicable to infringements of those rights, the Governor cannot establish the proper "fit" between the Court Access Prohibitions' intrusion on Plaintiffs' rights and any end purportedly justifying that intrusion.

---

[3] *See* ORS 105.140(2) (requiring any defendant to a claim for possession under ORS chapter 90 to "to pay rent into court as it becomes due from the commencement of the action until entry of a general judgment in the action" if seeking a continuance "for a longer period than two days").

4844-5079-0626v.9 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**A.    Intermediate scrutiny applies to the Court Access Prohibitions because the right to access the courts is fundamental, and courts evaluating burdens on that right apply a "searching" level of review.**

Although the "[d]ecisions of [the Supreme Court] have grounded the right of access to courts" in different constitutional provisions, *see Christopher*, 536 U.S. at 415 n. 12 (identifying *inter alia*, the Petition Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and the Privileges and Immunities Clause of Article IV), the Supreme Court has been clear that "access" claims are subject to an increased level of scrutiny "at least as searching, and in some cases more searching" than intermediate scrutiny.  *Lane*, 541 U.S. at 528 ("[T]he right of access to the courts at issue in this case . . . call[s] for a standard of judicial review at least as searching, and in some cases more searching, than the standard that applies to sex-based classifications" under the Equal Protection Clause of the Fourteenth Amendment).

In a recently published decision from the D.C. Superior Court, *Borger Management, Inc. v. Abel Hernandez-Cruz, et al.*, No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020), the court invalidated significant portions of the District's eviction moratorium because the collective effect of those provisions violated landlords' constitutional rights to access the courts.  *See* DiLorenzo Decl., Ex. 1 ("*Borger*").[4]  The *Borger* court applied intermediate scrutiny.  *Id.* at 30.  It reasoned intermediate scrutiny was appropriate given "the fundamental nature of the constitutional right of access to the courts, constitutional protection of property rights that makes time[] of the essence in eviction cases, the breadth of the moratorium, and its lengthy and indefinite duration."  *Id.* at 31.  Analyzing a significant volume of Supreme Court and federal Circuit Court of Appeals cases addressing access claims, the court concluded that "courts generally have engaged in an analysis weighing the severity of the intrusion against the importance of the governmental interest that it is intended to serve[,]" and that "[i]ntermediate scrutiny permits the [c]ourt to conduct this type of analysis."  *Id.* at 30.

---

[4] *Borger* has been appealed by the District, and that appeal remains ongoing without a final decision on the merits.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Each of the factors giving rise to intermediate scrutiny in *Borger* is present here. First, the right at issue remains the same: the "fundamental right of access to the courts[.]" *Lane*, 541 U.S. at 533–34. Second, the U.S. Constitution protects Plaintiffs' property rights, and Oregon statutes protect Plaintiffs' rights to an "FED process [that is] rather summary and expeditious." *Napolski v. Champney*, 295 Or 408, 420, 667 P2d 1013 (1983) (statutes show process of eviction should take no more than 25 days at the longest, and tenants are required to pay rent into court if seeking a continuance of more than two days); *see also Borger* at 31 ("constitutional protection of property rights that makes time[] of the essence in eviction cases" justifies the application of intermediate scrutiny).

Third, the Court Access Prohibitions are exceedingly broad, covering more than tenants unable to pay their rent due to circumstances caused by the COVID-19 pandemic. Although no longer as broad as earlier incarnations of the Eviction Moratoria, which prevented all evictions for almost any reason, HB 4401 still prevents any eviction based on any kind of "nonpayment." Tenants are required to submit hardship declarations attesting their inability to pay rent stems from the COVID-19 pandemic, *see* FAC, Ex. 11 at 3–5, but landlords, including Plaintiffs, are not allowed any process by which to challenge those declarations. As a result, HB 4401 captures in its sweep significantly more conduct than is needed because it keeps Plaintiffs from accessing the courts to petition for redress of their rights *in every case* of nonpayment where a tenant has filed a hardship declaration, but it does not allow Plaintiffs any process by which to challenge those hardship declarations—even when Plaintiffs have actual knowledge of a tenant's ability to pay all or a portion of the rent owed. Thus, HB 4401 prevents Plaintiffs from pursuing a whole class of cases regardless of whether those cases advance the government's interest in responding to the COVID-19 pandemic.

