**Keith Ketterling,** OSB No. 913368
**Steven C. Berman**, OSB No. 951769
**Megan K. Houlihan**, OSB No. 161273
STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email:    kketterling@stollberne.com
    sberman@stollberne.com
    mhoulihan@stollberne.com

*Special Assistant Attorneys General for Governor
Kate Brown and State of Oregon*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN, and CRYSTAL SHERMAN,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR KATE BROWN, in her official capacity, STATE OF OREGON; CITY OF PORTLAND, an Oregon municipal corporation; and MULTNOMAH COUNTY OF OREGON, an Oregon municipal corporation,<br><br>Defendants. | Case No. 3:20-cv-02226-JR<br><br>**REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**<br><br>Request for Oral Argument |

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

    I.    Plaintiffs Do Not Assert Any Justiciable Claim. .................................. 2

        A.    Plaintiffs Cannot Sue the Governor for Alleged Harm Caused by
            HB 4401 Because the Governor Does Not Enforce the Statute................. 2

            1.    Plaintiffs Lack Standing to Sue the Governor. ............................. 3

                a.    The Alleged Injury Is Not Fairly Traceable to the
                    Governor. .......................................................................... 4

                b.    Plaintiffs' Assertion That the Governor Could
                    Redress Their Alleged Injury Is Both Irrelevant and
                    Wrong. ............................................................................. 6

            2.    The Eleventh Amendment Also Bars Plaintiffs' Suit
                Against the Governor. ....................................................... 8

        B.    Plaintiffs' Takings Clause Claim Is Not Cognizable. ............................. 10

            1.    Plaintiffs Seek Relief That Is Unavailable Under the
                Takings Clause. .............................................................. 11

            2.    The Governor Is Immune from the Takings Clause Claim........... 14

    II.    Plaintiffs' Claims Fail on the Merits...................................................... 16

        A.    *Blaisdell* Establishes that Plaintiffs Fail to State a Contracts Clause
            Claim or Any Substantive Due Process Claim. ....................................... 16

        B.    Laws Regulating the Relationship between Landlords and Tenants
            Are Not *Per Se* Takings, and Plaintiffs Cannot Replead to State a
            Viable *Ad Hoc* Takings Claim. ............................................................... 19

        C.    Plaintiffs Have Not Stated a Claim for an Unreasonable Seizure in
            Violation of the Fourth Amendment........................................................ 21

        D.    Plaintiffs Cannot State a Claim for Violation of Their First
            Amendment Right of Access to the Courts Based on Delays in
            Civil Actions. ........................................................................................ 24

    III.    Plaintiffs Should Still Make Their Surviving Allegations More Definite. ........... 26

CONCLUSION.................................................................................................... 27

Page ii -    **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND
                STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## Cases

*Allied Artists Picture Corp. v. Rhodes*,
679 F.2d 656 (6th Cir. 1982) ............................................................... 9, 10

*Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*,
2020 WL 6700568 (C.D. Cal. Nov. 13, 2020)........................................ 18

*Atwood v. Strickler*,
2020 WL 3549662 (D. Or. June 29, 2020) ............................................ 11

*Auracle Homes, LLC v. Lamont*,
478 F. Supp. 3d 199 (D. Conn. 2020)........................................ 17, 20, 21

*Axos Bank v. Rosenblum*,
2020 WL 7344594 (D. Or. Dec. 14, 2020) .............................................. 4

*Baptiste v. Kennealy*,
490 F. Supp. 3d 353 (D. Mass. 2020) ............................................. passim

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
239 U.S. 441 (1915)............................................................................... 23

*Bland v. Fessler*,
88 F.3d 729 (9th Cir. 1996) .................................................................... 4

*Boler v. Earley*,
865 F.3d 391 (6th Cir. 2017) ................................................................... 9

*Borger Management, Inc. v. Abel Hernandez-Cruz*,
No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020) .................. 25, 26

*Buffalo Tchrs. Fed'n v. Tobe*,
464 F.3d 362 (2d Cir. 2006) .................................................................. 20

*Cedar Point Nursery v. Shiroma*,
923 F.3d 524 (9th Cir. 2019),
*cert. granted sub nom. Cedar Point Nursery v. Hassid*,
—U.S.—141 S. Ct. 844 (2020)........................................... 19, 21, 22, 24

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
92 F.3d 1412 (6th Cir. 1996) ................................................................ 10

*Cnty. of Butler v. Wolf*,
2020 WL 2769105 (W.D. Pa. May 28, 2020)......................................... 12

*Culinary Studios, Inc. v. Newsom*,
2021 WL 427115 (E.D. Cal. Feb. 8, 2021)...................................... 10, 15

Page iii - **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND
STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

*El Papel LLC v. Inslee*,
   2020 WL 8024348 (W.D. Wash. Dec. 2, 2020),
   *report and recommendation adopted*, 2021 WL 71678 (W.D. Wash. Jan. 8, 2021) ......... passim

*Elkhorn Baptist Church v. Brown*,
   366 Or. 506, P.3d 30 (2020) .................................................................................. 7

*Elmsford Apartment Assocs., LLC v. Cuomo*,
   469 F. Supp. 3d 148 (S.D.N.Y. 2020) ........................................................ 17, 20, 25

*Ex parte Young*,
   209 U.S. 123 (1908) .................................................................................... passim

*F.C.C. v. Fla. Power Corp.*,
   480 U.S. 245 (1987) ................................................................................................ 19

*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*,
   482 U.S. 304 (1987) ................................................................................................ 14

*Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*,
   528 U.S. 167 (2000) .................................................................................................. 3

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ................................................................................... 6

*HAPCO v. City of Philadephia*,
   482 F. Supp. 3d 337 (E.D. Pa. 2020) ..................................................................... 17

*Heights Apartments, LLC v. Walz*,
   2020 WL 7828818 (D. Minn. Dec. 31, 2020) ............................................... 2, 18, 25

*Home Building & Loan Ass'n v. Blaisdell*,
   290 U.S. 398 (1934) ................................................................................ 16, 17, 18, 19

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997) ................................................................................................ 14

*Knick v. Twp. of Scott, Penn.*,
   —U.S.—, 139 S. Ct. 2162 (2019) ................................................... 11, 12, 13, 15

*Ladd v. Marchbanks*,
   971 F.3d 574 (6th Cir. 2020), *cert. denied*,
   —U.S.—, 2021 WL 666476 (U.S. Feb. 22, 2021) ............................................. 15

*Lingle v. Chevron U.S.A. Inc.*,
   544 U.S. 528 (2005) ........................................................................................... 13, 14

Page iv -   **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND**
          **STATE OF OREGON'S MOTION TO DISMISS**

*Los Angeles Branch NAACP v. Los Angeles Unified School District,*
714 F.2d 946 (9th Cir. 1983) .................................................................................. 9

*Los Angeles Cnty. Bar Ass'n v. Eu,*
979 F.2d 697 (9th Cir. 1992) ........................................................................... passim

*Mathews v. Eldridge,*
424 U.S. 319 (1976)............................................................................................... 23

*McCarthy v. Cuomo,*
2020 WL 3286530 (E.D.N.Y. June 18, 2020) ...................................................... 22

*Minn. State Bd. for Cmty. Colls. v. Knight,*
465 U.S. 271 (1984)............................................................................................... 23

*Mont. Envtl. Info. Ctr. v. Stone-Manning,*
766 F.3d 1184 (9th Cir. 2014) ................................................................................ 3

*Papasan v. Allain,*
478 U.S. 265 (1986)............................................................................................... 14

*Penn Central Transportation Co. v. City of New York,*
438 U.S. 104 (1978)............................................................................................... 20

*Planned Parenthood of Idaho, Inc. v. Wasden,*
376 F.3d 908 (9th Cir. 2004) .................................................................................. 3

*Rutman Wine Co. v. E. & J. Gallo Winery,*
829 F.2d 729 (9th Cir. 1987) ................................................................................ 21

*S. Pac. Transp. Co. v. Brown,*
651 F.2d 613 (9th Cir. 1980) ............................................................................. 4, 5

*Sandoval v. Lanier,*
2017 WL 8186677 (C.D. Cal. Aug. 9, 2017).......................................................... 9

*Seven Up Pete Venture v. Schweitzer,*
523 F.3d 948 (9th Cir. 2008) ................................................................................ 15

*Sierra Lake Reserve v. City of Rocklin,*
938 F.2d 951 (9th Cir.1991), *vacated on other grounds,*
506 U.S. 802 (1992), *on remand,*
987 F.2d 662 (9th Cir. 1993) ................................................................................ 16

*Snoeck v. Brussa,*
153 F.3d 984 (9th Cir. 1998) ............................................................................. 8, 9

Page v -  **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........................................................................................... 6

*U.S. Tr. Co. of N.Y. v. New Jersey*,
431 U.S. 1 (1977) ........................................................................................... 17

*U.S. v. James Daniel Good Real Property*,
510 U.S. 43 (1993) ........................................................................... 22, 23, 24

*United States v. Clarke*,
445 U.S. 253 (1980) ...................................................................................... 10

*W.B. Worthen Co. v. Kavanaugh*,
295 U.S. 56 (1935) ................................................................................... 18, 19

*Yentz v. Nat'l Credit Adjusters, LLC*,
2021 WL 1277961 (D. Or. Feb. 15, 2021) .................................................. 21

*Yong v. I.N.S.*,
208 F.3d 1116 (9th Cir. 2000) ..................................................................... 19

**Statutes**

House Bill 4401 ................................................................................... passim

House Bill 4204 ..................................................................................................... 4

Or. Const. art. I, § 18 ...................................................................................... 11

Or. Const. art. III, § 1 ............................................................................... 5, 6, 8

ORS 401.192(1) .................................................................................................. 7

Page vi - **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND
STATE OF OREGON'S MOTION TO DISMISS**
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## INTRODUCTION

In their First Amended Complaint (ECF 17, "Complaint" or "Compl."), Plaintiffs challenge state statutes, gubernatorial executive orders, and Multnomah County and City of Portland ordinances aimed at providing relief to renters affected by the COVID-19 pandemic.  In response to the motion to dismiss filed by the State of Oregon ("State") and Governor Kate Brown ("Governor") (collectively "State Defendants"), Plaintiffs concede that their Complaint overreaches.  Plaintiffs admit that the State has sovereign immunity from all their claims.[1]  They similarly admit that the Ninth Circuit's "shareholder standing" rule bars Plaintiff Moe Farhoud from pursuing any claims in this litigation.[2]  Moreover, Plaintiffs now recognize that the only state eviction moratorium in effect is 2020 House Bill 4401 ("HB 4401").[3]  Belatedly,[4] Plaintiffs have substantially narrowed their case.

Fundamental threshold issues prevent what remains of Plaintiffs' case from proceeding. Plaintiffs fail to show that the Governor has any enforcement authority under HB 4401. Plaintiffs therefore do not have standing and cannot overcome Eleventh Amendment sovereign immunity.  Plaintiffs also fail to distinguish precedent that precludes equitable claims under the

---

[1] *See* Plaintiffs' Combined Response to Defendants' Motion to Dismiss ("Combined Response") at 2 (ECF 32 at 11). ("Plaintiffs concede that the Eleventh Amendment does not apply to Plaintiffs' claims against the State").

[2] *See* Combined Response at 2 (ECF 32 at 11) ("Plaintiffs further acknowledge that the Ninth Circuit's 'shareholder standing' rule may well bar Plaintiff Moe Farhoud from pursuing any claims in this litigation . . . Plaintiffs will not press this argument further.").

[3] *See* Combined Response at 2–3 (ECF 32 at 11–12) (asserting that Plaintiffs "may nonetheless proceed against the state eviction moratorium, now limited to just 2020 House Bill 4401").

[4] Plaintiffs' assertion that Plaintiffs were unaware the State of Oregon would assert sovereign immunity, rather than "consent to the suit," is misplaced.  The State Defendants' counsel notified Plaintiffs' counsel that the State of Oregon would assert sovereign immunity when the parties conducted their February 19, 2021 conferral call.  The other issues Plaintiffs now concede were also discussed during that conferral call.

Page 1 -    **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Takings Clause and prevents any Takings Clause claim against the Governor from proceeding. Plaintiffs' claims all miss their mark, and the State Defendants respectfully request that the Court dismiss them.

Plaintiffs' claims fare no better on the merits. In their response, Plaintiffs entirely ignore the mounting number of federal cases that have rejected similar claims against eviction moratoria enacted during the pandemic. Plaintiffs do not discuss, much less even attempt to distinguish decisions such as *Heights Apartments, LLC v. Walz*, which dismissed claims against executive orders restricting landlords' ability to evict residential tenants and recognized that the court's holdings were "in step with other courts that have analyzed this exact issue." 2020 WL 7828818, at *14 (D. Minn. Dec. 31, 2020). Except for a single unpublished case from the Superior Court of the District of Columbia, now on appeal, Plaintiffs do not cite any decision permitting claims against emergency eviction moratoria.

## ARGUMENT

I.    **Plaintiffs Do Not Assert Any Justiciable Claim.**

    A.    **Plaintiffs Cannot Sue the Governor for Alleged Harm Caused by HB 4401 Because the Governor Does Not Enforce the Statute.**

Plaintiffs cannot properly challenge HB 4401 in a suit against the Governor. The enforcement mechanism in the statute is a private right of action for renters. *See* HB 4401 § 7(8)(A)(a) (granting tenants the right to "obtain injunctive relief to recover possession or address any other violation and . . . recover from the landlord an amount equal to three months' periodic rent plus any actual damages"). Because HB 4401 does not grant the Governor any

Page 2 -    **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

enforcement authority, Plaintiffs lack standing to sue the Governor and the Governor is immune from suit under the Eleventh Amendment.[5]

### 1.    Plaintiffs Lack Standing to Sue the Governor.

Plaintiffs lack standing to bring this action against the Governor.  Article III of the United States Constitution limits federal court jurisdiction to actual, ongoing "cases" or "controversies." *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014).  To enforce this constitutional limitation, courts have "articulated numerous doctrines that restrict the types of disputes that federal courts will entertain, including standing." *Id.*  Constitutional standing depends on a plaintiff showing that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Srvs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  Plaintiffs cannot show that their alleged injury from HB 4401 is fairly traceable to the Governor or that a favorable ruling would redress their injury.

---

[5] Plaintiffs collapse the Article III and Eleventh Amendment inquiries into one question of standing.  However, the Ninth Circuit treats these inquiries separately.  *See, e.g.*, *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 700–01, 704 (9th Cir. 1992) (addressing Article III standing and Eleventh Amendment immunity separately); *see also Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (describing the question "whether there is the requisite causal connection between [defendants'] responsibilities and any injury that the plaintiffs might suffer, such that relief against the defendants would provide redress," and the question "whether [the court's] jurisdiction over the defendants is proper under the doctrine of *Ex parte Young*" as "two separate inquiries").  The State Defendants retain this distinction in responding to Plaintiffs' arguments.

**REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

a.      **The Alleged Injury Is Not Fairly Traceable to the Governor.**

Like the statute at issue in *Axos Bank v. Rosenblum*, 2020 WL 7344594 (D. Or. Dec. 14,

2020), HB 4401 is designed to be enforced by its private right of action, not any government

official.  HB 4401 does not authorize the Governor to bring an enforcement action; the Governor

has never threatened to enforce HB 4401 against Plaintiffs or anyone else; and Plaintiffs do not

allege any fear that the Governor will take any enforcement action against them.  The only

"danger of sustaining a direct injury as a result of [HB 4401's] operation or enforcement" would

come from tenants who are not parties to this action.  *Axos Bank*, 2020 WL 7344594 at *3

(quoting *Bland v. Fessler*, 88 F.3d 729, 736 (9th Cir. 1996)) (discussing plaintiffs' lack of

standing to challenge a mortgage foreclosure moratorium created by House Bill 4204, 80th Leg.,

1st Spec. Sess. (Or. 2020)).  This injury cannot be traced to the Governor.  *See S. Pac. Transp.*

*Co. v. Brown*, 651 F.2d 613, 614 n.1 (9th Cir. 1980) (concluding that an injury from a statute that

was not enforced by the Attorney General "could not have been traced to the action of the

attorney general, against whom relief is sought").  Plaintiffs thus lack standing.

In response, Plaintiffs argue that the Governor's lack of enforcement authority is

irrelevant because HB 4401 "is not the kind of statute that needs state enforcement."  Plaintiffs'

Combined Response to Defendants' Motions to Dismiss ("Combined Response") at 5 (ECF 32 at

14).  Plaintiffs cite *Los Angeles County Bar Ass'n v. Eu,* 979 F.2d 697 (9th Cir. 1992), in support

of this argument.  That case lends Plaintiffs no aid.  In *Eu*, a bar association challenged a statute

that prescribed the number of judges on the Superior Court for Los Angeles County.  The bar

argued that the low number of judges caused unconstitutional delays and denied the bar access to

the courts in civil litigation.  *Id.* at 699.  Although rejecting the bar's claims on the merits, the

Ninth Circuit held that the bar had standing to sue the California governor and other state

Page 4 -    **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND**
**STATE OF OREGON'S MOTION TO DISMISS**
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

officials.  *Id.* at 701.  The court concluded that the bar satisfied Article III's causation and redressability requirements because if the court ordered an increase in the number of judges, then the California legislature would likely authorize more judicial positions in Los Angeles County. And the governor would then "have a legal duty to fill those positions."  *Id.*  Here, in contrast, Plaintiffs point to no legal duty that would require the Governor to act if the Court ruled that HB 4401 is unconstitutional.

Plaintiffs unsuccessfully attempt to manufacture a legal duty.  They first assert that the Governor has a legal duty under HB 4401 based on a connection between the Governor and HB 4401's landlord assistance program administered by the Oregon Housing and Community Service Department ("OHCS").  Combined Response at 5 (ECF 32 at 14).  However, HB 4401 creates no role for the Governor in distributing compensation to residential landlords.  Any connection that the Governor may have to the OHCS is unrelated to the challenged provisions of the statute.  *See* Compl. ¶ 29 (ECF 17 at 11) (describing the "effects on the existing Eviction Moratoria" implemented by HB 4401).  Moreover, the Governor's supervision of an agency is the type of general oversight that the Ninth Circuit held was insufficient to satisfy Article III in *Southern Pacific Transportation Co*.  *See* 651 F.2d at 615 ("The attorney general's power to direct and advise does not make the alleged injury fairly traceable to his action[.]").

Plaintiffs next assert a legal duty based on the Governor's now-expired executive orders regarding eviction moratoria.  Combined Response at 5–7 (ECF 32 at 14–16).  The Governor's earlier executive actions do not establish that she has any legal duty to enforce HB 4401 against Plaintiffs or that she must do anything if the statute is held unconstitutional.  To conclude otherwise would be to ignore the separation between Oregon's executive and legislative branches.  *See* Or. Const. art. III, § 1 ("The powers of the Government shall be divided into three

Page 5 -   **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

separate branches . . . and no person charged with official duties under one of these branches, shall exercise any of the functions of another[.]").  Plaintiffs' alleged injury under HB 4401 is based on a private right of action, enforced by private renters, not any action by the Governor. Plaintiffs therefore fail to show that their alleged injury is fairly traceable to the Governor, as required for Article III standing.

> **b.    Plaintiffs' Assertion That the Governor Could Redress Their Alleged Injury Is Both Irrelevant and Wrong.**

Plaintiffs attempt to circumvent standing requirements by arguing that, in the future, the Governor could redress their injury by ordering compensation to Plaintiffs under her emergency powers.  Combined Response at 8 (ECF 32 at 17).  This misstates the redressability inquiry. Redressability under Article III concerns the "likelihood that *the requested relief* will redress the alleged injury," not whether there are circumstances in which the defendant could redress the injury.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (emphasis added). Plaintiffs have not demonstrated that their requested relief would redress their alleged injury. *See* Compl. at 23 (ECF 17) (setting out Plaintiffs' prayer for relief).  Relief in the form of an injunction preventing the Governor from enforcing HB 4401 would have no effect.  The Governor already does not enforce HB 4401's provisions under the statute's terms; the statute grants that right to private renters.

Plaintiffs' extraordinary argument—that they have standing because the Court can compel the Governor to declare HB 4401 inoperative—miscomprehends the Governor's emergency powers.[6]  Plaintiffs assert that the Governor can exercise her emergency powers to do

---

[6] Any relief ordering the Governor to take some affirmative action to compensate Plaintiffs would constitute a "particularly disfavored" mandatory injunction.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation marks omitted).  Plaintiffs have not offered any

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

"anything the Legislative Assembly can do" after a state of emergency is declared.  Combined

Response at 7 (ECF 32 at 16).  According to Plaintiffs, under ORS 401.192(1), the Governor has

"vast authority [that] includes the power to set aside existing laws if their operation would impair

application of her emergency orders."  Combined Response at 7 (ECF 32 at 16)*.  Plaintiffs go

too far.  The Governor's emergency powers must "be exercised in a manner consistent with the

reason for which they are granted; that is, they must be exercised to address the declared

emergency."  *Elkhorn Baptist Church v. Brown*, 366 Or. 506, 525, 466 P.3d 30, 43 (2020).

Compelling the Governor to somehow declare HB 4401 inoperative would be inconsistent with

the very reasons and purposes the Governor declared an emergency in the first place.  HB 4401

advances the objective of maintaining secure and stable housing for Oregonians in response to

the pandemic and last year's wildfires.

Plaintiffs ask the Court to compel the Governor to take actions inconsistent with the state

of emergency she has declared.  Although the Governor has extended the state of emergency,

Plaintiffs concede that the Governor's executive orders imposing a temporary eviction

moratorium have expired.  Combined Response at 2 (ECF 32 at 11).  Nonetheless, Plaintiffs

assert that the Governor has a connection to the legislatively adopted eviction moratorium in HB

4401 because it is consistent with the Governor's now expired temporary eviction moratoria

adopted in those executive orders.  *See, e.g.*, Combined Response at 7 (ECF 32 at 16) (arguing

that "the Governor has a significant and direct connection with HB 4401 arising from her role as

the architect of the first statewide eviction moratorium").  In other words, even Plaintiffs

acknowledge that the eviction moratoria were encompassed within the declared state of

---

reason why the law would entitle them to this sort of extraordinary relief, particularly where that
relief is inconsistent with the state of emergency that the Governor declared.

Page 7 - **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND
STATE OF OREGON'S MOTION TO DISMISS**

emergency to protect Oregonians from evictions.  It would be inconsistent with the Governor's

emergency declaration for her to now assert that the eviction moratoria in HB 4401 conflict with

the state of emergency.[7]  Not only do Plaintiffs fail to carry their burden of establishing that the

requested relief would redress their alleged injury, their irrelevant argument that the Governor

could redress their injury is flawed.  In sum, Plaintiffs do not have Article III standing.

> ## 2. The Eleventh Amendment Also Bars Plaintiffs' Suit Against the Governor.

Plaintiffs also fail to overcome Eleventh Amendment immunity for all their claims.  State

officials are immune from constitutional challenges to state statutes unless they have "some

connection" to enforcement of the challenged law.  *Ex parte Young*, 209 U.S. 123, 157 (1908).

The connection "must be fairly direct; a generalized duty to enforce state law or general

supervisory power over the persons responsible for enforcing the challenged provision will not

subject an official to suit."  *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quoting *Eu*, 979

F.2d at 704).  Not only must the officers of the state "be cloaked with a duty to enforce the laws

of the state," they "must threaten or be about to commence civil or criminal proceedings to

enforce an unconstitutional act."  *Id.* at 987 (holding that members of the Nevada Commission

on Judicial Discipline had Eleventh Amendment immunity because they had no power to enforce

challenged confidentiality rules).

As detailed above, although HB 4401 does not give the Governor any enforcement

power, the statute does give enforcement authority to private parties.  This case is therefore

unlike *Eu*, on which Plaintiffs rely, where the "statute at issue . . . gave rise to no enforcement

---

[7] It would indeed be an extraordinary form of relief if the Court ordered the Governor to
invalidate a statute that the Governor signed into law.

Page 8 -   **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND
STATE OF OREGON'S MOTION TO DISMISS**
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

proceedings whatsoever." *Snoeck*, 153 F.3d at 987 (distinguishing *Eu*).  The case also is unlike *Boler v. Earley*, 865 F.3d 391, 413 (6th Cir. 2017), which Plaintiffs cite as well, where the plaintiffs did not challenge a statute at all and the court did not address whether any connection existed between the Michigan governor and allegedly unconstitutional conduct.  Combined Response at 8 (ECF 32 at 17).  This case is far more analogous to *Los Angeles Branch NAACP v. Los Angeles Unified School District*, 714 F.2d 946 (9th Cir. 1983).  There, the Ninth Circuit held that the California governor's power to make "general policy and budget recommendations, as well as administrative appointments" did not create a sufficient connection between the governor and allegedly unconstitutional acts.  *Id.* at 953.

Plaintiffs argue that the Governor is not immune from suit under the standard articulated in *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.5 (6th Cir. 1982).  Plaintiffs reason that, despite the Governor's lack of enforcement authority under HB 4401, a "substantial public interest" obligates the Governor to use her general authority to enforce the statute.  Combined Response at 6–7 (ECF 32 at 15–16).  However, the Ninth Circuit has never adopted the standard in *Allied Artists* or allowed suit against a governor based solely on her role as head of the executive branch.

To the contrary, the Ninth Circuit has emphasized that for a suit to proceed against a state official, there must at least be "a threat by a state official to enforce an allegedly unconstitutional statute then in force in the state."  *Los Angeles Branch NAACP*, 714 F.2d at 953 (recognizing disagreement between the circuits on whether a general obligation to enforce state law satisfies the *Ex parte Young* "connection" requirement); *see also Sandoval v. Lanier*, 2017 WL 8186677, at *4–7 (C.D. Cal. Aug. 9, 2017) (summarizing Ninth Circuit case law).  Indeed, even the Sixth Circuit has retreated from *Allied Artists*.  In *Children's Healthcare is a Legal Duty, Inc. v.*

Page 9 -   **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

*Deters*, the Sixth Circuit stated that a state official's obligation to execute the laws is not a sufficient connection to the enforcement of a challenged statute under *Ex parte Young* and called its holding in *Allied Artists* "anomalous."  92 F.3d 1412, 1416 & 1417 n.11 (6th Cir. 1996).

The Governor's general duties and obligations faithfully to execute the laws, including those in which the public has a substantial interest, do not show that she could or would enforce HB 4401 against Plaintiffs.  Plaintiffs have not established a direct connection between the Governor and enforcement of HB 4401.  Accordingly, Plaintiffs fail to overcome Eleventh Amendment immunity.[8]

### B.    Plaintiffs' Takings Clause Claim Is Not Cognizable.

Even if Plaintiffs had standing and could show a sufficient connection between the Governor and HB 4401 to overcome Eleventh Amendment immunity, they still could not sue the Governor under the Takings Clause.  In their Second Claim for Relief, Plaintiffs allege that HB 4401 violates the Takings Clause of the U.S. Constitution by depriving Plaintiffs of the right to exclude tenants.  Plaintiffs claim this is "an attempted exercise of eminent domain."  Compl. ¶ 43 (ECF 17 at 15).  This sort of claim, where "no formal eminent domain or condemnation process has been instituted yet a governmental taking has allegedly occurred, is referred to as 'inverse condemnation' or 'reverse condemnation.'"  *Culinary Studios, Inc. v. Newsom*, 2021 WL 427115, at *9 (E.D. Cal. Feb. 8, 2021) (citing *United States v. Clarke*, 445 U.S. 253, 255–57 (1980)).  Plaintiffs seek only declaratory and injunctive relief for the alleged violation of the Takings Clause.  The Court should not reach the merits of this claim for two reasons.  First, equitable relief is unavailable for a Takings Clause claim.  Second, and relatedly, the Governor is

---

[8] Although this case against the Governor is not the proper vehicle to challenge HB 4401, the statute will not evade judicial review.  For example, its constitutionality could be addressed in an individual proceeding where a tenant seeks to take advantage of HB 4401's protections.

immune under the Eleventh Amendment because damages are the only remedy for a Takings Clause claim.

    1.    **Plaintiffs Seek Relief That Is Unavailable Under the Takings Clause.**

The relief that Plaintiffs seek is categorically unavailable to them. The Supreme Court has held that "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable." *Knick v. Twp. of Scott, Penn.*, —U.S.—, 139 S. Ct. 2162, 2176 (2019). Plaintiffs do not argue that the State of Oregon fails to provide compensation for governmental takings, nor could they. The Oregon Constitution specifically provides for just compensation when private property is taken for public use. Or. Const. art. I, § 18; *see Atwood v. Strickler*, 2020 WL 3549662, at *5 (D. Or. June 29, 2020) (recognizing that "compensation remedies are available to Plaintiffs in a state court proceeding" in Oregon and that "Plaintiffs therefore are barred from seeking injunctive relief from this Court under the takings claim").

Applying *Knick*, courts across the country consistently have rejected equitable claims under the Takings Clause against emergency measures during the COVID-19 pandemic. For example, in *El Papel LLC v. Inslee*, the court declined to enjoin Washington State's and the City of Seattle's COVID-19 responses. 2020 WL 8024348 (W.D. Wash. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL 71678 (W.D. Wash. Jan. 8, 2021). Addressing the plaintiffs' Takings Clause claim, the court concluded that equitable relief was unavailable under the *Knick* standard. A measure of just compensation was readily available if the plaintiffs established a government "taking" of their properties, in the form of unpaid rent and late fees. *Id.* at *13. Therefore, "in light of *Knick*'s clear holding that injunctive relief is foreclosed if just compensation is available," the plaintiffs provided "no basis for injunctive relief on the takings

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

claims." *Id.*; *accord Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 391 (D. Mass. 2020) ("[E]ven if plaintiffs could prove a taking had occurred, they would not be entitled to injunctive relief.  Nor would they be entitled to a declaration that the [Act Providing for a Moratorium on Evictions and Foreclosures during the COVID-19 Emergency] is a violation of the Takings Clause."); *Cnty. of Butler v. Wolf*, 2020 WL 2769105, at *4 (W.D. Pa. May 28, 2020) ("Here, the declaratory relief sought by Plaintiffs—that the Governor's business shutdown orders effectuated an unconstitutional taking—would be the functional equivalent of injunctive relief.  The Supreme Court's decision in *Knick* forecloses such relief.").[9]

Plaintiffs ignore the overwhelming trend of federal case law and unsuccessfully attempt to distinguish *Knick*.  Plaintiffs first argue that *Knick* has no impact on their Takings Clause claim because the case did not involve questions of Eleventh Amendment immunity.  Combined Response at 10 (ECF 32 at 19).  That point is undisputed.  *Knick* itself did not address whether a state actor can be sued under the Takings Clause; the case concerned only the general procedures and remedies available for takings claims.

Plaintiffs next argue that *Knick* applies only to claims against the federal government and that any statement about state governments is mere dicta.  Combined Response at 10 (ECF 32 at 19).  Not so.  The *Knick* case arose after the lower courts held that the plaintiff needed to bring an inverse condemnation action in state court before she could pursue a federal claim for a Takings Clause violation.  139 S. Ct. at 2168–69.  Reversing the lower courts, the Supreme Court addressed the mechanics of takings claims in all contexts and distinguished case law that had denied injunctive relief to plaintiffs who had not exhausted their state court remedies.  *Id.* At

---

[9] *See also* State Defendants' Motion to Dismiss at 14 n.8 (ECF 18 at 22 n.8) (citing additional cases applying *Knick* in rejecting Takings Clause challenges to governmental emergency measures taken in response to the COVID-19 pandemic).

Page 12 -    **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

2175.  The Supreme Court reasoned that those prior cases rested on the principle that "the availability of subsequent compensation meant that such an equitable remedy was not available." *Id.*  Although holding that exhaustion was not required, the Supreme Court reaffirmed the principle that when "post-taking compensation" is available, a federal court will not bar the government from acting.  *Id.* at 2177–79.  *Knick* precludes equitable relief in any forum where the plaintiff could recover just compensation for a taking.

Plaintiffs also argue that equitable relief may be available for Takings Clause violations when "governments have so overstepped their police powers as to require restraint from the federal courts."  Combined Response at 20 (ECF 32 at 29).  According to Plaintiffs, the government oversteps when it takes property without satisfying the "public use" requirement of the Takings Clause.[10]  Plaintiffs rely on obsolete case law for this proposition.  Plaintiffs cite cases that all predate *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005).

In *Lingle*, the Supreme Court held that whether a government action "substantially advances legitimate state interests" is not a proper inquiry under the Takings Clause.  *Id.* at 531.  The "substantially advances" inquiry probes the challenged regulation's underlying validity, which "is logically prior to and distinct from the question whether a regulation effects a taking." *Id.* at 543.  Unlike the Due Process Clause, where the "substantially advances" inquiry may be relevant, "the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose."  *Id.*  The Takings Clause "does not bar government from interfering with property rights, but rather requires compensation 'in the event of *otherwise proper interference* amounting to a taking.'"  *Id.* (emphasis in original) (citing *First Eng. Evangelical Lutheran*

---

[10] The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend V.

**REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

*Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 315 (1987)).  If, on the other hand,

"a government action is found to be impermissible—for instance because it fails to meet the

'public use' requirement or is so arbitrary as to violate due process—that is the end of the

inquiry."  *Id.*  The action is not a "taking" under the Takings Clause because "[n]o amount of

compensation can authorize such action."  *Id.*

The Supreme Court's holding in *Lingle* prevents the Court from inquiring into whether

the alleged taking effected by HB 4401 was needed, effective, or "for a legitimate public use."

*Id.* at 544.  That means that the purpose of the taking is irrelevant and cannot change the

remedies available under the Takings Clause.  Just compensation remains the only possible

remedy.  Because Plaintiffs seek equitable relief, rather than just compensation in the form of

damages, they have not alleged any cognizable claim under the Takings Clause.

### 2.    The Governor Is Immune from the Takings Clause Claim.

Relatedly, the Governor is immune from Plaintiffs' Takings Clause claim because, as

discussed above, just compensation is the only available remedy.  States and state officers enjoy

Eleventh Amendment immunity unless a claim falls within the exception that the Supreme Court

has recognized for certain suits seeking prospective declaratory and injunctive relief.  *Idaho v.*

*Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (citing *Ex parte Young*, 209 U.S. 123

(1908)); *Papasan v. Allain*, 478 U.S. 265, 278 (1986) ("Relief that in essence serves to

compensate a party injured in the past by an action of a state official in his official capacity that

was illegal under federal law is barred even when the state official is the named defendant.  This

is true if the relief is expressly denominated as damages.  It is also true if the relief is tantamount

to an award of damages for a past violation of federal law, even though styled as something

else." (footnote and citations omitted)).

Page 14 -   **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND**
            **STATE OF OREGON'S MOTION TO DISMISS**

Here, the applicability of the *Ex parte Young* exception for the claim against the Governor turns on whether federal takings actions are properly characterized as seeking prospective relief or compensation for past injuries. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008). Even before *Knick* held that equitable relief is unavailable for a takings claim, the Ninth Circuit held that a claim under the Takings Clause necessarily seeks retrospective monetary relief. *Seven Up*, 523 F.3d at 956 (explaining that "[i]t is impossible to characterize the relief sought" in a reverse condemnation action "as prospective" because "'just compensation'" in such an action "is on all fours with traditional monetary damages, which are the quintessential form of retrospective relief"). "*Ex parte Young* consequently does not apply" to claims under the Takings Clause. *Id.*

Other courts have agreed with the Ninth Circuit's holding in *Seven Up*. For example, in *Ladd v. Marchbanks*, the Sixth Circuit explained that if plaintiffs could obtain a declaratory judgment under the Takings Clause, they could use the order to require the state to pay them for its alleged taking of their property. 971 F.3d 574, 581 (6th Cir. 2020), *cert. denied*, —U.S.—, 2021 WL 666476 (U.S. Feb. 22, 2021). Such litigation "isn't a proper workaround to the States' sovereign immunity." *Id.* Similarly, in *Culinary Studios*, after concluding that equitable relief is not available for takings claims where the plaintiff could obtain just compensation, a court in the Eastern District of California ruled that *Ex parte Young* did not allow suit against state officials. 2021 WL 427115, at *14.

This case law shows that, regardless of how Plaintiffs try to style their takings claim, they fundamentally seek money damages. Any other remedy is unavailable under the Takings Clause. Indeed, the prayer in Plaintiffs' Complaint reveals that they ultimately seek money damages to "adequately compensate Plaintiffs and all others similarly situated for their rental

Page 15 - **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

losses." Compl. at 23 (ECF 17). Because money damages are the only available remedy, Plaintiffs' takings claim falls outside the scope of the *Ex parte Young* exception to sovereign immunity. Accordingly, the Eleventh Amendment requires dismissal of the takings claim against the Governor.

## II.    Plaintiffs' Claims Fail on the Merits.

Plaintiffs have not alleged a viable claim for any constitutional violation. Plaintiffs offer the Court no reason to depart from the overwhelming majority of courts that have concluded that emergency eviction moratoria do not offend the Constitution. *See El Papel*, 2020 WL 8024348, at *7 ("Plaintiffs acknowledged during oral argument, and this Court's research confirms, that to date, there has not been a single court in the country that has found such moratoria to be unconstitutional during this public emergency."). Plaintiffs do not even acknowledge these decisions, much less distinguish them.

### A.    *Blaisdell* Establishes that Plaintiffs Fail to State a Contracts Clause Claim or Any Substantive Due Process Claim.

The Supreme Court case *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934), requires dismissal of Plaintiffs' Contracts Clause claim and any substantive due process claim, to the extent Plaintiffs allege one.[11] *Blaisdell* establishes that HB 4401 is a reasonable response to

---

[11] In their third claim for relief under the Fourteenth Amendment, Plaintiffs do not specify whether they allege a violation of substantive due process or procedural due process. In their Motion to Dismiss, the State Defendants construed the claim as invoking substantive due process. However, in their Response, Plaintiffs assert that their third claim for relief is not actually a substantive due process claim. Combined Response at 26 (ECF 32 at 35). To the extent Plaintiffs assert a procedural due process claim against the Governor based on HB 4401 (which is unclear due to the vagueness of the Complaint), the claim must fail because the violation of which Plaintiffs complain was effected by a valid act of the Oregon state legislature. Thus, the legislative process itself satisfies the requirements of procedural due process. *See Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 957 (9th Cir.1991), *vacated on other grounds*, 506 U.S. 802 (1992), *on remand*, 987 F.2d 662 (9th Cir. 1993) ("When the action

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

a national emergency.  There, the Supreme Court found a mortgage foreclosure moratorium

constitutional.  As in *Blaisdell*, the statute at issue here prevents a property owner from ousting a

third party, but the underlying indebtedness remains:  no tenant's obligation to pay delinquent

rent is being waived.  *See* HB 4401 § 7(3)(a) (providing a form of notice to tenants that states,

"**You still owe rent, as required by your rental agreement.  Any unpaid rent must be paid**

**by July 1, 2021.**" (bold in original)).  Although Plaintiffs argue that *Blaisdell* "required

mortgagors to pay the equivalent of 'rent' during the moratorium period" before a court stayed

the foreclosure (Combined Response at 15 (ECF 32 at 24)), the law in *Blaisdell* did not, in fact,

guarantee a monthly rent payment.  Instead, it was up to the courts to set the time and manner of

repayment.  290 U.S. at 417.

Under *Blaisdell* and its progeny, there is no precise formula or factor-based test for courts

to apply in every case alleging an unconstitutional impairment of contract rights.  Rather, the

overarching consideration is the reasonableness of the impairment based on the facts of the case.

*See U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22 n.19 (1977) ("Undoubtedly the existence

of an emergency and the limited duration of a relief measure are factors to be assessed in

determining the reasonableness of an impairment, but they cannot be regarded as essential in

every case.").  At least seven district courts across the country have held that *Blaisdell* supports

the reasonableness of temporary eviction moratoria in response to the coronavirus pandemic.

*See Baptiste*, 490 F. Supp. 3d at 386; *HAPCO v. City of Philadephia*, 482 F. Supp. 3d 337, 355

(E.D. Pa. 2020); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 225–26 (D. Conn. 2020);

*Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 172 (S.D.N.Y. 2020); *Heights*

---

complained of is legislative in nature, due process is satisfied when the legislative body performs

its responsibilities in the normal manner prescribed by law.").

**REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND
STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

*Apartments*, 2020 WL 7828818, at \*12; *El Papel*, 2020 WL 8024348, at \*7; *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 2020 WL 6700568, at \*7 (C.D. Cal. Nov. 13, 2020).

Plaintiffs rely on *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935), a case decided a year after *Blaisdell*. There, the legislation at issue postponed mortgage foreclosures "for a term of many years with undisturbed possession for the debtor and without a dollar for the creditor" and effectively took "from the mortgage the quality of an acceptable investment for a rational investor." *Id.* at 60–61. Mortgage holders were "without an effective remedy" for a "[a] minimum of six and a half years," with "no enforceable obligation in the interval." *Id.* at 61. The Supreme Court struck down the law, concluding that the law was "an oppressive and unnecessary destruction of nearly all the incidents that give attractiveness and value to collateral security." *Id.* at 62.

Plaintiffs argue that this precedent is controlling here. Combined Response at 15–17 (ECF 32 at 24–26). However, unlike the law in *Worthen*, HB 4401 does not postpone payment to landlords for a term of many years extending beyond the emergency that occasioned the legislation.[12] Landlords also retain the right to profits from the rental (even if those profits are

---

[12] Senate Bill 282 currently is pending before the Oregon legislature. Under the most recent version of SB 282, the "grace period"—the time when landlords may not pursue claims in court for residential evictions or damages for nonpayment of rent—would be extended through February 28, 2022. SB 282 A-Eng., § 1(3)(b). SB 282 has not been approved by the Oregon House, and as of the date of the filing of this brief, it is unclear whether SB 282 (or any other modifications to HB 4401) will pass out of the Oregon Legislature. Regardless, the modifications proposed to HB 4401 by the current version of SB 282 do not impact either the jurisdictional or merits arguments made by the State Defendants. The text of the current version of SB 282, is available from the Oregon Legislature's website at: https://olis.oregonlegislature.gov/liz/2021R1/Measures/Overview/SB282 (last accessed April 29, 2021).

Page 18 - **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

delayed), and HB 4401 does not permanently bar the ability to bring an action for contract damages.  The Constitution permits this sort of temporary delay in payments during a public emergency.  *See El Papel*, 2020 WL 8024348, at \*8 (concluding that *Blaisdell*, not *Worthen*, controlled the inquiry into whether temporary eviction moratoria were constitutional).  *Blaisdell* applies, and under this standard, Plaintiffs' claims fail.

> **B.    Laws Regulating the Relationship between Landlords and Tenants Are Not *Per Se* Takings, and Plaintiffs Cannot Replead to State a Viable *Ad Hoc* Takings Claim.**

Plaintiffs allege that HB 4401 constitutes a categorical *per se* taking by depriving Plaintiffs of their right to exclude others from their property.  *See* Combined Response at 21 (ECF 32 at 30) (describing takings argument).  HB 4401, however, does not permanently deprive landlords of the right to evict tenants, nor does HB 4401 force landlords to rent to anyone other than tenants with whom the landlords voluntarily executed leases.  The Supreme Court has concluded that in these circumstances, "statutes regulating the economic relations of landlords and tenants are not *per se* takings."  *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987).  The Ninth Circuit also has held that even "a permanent physical invasion" does not constitute a *per se* taking when "the sole property right affected . . . is the right to exclude."  *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 532 (9th Cir. 2019), *cert. granted sub nom. Cedar Point Nursery v. Hassid*, —U.S.—141 S. Ct. 844 (2020).  Although the Supreme Court granted a petition for certiorari to hear the *Cedar Point* case, the Ninth Circuit's decision still binds this Court unless and until the Supreme Court overturns that decision.  *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority[.]").

Page 19 -    **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

Additionally, district courts across the country consistently have rejected *per se* takings claims brought by landlords to challenge state and local eviction moratoria.  *See, e.g.*, *Baptiste*, 490 F. Supp. 3d at 388 ("Plaintiffs are unlikely to prove that a physical taking occurred when the Moratorium was enacted because plaintiffs voluntarily rented their properties to their tenants."); *Auracle Homes*, 478 F. Supp. 3d at 220 (holding that plaintiffs were unlikely to succeed on their claim that executive orders  implementing eviction moratoria were *per se* physical takings); *Elmsford*, 469 F. Supp. 3d at 164 ("Since [Executive Order] 202.28 is temporary on its face, and does not disturb the landlords' ability to vindicate their property rights, the Order is one more example of government regulation of the rental relationship [that] does not constitute a physical taking." (alteration in original) (internal quotation marks omitted)).

Plaintiffs argue that if the Court rejects the *per se* takings theory—as it should under the above case law—then Plaintiffs should receive leave to replead their Fifth Amendment claim as a non-categorical *ad hoc* taking.  Combined Response at 24 (ECF 32 at 33).  This would be futile.  The same courts that have concluded that eviction moratoria do not constitute *per se* takings also have held that such moratoria do not qualify as *ad hoc* regulatory takings.  For example, in *Auracle Homes*, the court reasoned that because Connecticut's eviction moratoria did not deprive landlords of *all* economic benefits of ownership, the *ad hoc* taking framework from *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), applied. 478 F. Supp. 3d at 221.  Under this framework, courts weigh three factors to determine whether interference with property rises to the level of a taking: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action."  *Id.* (quoting *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006)).  The *Auracle Homes* court

Page 20 -  **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

concluded that the factors weighed against finding that the landlords satisfied the heavy burden placed upon a plaintiff alleging an *ad hoc* regulatory taking. *Id.* at 221–23; *accord Baptiste*, 490 F. Supp. 3d at 390 ("Balancing these factors, the court finds that plaintiffs are not likely to prove that there was a non-categorical regulatory taking of their properties when the Moratorium was enacted in April 2020.").[13]

When permitting a plaintiff to amend its complaint would be an exercise in futility, courts may deny leave to replead. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). Adding an *ad hoc* takings claim would not cure the deficiencies in Plaintiffs' second cause of action under the Takings Clause. The law therefore allows the Court to dismiss this claim with prejudice. *See Yentz v. Nat'l Credit Adjusters, LLC*, 2021 WL 1277961, at *2 (D. Or. Feb. 15, 2021) ("Where amendment would be futile, it is appropriate to dismiss the claim with prejudice.").

### C.    Plaintiffs Have Not Stated a Claim for an Unreasonable Seizure in Violation of the Fourth Amendment.

Plaintiffs allege that HB 4401 constitutes an unreasonable seizure of property by the government. However, in a section of the *Cedar Point* case on which the Supreme Court has not granted certiorari, the Ninth Circuit rejected a similar claim. 923 F.3d at 534–36. The court held that even if a regulation allowing access to an owner's property by union organizers authorized a technical trespass, the regulation was not an unreasonable seizure. *Id.* The interference in *Cedar Point* was even more intrusive than the interference that Plaintiffs allege here. Whereas

---

[13] Plaintiffs' takings claim fails for the additional reason that equitable relief—the only relief requested by Plaintiffs—is not an available remedy under the Takings Clause. *See* Section I.B.1 (discussing *Knick*, 139 S. Ct. 2162, and the remedies available for takings claims).

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

Plaintiffs originally chose their tenants and authorized them to occupy Plaintiffs' property, the plaintiffs in *Cedar Point* never authorized access to their properties by union organizers. *Id.* at 529 (describing access granted by the challenged regulation). Under *Cedar Point*, Plaintiffs do not state a claim based on HB 4401's supposed interference with their "right to exclude." *Id.* at 535; *see also McCarthy v. Cuomo*, 2020 WL 3286530, at *4 (E.D.N.Y. June 18, 2020) (rejecting Fourth Amendment challenge to emergency orders that closed businesses during the COVID-19 pandemic).

Plaintiffs argue that the case *U.S. v. James Daniel Good Real Property*, 510 U.S. 43 (1993), "supplies the relevant rule of decision" for their Fourth Amendment claim. Combined Response at 29 (ECF 32 at 38). Plaintiffs are mistaken. *James Daniel Good* is about standards for forfeitures under the Fifth Amendment, not what constitutes a reasonable seizure under the Fourth Amendment. The case involved a civil forfeiture of Mr. Good's Hawaii property after his conviction for "promoting" marijuana. 510 U.S. at 46–47. The federal government seized the property without prior notice to Mr. Good or an adversary hearing. *Id.* at 47. Mr. Good argued that the seizure violated his Fifth Amendment right to due process of law. *Id.* at 47–48. The government responded that although the seizure of Mr. Good's home and 4-acre parcel deprived him of property interests protected by the Due Process Clause, compliance with the Fourth Amendment suffices when the government seizes property for purposes of forfeiture. *Id.* at 49. The Supreme Court disagreed.

The Supreme Court held that "the Fourth Amendment reasonableness standard" is not "the beginning and end of the constitutional inquiry whenever a seizure occurs." *Id.* at 51. The Supreme Court assumed that the government had satisfied the Fourth Amendment but went on to analyze whether the seizure also complied with well-settled jurisprudence under the Due Process

Page 22 - **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

Clause.  *Id.* at 52.  Applying the three-part inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court determined that seizure of Mr. Good's property without prior notice and a hearing violated his due process rights.  *James Daniel Good*, 510 U.S. at 53–59.

In reaching its holding, the Supreme Court rejected the government's argument that it had provided adequate process for the property interest in question.  The government based its argument on the fact that "Good was renting his home to tenants, and . . . the tangible effect of the seizure was limited to taking the $900 a month he was due in rent."  *Id.* at 54.  The Supreme Court concluded that taking Mr. Good's rent money was not "*de minimis* for purposes of procedural due process."  *Id.*  Additionally, on top of appropriating the rent, the government also took for itself "not only the right to prohibit sale, but also the right to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property."  *Id.*  All Mr. Good retained "was the right to bring a claim for the return of title at some unscheduled future hearing."  *Id.*

At no point in *James Daniel Good* did the Supreme Court ever hold or suggest that the government cannot satisfy the Fourth Amendment without also satisfying the Fifth Amendment's procedural due process requirements.  Moreover, the *Mathews v. Eldridge* procedural due process inquiry does not apply to legislative actions, such as the passage of HB 4401.  *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984) ("The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy."); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) (establishing that notice and hearing are not required when "[g]eneral statutes within the state power are passed that affect the person or property of individuals").  And even if procedural due process requirements governed seizures under the Fourth Amendment (which

they do not), *James Daniel Good* is easily distinguished on its facts.  There, the government

began collecting rent from Mr. Good's tenants and took title to his property.  HB 4401 gives the

State Defendants no such rights.  The State Defendants cannot collect rent, evict tenants, rent

Plaintiffs' properties to new tenants, or modify Plaintiffs' properties in any way.  In short, *James

Daniel Good* has no relevance to whether HB 4401 effects an unreasonable seizure under the

Fourth Amendment.  Under *Cedar Point*, HB 4401 does nothing of the sort.

### D.    Plaintiffs Cannot State a Claim for Violation of Their First Amendment Right of Access to the Courts Based on Delays in Civil Actions.

Plaintiffs concede that HB 4401 has not taken away from them any substantive right to

evict tenants, occupy their properties, or collect past-due rent.  *See* Combined Response at 36

(ECF 32 at 45) ("The underlying law has not changed; the substantive law continues to provide

for claims of breach of contract or restoration of possession, and the remedies of eviction and

damages remain available.").  Plaintiffs instead complain that HB 4401 denies them access to the

courts by delaying their ability to file eviction and breach of contract actions.  *See* Plaintiffs'

Motion for Partial Summary Judgment at 6–7, 12 (ECF 33 at 10–11, 16) (asserting that HB 4401

denies Plaintiffs the right to a "speedy and summary recovery of their property" and challenging

"the amount of time it takes for Plaintiffs to secure possession").  First Amendment claims based

on delayed civil proceedings are not cognizable in the Ninth Circuit.

In *Eu*, the Ninth Circuit held that the right of access to courts is not impaired by

"inordinate delays in civil litigation."  979 F.2d at 699.  Even a more than two-year delay in civil

litigation does not offend the Constitution.  *Id.* 706.  Delays do not necessarily "lead[ ] to

inaccurate decisions or ineffective relief, or" deprive "litigant[s] of the ability to vindicate

important rights."  *Id.* at 707.  Absent any allegation that delays caused unjustified dismissal of a

meritorious claim and "effectively prevent[ed] vindication of fundamental rights," there was no

Page 24 -   **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

"claim of constitutional dimension." *Id.* Here, Plaintiffs do not allege that delays in eviction and breach of contract actions will prevent them from ever "pass[ing] through the courthouse doors" and presenting their claims "for judicial determination." *Id.* at 706. To the contrary, Plaintiffs allege that on July 1, 2021, they may "begin the process of eventually retaking possession of their properties." Compl. ¶ 66 (ECF 17 at 21) (emphasis omitted). Therefore, *Eu* establishes that Plaintiffs have not stated a claim for denial of access to the courts.

Plaintiffs point to a single unpublished case from the Superior Court of the District of Columbia that ruled that delays in filing eviction actions during the COVID-19 pandemic transgressed the First Amendment, *Borger Management, Inc. v. Abel Hernandez-Cruz*, No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020). Combined Response at 36 (ECF 32 at 45). That case stands alone. Federal courts have consistently taken the opposite view. *See, e.g.*, *Elmsford*, 469 F. Supp. 3d at 174 ("Since 'mere delay' to filing a lawsuit cannot form the basis of a Petition Clause violation when the plaintiff will, at some point, regain access to legal process, the Plaintiffs' right to collect both the monetary remedies and injunctive relief they would seek through an eviction proceeding has not been 'completely foreclosed' by [the New York Governor's executive order]." (citations omitted)); *Baptiste*, 490 F. Supp. 3d at 392–96 (holding that landlords were not reasonably likely to prevail on their claim that Massachusetts' temporary eviction moratorium infringed on First Amendment right to petition or access courts); *Heights Apartments*, 2020 WL 7828818, at *13 ("Because the [Executive Orders] foreclose the Landlords' ability to obtain only one kind of relief and only does so temporarily, the EOs do not violate the Petition Clause.").

Additionally, the eviction filing moratorium at issue in *Borger* was much broader than HB 4401. In *Borger*, the moratorium "applie[d] across the board to all cases in which property

Page 25 -    **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

owners try to regain possession of their property." Ex. 1 to Declaration of John DiLorenzo in Support of Plaintiffs' Motion for Partial Summary Judgment (ECF 34-1 at 15). During the emergency period, landlords in the District of Columbia could not file eviction actions against tenants who committed crimes or who interfered with their neighbors' rights. *Id.* Landlords also could not terminate tenancies to personally occupy the dwelling units. *Id.* HB 4401, in contrast, prevents only eviction actions for nonpayment. Landlords remain free to initiate proceedings for other lease violations. *See* HB 4401 § 7(3)(a) (informing tenants, "**You can still be evicted for violations of the rental agreement, other than nonpayment of rent**." (bold in original)). Oregon landlords also remain free to terminate tenancies so that they or their family can move into the property. *Id.* (informing tenants that they may be evicted if their landlord or the landlord's family will occupy the dwelling unit). *Borger* thus does not establish that HB 4401 denies Plaintiffs access to the courts. Like Plaintiffs' other causes of action, their final claim for relief should not survive past the pleading stage.

## III.    Plaintiffs Should Still Make Their Surviving Allegations More Definite.

The State Defendants alternatively request that Plaintiffs make their allegations more definite, pursuant to FRCP 12(e). Plaintiffs have not alleged how each one of the government acts that make up the "Eviction Moratoria" harm them. Nor have Plaintiffs alleged whether Plaintiffs Tyler Sherman and Crystal Sherman own their properties individually or through a business entity. These failures in specificity prevent all Defendants from fully assessing the extent each of Plaintiffs' claims apply to them and what harm is attributable to each Defendant. Additionally, it is not enough for Plaintiffs to allege that the Shermans own property "throughout Oregon." Combined Response at 38 (ECF 32 at 47). Without allegations about whether the Shermans own their properties individually or through business entities it is impossible to

Page 26 - **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600    FAX (503) 227-6840

discern whether they, like Mr. Farhoud, lack standing.  If their claims proceed, Plaintiffs should clarify these points.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the State Defendants request that the Court dismiss Plaintiffs' First Amended Complaint in its entirety and without leave to amend.  In the alternative, the State Defendants request that the Court order Plaintiffs to make their allegations more definite under FRCP 12(e).


DATED this 29th day of April, 2021.

> STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.
>
>
> By: s/ Steven C. Berman
>  **Keith Ketterling**, OSB No. 913368
>  **Steven C. Berman**, OSB No. 951769
>  **Megan K. Houlihan**, OSB No. 161273
>
> 209 SW Oak Street, Suite 500
> Portland, OR  97204
> Telephone:  (503) 227-1600
> Facsimile:  (503) 227-6840
> Email: kketterling@stollberne.com
>    sberman@stollberne.com
>    mhoulihan@stollberne.com
>
> *Special Assistant Attorneys General for Ellen F. Rosenblum in her official capacity as the Attorney General of the State of Oregon*

Page 27 - **REPLY IN SUPPORT OF DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S MOTION TO DISMISS**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840