NAOMI SHEFFIELD, OSB #170601
Sr. Deputy City Attorney
naomi.sheffield@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Telephone: (503) 823-4047
Fax: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN, and CRYSTAL SHERMAN**, | **Case No. 3:20-cv-02226-JR** |
| Plaintiffs, | **DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP 12(B)(1) AND 12(B)(6) MOTION TO DISMISS** |
| v. | |
| **GOVERNOR KATE BROWN, in her official capacity; STATE OF OREGON; CITY OF PORTLAND, an Oregon municipal corporation; and MULTNOMAH COUNTY OF OREGON, an Oregon municipal corporation,** | |
| Defendants. | |

Page i –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
12(b)(1) AND 12(b)(6) MOTION TO DISMISS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

# TABLE OF CONTENTS

I.      INTRODUCTION.........................................................................................................1

II.     ARGUMENT .............................................................................................................1

A.     Plaintiffs' claims against the City are not justiciable...........................................1

    1.      Expiration of the City Ordinances moots Plaintiffs' claims for prospective relief..2

    2.      Plaintiffs lack standing against the City because they have not alleged harm that was reasonably traceable to the City Ordinances or redressable by injunction of these expired ordinances. .......................................................................................5

B.     Plaintiffs have not alleged either a substantial impairment or a lack of reasonable relationship necessary to support their Contract Clause claim. ............................7

    1.      The City Ordinances' temporary limitations on a single remedy available to Plaintiffs did not substantially impair their contracts with tenants........................7

    2.      Any impairment to Plaintiffs' contracts was reasonably related to a significant and legitimate public purpose. ...................................................................................10

C.     Plaintiffs have not alleged a cognizable takings claim. .....................................13

    1.      Prospective relief is unavailable for Plaintiffs' takings claim. ...........................13

    2.      Plaintiffs' argument that any interference with their right to exclude constitutes a *per se* regulatory taking was rejected in *Cedar Point Nursery*..............................15

D.     Plaintiffs' price control claim fails for the same reason as their Contract Clause claim. ...17

E.     Plaintiffs have failed to allege an unconstitutional seizure under the Fourth Amendment. ......................................................................................................20

F.     The City Ordinances do not prevent Plaintiffs from accessing the courts........................22

III.    CONCLUSION .........................................................................................................23

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

# TABLE OF AUTHORITIES

### Federal Cases

*Agins v. City of Tiburon*,
 447 U.S. 255 (1980).................................................................... 13

*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*,
 2020 WL 6700568 (C.D. Cal. Nov. 13, 2020)......................... 11

*Auracle Homes, LLC v. Lamont*,
 478 F. Supp. 3d 199 (D. Conn. 2020)............................... 15, 17

*Baptiste v. Kennealy*,
 490 F. Supp. 3d 353 (D. Mass. 2020) ......................... 10, 11, 15

*Bell v. City of Boise*,
 709 F.3d 890 (9th Cir. 2013) ............................................. 3

*Board of Trustees of Glazing Health and Welfare Trust v. Chambers*,
 941 F.3d 1195 (9th Cir. 2019) ...................................... 2, 3, 4

*Campanelli v. Allstate Life Ins. Co.*,
 322 F.3d 1086 (9th Cir. 2003) ............................................. 7

*Cedar Point Nursery v. Shiroma*,
 923 F.3d 524 (9th Cir. 2019) ....................................... 14, 19

*Chem. Producers & Distribs. Ass'n v. Helliker*,
 463 F.3d 871 (9th Cir. 2006) ............................................. 2

*Chevron USA, Inc. v. Cayetano*,
 224 F.3d 1030 (9th Cir. 2000) .......................................... 17

*Connolly v. Pension Benefit Guaranty Corp.*,
 475 U.S. 211 (1986)........................................................ 15

*Coral Constr. Co. v. King Cty.*,

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

941 F.2d 910 (9th Cir. 1991) ...................................................................................... 2

*E. Spire Commc'ns, Inc. v. Baca,*

269 F. Supp. 2d 1310 (D.N.M. 2003) ...................................................................... 7

*East N.Y. Sav. Bank v. Hahn,*

326 U.S. 230 (1945) .............................................................................................. 10

*El Papel v. Inslee,*

No. 2:20-cv-01323-RAJ-JRC, 2020 WL 8024348 (W.D. Wash. Dec. 2, 2020) ................. 6, 10

*Elmsford Apartment Assocs., LLC v. Cuomo,*

469 F. Supp. 3d 148 (S.D.N.Y. 2020) .......................................................... 6, 15, 17

*Energy Reserves Grp., Inc. v. Kansas Power and Light Co.,*

459 U.S. 400 (1983) ....................................................................................... 6, 9

*Fed. Power Comm'n v. Hope Nat. Gas Co.,*

320 U.S. 591 (1944) .............................................................................................. 17

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOD), Inc.,*

528 U.S. 167 (2000) ......................................................................................... 2, 3

*Hall v. City of Santa Barbara,*

797 F.2d 1493 (9th Cir. 1986) .............................................................................. 13

*Hall v. City of Santa Barbara,*

833 F.2d 1270 (9th Cir. 1986) ........................................................................ 12, 13

*Halverson v. Skagit Cty.,*

42 F.3d 1257 (9th Cir. 1994) ................................................................................ 16

*HAPCO v. City of Philadelphia,*

482 F. Supp. 3d 337 (E.D. Pa. 2020) ............................................................ 7, 8, 11

*Hawaii Hous. Auth. v. Midkiff,*

467 U.S. 229 (1984) .............................................................................................. 12

*Heights Apartments, LLC v. Walz,*

Page iv – TABLE OF AUTHORITIES

No. 20-cv-2051, 2020 WL 7828818 (D. Minn. Dec. 31, 2020) ........................................ passim

*Hollingsworth v. Perry*,

570 U.S. 693 (2013) ................................................................................................. 5

*Home Bldg. & Loan Ass'n v. Blaisdell*,

290 U.S. 398 (1934) ................................................................................... 9, 10, 18

*Hordon v. Kitsap Cty. Sheriff's Office*,

No. 20-5464 RJB, 2020 WL 3266213 (W.D. Wash. June 17, 2020) ........................ 4

*In re Permian Basin Area Rate Cases*,

390 U.S. 747 (1968) ............................................................................................... 17

*Johnson v. Murphy*,

No. 1:20-CV-06750-NLH, 2021 WL 1085744 (D.N.J. Mar. 22, 2021) .............................. 7, 17

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,

480 U.S. 470 (1987) ............................................................................................... 15

*Knick v. Township of Scott, Pa.*,

139 S. Ct. 2162 (2019) ........................................................................................... 12

*Lingle v. Chevron U.S.A. Inc.*,

544 U.S. 528 (2005) ............................................................................................... 13

*Loretto v. Teleprompter Manhattan CATV Corp.*,

458 U.S. 419 (1982) ........................................................................................... 7, 14

*Lujan v Defs. of Wildlife*,

504 U.S. 555 (1992) ................................................................................................. 4

*McCorvey v. Hill*,

385 F.3d 846 (5th Cir. 2004) ................................................................................. 4

*Nebbia v. People of New York*,

291 U.S. 502 (1934) ............................................................................................... 17

*Nw. Grocery Ass'n v. City of Seattle*,

Page v – TABLE OF AUTHORITIES

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

No. C21-0142-JCC, 2021 WL 1055994 (W.D. Wash. Mar. 18, 2021) ................................ 7, 11

*Penn Central Transp. Co. v. City of New York*,

  438 U.S. 104 (1978) .................................................................................................... 15

*Pennell v. City of San Jose*,

  485 U.S. 1 (1988) ........................................................................................................ 17

*Rentberry, Inc. v. City of Seattle*,

  814 F App'x 309 (9th Cir. 2020) ................................................................................. 4

*Rosebrock v. Mathis*,

  745 F.3d 963 (9th Cir. 2014) ....................................................................................... 3

*Ross v. City of Berkeley*,

  655 F. Supp. 820 (N.D. Cal. 1987) ........................................................................ 12, 13

*Sierra Lake Reserve v. City of Rocklin*,

  938 F.2d 951 (9th Cir. 1991) ...................................................................................... 16

*Soldal v. Cook Cty., Ill.*,

  506 U.S. 56 (1992) ................................................................................................. 16, 17

*Sosna v. Iowa*,

  419 U.S. 393 (1975) .................................................................................................... 20

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*,

  560 U.S. 702 (2010) .................................................................................................... 16

*Sveen v. Melin*,

  138 S. Ct. 1815 (2018) .................................................................................................. 8

*U.S. Trust Co. v. New Jersey*,

  431 U.S. 1 (1977) ........................................................................................................ 11

*United States v. James Daniel Good Real Property*,

  510 U.S. 43 (1993) ................................................................................................. 18, 19

*W.B. Worthen Co. ex rel Bd. of Com'rs of St. Improvement Dist. No. 513 of Little Rock, Ark. v.*

Page vi – TABLE OF AUTHORITIES

*Kavanaugh*,

  295 U.S. 56 (1935) ..................................................................................... 9, 10

*Yee v. Escondido*,

  503 U.S. 519 (1992) ......................................................................................... 13

### State Cases

*Budget Rent-a-Car of Wash.-Or., Inc. v. Multnomah Cty.*,

  287 Or. 93, 597 P.2d 1232 (1979) ............................................................... 5

*Hazell v. Brown*,

  238 Or. App. 487, 424 P.3d 743 (2010) .................................................... 5

*Ross v. Multnomah Cty., Or.*,

  No. 130710002, 2013 WL 9947703 (Or. Cir. Nov. 27, 2013) ..................... 5

### Federal Statutes

42 U.S.C. § 3604 ................................................................................................ 8

### State Statutes

Article I, Section 21 of the Oregon constitution ............................................. 5

Article VI, Section 10 of the Oregon Constitution ......................................... 5

ORS 105.157-68 ................................................................................................ 8

ORS 203.030 to 203.075 .................................................................................. 5

ORS 203.035 ..................................................................................................... 5

ORS 203.040 ..................................................................................................... 5

ORS 203.055 ..................................................................................................... 5

### Federal Rules

Federal Rule of Civil Procedure 12(b)(1) ....................................................... 1

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 1

Page vii – TABLE OF AUTHORITIES

## I.    INTRODUCTION

The City of Portland ("City"), like governments across the world, was forced to quickly respond to the unprecedented public health risks and economic fall-out from COVID-19. In promptly responding, the City enacted eviction moratoria to ensure that residents were able to remain housed, limiting further risks to public health and safety. The City's eviction moratoria were necessary, temporary steps that withstand constitutional scrutiny on the merits. However, the Court need not reach the merits of Plaintiffs' claims against the City because they are not justiciable. Plaintiffs have neither pleaded nor argued the requisite standing requirements that their alleged injuries are fairly traceable to the City's actions or redressable by the relief they seek. Moreover, Plaintiffs seek solely prospective relief with respect to ordinances that Plaintiffs concede have expired.

The City respectfully requests that this Court dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. However, if the Court reaches the merits of Plaintiffs' claims, they should be dismissed under Federal Rule of Civil Procedure 12(b)(6), as they do not state constitutional violations.

## II.    ARGUMENT

### A.    Plaintiffs' claims against the City are not justiciable.

Plaintiffs rely on inapplicable statutes and outdated cases to argue that their claims for prospective relief against the City are justiciable. They are not. Plaintiffs seek to enjoy two City ordinances—Ordinance 189890 (Am. Compl. Ex. 2, ECF 17-1) and Ordinance 190156 (Am. Compl. Ex. 9, ECF 17-1) (the "City Ordinances"). Both City Ordinances have been expired for months. For this reason, Plaintiffs' request for prospective relief against the City is moot. Further, Plaintiffs failed to plead adequate facts to demonstrate standing for their claims against

Page 1 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
              12(b)(1) AND 12(b)(6) MOTION TO DISMISS

the City. Plaintiffs do not dispute that their properties within the City are also located in

Multnomah County. Instead Plaintiffs contend that Multnomah County's eviction moratoria were

not applicable within City limits absent the City Ordinances. This faulty argument relies solely

on an Oregon statute that is not applicable to Multnomah County. Plaintiffs do not and cannot

allege that they suffered any harm that is fairly traceable to the City Ordinances or that the

prospective relief they seek—enjoining the expired City Ordinances—would remedy their

alleged harm. Plaintiffs lack standing against the City.

1. **Expiration of the City Ordinances moots Plaintiffs' claims for prospective relief.**

Plaintiffs acknowledge that "courts typically presume that a government is acting in good

faith when it changes its policy." (Pls.' Resp., ECF 32, at 12). They nonetheless contend that

their claims for prospective relief with respect to the expired City Ordinances remain live unless

the "City affirmatively represents that [it] will enact no further moratoria in the future." (*Id.* at

13). Plaintiffs' inaccurate assertion stems from their mischaracterization of the voluntary

cessation doctrine.

Relying on cases that were overruled by *Board of Trustees of Glazing Health and

Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019),[1] Plaintiffs contend that the City has

not met its burden of showing that expiration of the City Ordinances moots Plaintiffs' claims.

Plaintiffs are incorrect both with regard to which party has the burden and the standard for

meeting it. The Ninth Circuit has eschewed this "high burden" or "virtual certainty" requirement

---

[1] Plaintiffs cite *Coral Constr. Co. v. King Cty.*, 941 F.2d 910 (9th Cir. 1991) and *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871 (9th Cir. 2006). Both expressly overruled. *Bd. of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1198-99 (9th Cir. 2019). Plaintiffs do not cite or try to distinguish *Glazing Health*.

Page 2 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
12(b)(1) AND 12(b)(6) MOTION TO DISMISS

to demonstrate mootness when addressing legislative changes or the expiration of legislation. *Glazing Health*, 941 F.3d at 1199. Instead, consistent with "the majority of our sister circuits," the Ninth Circuit does not to treat legislative actions the same as challenged acts by a private party. *Id*. Moreover, the *Glazing Health* distinguished *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOD), Inc.*, 528 U.S. 167, 189 (2000), also cited by Plaintiffs (Pls.' Resp. at 12), because it related to "[a] private defendant's voluntary cessation of challenged conduct." *Id*. at 1198.

Instead of imposing a high burden on government entities to demonstrate mootness, the Court "should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision, or in allowing it to expire." *Id.* at 1199. The standard is not, as Plaintiffs contend, whether the City has met a heavy burden of showing that the City Ordinances will not be reenacted. Instead, the Court must presume that the expiration of the City Ordinances "will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id*. And it is *Plaintiffs'* burden to show, with evidence "in the record," that "there is a reasonable expectation of reenactment." *Id.* Plaintiffs have not offered such a showing. Plaintiffs assert "that they have done it before is the best evidence that they will do it again." (Pls.' Resp. at 22). But this is no evidence at all. Rather, it is an axiom that, if accepted, would swallow the rule set forth in *Glazing Health*.

Plaintiffs seek to create a distinction between local legislative action and state legislative action. But there is no merit in this distinction. Plaintiffs rely on dicta from cases that distinguished not between state and local action, but instead between legislative actions and less

Page 3 –   DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
            12(b)(1) AND 12(b)(6) MOTION TO DISMISS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

formal policy changes.[2] The court in *Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014), addressed a situation where "a policy change [was] not reflected in statutory changes *or even in changes in ordinances or regulations*." *Id.* at 971 (emphasis added); *see also Bell v. City of Boise*, 709 F.3d 890, 899 (9th Cir. 2013) ("We are not presented with a change to a state legislative enactment, nor are we presented with the repeal of the challenged Ordinances."). Neither *Rosebrock* nor *Bell* rely on a standard that discounts the weight of legislative actions taken by local governments. And in *Glazing Health*, the court explained that it was following the direction of other circuits that "have interpreted *City of Mesquite* 'to support the rule that *repeal of a contested ordinance* moots a plaintiff's injunction request, absent evidence that the City plans to or already has reenacted the challenged law or one substantially similar.'" 941 F.3d at 1198 (quoting *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) (emphasis added)). In short, the presumption of mootness applies to lawsuits involving municipal ordinances that have been repealed or expired, just as it applies to other legislative actions. *See, e.g.*, *Rentberry, Inc. v. City of Seattle*, 814 F App'x 309 (9th Cir. 2020) (mem) ("Appellants have not met their burden of showing a 'reasonable expectation' that Seattle will enact a same or similar ordinance in the future."); *Hordon v. Kitsap Cty. Sheriff's Office*, No. 20-5464 RJB, 2020 WL 3266213, at *2 (W.D. Wash. June 17, 2020) (finding claim moot where local government had eliminated through legislative action the allegedly unconstitutional rule and "[t]here is no showing that the Port of Kingston will reenact it during the pendency of this litigation.").

---

[2] It is also notable that these cases, while not expressly overruled by *Glazing Health*, discussed the "heavy burden" standard on governmental entities that was subsequently rejected by the Ninth Circuit. *Rosebrock v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014); *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013).

Page 4 –   DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
             12(b)(1) AND 12(b)(6) MOTION TO DISMISS

When the correct standard is applied, Plaintiffs' claims, which seek prospective relief against the City, are moot. The Court should dismiss all of Plaintiffs' claims against the City.

> **2. Plaintiffs lack standing against the City because they have not alleged harm that was reasonably traceable to the City Ordinances or redressable by injunction of these expired ordinances.**

Plaintiffs assert that "Multnomah County's eviction moratorium was without legal effect in the City of Portland until the City of Portland adopted that ordinances as its own." (Pls.' Resp. at 20). They also contend that they have standing against the City because the City Ordinances were effective, even if not operative on Plaintiffs' properties. (*Id*. at 13). Plaintiffs arguments are not supported by Oregon law and also fail to address the necessary elements of standing in federal court. Standing requires that Plaintiffs allege (1) injury in fact; (2) that is fairly traceable to defendant's challenged conduct; and (3) that is likely to be redressed by a favorable decision. *Lujan v Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

First, Plaintiffs rely solely on ORS 203.040 to rebut the City's argument that they lack standing because their properties, located in Multnomah County, were not impacted by either of the City Ordinances. But ORS 203.040 is not applicable to Multnomah County, which is a home rule county. ORS 203.040 applies to "Ordinances adopted under ORS 203.030 to 203.075[.]" Home rule charter counties, like Multnomah County, do not derive their authority to adopt ordinances from statute. Instead, they "derive their authority from a charter enacted pursuant to Article VI, Section 10 of the Oregon Constitution." *Ross v. Multnomah Cty., Or.*, No. 130710002, 2013 WL 9947703, at *1 (Or. Cir. Nov. 27, 2013); *see also Budget Rent-a-Car of Wash.-Or., Inc. v. Multnomah Cty.*, 287 Or. 93, 97-98, 597 P.2d 1232, 1235 (1979) (explaining that a public vote required by ORS 203.055 was not required in Multnomah County where they acted under their home rule charter authority, rather than authority derived from ORS 203.035).

Page 5 –   DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
            12(b)(1) AND 12(b)(6) MOTION TO DISMISS

ORS 203.040 "does not apply to ordinances adopted under Multnomah County's home rule charter." *Ross*, 2013 WL 9947703, at *3. Plaintiffs' application of ORS 203.040 is misplaced. Multnomah County's eviction moratoria applied within Multnomah County. The City Ordinances expanded those moratoria to the areas of Portland outside of Multnomah County, including parts of Washington and Clackamas counties. Because Plaintiffs have no property in the areas where the City Ordinances extended the requirements of Multnomah County's eviction moratoria, they lack standing to seek relief against the City.

Plaintiffs also contend that they have standing because, under Oregon law, the City Ordinances were effective, even if they were not operative. This argument is of no relevance to Plaintiffs' standing in this federal lawsuit. "[S]tanding in federal court is a question of federal law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). Further, *Hazell v. Brown*, 238 Or. App. 487, 242 P.3d 743 (2010), relied on by Plaintiffs for this operative/effective distinction, did not address standing or other issues of justiciability. *Id*. at 496 (discussing constraints in the delegation of legislative authority under Article I, Section 21 of the Oregon constitution).

Here, Plaintiffs have not alleged that any harm they suffered is fairly traceable to the City Ordinances. They similarly fail to show that an action by this Court enjoining the City Ordinances, which have expired, would redress Plaintiffs' alleged harms. While certain Plaintiffs may have owned property within the City of Portland, that property was subject to the Multnomah County eviction moratoria. Plaintiffs were also subject to the State eviction moratoria and federal eviction moratoria during this time. (*See* City's Motion at 5-9). Nowhere do Plaintiffs allege or even argue that any harms they suffered were the result of the now-expired City Ordinances. *Cf. El Papel v. Inslee*, No. 2:20-cv-01323-RAJ-JRC, 2020 WL 8024348, at *5 (W.D. Wash. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL 71678 (W.D. Wash.

Page 6 –   DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
             12(b)(1) AND 12(b)(6) MOTION TO DISMISS

Jan. 8, 2021) (finding standing against with respect to a Washington eviction moratorium, despite federal moratorium, where one plaintiff had a tenant who could be evicted under the federal moratorium, but not the Washington moratorium). Plaintiffs' alleged harm is not fairly traceable to the City Ordinances and it would not be redressed by enjoining the City Ordinances. Therefore, Plaintiffs lack standing to assert their claims against the City. Additionally, because amending their complaint could not cure this defect, further amendment would be futile. (Pls.' Resp. at 13-14 n.2). The Court should dismiss Plaintiffs' claims with prejudice.

**B.    Plaintiffs have not alleged either a substantial impairment or a lack of reasonable relationship necessary to support their Contract Clause claim.**

**1.   The City Ordinances' temporary limitations on a single remedy available to Plaintiffs did not substantially impair their contracts with tenants.**

Plaintiffs contend that the City ignored the analysis for substantial impairment by assuming Plaintiffs, as residential landlords, operated in a highly regulated industry. This is untrue. The fact that Plaintiffs operate within a highly regulated market sets the backdrop for Plaintiffs' reasonable expectations. *See Energy Reserves Grp., Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411 (1983); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 160 (S.D.N.Y. 2020) ("Because past regulation puts industry participants on notice that they may face further government intervention in the future, a later-in-time regulation is less likely to violate the contracts clause[.]"). The factors in *Sveen*, when correctly applied, show that the City Ordinances did not substantially impair Plaintiffs' contracts. The City Ordinances imposed temporary restrictions on certain remedies under Plaintiffs' contracts, and did so within the existing framework of extensive regulations.

First, Plaintiffs assert, without citation to relevant caselaw, that residential housing is not a highly regulated industry. Plaintiffs cite two cases that identify insurance and public utilities as

Page 7 –   DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
12(b)(1) AND 12(b)(6) MOTION TO DISMISS

highly regulated. From that, Plaintiffs assume that the residential rental market is not. But neither

of the cases discuss the residential rental market. Plaintiffs go on to identify certain

characteristics of the insurance and utility markets that are "hallmarks" of highly regulated

markets, including a state commissioner, price-setting at the state level, and comprehensive

databases. (Pls.' Resp. at 17). None of these "hallmarks" are identified in the cases Plaintiffs cite.

*See Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086 (9th Cir. 2003); *E. Spire Commc'ns, Inc.*

*v. Baca*, 269 F. Supp. 2d 1310 (D.N.M. 2003) (dismissing Contract Clause claim because it was

not raised in the pleadings, without discussion of whether the industry was highly regulated).

Conversely, Plaintiffs explicitly ignore cases that describe the residential rental market as highly

regulated. *See, e.g.*, *Johnson v. Murphy*, No. 1:20-CV-06750-NLH, 2021 WL 1085744, at *9

(D.N.J. Mar. 22, 2021) (noting that "[t]he Supreme Court 'has consistently affirmed that States

have broad power to regulate housing conditions in general and the landlord-tenant relationship

in particular[.]'" quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440

(1982)); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337, 351-52 (E.D. Pa. 2020)

("residential leases have been heavily regulated for many years"); *cf. Nw. Grocery Ass'n v. City*

*of Seattle*, No. C21-0142-JCC, 2021 WL 1055994, at *8 (W.D. Wash. Mar. 18, 2021) (although

the grocery industry is not as highly regulated as energy companies, it is also not "the case that

City inserted itself into 'a field it had never sought to regulate'").

        Portland's residential housing market, like that in other jurisdictions, is highly regulated.

Plaintiffs acknowledge that they operate under Oregon's comprehensive Residential Landlord

and Tenant Act. ORS Ch. 90. Plaintiffs' rights regarding eviction of tenants—their primary

concern with the City Ordinances—are similarly regulated by state law. ORS Ch. 90; ORS

105.157-68. Plaintiffs are also subject to local laws within the City regarding relocation

Page 8 –   DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
            12(b)(1) AND 12(b)(6) MOTION TO DISMISS

assistance, tenant screening, and security deposits. PCC 30.01.085-087. And, of course, Plaintiffs are subject to restriction under the federal Fair Housing Act regarding housing discrimination. *See, e.g.*, 42 U.S.C. § 3604. Nobody could have reasonably expected the severe public health and economic impacts resulting from COVID-19. However, because the residential rental market in Portland is highly regulated, Plaintiffs could reasonably expect to be subjected to regularly changing restrictions and requirements when engaging in the market. *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018) (the second factor to consider is the extent to which the law interferes with a party's reasonable expectations).

Second, with respect to the first *Sveen* factor—the extent to which the City Ordinances undermine the contractual bargain, *id.*—Plaintiffs incorrectly assert that the City Ordinances "prevent Plaintiffs from pursuing judgments for breach-of-contract against their tenants while the tenants remain in possession." (Pls.' Resp. at 19). This restriction is simply not in either of the City Ordinances. Plaintiffs also fail to address the holding by other courts that similar eviction moratoria did not result in a substantial impairment to landlords' contract rights. One such court has explained, "[t]he landlord's end of the contractual bargain is receiving rent payments." *Heights Apartments, LLC v. Walz*, No. 20-cv-2051, 2020 WL 7828818, at *12 (D. Minn. Dec. 31, 2020). Nothing in the City's Ordinance interferes with Plaintiffs' right to receive rent payments.

Finally, the City Ordinances, which currently impose no restrictions on Plaintiffs because they expired, did not prevent Plaintiffs "from safeguarding or reinstating [their] rights." *Sveen*, 138 S. Ct. at 1822. Plaintiffs have failed to address the temporary nature of any impairment the City Ordinances may have inflicted. The fact that any impairment from the City Ordinances lasted less than a year undermines Plaintiffs' position that the impairment was substantial. *See*

Page 9 –   DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
            12(b)(1) AND 12(b)(6) MOTION TO DISMISS

*HAPCO*, 482 F. Supp. 3d at 352-53 ("[T]he Court cannot conclude that HAPCO has a likelihood of success on the merits on its claim that a delay of a few months constitutes a substantial impairment.").

At bottom, the City Ordinances simply postponed one contractual remedy available to Plaintiffs—eviction for non-payment of rent—by approximately nine months. This is not a substantial impairment of Plaintiffs' contract rights.

### 2. Any impairment to Plaintiffs' contracts was reasonably related to a significant and legitimate public purpose.

Even if the City Ordinances substantially impaired Plaintiffs' contracts, they are nonetheless valid because any adjustment was reasonable to address the City's significant and legitimate public purpose of reducing the public health risks from COVID-19 and mitigating some of its immediate economic impacts. *See Energy Reserves*, 459 U.S. at 411-12 (a significant and legitimate public purpose may include "the remedying of a broad and general social or economic problem"). Plaintiffs do not contend that the City lacks a significant and legitimate purpose in protecting its residents from eviction during a pandemic that has given rise to a public health and economic crisis. Plaintiffs only argue that the City Ordinances were an unreasonable response to the crisis. In taking this position, Plaintiffs ask the Court to look to one case, *W.B. Worthen Co. ex rel Bd. of Com'rs of St. Improvement Dist. No. 513 of Little Rock, Ark. v. Kavanaugh*, 295 U.S. 56 (1935). But the facts of *Worthen* are distinguishable from the facts here, and, in fact, have been distinguished in nearly identical situations.

Plaintiffs ask the Court to replace the City Council's reasoned judgment with its own, and find that the City Ordinances demonstrate "studied indifference" to Plaintiffs' interests. But the City Ordinances are not similar to the law in *Worthen*. In distinguishing *Home Bldg. & Loan*

Page 10 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
12(b)(1) AND 12(b)(6) MOTION TO DISMISS

*Ass'n v. Blaisdell*, 290 U.S. 398, 434 (1934), the *Worthen* Court noted the temporary nature of the *Blaisdell* moratorium—"for a maximum term of two years, but in no event beyond the then existing emergency." *Worthen*, 295 U.S. at 63. In contrast, the law at issue in *Worthen* was "postponement for a term of many years with undisturbed possession for the debtor and without a dollar for the creditor." *Id.* at 61. Here, the City Ordinances were a moratorium of just nine months, shorter even than the moratorium upheld in *Blaisdell*.

In *East N.Y. Sav. Bank v. Hahn*, 326 U.S. 230, 233-34 (1945), the Supreme Court subsequently considered *Worthen* when analyzing a series of mortgage foreclosure enactments that continued for a period of *ten years*. *Id.* at 231. In distinguishing *Worthen*, the Supreme Court noted the frequent reconsideration, studies, and readjustments by the New York legislature. *Id.* at 234-35. While the Court considered these factors, it did not identify them as requirements for overcoming the "studied indifference" identified in *Worthen*. *Id. Hahn* does not require, as Plaintiffs imply, that the City was required to engage in the same reconsideration, study, and adjustment for the City Ordinances, which remained in place for just *nine months*. In fact, the *Hahn* Court identified the governing constitutional principle from *Blaisdell* as: "when a widely diffused public interest has become enmeshed in a network of multitudinous private arrangements, the authority of the State 'to safeguard the vital interests of its people,' is not to be gainsaid by abstracting one such arrangement from its public context and treating it as though it were an isolated private contract constitutionally immune from impairment." *Id.* at 232 (internal citation omitted).

Notably, other district courts considering eviction moratoria in response to COVID-19 found these enactments more akin to *Blaisdell* than *Worthen*. *See Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 387 (D. Mass. 2020) (noting "the governmental interest in the contracts at issue

Page 11 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
12(b)(1) AND 12(b)(6) MOTION TO DISMISS

meant that the same degree of deference was not due as in cases where private contracts are involved."); *El Papel LLC*, 2020 WL 8024348, at *8 (distinguishing *Worthen* because "the moratoria at issue are temporary, a lessor retains the right to the profits from the rental (even if those profits are delayed), and the ability to bring an action for contract damages is not absolutely barred"). Here, the City has no direct interest in the contractual relationships between the Plaintiffs and their tenants. The City Ordinances merely delayed Plaintiffs' right to evict by nine months and never precluded Plaintiffs from seeking a remedy in contract. The City Ordinances, like the ordinances in Massachusetts and Washington, are more similar to *Blaisdell* than *Worthen*.

Further, Plaintiffs do not even attempt to address or distinguish the numerous courts that have concluded that similar eviction moratoria were reasonably related to the substantial and legitimate public purpose of "combatting the growing threat of COVID-19." *Baptiste*, 490 F. Supp. 3d at 385 (finding plaintiffs were unlikely to succeed on the argument that when the Massachusetts eviction moratorium was enacted, it "was not a reasonable, necessary, and appropriate way to address" the threat of COVID-19); *see also Heights Apartments*, 2020 WL 7828818, at *12 (noting that the eviction moratorium "need not be narrowly tailored to prevent the spread of COVID-19, nor do they even need to be 'necessary.' Rather, they need only be 'drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose,' and the Court finds that they are."); *Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, 2020 WL 6700568, at *7 (C.D. Cal. Nov. 13, 2020) (deferring "to the City Council's weighing of the interests at stake" and recognizing that the COVID-19 emergency "is arguably more serious than that brought on by the Great Depression [which was the basis of the Court's finding in *Blaisdell*], coupling, as it does, the consequences of economic catastrophe

Page 12 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

with a serious, and worsening, threat to public health."); *HAPCO*, 482 F. Supp. 3d at 355

(eviction moratorium "undoubtedly helps residents remain in their homes and, especially

considering the COVID-19 pandemic during which it is critical that people have the space to

remain socially distant from each other, it is reasonable and appropriate for the City to 'protect[]

the mental and physical health of citizens who could suffer greatly by evictions.'"). In fact, even

more attenuated laws in response to COVID-19 have withstood scrutiny under the Contract

Clause analysis because the Supreme Court has directed courts to "'defer to legislative judgment

as to the necessity and reasonableness of a particular measure' in cases where the state is not a

contracting party." *Nw. Grocery Ass'n*, 2021 WL 1055994, at *8 (quoting *U.S. Trust Co. v. New

Jersey*, 431 U.S. 1, 22 (1977)) (upholding challenge to premium pay mandate for grocery

workers during the COVID-19 pandemic).

The City Ordinances were temporary actions, since expired, in response to an

extraordinary public health and economic emergency. Even if the City Ordinances substantially

impaired Plaintiffs' contract rights, they were reasonably related to advancing the significant and

legitimate interests of maintaining people in their homes during the emergency. The Court

should dismiss Plaintiffs' first claim for relief.

### C.   Plaintiffs have not alleged a cognizable takings claim.

Plaintiffs seek to enjoin the expired City Ordinances to remedy the alleged takings claim.

Plaintiffs' takings claim fails both because they seek relief that is unavailable and because they

have not, and cannot, allege that the City Ordinances amounted to a permanent physical

occupation of Plaintiffs' property.

### 1.   Prospective relief is unavailable for Plaintiffs' takings claim.

Plaintiffs ignore *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162 (2019). There, the

Page 13 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
      12(b)(1) AND 12(b)(6) MOTION TO DISMISS

Court held that "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Id*. at 2176. Plaintiffs have not alleged the absence of an adequate provision for obtaining just compensation. Instead of addressing *Knick*, Plaintiffs argue that prospective relief is available for their alleged takings claim because the alleged taking does not satisfy the "public use" requirement of the Takings Clause. (Pls.' Resp. at 24). Neither the cases that Plaintiffs cite nor the allegations in their complaint support this argument.

First, it is notable that none of the cases that Plaintiffs cite analyze the appropriateness of an injunction to remedy an alleged taking. *See Ross v. City of Berkeley*, 655 F. Supp. 820, 844 (N.D. Cal. 1987) (granting summary judgment where plaintiff had not shown exhaustion of administrative processes available for just compensation under Takings Clause); *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984) (finding no purely private purpose and that the requirements of the Fifth and Fourteenth Amendments were met); *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986)[3], *abrogated on other grounds by Yee v. Escondido*, 503 U.S. 519 (1992) (discussing the "public use" prong of the Takings Clause, but not addressing equitable relief and ultimately not expressing any view on whether the ordinance constitutes a taking).

Moreover, the concept of "public use" that Plaintiffs rely upon stems from the now abrogated "substantially advance legitimate state interests" prong of the regulatory takings test that arose from *Agins v. City of Tiburon*, 447 U.S. 255 (1980). *See Ross v. City of Berkeley*, 655 F. Supp. at 836, 840 (citing *Agins* for the requirement that the court resolve the question of

---

[3] Plaintiffs cited *Hall v. City of Santa Barbara*, 797 F.2d 1493 (9th Cir. 1986). That case was superseded by *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986). The relevant and material opinions are the same.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

whether the government action "advance[d] a legitimate governmental interest"); *Hall*, 833 F.2d at 1280 (same). This "substantially advances" requirement that *Agins* identified has since been rejected by the Supreme Court. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 540-41 (2005) (explaining that the "substantially advances" jurisprudence "prescribes an inquiry in the nature of a due process, not a takings, test, and that it has no proper place in our takings jurisprudence"). Plaintiffs' reliance on this inquiry into "whether a regulation of private property is *effective* in achieving some legitimate public purpose" is not relevant to their takings claim. *Id*. at 542.

Finally, even if Plaintiffs' proposed public purpose test were appropriate, they do not allege the City Ordinances were not passed for a public use. In fact, Plaintiffs allege that the City Ordinances amount to a taking "of Plaintiffs' property *for a public use* without just compensation." (Am. Compl. ¶¶ 1, 3 (emphasis added)). Plaintiffs further allege that "Plaintiffs will likely bear the cost of this state-run public benefit program entirely on their own." (*Id*. at ¶ 3; *see also* ¶ 20 ("Plaintiffs struggle under the combined weight of both the government-induced economic shutdown and the public burden they have been ordered to privately shoulder as compelled providers of public housing and housing services.")). For each of these reasons, Plaintiffs cannot maintain their request for prospective relief for their takings claims, and the Court should dismiss Plaintiffs' takings claim.

> **2. Plaintiffs' argument that any interference with their right to exclude constitutes a *per se* regulatory taking was rejected in *Cedar Point Nursery*.**

Plaintiffs contend that limitations on their ability to evict tenants during the period imposed by the City Ordinances, constitute a *Loretto* taking—a *permanent* physical occupation of Plaintiffs' property. *Loretto*, 458 U.S. at 427. But instead of relying on existing precedent to support their contention, their takings claim is premised on a request that this Court assume that

Page 15 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

the Supreme Court will overrule *Cedar Point Nursery v. Shiroma*, 923 F.3d 524 (9th Cir. 2019). In *Cedar Point*, the Ninth Circuit rejected the very argument that Plaintiffs advance here. Plaintiffs allege and argue that the City Ordinances, at most, "affect[] 'one strand of the bundle' of property rights," which does not support a *per se* takings claim. *Id*. at 533.

Plaintiffs describe their right to exclude others as "both a foundational and an essential aspect of property ownership." (Pls.' Resp. at 21). But they nonetheless acknowledge that the Ninth Circuit has held that a regulation that merely impacts one's right to exclude does not constitute a *per se* taking. *Cedar Point*, 923 F.3d at 532. The fact that a member of the Ninth Circuit panel dissented or that the Supreme Court granted review of the decision (Pls.' Resp. at 22), is of no matter—*Cedar Point* is controlling precedent. The City Ordinances, like the regulation at issue in *Cedar Point*, imposed restrictions on a single strand of Plaintiffs' bundle of rights. Plaintiffs "have not suffered a permanent physical invasion that would constitute a per se taking because the sole property right affected by the regulation is the right to exclude." *Id*. at 532.

Plaintiffs are also incorrect in asserting that the City Ordinances are more extreme than the enactment in *Cedar Point*. In fact, while the regulations in *Cedar Point* only permit access 120 days during certain hours, the regulations are permanent—the 120 days of access renews every calendar year. 923 F.3d at 528. In contrast, the City Ordinances were temporary responses to an unexpected emergency. In total, the City Ordinances were in effect for approximately 321 days. Plaintiffs also assert that the lack of pre-deprivation notice and hearing changes the takings analysis. But they cite no cases in support of this contention. This argument appears grounded in procedural due process, which Plaintiffs have not raised. The Court should dismiss Plaintiffs' second claim for relief because the temporary limit on only the Plaintiffs' right to exclude their

Page 16 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

tenants did not constitute a *per se* taking under *Loretto*.[4]

### D.    Plaintiffs' price control claim fails for the same reason as their Contract Clause claim.

Here, Plaintiffs dress up their Contract Clause claim as a substantive due process[5]

violation based on a theory that the City Ordinances are unconstitutional price controls. This

claim, even as Plaintiffs frame it, does not survive on the merits. As an initial matter, substantive

---

[4] The Court should also deny Plaintiffs' request to replead. Other Courts have analyzed similar laws as temporary regulatory takings and concluded that landlords are unable to show that a regulatory taking has occurred. *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 388-90 (D. Mass. 2020); *see also Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199 (D. Conn. 2020); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 165 (S.D.N.Y. 2020). In analyzing this type of taking, the Court must evaluate three factors: (1) the economic impact of the regulation; (2) whether the government action interferes with reasonable investment-backed expectations; and (3) the character of the government action. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). For many of the same reasons that Plaintiffs' Contract Clause claim fails, an *ad hoc* regulatory taking claim would also fail. First, the economic impact of the City Ordinances on Plaintiffs was temporary, and the ordinances did not relieve tenants of their obligations to pay rent. *See Baptiste*, 490 F. Supp. 3d at 389; *Auracle*, 478 F. Supp. 3d at 222. Second, Plaintiffs' investment-backed expectations exist within a highly regulated market of landlord-tenant law that already imposes limitations on eviction. The Plaintiffs may also continue to accrue rent due on their units. *Auracle*, 478 F. Supp. 3d at 222-23. Finally, the character of the City Ordinances is in the character of a "public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124. It is not the case that "the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another." *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 223 (1986). Because Plaintiffs cannot allege that the City Ordinances inflicted "any deprivation significant enough to satisfy the heavy burden placed upon one alleging a regulatory taking," *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 493 (1987), the Court should not grant leave to replead their takings claim.

[5] Plaintiffs assert in their Response, without explanation, that their third claim for relief is not a substantive due process claim. (Pls.' Resp. at 26). If Plaintiffs' third claim for relief is a procedural due process claim, not a substantive due process claim, it is similarly without merit. Both of the City Ordinances, adopted during public meetings with an opportunity for public comment, satisfied procedural due process. *Halverson v. Skagit Cty.,* 42 F.3d 1257, 1260 (9th Cir. 1994) (quoting *Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 957 (9th Cir. 1991)) ("[w]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.").

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

due process cannot be used to protect an interest that is already subject to protection under a specific textual source of constitutional protection. Further, the City Ordinances do not impose any controls on the amount of rent that Plaintiffs can charge. Finally, the City Ordinances survive because they were a reasonable response to a significant public health and economic crisis.

First, Plaintiffs cannot raise the "more generalized notion of substantive due process," where, as here, "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) (citations and internal quotation marks omitted). Here, Plaintiffs simply repackage their Contract Clause claim as a substantive due process claim. As discussed below, it fails for the same reasons as that claim, but substantive due process does not provide an alternative avenue for analysis of that claim. *See Heights Apartments*, 2020 WL 7828818, at *17 (dismissing substantive due process claims where "Landlords have brought colorable—though ultimately unsuccessful—claims that the EOs violate the Contracts Clause, the Petition Clause, and the Takings Clause.").

Plaintiffs' reliance on *Soldal v. Cook Cty., Ill.*, 506 U.S. 56 (1992) is unavailing. The City does not contest that "[c]ertain wrongs affect more than a single right" or that Plaintiffs can assert multiple constitutional claims against the City. *Id*. at 70. In fact, Plaintiffs here have asserted *four* alleged constitutional violations other than substantive due process. But in *Soldal* plaintiff sought to apply "the Fourth Amendment's specific protection for 'houses, papers, and effects' rather than the general protection of property in the Due Process Clause." *Id*. at 70-71. In short, the Court in *Soldal* applied the explicit textual source of constitutional protection. It did not seek to expand substantive due process to areas where the interest that plaintiffs sought to

Page 18 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

protect is not "independent of the interests addressed by their other constitutional claims."

*Elmsford*, 469 F. Supp. 3d at 173. For this reason, other courts have rejected similar substantive

due process claims related to regulations of rental markets in response to COVID-19. *Id.*;

*Heights Apartments*, 2020 WL 7828818, at *17 ("Because substantive due process cannot be

made to do the work of other parts of the Constitution, the Landlords' substantive due process

claim fails."); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 226-27 (D. Conn. 2020);

*Johnson*, 2021 WL 1085744, at *11 ("Plaintiffs have not identified a property interest

independent of the interests addressed by their Contracts Claims. This is fatal to their due process

claims."). This Court should similarly reject Plaintiffs' substantive due process claim.

      If the Court considers Plaintiffs' substantive due process claim on the merits, it

nevertheless fails. First, Plaintiffs rely on cases that are universally distinguishable because they

imposed controls on the amount that a party could charge another party. *Pennell v. City of San

Jose*, 485 U.S. 1, 5-6 (1988) (evaluating an ordinance that imposed "a mechanism for

determining the amount by which landlords subject to its provisions may increase the annual rent

which they charge their tenants"); *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1032 (9th Cir.

2000) (addressing an act that "proscribes the maximum rent that oil companies can collect from

dealers who lease company-owned service stations"); *Nebbia v. People of New York*, 291 U.S.

502, 515 (1934) (reviewing a law that vested "a Milk Control Board with power, among other

things to 'fix minimum and maximum * * * retail prices to be charged by * * * stores to

consumers for consumption off the premises where sold.'"); *Fed. Power Comm'n v. Hope Nat.

Gas Co.*, 320 U.S. 591, 593 (1944) (considering "a rate order issued by the Federal Power

Commission reducing the rates chargeable by Hope Natural Gas Co."); *In re Permian Basin

Area Rate Cases*, 390 U.S. 747, 755 (1968) (stemming from a proceeding under the Natural Gas

Page 19 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
        12(b)(1) AND 12(b)(6) MOTION TO DISMISS

Act "to determine maximum just and reasonable rates for sales in interstate commerce of natural gas produced in the Permian Basin.").

In contrast to Plaintiffs' price control cases, as discussed above, the City Ordinances do not purport to set, change or modify the rent owed by tenants to Plaintiffs. In fact, the City Ordinances expressly stated that they did not require landlords to forgive rent or other amounts owed under the rental agreement, except for a prohibition on late fees. (Am. Compl., Exs. 1, 2, 7, 8, ECF 17-1 and 17-2). Because the City Ordinances do not impose any controls on the price or amount Plaintiffs charge tenants for rent, their claims are not supported by price control jurisprudence.

Finally, as discussed in the City's Motion, Plaintiffs' substantive due process claim also fails for the same reasons as its Contract Clause claim. *See Blaisdell*, 290 U.S. at 448. "[B]ecause Due Process Clause claims are assessed using a less exacting standard than Contracts Clause claims," for the same reasons the City Ordinances do not violate the Contract Clause, they "are not arbitrary or irrational." *HAPCO*, 482 F. Supp. F.3d at 356. For each of these independent reasons, the Court should dismiss Plaintiffs' third claim for relief.

### E. Plaintiffs have failed to allege an unconstitutional seizure under the Fourth Amendment.

In support of their Fourth Amendment claim, Plaintiffs assert that *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993) "supplies the relevant rule of decision." (Pls.' Resp. at 29). Not so. Importantly, the Court in *James Daniel Good* never engaged in a Fourth Amendment analysis. Instead the Court assumed the action was justified under the Fourth Amendment. 510 U.S. at 52 ("So even assuming that the Fourth Amendment were satisfied in this case, it remains for us to determine whether the seizure complied with our well-settled

Page 20 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

jurisprudence under the Due Process Clause.").[6] Moreover, even if the *James Daniel Good* Court had engaged in an analysis under the Fourth Amendment, the case is distinguishable because the material facts supporting the Court's conclusion that a seizure occurred are not present here.

The question of whether a seizure occurred in *James Daniel Good*, was not in dispute. 510 U.S. at 48-49. The government in *James Daniel Good* seized a 4-acre parcel of property as a civil forfeiture without notice or an adversary proceeding. *Id*. at 47. The seizure allowed the government "the right to charge rent, to condition occupancy, and even to evict the occupants." *Id.* at 49. In contrast, the City Ordinances did not give the City *any* rights with respect to Plaintiffs' properties. The City could not collect rent. The City could not place conditions on a person's occupation of the properties. The City could not evict tenants from Plaintiffs' properties. The City Ordinances did not provide the City with any right to enter the properties. In short, the City's actions did not constitute a seizure of Plaintiffs' properties.

Plaintiffs' reliance on *Soldal*, does not save their Fourth Amendment claim. In *Soldal*, the Court found that a seizure occurred when sheriff deputies assisted a mobile home park company in physically taking plaintiff's mobile home and removing it from the mobile home park, despite knowing that there was no lawful authority to do so. *Id*. at 58-59. There, the Court concluded that, as a result of the sheriff's action, the plaintiffs' "domicile was not only seized, it literally was carried away." *Id*. at 61. Nothing similar occurred under the City Ordinances. More apt is

---

[6] Plaintiffs assert, without support from caselaw, that the reasonableness analysis of the Fourth Amendment is based on procedural due process. (Pls.' Resp. at 30). This is incorrect. The sole case that Plaintiffs rely on – *James Daniel Good* – was a procedural due process case, not a Fourth Amendment case. The procedural due process requirements outlined in Plaintiffs' Response are not applicable because Plaintiffs have not brought a procedural due process claim against the City.

Page 21 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS

the Ninth Circuit's analysis in *Cedar Point*, which Plaintiffs dismiss without analysis. There, the court found that a permanent regulation requiring plaintiffs to grant access onto their properties was not a seizure. 923 F.3d at 534-36.

Plaintiffs theorize that the potential delay in rent payments from the City Ordinances are a "meaningful interference" because they allow the City to determine "who occupies Plaintiffs' properties," whether they pay rent, when they pay rent, and whether they may be evicted. (Pls.' Resp. at 30). This is not accurate. When they were in effect, the City Ordinances only addressed eviction for non-payment of rent. The City Ordinances did not change the tenants' obligations to pay rent, the amount of rent, to whom rent was paid, or when rent was due; nor did the City Ordinances stop evictions for any legitimate reason other than non-payment. In short, the City Ordinances did not constitute a "meaningful interference" with Plaintiffs' possessory interest in their property. The Court should dismiss Plaintiffs' fourth claim for relief.

**F.      The City Ordinances do not prevent Plaintiffs from accessing the courts.**

Plaintiffs' First Amendment claim relies upon a misreading of the City Ordinances. Plaintiffs assert that "[t]he only thing the moratoria has changed is that Plaintiffs cannot pursue claims in state court adjudicating tenants' liability for [their] debt and resulting in judgments for that debt in Plaintiffs' favor—even if those judgments are held in abeyance or otherwise not executed during the pandemic." (Pls.' Resp. at 36). But Plaintiffs do not and cannot cite the City Ordinances for this proposition. The City Ordinances did not do what Plaintiffs contend. Rather, the City Ordinances temporarily precluded Plaintiffs from pursuing a single remedy—eviction, for a single type of breach—non-payment. The City Ordinances did not preclude Plaintiffs from filing a breach of contract claim. As other Courts have noted, this is "best characterized as a constitutionally-permissible delay in the Landlords' ability to evict, not a constitutionally-

Page 22 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP
       12(b)(1) AND 12(b)(6) MOTION TO DISMISS

impermissible 'total deprivation.'" *Heights Apartments*, 2020 WL 7828818, *13 (quoting *Sosna v. Iowa*, 419 U.S. 393, 410 (1975)).

The City Ordinances did not deprive Plaintiffs of their right to access the courts. Rather, they imposed a temporary delay in Plaintiffs' right to obtain one type of relief for one type of breach. This did not violate Plaintiffs' First Amendment right to access the courts. The Court should dismiss Plaintiffs' fifth claim for relief.

## III.   CONCLUSION

For the reasons discussed above and in the City's Motion, the Court should dismiss Plaintiffs' claims against the City because this Court lacks subject matter jurisdiction and Plaintiffs fail to state a claim on the merits of any of their five claims for relief.

DATED: April 29, 2021.

Respectfully submitted,

/s/ *Naomi Sheffield*

NAOMI SHEFFIELD, OSB #170601
Sr. Deputy City Attorney
naomi.sheffield@portlandoregon.gov
*Of Attorneys for Defendant City of Portland*

Page 23 – DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF ITS FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS