JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
B. Andrew Jones, OSB No. 091786
Senior Assistant County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone:  (503) 988-3138
Facsimile:   (503) 988-3377
Email: andy.jones@multco.us
    *Of Attorneys for Defendant Multnomah County*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST INC., ASH STREET COURTYARD, LLC, TYLER SHERMAN and CRYSTAL SHERMAN, | Civil No. 3:20-cv-02226-JR |
| Plaintiffs, | DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO DISMISS |
| v. | |
| GOVERNOR KATE BROWN, in her official capacity; STATE OF OREGON; CITY OF PORTLAND, an Oregon municipal corporation; and MULTNOMAH COUNTY OF OREGON, an Oregon municipal corporation, | |
| Defendants. | |

Page 1 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO DISMISS

Defendant Multnomah County respectfully submits its Reply in support of its Motion to Dismiss Plaintiffs' First Amended Complaint.

## 1.      STANDING/JUSTICIABILITY[1]

The form and timing of Multnomah County's ordinances responding to the pandemic are not in dispute (ECF 32, p. 10), and Plaintiffs do not dispute Article III requires a live controversy throughout the action.  Plaintiffs nonetheless argue that, notwithstanding Multnomah County Ordinance 1292 rescinding the prior ordinances, there is still a live case or controversy.

Plaintiffs claim that standing is presumed unless Multnomah County sustains "the heavy burden" of demonstrating that it will never take any future action regarding residential evictions.[2] (ECF 32, pp. 21-22), and Multnomah County must "affirmatively represent[s] it will enact no further moratoria in the future" to sustain this burden.  (*Id.*, pp. 21-22).   Plaintiffs are wrong.

As Plaintiffs acknowledge, governmental actions stand on different footing than those of private entities, and are presumed taken in good faith. (ECF 32, p. 21).  The Ninth Circuit has long distinguished between legislative changes and policy changes, with the former ordinarily mooting an action challenging the legislation, the latter placing the burden on the government to demonstrate the policy will not reoccur.  *Rosebrock v. Mathis*, 745 F.3d 963, 971-972 (9th Cir. 2014), citing *Chem. Producers & Distribs. Ass'n v. Helliker,* 463 F.3d 871, 878 (9th Cir. 2006), *White v. Lee*, 227 F.3d 1214, 1243–44 (9th Cir. 2000).

Plaintiffs argue only state legislation is entitled to a good faith presumption (ECF 32, pp. 21-22), citing *Rosebrock*, *Hellicker*, and *Coral Constr. Co. v. King County*, 941 F.2d 910, 928

---

[1] Plaintiff Moe Farhoud appears to concede that he does not have individual standing for claims by entities in which he holds an ownership stake.  (ECF 32, p. 11).
[2] Presumably Plaintiffs mean in response to the COVID-19 pandemic.

Page 2 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO DISMISS

(9th Cir. 1991).  (ECF 32, pp. 21-22).  Plaintiffs omit from their analysis *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019), in which the Ninth Circuit unambiguously overruled Plaintiffs' cases and held local ordinances enacted by the local legislative body receive the same presumption of good faith as state legislation.

In doing so, the Ninth Circuit acknowledged it had been "somewhat inconsistent" in applying the mootness doctrine to local ordinances.  *Chambers*, 941 F.3d at 1199.  More to the point, it recognized "nearly "all [other] circuits….. support the rule that repeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the City plans to or already has reenacted the challenged law or one substantially similar."  *Id.*, (citations omitted). Recognizing the inconsistency and weight of authority, the Ninth Circuit overruled Plaintiffs' cases to conclude "the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it."  *Id.* at 1199[3].

While the expectation need not be certain, it must be both reasonable and founded in the record rather than based on speculation.  *Id.*, citing *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S. Ct. 1070, 1075, 71 L. Ed. 2d 152 (1982).  Put another way, "they have done it before is the best evidence that they will do it again" (ECF 32, p. 22) is not sufficient.

Following the passage of HB 4401, Multnomah County's Board of County Commissioners enacted an ordinance rescinding its last remaining ordinance pertaining to

---

[3] Multnomah County's legislative authority as a charter home rule county is vested in its duly elected Board of County Commissioners.  (Multnomah County Charter Chapter 2.20).

Page 3 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO DISMISS

residential tenancies in response to COVID-19.  HB 4401 remains in effect, and Plaintiffs have

offered no evidence or allegations that the County will reenact any ordinances, particularly if the

state protections remain in place.  This is insufficient to establish continued Article III standing.[4]

Plaintiffs also argue the rescinded ordinances were "effective" between March and

December, 2020 and therefore Multnomah County is a proper defendant, both for prospective

injunctive relief and for past "constitutional harms[,]"  (ECF 32, p. 22), notwithstanding similar

restrictions on evictions from the State, City, and (at the time) Center for Disease Control.  First,

the First Amended Complaint does not plead a claim for damages, only prospective injunctive

relief.  If Plaintiffs are seeking damages for "constitutional harms" Plaintiffs must plead facts

demonstrating how the County's past ordinances caused a constitutional injury under 42 U.S.C.

§1983.  Plaintiffs appear to recognize this in their Response, seeking leave to amend to add

damages claims.  (ECF 32, p. 22, footnote 2).[5]

_____

[4] Sister districts in this Circuit have applied *Chambers* to moot claims for injunctive relief
against expired or rescinded emergency public health actions taken in the face of COVID-19.
See *Cross Culture Christian Ctr. v. Newsom*, 445 F. Supp. 3d 758, 766 (E.D. Cal. 2020), appeal
dismissed, No. 20-15977, 2020 WL 4813748 (9th Cir. May 29, 2020)(claims to temporarily
enjoin state and county restrictions on in-person worship services mooted after State and County
amended stay at home orders), *Harborview Fellowship v. Inslee*, No. 3:20-CV-05518-RJB, 2021
WL 662390, at *5 (W.D. Wash. Feb. 19, 2021) (failure "to make any showing that the Governor
is "reasonably expected to reenact" the hard attendance caps for indoor services" moot challenge
to expired/rescinded executive order).
[5] This is expected, as a claim for money damages for past harm is not mooted by changed
circumstances as is a claim for prospective relief.  *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153,
175, 136 S. Ct. 663, 677, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016).  However,
Plaintiffs' Response does not address the causation problem identified in the County's motion –
that Plaintiffs must plead facts showing a County policy – as opposed to another governmental
order – was the proximate and legal cause of such injury.

Page 4 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO
                DISMISS

Further, the fact an ordinance was effective, operative, or otherwise does not solve the mootness problem for a prospective relief injunctive claim. *Hazell v. Brown*, 238 Or App 487, 497–99, 242 P.3d 743 (2010) has no bearing on this matter. (ECF 32, p. 22) That case asked whether a contingent statute constituted an impermissible delegation of the legislature's authority to the judiciary under the Oregon constitution. It did not address the issue here – a plaintiff does not have standing in perpetuity to challenge a rescinded legislative action.

The passage of Ordinance 1292 mooted Plaintiff's claims. Defendant Multnomah County respectfully requests the Court dismiss all claims under Fed. R. Civ. P. 12(b)(1).[6]

## 2.      MERITS CLAIM

### a.      Contracts Clause

Plaintiffs argue the County (and City) "bypass the three-part test" of *Sveen v. Melin*, -- U.S. --, 138 S.Ct. 1815 (2018) in moving to dismiss the Contracts Clause claim. (ECF 32, p. 26.) *Sveen v. Melin*, 138 S. Ct. 1815, 1822, 201 L. Ed. 2d 180 (2018). Plaintiffs misunderstand the applicable law and the County's position.

First, Plaintiffs' position that insurance and public utilities are the only industries that are "heavily regulated" is belied by a cursory search of Contracts Clause cases. See *Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark*, 310 U.S. 32, 38, 60 S. Ct. 792, 794, 84 L. Ed. 1061 (1940)(building and loan associations), *LL Liquor, Inc. v. Montana*, 912 F.3d 533, 534 (9th Cir. 2018)(liquor sales); *Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 54 (2nd Cir.

_____

[6] Defendant Multnomah County moved for dismissal of Plaintiffs' demands for an order barring any future eviction orders and "to design a system to adequately compensate Plaintiffs and all similarly situated individuals" because such claims against Defendant Multnomah County are not ripe. (ECF 19, p. 8). Plaintiffs' Response does not address this issue, but each of the claims against Defendant Multnomah County are also not justiciable under Article III.

Page 5 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO DISMISS

1998)(municipal solid waste management), *United Auto., Aerospace, Agr. Implement Workers of America Intern. Union v. Fortuno*, 633 F.3d 37, 46 (1st Cir. 2011)(collective bargaining by public employees); *Trading Commn. v. Zelener*, 373 F.3d 861, 864 (7th Cir.2004)(commodities futures contracts).  Sister districts have found residential landlord tenant arrangements are regulated industries in analyzing similar challenges to COVID-19 emergency responses.  See *Johnson v. Murphy*, No. 1:20-CV-06750-NLH, 2021 WL 1085744, at *3 (D.N.J. Mar. 22, 2021)("[L]easeholds in New Jersey are "highly regulated by statute"), *Elmsford Apartment Associates LLC v. Cuomo*, 469 F.Supp.3d 148, 169 (S.D.N.Y June 29, 2020)(same).

Next, the County does not suggest industry regulation means no law may ever substantially impair a contract in that industry.  Rather, regulation sets the reasonable expectations of the parties for determining how substantially a law or regulation impairs those expectations.  As an example, Plaintiffs complain of impairment of their contractual right to "late fees or penalties that otherwise would have been assessed to tenants for late payments."  (ECF 32, p. 29).  ORS 90.260 limits the type and amount of late payment charges a landlord may assess.  Plaintiffs could reasonably have foreseen potential changes in permissible fees or penalties when entering into leases subject to the ORLTA.   While a pandemic that has killed hundreds of thousands and sickened millions may not have been specifically contemplated, Plaintiffs certainly could have anticipated governmental action in the face of a public health emergency might affect their landlord-tenant agreements and terms like other laws limiting the terms and conditions of leasing subject to state and local regulation.

Plaintiffs also misapply *Sveen* weighing substantial impairment.  The now-rescinded County ordinances did not undermine the contractual bargain by removing the ability to collect rent for possession.  The County's initial ordinance applied only to tenants who affirmatively

Page 6 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO DISMISS

provided substantive evidence of inability to pay; any other tenant remained obligated to

continue to pay rent and utilities as contemplated by their lease.  (*See* Ordinance 1282).  Later

County ordinances required tenant action to avail themselves of a repayment period, and

provided monetary remedies for landlord in the event a tenant did not do so.  (*See* Ordinance

1287, Sections H(6), I).

      Contrary to Plaintiffs' assertion, the ordinances did not eliminate the obligation to pay,

but (temporarily) forestalled eviction while preserving the landlord's rights to payment.  Finally,

this court need not write on a blank slate, as multiple district courts have looked at substantially

similar temporary restrictions on evictions and found they do not substantially impair the

contract given they do not extinguish the tenant's obligation to pay.  (ECF 19, p. 11).

      No matter the industry and the impact, all contracts are executed in light of "the

authority retained by the state over contracts to safeguard 'the vital interests of its people."  *Veix*,

310 U.S. at 38-39.  This authority extends "to contractual arrangements between landlords and

tenants."  *Id.*, citing *Marcus Brown Co. v. Feldman*, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed.

877(1921); *Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595

(1922).  This is the second part of the test described in *Sveen* - so long as the exercise of the

authority bears a rational relationship to a legitimate public purpose, such exercise does not

violate the Contracts clause.  *Sveen*, 138 S.Ct at 1822.

     *Blaisdell* is the keystone for multiple courts analyzing the reasonableness of

governmental COVID-19 responses.  (*See* State Defendants' Motion to Dismiss, ECF 18, pp. 32-

33, footnote 14).  Plaintiffs nonetheless claim *Blaisdell* does not control here because the

challenged legislation and ordinances were enacted with "studied indifference" and make "zero

accommodation" to landlords. (ECF 32, pp. 24-26).  Plaintiffs rely on *W.B. Worthen Co., ex rel*

Page 7 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO
          DISMISS

*Bd. Of Com'rs of Street Imp. Dist. No. 513 of Little Rock, Ark. v. Kavanaugh*, 295 U.S. 56, 55 S.

Ct. 555 (1935) and *East N.Y. Savings Bank v. Hahn*, 326 U.S. 230, 234, 66 S.Ct. 69, 90 L.Ed.34

(1945).

First, Plaintiffs' argument has not found purchase in similar challenges to temporary

eviction limitations.  Courts interpreting similar temporary limitations on evictions have rejected

reliance on *Worthen* for temporary restrictions (as in *Blaisdell*) that did not extinguish the

landlord's right to collect past due rent.  *El Papel LLC v. Inslee*, No. 220CV01323RAJJRC, 2020

WL 8024348, 1, 8 (W.D. Wash. Dec. 2, 2020), report and recommendation adopted, No.

220CV01323RAJJRC, 2021 WL 71678 (W.D. Wash. Jan. 8, 2021), *Baptiste v. Kennealy*, 490 F.

Supp. 3d 353, 387 (D. Mass. 2020).

 Further, the permanent legislation in *Worthen* is markedly different than limited and

temporary measures here. 1 In *Worthen* the state legislature increased the time between default

and foreclosure sale on tax delinquent properties to "at least two and a half years, and maybe a

good deal more," prevented the holders of bonds secured by such taxes from taking possession of

the securing properties for more than six and a half years, and contained no obligation for the

delinquent owner to give affirmation or evidence of their inability to pay taxes.  *Worthen*, 295

U.S. at 62, 55 S.Ct 555 (1935).  The Court held the statutory changes in the aggregate went

beyond what was reasonable and appropriate to a legitimate governmental end; it expressly noted

that it did not consider whether something less than the whole would pass muster.  *Id.*

The Court in *Worthen* also took pains to stress " A state is free to regulate the procedure

in its courts even with reference to contracts already made… and moderate extensions of the

time for pleading or for trial will ordinarily fall within the power so reserved."  *Id.* at 62.  It also

highlighted how *Blaisdell* had met this balance: setting a timeline bounded by the declaration of

Page 8 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO
            DISMISS

emergency, requiring a showing of necessity by the affected party, and by recognizing a continued obligation to pay. *Id.*

Defendant Multnomah County's former ordinances strike such a balance. The ordinances were temporary, reviewed regularly, and were limited or rescinded as circumstances changed. They applied only to "Affected Tenants," meaning those tenants that took steps to give objectively verifiable evidence of financial impacts. The ordinances did not relieve any tenants of their ultimate obligations to pay rent for time occupying the leased property. Finally, landlords were still able to evict for reasons other than nonpayment. Defendant Multnomah County's measured and temporary limitations were "addressed to a legitimate end" and were "reasonable and appropriate to that end." *Blaisdell*, 290 U.S. 398, 438, 54 S. Ct. 231, 240, 78 L. Ed. 413 (1934). Were the claims not subject to dismissal under Rule 12(b)(1), dismissal under Rule 12(b)(6) is also appropriate.

### b.    Takings Claim

Plaintiffs insist a temporary limitation on residential evictions is a *per se* taking, "automatically compensable without case specific inquiry." (ECF 32, p. 30). Plaintiffs argue that temporary limitation on evictions constitutes a permanent physical intrusion as contemplated by *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 438, 102 S.Ct. 3164 (1982). Again, the argument is inconsistent with well-settled law.

Putting aside whether eviction delays plausibly constitute a "physical invasion," the larger problem with Plaintiffs' theory - a temporary limitation equates to a permanent invasion - is self-evident. This is driven home by footnote 12 of *Loretto* in which the Court stresses "the permanence and absolute exclusivity of a physical occupation *distinguish it from temporary limitations on the right to exclude."  Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S.

Page 9 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION TO DISMISS

419, 436, 102 S. Ct. 3164, 3176, 73 L. Ed. 2d 868 (1982)(emphasis added).  The distinction is particularly clear when, as with the County, the limitations have been rescinded.

      *Loretto* does not foreclose a claim for a temporary taking; rather, it points out the analysis of a temporary limitation is subject to a "more complex balancing process to determine whether they are a taking."  While they refuse to concede the point, Plaintiffs clearly recognize the problem with their argument by asking to re-plead as an *ad hoc* temporary taking if the court is "unwilling" to extend the *per se* theory beyond the recognized bounds of law.  (ECF 32, p. 33).

      Even *Cedar Point Nursery v. Shiroma*, 923 F.3d 524 (9th Cir. 2019) that Plaintiffs discuss at length does not bolster Fifth Amendment claims.  First, the Ninth Circuit held that limitations on the right to exclude did not constitute a *per se* taking, and it remains the law of this Circuit until the Supreme Court rules otherwise.  Next, even assuming the Supreme Court did reverse, the regulations at issue in *Cedar Point* were not limited in time – they exist as a condition of operating a growing operation in California.  Here, the County's limitations were expressly time limited and have been rescinded.

      Further, in *Cedar Point* the "right to exclude" pertained to third party union organizers who had no other basis for accessing the property.  Plaintiffs already leased exclusive possession of a portion of the premises to their tenants, they were not forced on Plaintiffs by any Defendant. *Yee v. City of Escondido, Cal.,* 503 U.S. 519, 528, 112 S. Ct. 1522, 1528, 118 L. Ed. 2d 153 (1992*).*  Even assuming Plaintiffs believed a tenant to be in breach of the lease, Plaintiffs do not have the right to immediately exclude even in non-emergency circumstances - they must avail themselves of the statutory provisions for eviction and forcible entry and detainer as contemplated by law.

Page 10 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION
        TO DISMISS

Finally, Plaintiffs complain that the County should have enacted an ordinance that "provide[s] tenants in need with an affirmative defense or a safe harbor for eviction."  (ECF 32, p. 31).  The County's now-rescinded actions did so, either by setting out an affirmative defense (Ordinance 1282) or by placing affirmative obligations on the tenant to make a showing of hardship.  (Ordinance 1287).  Plaintiffs have not pled a plausible *per se* takings claim against and, as Plaintiffs all but concede, the Court should dismiss these allegations.  (ECF 32, p. 33).

Additionally, Plaintiffs' argument that they are entitled to injunctive relief under the Fifth Amendment – an amendment that by its very language contains the legal remedy of just compensation – is misplaced.  The Supreme Court has made clear the Takings Clause of the Fifth Amendment provides for just compensation, not injunctive relief.  See *Knick v. Township of Scott, Pennsylvania*, —U.S.—, 139 S. Ct. 2162, 2176 (2019)("As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking.").  Were *Chambers* and mootness not enough, *Knick* is surely sufficient to end Plaintiffs' argument for Fifth Amendment injunctive relief against the County without leave to amend.

### c.    Due Process Claim

Plaintiffs seek to avoid *Blaisdell* arguing a substantive Due Process claim.  As Defendants point out, the plaintiffs in *Blaisdell* challenged the foreclosure statutes under Contracts Clause and the Due Process Clause of the Fourteenth Amendment, and the Supreme Court held "the law did not violate the Contracts Clause, nor, for the same reasons, did it violate the Due Process Clause." *Blaisdell*, 290 U.S. at 447–48.

The County did not consider the claim "duplicative" (ECF 32, p. 35) or seek to dismiss the claim by arguing a specific constitutional provision should apply rather than the substantive

Page 11 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION
          TO DISMISS

due process clause where "guideposts for responsible decisionmaking … are scarce and open-ended. " *Albright v. Oliver*, 510 U.S. 266, 272, 114 S. Ct. 807, 812, 127 L. Ed. 2d 114 (1994). Defendant Multnomah County simply asks this Court to rule, as did the Supreme Court in *Blaisdell*, that the same public welfare underpinnings sustain the County's temporary exercise of its police power under both Article 1, Section 10 and the Fourteenth Amendment.

Plaintiffs' attempt to re-characterize the County's temporary eviction freeze for certain as an illegal price control or rent control (ECF 32, pp. 35-37) simply ignores the issues presented. In the face of "the gravest public health crisis in over a century[7]" the same principles underlying the temporary mortgage foreclosure freeze in the face of the Great Depression in *Blaisdell* apply here.  There is a legitimate state interest in preserving the public health through housing stability, and the temporary restriction on residential evictions by the County in light of the financial hardships experienced by many resultant from COVID-19 business interruption were reasonable and appropriate to address that end.  Further, the rational relationship between the legitimate goal of public health and the temporary limited measures by the County can hardly be said to be arbitrary.  The Fourteenth Amendment claims are subject to dismissal.

        **d.    Seizure Claims**

Plaintiffs urge this Court ignore *Cedar Point Nursery* to find they have alleged a colorable Fourth Amendment claim.  (ECF 32, p. 38).  The Supreme Court accepted certiorari on the Takings Clause issue only; the remainder of the Ninth Circuit's opinion, in which the court held a permanent limitation on a "right to exclude" during designated times does not constitute a

---

[7] *Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles,* No. CV2005193DDPJEMX, 2020 WL 6700568, at *1 (C.D. Cal. Nov. 13, 2020).

Page 12 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION
          TO DISMISS

Fourth Amendment seizure, will remain the law of this Circuit. *Cedar Point Nursery*, 923 F.3d at 534-536.

Recognizing their problem, Plaintiffs insist that Defendants show "overreliance" (ECF 32, p. 38) on *Cedar Point Nursery*, and claim *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 114 S. Ct. 492 (1993) "supplies the relevant rule of decision." (ECF 32, p. 38). This is curious for several reasons, not least of which is *James Daniel Good Property* is not a Fourth Amendment case; it involves the Fifth Amendment Due Process clause as applied to a forfeiture seizure. See *James Daniel Good Real Prop.,* 510 U.S. at 46 ("The principal question presented is whether, in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment prohibits the Government in a civil forfeiture case from seizing real property without first affording the owner notice and an opportunity to be heard").

Plaintiffs' analysis of the *Matthews v. Eldridge* factors (ECF 32, pp. 41-43) is also puzzling. The County ordinances are legislative actions with a public hearing and public vote, satisfying procedural due process. See *Halverson v. Skagit Cty.,* 42 F.3d 1257, 1260 (9th Cir. 1994), as amended on denial of reh'g (Feb. 9, 1995)("[w]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law."). Second, *Matthews* deals in process due, not whether a temporary limitation on eviction constitutes a seizure.

Further, the seizure in *James Daniel Good Real Prop.* was pursuant to 21 U.S.C. §881(a), which expressly provides the seized assets are forfeit "to the United States and no property right shall exist in them." *Id.* The United States does not make "decisions about the operation of the property as though the property belonged to the government" under operation of this statute. (ECF 32, p. 44). The United States makes decisions on properties forfeited under 21 U.S.C.

Page 13 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION
TO DISMISS

501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

§881 because the property *does* belong to the government, provided the government provides adequate procedural due process.  The problem in that case was of process, not whether 21 U.S.C. §881 forfeiture is a seizure.

Multnomah County's former ordinances are in no way similar to the federal forfeiture statute.  Plaintiffs retain title in their properties, retain rental revenues and the right to collect past and future revenues, retain the right to exclude apart from tenants to whom Plaintiffs have leased exclusive possession, and retain the right to lease or mortgage or sell their interests in the properties as they see fit.  There is simply no meaningful comparison between a total extinguishing of ownership and a limited and temporary restriction on eviction in particular circumstances in the County ordinances.

Plaintiffs arguing that temporary limitations on the remedy of eviction "dramatically…increased the risk Plaintiffs will be deprived of their property interests." (ECF 32, pp. 42-43)   Again, limitations on use between private parties is not (and has never been) a seizure.  Defendant Multnomah County respectfully submits that the cases cited by each Defendant establish Plaintiffs have no Fourth Amendment claim against Multnomah County, and no amendment can save these claim, and dismissal is warranted under Rule 12(b)(6).

### e.    Petition Claims

Finally, Plaintiffs argue they have stated a First Amendment right to petition claim against Defendant Multnomah County because it "unconstitutionally prevent[ed] Plaintiffs from availing themselves" of filing actions to evict tenants or to secure judgments for delinquent rent. (ECF 32, p. 45).  At the risk of repetition, there are no Multnomah County ordinances in effect limiting Plaintiffs' ability to pursue a breach of contract action.  Further, the now-rescinded County eviction ordinances did not deny Plaintiffs their "fundamental right of access." (ECF 32,

Page 14 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION
     TO DISMISS

p. 46).  Ordinance 1282 provided limitations on eviction and forcible entry and detainer actions upon a tenant making the requisite showing of hardship, but did not preclude filing a breach of contract action, or filing an action against a tenant that had not met the notice requirements of Section 5-B.

Ordinance 1284 set a prospective grace period following the expiration of Executive Order 20-13 and limited eviction actions based on nonpayment of arrears accrued during the emergency, but again did not expressly bar an action for breach of contract.  Ordinance 1287 provided another repayment grace period and precluded evictions for nonpayment of arrears, but again did not bar Plaintiffs from suing for breach of contract, so long as Plaintiffs did not attempt to evict or interfere with the tenant's possession of the unit.  Further, 1287 permitted eviction actions if a tenant failed to comply with their obligations to notify the landlord of their intent to utilize the grace period.

Finally, Ordinances 1284 and 1287 were both repealed and rescinded before the grace periods at issue took effect, owing to the passage of HB 4401 extending the state eviction protections notwithstanding County actions.  There is no truth to Plaintiffs assertion that any of the now rescinded County actions barred Plaintiffs from asserting breach of contract claims at any time.  The First Amendment claim is subject to dismissal for mootness and on the merits.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

Page 15 – DEFENDANT MULTNOMAH COUNTY'S **REPLY** IN SUPPORT OF MOTION
          TO DISMISS

**CONCLUSION**

Defendant Multnomah County respectfully requests this Court dismiss Plaintiffs' First

Amended Complaint in its entirety against Multnomah County under Fed. R. Civ. P 12(b)(1) and

12(b)(6), respectively.

DATED this 29th day of April, 2021.

Respectfully submitted,

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

**/s/ B. Andrew Jones**

_____
B. Andrew Jones, OSB No. 091786
Senior Assistant County Attorney
  *Of Attorneys for Defendant Multnomah County*

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138