Fourth, like the filing moratorium in *Borger*, the Court Access Prohibitions have been of a "lengthy and indefinite duration." *Borger* at 31. The specific provisions have been amended, extended, rescinded, and revised, but they will have remained in place for at least 15 months, and potentially longer than that. "[O]fficial action [that] presently den[ies] an opportunity to litigate

4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

for a class of potential plaintiffs" is a violation of the right of access to the courts, even "only in the short term." *Christopher*, 536 U.S. at 413. The lengthy and indefinite duration of the Court Access Prohibitions thus compounds the need for this Court to assess them under intermediate scrutiny so it can weigh the impact of the Court Access Prohibitions on Plaintiffs—which gets more severe with time—against any purportedly significant interest the government may assert.

Following the reasoning of *Borger* and the decisions of the Supreme Court cited above, the violations of Plaintiffs' right to access the state courts for redress of their statutory rights to speedy and summary recovery of their property or for judgments against tenants for past-due rent and other amounts ought to be evaluated under intermediate scrutiny. That is, the Court Access Prohibitions call for a "searching" level of review, *see Lane*, 541 U.S. at 528, sufficient to permit this Court to evaluate the "fit" between Plaintiffs' injuries and whatever ends the Court Access Prohibitions seek to accomplish.

### B.    The Court Access Prohibitions cannot survive intermediate scrutiny because the substantial harm they inflict on Plaintiffs does not materially advance any government interest, however significant.

"[C]ourts have used various terminology to describe the intermediate scrutiny standard" applicable to access-to-courts claims, but "all forms of the standard require (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *U.S. v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013). Both elements are the government's burden to establish.[5] *Id.* at 1140–41.

In establishing the existence of a "significant, substantial, or important" state interest, the government's burden will not be satisfied "by mere speculation or conjecture[.]" *See Edenfield*,

---

[5] Plaintiffs appreciate that moving for summary judgment at this early stage does not allow the Governor an opportunity for discovery and that intermediate scrutiny puts the burden of production on the Governor to show her purpose in imposing and maintaining the Court Access Prohibitions. However, the Governor should not need discovery to satisfy that burden; that evidence should already be at hand because any stated interest the Governor advances must be "the actual interest[] served by the restriction." *Edenfield v. Fane*, 507 U.S. 761, 768, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993) (citing *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 730, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982) ("Thus . . . although the State recited a 'benign, compensatory purpose,' it failed to establish that the alleged objective is the actual purpose underlying the discriminatory classification.")).

Page 7 - PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

507 U.S. at 770–71.  Rather, the government's interest must be established by some "quantum of empirical evidence[.]"  *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 391, 120 S. Ct. 897, 145 L. Ed. 2d 886 (2002).  Moreover, the state interest established must be specifically and narrowly defined.  *See Chovan*, 735 F.3d at 1139 ("defin[ing] the objective slightly more narrowly" from "preventing gun violence" to specifically "preventing *domestic* gun violence") (emphasis in original).

In establishing the appropriate "fit" between the government's asserted objective and the challenged law:

> What our decisions require is a fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interests served; that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.

*Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480, 109 S. Ct. 3028, 106 L. Ed. 2d 388 (1989) (internal citations omitted, alterations normalized); *see also Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 848 n. 10 (9th Cir. 2017) (cataloguing cases showing that Supreme Court has used varying language to describe the "fit" including the "narrowly tailored" description above, that a regulation be "drawn to achieve" the government interest, not be "more extensive than necessary," or that it "indicate that its proponent carefully calculated the costs and benefits associated with the burden . . . imposed by its prohibition") (internal citations omitted).  Most critically, intermediate scrutiny requires the government to show "that the harms it recites are real and that its restriction will in fact alleviate them *to a material degree*."  *Edenfield*, 507 U.S. at 771 (emphasis added).

There is nothing in Governor Brown's executive orders, which established the model to which HB 4401 later adhered, providing any rationale specifically supporting the inclusion of the Court Access Prohibitions in those orders.  *See* Executive Order 20-11 ("EO 20-11") and EO 20-56.  Neither is there any reasoning in the legislative history of HB 4401: despite three committee hearings and two floor sessions, not one member of the Legislative Assembly, nor any legislative

4844-5079-0626v.9 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

or committee staff, uttered a word about the Court Access Prohibitions.  At most, it is apparent that the broader governmental interests supporting HB 4401 as a whole—that is, the eviction moratorium *plus* the Court Access Prohibitions—is to keep tenants in their homes.  DiLorenzo Decl. ¶ 3 (cataloguing multiple remarks by Representative Fahey, the carrier of HB 4401, that the purpose of the bill is to "keep Oregonians in their homes"); *see also* EO 20-56 ("Throughout this crisis, making sure that Oregonians can remain in their homes has been an essential part of Oregon's COVID-19 emergency response.").  But, as distinct from the eviction moratorium, the Court Access Prohibitions are not necessary to keep tenants in their homes and do not advance that interest.

Although absent in the history of HB 4401 and not directly stated in EO 20-11 or 20-56, Plaintiffs also note that the Court Access Prohibitions do not materially advance the Governor's interest in preventing the spread of COVID-19.  This was noted by the court in *Borger*, which held that, in light of the courts' comparatively swift adoption of remote means for hearings and bench trials, there is simply no evidence to support the notion that the government must prohibit court hearings so it can prevent the spread of COVID-19; the two are not mutually exclusive. *Borger* at 32.  That reasoning also applies here: the Oregon state courts, including the court for Oregon's most populous county, the Multnomah County Circuit Court, have been safely and efficiently resolving eviction cases other than for non-payment since the middle of last year.  *See* Chief Justice Order No. 20-016, *In the Matter of Imposing "Level 2" and "Level 3" Restrictions on Court Operations* (May 15, 2020) ("Any first appearance [under ORS chapter 105] that takes place . . . shall be held either in the courthouse or, if permitted by law, by remote means, or by a combination of in-the-court or remote means.");[6] *see also* Presiding Judge Order 2001-00000, *In the Matter of Implementing CJO 20-047 in FED Proceedings* (Nov. 18, 2020) (ordering a brief hiatus on hybrid in-person and remote eviction proceedings from Nov. 19, 2020 through Jan. 4,

---

[6] Available at https://www.osbar.org/_docs/resources/CJO20-016_Order-Imposing-Level-2-and-Level-3-Restrictions-on-Court-Operations.pdf

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

2021 but resuming hybrid appearances after that date).[7]  Thus, the Court Access Prohibitions do not support the Governor's interest in preventing the spread of COVID-19 because the courts' adaptation to remote adjudication allows the Governor to *both* prevent the spread of COVID-19 *and* protect landlords' constitutional right to petition courts for adjudication of their disputes.[8]

Plaintiffs assume for purposes of this motion that Governor Brown may assert in her response governmental interests similar to those the District asserted in *Borger*.[9]  The *Borger* court addressed the following governmental interests that were asserted in support of the filing moratorium at issue in that case:

> (1) people may move out during the public health emergency solely because they are sued in an eviction case, even though the moratorium on evictions lasts until the public health emergency ends; and (2) occupants will suffer psychological harm solely because the owner of the property in which they live sues them for possession.

*Borger* at 32.

As in *Borger*, neither of those interests meets the "significant" or "substantial" standard of intermediate scrutiny here, nor can the Governor satisfy intermediate scrutiny's requirement of the proper "fit" between those interests and the means adopted to address them.

### 1. Neither of the asserted interests in *Borger* finds support in the history of HB 4401 or in public statements the Governor made in support of her executive orders that first created the Court Access Prohibitions.

The government must establish the existence of a significant government interest by more than "speculation or conjecture[.]"  *Edenfield*, 507 U.S. at 770.  That is, intermediate scrutiny

---

[7] Available at https://www.courts.oregon.gov/courts/multnomah/Documents/PJO%20-%20In%20the%20matter%20of%20implementing%20CJO%202020-047%20RE%20FED%20Proceedings%20During%20Freeze.pdf

[8] *See Borger* at 32–33 ("The Court again emphasizes that protecting our community from the ravages of COVID-19 is an important and indeed compelling interest[,] and . . . mass evictions would significantly worsen an already serious public health crisis.  However, with the moratorium on actual evictions in place, the District and *amici* have not established the requisite fit between the *filing* moratorium and this objective[.]") (emphasis added).

[9] Plaintiffs will address any new or different interests the Governor may assert in response to this motion in their reply.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

requires that whatever stated interest the government relies upon in support of any restriction of constitutional rights must be more than a "recit[ation]" of a proper governmental objective; the government must "*establish* that the alleged objective is the *actual purpose* underlying" the law. *See Mississippi University for Women*, 458 U.S. at 730 (emphasis added).  Intermediate scrutiny does not allow for the "*post hoc*" rationalizations permitted under lesser forms of scrutiny.  *See Witt v. Dept. of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008).

Given the dearth of legislative history underlying both HB 4401 and its predecessors, HB 4213 and EOs 20-11 and 20-56, Governor Brown thus cannot establish that the "actual purpose" of the Court Access Prohibitions was to prevent either of the harms recited by the government defendant in *Borger*.  The Governor therefore cannot establish the first half of the intermediate scrutiny equation: whether she was in fact motivated by the desire to prevent tenants from being displaced solely because cases are filed against them or to prevent untoward psychological harm to tenants simply from knowing cases are pending against them.  The Governor also cannot show whether that motivation was supported by any hard evidence.  The same is true of the Legislative Assembly, which followed the Governor's lead in including the Court Access Prohibitions in HB 4213 and HB 4401  For that reason alone, the Court Access Prohibitions cannot rely on either of the government interests asserted in *Borger* and, absent their reliance on some other interest, fail to survive intermediate scrutiny.

       **2.**      **Measured against the nonexistent government interest supporting the need for the Court Access Prohibitions, the harsh effects of the Court Access Prohibitions on Plaintiffs shows the lack of "fit" between the Governor's ends and the means she has chosen to achieve them.**

The "fit" analysis under intermediate scrutiny counsels that "the challenged regulation should indicate that its proponent 'carefully calculated' the costs and benefits associated with the burden on [First Amendment rights] imposed by its prohibition."  *Greater New Orleans Broad. Ass'n., Inc. v. U.S.*, 527 U.S. 173, 188, 119 S. Ct. 1923, 144 L. Ed. 2d 161 (1999) (citing, *inter alia*, *Fox*, 492 U.S. at 480).  That is, to survive intermediate scrutiny, the restriction can "reach[]

no further than necessary to accomplish the given objective." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981).

The Court Access Prohibitions also fail intermediate scrutiny because they are simply too sweeping and over-inclusive to satisfy the "fit" analysis: measured against an unknown number of potentially impacted tenants is the impact of the Court Access Prohibitions on *every housing provider in Oregon* facing the crisis of nonpaying tenants, a group that includes Plaintiffs. *See Borger* at 34 ("On the other [hand], the filing moratorium affects 100% of property owners that are entitled to [file claims] during the public health emergency."). Not only do the Court Access Prohibitions regulate an extensive class of individuals, they also regulate extensive conduct. No other industry is prevented from suing debtors to secure payment of amounts owed, and debtors' resources are finite; while other creditors can file claims, litigate those claims to judgments, and collect on those judgments, the Court Access Prohibitions keep Plaintiffs from even entering the courthouse.

And while the Court Access Prohibitions ensure that landlords cannot compete with other creditors for debtors' resources, they force landlords to compete with one another for the court's resources: by preventing landlords, including Plaintiffs, from filing cases for possession now and holding any resulting judgments in abeyance until the end of the eviction moratorium and grace period, the Court Access Prohibitions instead require Plaintiffs to wait even longer to get their properties back or to secure judgments for past-due rent by all-but ensuring that every housing provider in the county will file for eviction within the same short timeframe following the end of the grace period. The anticipated volume of cases that will be filed in Multnomah County alone by landlords in addition to Plaintiffs will doubtless further extend the amount of time it takes for Plaintiffs to secure possession well beyond the timelines anticipated by ORS chapter 105.

The Governor therefore cannot establish the proper "fit" here because she is not able to "show that enough occupants will end up in less safe housing solely because of the filing of [a nonpayment case against them] to justify this sweeping and lengthy restriction on property owners' right of access to the court." *Borger* at 35 (citing *Fox*, 492 U.S. at 480). The same is

4844-5079-0626v.9 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

true of the second interest asserted in *Borger* focusing on the prevention of psychological harm to tenants who are sued by their landlords even if the judgments are held in abeyance through the eviction moratorium. That the Governor has made consistent efforts to inform tenants of their rights under HB 4401, and that the eviction moratorium has repeatedly been the subject of state and local reporting on the pandemic, further undermines the governmental interest in imposing the Court Access Prohibitions to protect tenants from the abstract fear of being evicted.[10] *See Borger* at 35 ("The nexus between the alleged problem and solution is more attenuated because the District [of Columbia] has taken action to inform tenants about their rights and to spread the word that it has banned evictions[.]")

Because the Governor cannot establish the existence of a significant government interest in protecting tenants from abandoning their homes solely because a case has been filed against them or from suffering unique psychological harm for the same reason, and because she cannot show the proper fit between those interests and the "sweeping and lengthy restriction[s]" of the Court Access Prohibitions, those provisions of HB 4401 fail intermediate scrutiny and must be enjoined.

## IV.    CONCLUSION

Compared with the broader Eviction Moratoria and the injuries inflicted by that series of enactments on Plaintiffs rights' to manage their properties and protect their businesses, the Court Access Prohibitions are uniquely appropriate subjects for summary judgment at this early stage because their illegality does not depend on the establishment of any particular facts, and they are especially harmful to Plaintiffs. These narrow provisions of HB 4401 slam the courthouse doors on every housing provider in Oregon, preventing them from taking even modest steps to protect their livelihoods and ensure the ongoing operation of their businesses—actions that would have no impact on tenants' abilities' to remain in their homes as they await the end of the eviction ban

---

[10] *See, e.g., COVID-19 Resources*, Oregon Housing and Community Services Dept., STATE OF OREGON, https://www.oregon.gov/ohcs/Pages/agency-covid19-resources.aspx.

4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

and grace period.  It is because the Court Access Prohibitions go so far, and because the eviction moratorium is sufficient to keep tenants housed and safe, that the Court Access Prohibitions fail intermediate scrutiny and violate the U.S. Constitution.  This Court should therefore enjoin their operation by ordering Governor Brown to exercise her ongoing, unilateral emergency powers to modify HB 4401 and provide this incremental protection for Oregon's housing providers.

DATED this 8th day of April, 2021.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _s/ John DiLorenzo, Jr._____
John DiLorenzo, Jr. OSB #802040
Email:  johndilorenzo@dwt.com
Aaron K. Stuckey, OSB #954322
Email:  aaronstuckey@dwt.com
Evan Christopher, OSB #183214
Email:  evanchristopher@dwt.com
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

*Counsel for Plaintiffs*

Page 14 - PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
4844-5079-0626v.9 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax