**Keith Ketterling,** OSB No. 913368
**Steven C. Berman**, OSB No. 951769
**Megan K. Houlihan**, OSB No. 161273
STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840
Email:          kketterling@stollberne.com
                sberman@stollberne.com
                mhoulihan@stollberne.com

*Special Assistant Attorneys General for Governor*
*Kate Brown and State of Oregon*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN, and CRYSTAL SHERMAN,<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR KATE BROWN, in her official capacity, STATE OF OREGON; CITY OF PORTLAND, an Oregon municipal corporation; and MULTNOMAH COUNTY OF OREGON, an Oregon municipal corporation,<br><br>Defendants. | Case No. 3:20-cv-02226-JR<br><br>**DEFENDANTS GOVERNOR KATE BROWN AND STATE OF OREGON'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

Page i -  **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND .................................................................. 2

III.  PROCEDURAL BACKGROUND........................................................... 4

IV.   LEGAL STANDARDS ......................................................................... 5

V.    ARGUMENT ....................................................................................... 5

      A.    Plaintiffs Lack Standing......................................................... 5

      B.    Plaintiffs' Right of Access Claim Fails on the Merits. ........................................... 8

            1.    Precedent Forecloses Plaintiffs' Right of Access Claim. .......................... 8

            2.    Federal Courts Consistently Have Rejected Right of Access Claims Against Temporary Eviction Moratoria Enacted During the Pandemic.................................... 10

            3.    House Bill 4401 Satisfies Rational Basis Review. .................................. 12

            4.    Plaintiffs' Reliance on "Intermediate Scrutiny" Is Misplaced.................. 14

            5.    Even If Intermediate Scrutiny Applies, House Bill 4401 Meets That Standard. .......................................... 18

      C.    State Defendants Should Have the Opportunity for Discovery. ...................... 23

VI.   CONCLUSION.................................................................................. 24

Page ii -  **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Baptiste v. Kennealy*,
  490 F. Supp. 3d 353 (D. Mass. 2020) .............................................................. passim

*Borger Management, Inc. v. Abel Hernandez-Cruz, et al.*,
  No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020) ................................... passim

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................................................... 5

*Christopher v. Harbury*,
  536 U.S. 403 (2002) ................................................................................................ 8, 15

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ....................................................................................................12

*City of New York v. Beretta U.S.A. Corp.*,
  524 F.3d 384 (2d Cir. 2008) .................................................................................. 9, 15

*District of Columbia v. Towers et al.*,
  Lead Case No. 21-CV-34 (D.C. May 13, 2021) ................................... 14, 16, 17, 22

*Doherty v. Merck & Co.*,
  892 F.3d 493 (1st Cir. 2018) ....................................................................................... 9

*Elmsford Apartment Assocs., LLC v. Cuomo*,
  469 F. Supp. 3d 148 (S.D.N.Y. 2020) ................................................................... 1, 11

*Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*,
  880 F.3d 450 (9th Cir.),
  *amended*, 881 F.3d 792 (9th Cir. 2018) .............................................................. 12, 13

*F.C.C. v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) .............................................................................................. 12, 13

*Heights Apartments, LLC v. Walz*,
  2020 WL 7828818 (D. Minn. Dec. 31, 2020) .............................................. 1, 11, 14

*Heller v. Doe*,
  509 U.S. 312 (1993) .............................................................................................. 12, 13

*Home Bldg. & Loan Ass'n v. Blaisdell*,
  290 U.S. 398 (1934) ....................................................................................................22

Page iii - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

*Jacobson v. Massachusetts,*
   197 U.S. 11 (1905) ............................................................................ 12

*Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Mktg. Ass'n,*
   276 U.S. 71 (1928) ............................................................................ 15

*Logan v. Zimmerman Brush Co.,*
   455 U.S. 422 (1982) .......................................................................... 9

*Los Angeles Cnty. Bar Ass'n v. Eu,*
   979 F.2d 697 (9th Cir. 1992) ........................................................ 9, 10

*Provenz v. Miller,*
   102 F.3d 1478 (9th Cir. 1996) ....................................................... 5, 7

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
   —U.S.—, 141 S. Ct. 63 (2020) ........................................................ 22

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) ......................................................... 6

*Sosna v. Iowa,*
   419 U.S. 393 (1975) ...................................................................... 9, 10

*Tennessee v. Lane,*
   541 U.S. 509 (2004) ...................................................................... 16, 17

*Turner Broad. Sys., Inc. v. F.C.C.,*
   520 U.S. 180 (1997) .......................................................................... 18

*United States v. Chovan,*
   735 F.3d 1127 (9th Cir. 2013) ....................................................... 18, 22

*United States v. Kras,*
   409 U.S. 434 (1973) .......................................................................... 17

*Wolfe v. Strankman,*
   392 F.3d 358 (9th Cir. 2004) ........................................................... 6

**Other Authorities**

House Bill 4213 ................................................................................ passim

House Bill 4401 ................................................................................ passim

Executive Order 20-03 ........................................................................ 20

Page iv - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Executive Order 20-11 ............................................................................................ 21

Executive Order 20-13 ............................................................................................ 21

Executive Order 20-30 ............................................................................................ 21

Executive Order 20-56 ............................................................................................ 21

Senate Bill 282 ......................................................................................................... 3

**Rules**

Federal Rule of Civil Procedure 56 .................................................................. 5, 23, 24

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

I.    **INTRODUCTION**

Plaintiffs have moved for partial summary judgment against Governor Kate Brown, asking the Court to hold, as a matter of undisputed fact and law, that the provisions of House Bill 4401 ("HB 4401") that temporarily suspend legal actions against tenants for nonpayment of rent violate Plaintiffs' federal constitutional right to access the courts.  There are at least four significant flaws with Plaintiffs' motion.  First, as is set forth in Governor Brown and the State of Oregon's ("State Defendants") pending Motion to Dismiss (ECF 18), Plaintiffs' claims against Governor Brown are not justiciable.  Second, Plaintiffs have failed to allege facts sufficient to establish that they have standing to pursue (or prevail on) their motion.

Even if Plaintiffs were able to overcome these preliminary hurdles, Plaintiffs' motion fails because Plaintiffs' legal theory is not viable.  Plaintiffs allege that the Oregon Legislature's *temporary* suspension of lawsuits against tenants for eviction for nonpayment of rent (or collection of unpaid rent) impermissibly burdens "Plaintiffs' fundamental right to access the courts through the Petition Clause to the Fourteenth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments."  First Amended Complaint ("Complaint" or "Compl.") ¶ 67 (ECF 17 at 21).  However, the temporary prohibition on legal actions in HB 4401 does not improperly impinge on any fundamental right.  Federal district courts consistently have rejected this argument in challenges to eviction moratoria in other jurisdictions.[1]

Plaintiffs do not address or discuss those cases in their motion.  Instead, Plaintiffs insist that this Court must follow an unpublished decision from the superior court for the District of

---

[1] *See, e.g.*, *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 392–96 (D. Mass. 2020); *Heights Apartments, LLC v. Walz*, 2020 WL 7828818, at *13–14 (D. Minn. Dec. 31, 2020); *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 173–75 (S.D.N.Y. 2020).

Page 1 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Columbia, *Borger Management, Inc. v. Abel Hernandez-Cruz, et al.*, No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020), which applied "immediate scrutiny" to part of the District of Columbia's eviction moratorium. *See* Plaintiffs' Motion for Partial Summary Judgment ("PSJ Motion") at 5–7, 10–12 (ECF 33 at 9–11, 14–16). However, *Borger* appears destined for reversal, on the grounds that it was wrongly decided. The District of Columbia Court of Appeals recently issued an emergency stay of that decision, concluding that the plaintiffs in that case had minimal likelihood of success on the merits and implying that reversal was imminent. But even under the improper intermediate scrutiny test applied by the superior court in *Borger*, the temporary restriction on pursuing litigation in HB 4401 would meet that standard.

Finally, even if Plaintiffs were able to raise a colorable legal argument (and they have not here), there motion is premature. No discovery has yet occurred in this case, in part at Plaintiffs' request. Although State Defendants respectfully submit that Plaintiffs' motion should be denied outright, if the Court concludes that the motion raises a viable legal argument, there are factual issues that the parties would need to explore.

## II.    FACTUAL BACKGROUND

As set out more fully in State Defendants' Motion to Dismiss (EFC 18), in 2020, the Oregon Legislature enacted two laws that restrict evictions and provide protections to tenants, House Bill 4213 ("HB 4213") and HB 4401. HB 4401 modifies HB 4213 as to residential evictions. Under HB 4401, landlords may not take specified actions based on a residential tenant's nonpayment balance during the emergency period of April 1, 2020, through December 31, 2020, and a grace period lasting until March 31, 2021. HB 4401 § 8. Prohibited actions include initiating or continuing an eviction for nonpayment of rent. *Id.* (modifying HB 4213 § 3(2)(b)). Prohibited actions also include filing a case to recover the nonpayment

Page 2 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

balance. *Id.* (adding § 3(2)(f) to HB 4213).  The emergency and grace periods are further

extended through June 30, 2021, if either (1) a landlord fails to deliver to the tenant a notice

informing the tenant of the tenant's right to temporary protection against eviction for

nonpayment and including a copy of a financial hardship declaration for the tenant to complete;

or (2) the tenant delivers to the landlord a financial hardship declaration.  HB 4401 § 7(1).

      Neither HB 4213 nor HB 4401 prevent evictions for rental agreement violations other

than nonpayment of rent.  *See* HB 4401 § 7(3)(a) (providing a form of notice to tenants and

explaining HB 4401's protections).  The statutes also allow evictions so that landlords, their

family members, or new building owners can occupy the premises.  *Id.*  The statutes do not

eliminate tenants' obligation to eventually pay past-due rent.  *Id.* (form of notice to tenants

providing, "**You still owe rent, as required by your rental agreement**" (bold in original)).

Tenants must repay past-due rent by no later than July 1, 2021.  *Id.*[2]

      In addition to its protections for tenants, HB 4401 establishes a landlord compensation

fund.  The fund will compensate residential landlords for 80 percent of the past-due rent of

qualified tenants.  HB 4401 § 2(1).  Landlords must apply to take advantage of the fund and

---

[2] Senate Bill 282 ("SB 282") has now been approved by both chambers of the Oregon Legislature, and if the Governor signs the bill, it will extend the "grace period" through February 28, 2022.  SB 282 A-Eng. § 1 (modifying § 3(1)(b) in HB 4213, as previously modified by HB 4401 § 8).  SB 282 will not extend the "emergency period" past June 30, 2021.  *Id.* (modifying HB 4213 § 3(1)(a)).  Although tenants would have until the end of the grace period to pay rent that accrued before June 30, 2021, landlords would be able to pursue eviction and breach of contract actions for nonpayment of any rent that becomes due on or after July 1, 2021.  *Id.* (modifying §3(2)–(5) of HB 4213).  The modifications proposed by SB 282 do not impact either the jurisdictional or merits arguments made by State Defendants.  The text of the current version of SB 282 is available from the Oregon Legislature's website at: https://olis.oregonlegislature.gov/liz/2021R1/Measures /Overview/SB282.

Page 3 -  **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

voluntarily agree to forgive the remaining 20 percent of the unpaid rent due from qualified tenants.  HB 4401 § 2(1)(a)–(d).

## III.    PROCEDURAL BACKGROUND

Plaintiffs filed the Complaint against State Defendants, Multnomah County, and the City of Portland on February 12, 2021 (ECF 17), and all defendants filed motions to dismiss on March 8, 2021 (ECF 18, 19, 21).  In the motions to dismiss, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' challenge to HB 4401 and that Plaintiffs' claims fail on the merits.  On April 8, 2021, Plaintiffs filed a combined response to the motions to dismiss (ECF 32) and the present PSJ Motion (ECF 33).  State Defendants filed a motion to stay briefing on the PSJ Motion until resolution of the pending motions to dismiss (ECF 38), which the Court denied (ECF 48).

Plaintiffs concede several limitations on the PSJ Motion's scope.  Plaintiffs implicitly admit that the State is not a proper party and explicitly state that the PSJ Motion is brought "solely against Governor Brown."  PSJ Motion at 2 (ECF 33 at 6).[3]  Plaintiffs also move for summary judgment only on their fifth claim that HB 4401 (and not any other statutory provision) violates their right of access to the courts.  PSJ Motion at 1 (ECF 33 at 5); *see* Compl. ¶¶ 65–73 (ECF 17 at 20–23) (setting out Plaintiffs' fifth claim for relief).

Plaintiffs' motion is ill defined.  Under the heading "Motion," Plaintiffs move "for partial summary judgment on their Fifth Claim for relief, as detailed below."  PSJ Motion at 1 (ECF 33

---

[3] For ease of reference, and because the State has not yet been dismissed from this action, this opposition refers to "State Defendants" in the plural.  By doing so, State Defendants do not concede that the State is a proper party or suggest that the PSJ Motion seeks any relief against the State.

Page 4 -  **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

at 5). Those details are never fully articulated. However, in their conclusion, Plaintiffs set forth

the relief they seek. Plaintiffs urge the Court to enjoin the provisions in HB 4401 temporarily

precluding litigation "by ordering Governor Brown to exercise her ongoing, unilateral

emergency powers to modify HB 4401." PSJ Motion at 14 (ECF 33 at 18).[4] The PSJ Motion

does not establish that Plaintiffs are entitled to any relief, much less the truly extraordinary relief

they seek here.

## IV.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure ("FRCP") 56, a court may grant summary

judgment in whole or in part only when the moving party "shows that there is no genuine dispute

as to any material fact and [that the moving party] is entitled to judgment as a matter of law."

FRCP 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (discussing the burden on

the moving party to demonstrate the lack of a disputed material issue for trial). The court must

view the evidence in the light most favorable to the non-moving party and draw any reasonable

inferences in the non-moving party's favor. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.

1996).

## V.    ARGUMENT

### A.    Plaintiffs Lack Standing.

For the reasons set out in State Defendants' Motion to Dismiss and Reply in support

(ECF 18 and 45), the Governor is immune from suit; Plaintiffs fail to state a justiciable claim

---

[4] Plaintiffs do not allege an entitlement to such extraordinary relief—a mandatory injunction
compelling the Governor to exercise her emergency powers—in their Complaint. Rather, they
ask the Court to declare that HB 4401, and other ordinances and statutes, impermissibly limit
Plaintiffs' access to the courts and to enjoin their enforcement. Compl. ¶¶ 70, 72 (ECF 17 at 22–
23). Plaintiffs cannot obtain relief on summary judgment that they have not sought in their
Complaint.

Page 5 -  **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
          SUMMARY JUDGMENT**

against the Governor; and Plaintiffs lack standing.  State Defendants incorporate those jurisdictional arguments here.

State Defendants challenge Plaintiffs' standing on the face of the Complaint.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (stating that a "jurisdictional attack may be facial or factual").  Evidence outside the pleadings is not relevant to this facial jurisdictional attack.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (holding that "evidence outside the pleadings" was neither required nor relevant where "defendants have made a facial rather than a factual attack on subject matter jurisdiction").  However, if the Court considers evidence outside the pleadings to resolve the question of standing, Plaintiffs' lack standing for the additional reason that their evidence is deficient.

Plaintiffs Moe Farhoud and Crystal Sherman each submitted a declaration in support of the PSJ Motion (ECF 35–36).  Plaintiffs' declarations highlight how Plaintiffs have failed to carry their burden of showing that they suffer harm traceable to HB 4401.  In neither declaration do Plaintiffs assert that they own properties in Oregon.  It is therefore unclear whether Plaintiffs are subject to any of HB 4401's provisions.  The declarations also do not assert that Plaintiffs fear any enforcement action under HB 4401 (let alone one initiated by the Governor, to whom HB 4401 gives no enforcement authority).  Nor do the declarations state that the past-due rent owed to Plaintiffs accrued during the emergency period or after the enactment of HB 4401.

In fact, the assertions in Ms. Sherman's declaration suggest that the past-due rent may be unrelated to HB 4401's terms.  Ms. Sherman states that she and her husband have not provided hardship declarations to any current or former tenants.  Sherman Decl. ¶ 4 (ECF 36 at 2).  If the Shermans believed that HB 4401 applied to them, they presumably would have complied with the provision in HB 4401 § 7(1)(a) that requires them to deliver a copy of a hardship declaration

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

to their tenants.  The Shermans' disregard for HB 4401's provisions indicates that the statute is not the reason that they have been unable to collect rent from their tenants, and they do not assert any facts to the contrary.

Mr. Farhoud does not state one way or the other whether he has complied with HB 4401. But he, too, fails to assert that HB 4401 is the reason that he cannot collect past-due rent. Farhoud Decl. ¶¶ 4–5 (ECF 35 at 2).  He also states that both current and *former* tenants continue to owe him rent without explaining when this rent accrued.  *Id.*  It is entirely possible that at least the former tenants' rent accrued before the global outbreak of COVID-19, and State Defendants—as the non-moving party—are entitled to the benefit of this reasonable inference. *Provenz*, 102 F.3d at 1483.  If some of Mr. Farhoud's tenants have vacated the property, it is also possible that Mr. Farhoud impermissibly delivered a notice of termination of the rental agreements based on the tenants' nonpayment balance.  *See* HB 4401 § 8 (prohibiting such acts). Mr. Farhoud cannot properly claim to be injured by HB 4401 if he is ignoring its prohibitions.

Further, the declarations fail to assert that Plaintiffs have encountered any barriers to using the landlord assistance fund created by HB 4401 § 2.  Coupled with aid from the federal paycheck protection program, the landlord assistance fund may allow Plaintiffs to recoup all of the rent owed to them without waiting for HB 4401's other provisions to expire.  Publicly available information shows that Mr. Farhoud and his companies have already received nearly $200,000 in relief from the federal paycheck protection program.[5]  In short, Plaintiffs have failed

---

[5] *See* https://www.federalpay.org/paycheck-protection-program (showing that Stark Firs Management Inc. received $88,215 in May 2020, and $111,085 in March 2021).  Mr. Farhoud owns Stark Firs Management Inc.  *See* https://tinyurl.com/3amnzn52 (Oregon Secretary of State business entity data for Stark Firs Management Inc.); Compl. ¶ 7.

Page 7 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

to establish that they have sustained any injury whatsoever, much less that their injury resulted from the Governor's actions or HB 4401. Accordingly, Plaintiffs lack standing to pursue their claims.

**B.      Plaintiffs' Right of Access Claim Fails on the Merits.**

If the Court declines to dismiss Plaintiffs' claim based on jurisdictional defects, Plaintiffs' fifth claim for relief still fails. Precedent forecloses Plaintiffs' claim that delays in litigation violate their constitutional rights. Additionally, federal courts across the country have rejected similar claims against temporary eviction moratoria using rational basis review. Consistent with those federal court decisions, HB 4401 easily withstands rational basis review as a temporary measure to keep tenants in place, ensure housing stability in a time of economic crisis, and help stop the spread of COVID-19. HB 4401 also would withstand intermediate scrutiny if that were the standard of review (which it is not).

**1.      Precedent Forecloses Plaintiffs' Right of Access Claim.**

The Supreme Court and the Ninth Circuit have held that the right of access to the courts does not guarantee any particular remedy within a particular timeframe. The basis of the constitutional right of access to courts remains "unsettled." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). It may be grounded in the Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, or the Fourteenth Amendment Equal Protection and Due Process Clauses. *Id.* at 415 n.12. Regardless of the right's source, the right is only "ancillary to the underlying claim," which must be "a separate and distinct right to seek judicial relief for some wrong." *Id.* at 415. The right of access does not independently create a substantive cause of action. *Id.* For that reason, state legislatures may curtail causes of action without implicating the right of access. *See City of New York v. Beretta*

Page 8 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) ("The right to petition exists in the presence of an underlying cause of action and is not violated by a statute that provides a complete defense to a cause of action or curtails a category of causes of action.").  State legislatures may even "eliminate [their] statutorily created causes of action altogether."  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982); *see also Doherty v. Merck & Co.*, 892 F.3d 493, 498 (1st Cir. 2018) (discussing a state legislature's "power to determine which types of claims are available in court by limiting or even abolishing common law tort claims").

The right of access also does not protect against all delays in litigation.  For example, in *Sosna v. Iowa*, 419 U.S. 393 (1975), the Supreme Court upheld Iowa's one-year residency requirement for bringing divorce actions.  Although the residency requirement "delayed" the plaintiff's access to the courts, she could fulfill the requirement and ultimately obtain "the same opportunity for adjudication which she asserts ought to have been hers at an earlier point in time." *Id.* at 406.  The fact that the residency requirement did not impose a "total deprivation" or "exclude forever a certain segment of the population from obtaining a divorce in the [state] courts" distinguished the case from those where a constitutional violation occurred. *Id.* at 410.

The Ninth Circuit similarly held that "inordinate delays in civil litigation," allegedly caused by "a shortage of state court judges," did not violate the right of access. *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 699 (9th Cir. 1992).  There, the Los Angeles County Bar Association brought a right of access claim to challenge a statute capping the number of superior court judges for Los Angeles County. *Id.* at 700.  With the statutory number of judges in place, "only 50% of all civil cases in Los Angeles County were resolved in less than two years, 90% were resolved in 4.2 years, and 98% in 6.3 years." *Id.* at 700.  Still, the Ninth Circuit affirmed summary judgment against the bar association. *Id.* at 706–08.  The Ninth Circuit could not

Page 9 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

identify "any decision recognizing a right to judicial determination of a civil claim within a prescribed period of time as an element of [the right of access to the courts]." *Id.* at 706. Mere delays, even delays exceeding two years, did not deprive litigants "of the ability to vindicate important rights." *Id.* at 706–07.

Plaintiffs do not argue that HB 4401 totally deprives them of their ability to vindicate their property rights. They also appear to concede that the Oregon Legislature may constitutionally curtail state causes of action. Combined Response to Motions to Dismiss at 36 (ECF 32 at 45). Plaintiffs' only complaint is that, like the state laws in *Sosna* and *Eu*, HB 4401 delays litigation. However, when the state of emergency and grace periods expire, Plaintiffs will be able to initiate evictions and nonpayment actions just as they could before the COVID-19 pandemic. Nothing in the Constitution guarantees Plaintiffs a right to pursue these remedies within their chosen timeframe. Accordingly, Plaintiffs' fifth cause of action fails under well-established Supreme Court and Ninth Circuit precedent.

> **2.    Federal Courts Consistently Have Rejected Right of Access Claims Against Temporary Eviction Moratoria Enacted During the Pandemic.**

Even if the Court did not have Supreme Court and Ninth Circuit cases for guidance, there are other federal district court decisions directly on point. These decisions reject arguments that eviction moratoria enacted during the COVID-19 pandemic violate the right of access to courts. None of these decisions apply intermediate scrutiny to the plaintiffs' claims.

For example, in *Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D. Mass. 2020), the court considered a motion for a preliminary injunction against a Massachusetts statute that prohibited landlords from filing and prosecuting "non-essential evictions." *Id.* at 368–69, 376. "Non-essential evictions" included those for nonpayment of rent. *Id.* at 376. The plaintiffs argued that

Page 10 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

that the statute infringed their right of access to the courts.  *Id.* at 392.  The *Baptiste* court

concluded that whether the right of access was a First Amendment "fundamental" right or rooted

in the Fifth Amendment guarantee of Due Process, the plaintiffs' claim was subject to rational

basis review.  *Id.* at 393.  Under this standard, the plaintiffs were unlikely to prevail on their

claim.  *Id.*

Applying rational basis review, the court explained that preventing the spread of an

epidemic is a legitimate state interest.  *Id.* at 394.  The eviction moratorium would keep tenants

in place and encourage social distancing, a key component of Massachusetts' COVID-19

strategy.  *Id.*  The eviction moratorium therefore was likely to be found rationally related to a

legitimate governmental interest.  *Id.*  Even if the right of access was a fundamental right,

rational basis review still applied because the moratorium did not "absolutely" affect the

plaintiffs' right to go to court to evict.  *Id.* at 395.  The moratorium was only "temporary" and

would expire shortly unless extended by the Massachusetts governor.  *Id.*  Under these

circumstances, the law required only that the eviction moratorium be reasonable—a standard that

the statute could easily meet.  *Id.* at 395–96.

Other federal courts have reached the same conclusion.  Citing *Baptiste*, the court in

*Heights Apartments, LLC v. Walz*, 2020 WL 7828818 (D. Minn. Dec. 31, 2020), held that the

Minnesota governor's executive orders limiting landlords' ability to file eviction actions did not

violate landlords' right of access.  *Id.* at *13–14.  The court applied an "ordinary" constitutional

analysis rather than any sort of heightened scrutiny.  *Id.* at *14.  Because the executive orders

only temporarily limited landlords' ability to evict tenants and did so subject to several

exceptions, the court dismissed the right of access claim.  *Id.*; *accord Elmsford Apartment*

*Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 173–75 (S.D.N.Y. 2020) (granting summary

Page 11 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
        SUMMARY JUDGMENT**

judgment for the New York governor on a claim that a temporary pause on a subset of evictions violated the right of access).

Plaintiffs have not identified any federal court that has applied intermediate scrutiny, as opposed to rational basis review, to temporary eviction moratoria.  Nor have Plaintiffs identified a federal court that has concluded that landlords could succeed on a right of access claim challenging temporary eviction moratoria.  Plaintiffs fail to explain why this Court should be the first.

### 3.    House Bill 4401 Satisfies Rational Basis Review.

Consistent with other federal decisions, Plaintiffs' right of access claim is subject to rational basis review and easily clears that hurdle.  Rational basis review requires only that a challenged statute be "rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  "Rational basis review is highly deferential to the government, allowing any conceivable rational basis to suffice." *Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 457 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018).  In defending a statute on rational basis review, the government bears "no obligation to produce evidence to sustain the rationality." *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  The burden falls "on the one attacking the legislative arrangement to negate every conceivable basis which might support it." *Id.* (quoting *Heller*, 509 U.S. at 320).  "In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

Applying rational basis review to HB 4401, the State has a legitimate interest in preventing the spread of COVID-19.  *See Jacobson v. Massachusetts*, 197 U.S. 11, 27–28 (1905)

Page 12 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

(recognizing a legitimate governmental interest in protecting people from an epidemic).

Plaintiffs recognize this legitimate state interest.  PSJ Motion at 9 (ECF 33 at 13).  HB 4401

promotes this interest by imposing a temporary halt in nonpayment eviction proceedings.

Without such protections, tenants could be required to vacate their homes and potentially become

exposed to COVID-19 in more crowded living situations.  *See* HB 4401 § 26 (stating that statute

is "necessary for the immediate preservation of the public peace, health and safety").  As one

letter in support of HB 4401 explained, the statute also reduces pressure on low-income tenants

to go to work and earn wages to pay rent when they are sick with COVID-19.  Stable Homes for

Oregon Families, Floor Letter in Support of HB 4401,

https://olis.oregonlegislature.gov/liz/2020S3/Downloads/FloorLetter/3084.

Plaintiffs do not "negate" these "conceivable" bases for HB 4401.  *Erotic Serv. Provider*,

880 F.3d at 457.  Indeed, Plaintiffs never argue that HB 4401 fails rational basis review, and

State Defendants have no obligation to prove the Oregon Legislature's reasons for enacting

HB 4401.  *See Beach Commc'ns*, 508 U.S. at 315 ("Moreover, because we never require a

legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional

purposes whether the conceived reason for the challenged distinction actually motivated the

legislature.").  Accordingly, the law requires the Court to decline Plaintiffs' invitation to second-

guess the Oregon Legislature's decision to combat the spread of COVID-19 through a temporary

eviction moratorium.  *See id.* at 314 ("The Constitution presumes that, absent some reason to

infer antipathy, even improvident decisions will eventually be rectified by the democratic

process and that judicial intervention is generally unwarranted no matter how unwisely we may

think a political branch has acted."); *see also Heller*, 509 U.S. at 321 ("[C]ourts are compelled

Page 13 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends.").

### 4.    Plaintiffs' Reliance on "Intermediate Scrutiny" Is Misplaced.

As explained above, federal courts have rejected arguments that right of access claims are subject to intermediate or any other sort of heightened scrutiny. *See, e.g.*, *Baptiste*, 490 F. Supp. 3d at 393 (concluding that plaintiffs' right of access claim was subject to rational basis review); *see also Heights Apartments*, 2020 WL 7828818, at \*14 (agreeing with *Baptiste*). As far as State Defendants are aware, Plaintiffs rely on the first and only case striking down portions of a local eviction moratorium for violating the right of access. *See* PSJ Motion at 5–7 (ECF 33 at 9–11) (relying on *Borger Management, Inc. v. Abel Hernandez-Cruz*, No. 2020 LTB 006637 (D.C. Super. Ct. Dec. 16, 2020)).

Even in its own jurisdiction, the unreported *Borger* decision's future is tenuous, at best. After the superior court struck down part of a local eviction moratorium, the District of Columbia appealed the decision. The District of Columbia Court of Appeals then granted the District's motion to stay the superior court's decision. Berman Decl. Ex A. (*District of Columbia v. Towers et al.*, Lead Case No. 21-CV-34 (D.C. May 13, 2021)) (hereinafter "Stay Order"). In deciding to grant the stay, the Court of Appeals concluded that the District is likely to succeed on its appeal. *Id.* at 7–10. Although the Court of Appeals has not explicitly overturned the superior court's ruling, the Court of Appeals seems poised to do so, and the superior court's flawed analysis should not guide this Court.

In *Borger,* the superior court incorrectly concluded that intermediate scrutiny applied to the plaintiffs' right of access claim. The plaintiffs challenged legislation enacted by the Council of the District of Columbia that temporarily prohibited eviction filings during the COVID-19

Page 14 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

public health crisis.  The superior court applied intermediate scrutiny to the legislation because

the court concluded that the eviction filing prohibition had a substantial impact on the plaintiffs'

right of access.  DiLorenzo Decl. Ex. 1 at 15–19 (*Borger* Superior Court Decision) (ECF 34-1)

(hereinafter "Superior Court Decision").  However, legislation that curtails a cause of action or

delays litigation does not implicate the right of access at all, much less substantially burden that

right.  *Christopher*, 536 U.S. at 415; *Beretta*, 524 F.3d at 397; *Baptiste*, 490 F. Supp. 3d at 393

(stating that "a legislature may, among other things, alter rights and remedies without violating

the First Amendment right to petition"); *see also Liberty Warehouse Co. v. Burley Tobacco*

*Growers' Co-op. Mktg. Ass'n*, 276 U.S. 71, 89 (1928) ("[T]he present controversy concerns a

statute, and a state may freely alter, amend, or abolish the common law within its jurisdiction.").

As the District of Columbia Court of Appeals explained:

> Here the trial court concluded that appellees' right of access to the courts was
> violated because, by virtue of an amendment to D.C. Code § 16-1501, they were
> temporarily barred from filing complaints for a judgment of possession
> thereunder.  But claims for a judgment of possession and eviction in the District
> are defined exclusively and precisely by statute.  Having been defined by the
> legislature, these claims can likewise be constricted.  Claims for possession and
> eviction are already subject to a litany of procedural limitations designed to give
> tenants a full and meaningful opportunity to defend themselves and maintain their
> housing.  The additional limitation of a filing moratorium for these types of
> claims during a pandemic does not appear to implicate the right of access to the
> courts any more than, for example, requiring the filing of a notice to vacate before
> allowing the filing of a complaint for a judgment of possession.  Although both
> provisions inject delay into the process, they are simply part of the procedural
> fabric of our eviction statute. . . .

> In assessing the likelihood of the District's success on appeal, we have also
> surveyed the country to see how right of access challenges to pandemic-related
> filing moratoriums in other jurisdictions have fared.  At least ten other states and a
> number of other localities have enacted filing moratoriums for eviction suits
> during the pandemic. Yet the trial court's decision striking down similar
> legislation on the ground that it violates the right of access to the courts stands
> alone.

Page 15 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Stay Order at 8–10 (footnotes omitted).  The superior court departed from well-established case law that allows legislatures to constrict statutory causes of action.  In concluding that the District's legislation burdened the core of the constitutional right of access, the district court erred.  Stay Order at 7–10.

In *Borger*, the superior court also wrongly relied on *Tennessee v. Lane*, 541 U.S. 509 (2004), to conclude that intermediate scrutiny applies to right of access claims.  Superior Court Decision at 11 (discussing *Lane*).  Plaintiffs repeat that error.  *See* PSJ Motion at 6–7 (ECF 33 at 10–11) (relying on *Lane*).  The question in *Lane* was whether Congress had the power to enact Title II of the Americans with Disabilities Act ("Title II"), which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  541 U.S. at 513 (quoting 42 U.S.C. § 12132).  Congress enacted this provision "against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights."  *Id.* at 534.

The record in *Lane* included evidence "that many individuals, in many States across the country, were being excluded from courthouses and court proceedings by reason of their disabilities."  *Id.* at 527.  For example, one plaintiff in the case, a paraplegic, had been forced to crawl up two flights of stairs in a county courthouse that had no elevator.  *Id.* at 513–14.  When he refused to crawl again or to be carried by officers for another court hearing, he was arrested and jailed for failure to appear.  *Id.* at 514.  The Supreme Court concluded that Congress had the power to address such physical exclusions from the nation's courthouses.  *Id.* at 531.  That the Supreme Court called the right to physically access a courthouse "fundamental" and subject to a

Page 16 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

"searching" standard of judicial review, *id.* at 529, 533, says little about the standards applicable to the right of access that Plaintiffs assert here.

Plaintiffs' case is far more like *United States v. Kras*, 409 U.S. 434 (1973), than *Lane*. In *Kras*, the Supreme Court applied rational basis review to a claim that bankruptcy court fees violated the right of access. *Id.* at 447. The Supreme Court explained that legislation involving "the area of economics and social welfare" is measured by whether the legislation has a "rational justification." *Id.* at 446. The Supreme Court also emphasized that "bankruptcy is not the only method available to a debtor for the adjustment of his legal relationship with his creditors." *Id.* at 445. A debtor may, for example, "adjust his debts by negotiated agreement with his creditors." *Id.* Likewise, eviction legislation concerns an area of economics and social welfare, and property owners "may always attempt to negotiate with the tenant directly." Stay Order at 8 n.17. Rational basis review—rather than intermediate scrutiny—is therefore the appropriate test for statutes governing evictions.

Finally, even if the superior court in Borger did not err on the law, the facts there are readily distinguishable from the case before this Court. In Borger, the moratorium "applie[d] across the board to all cases in which property owners try to regain possession of their property." Superior Court Decision at 15. During the emergency period, landlords in the District of Columbia could not file eviction actions against tenants who committed crimes or who interfered with their neighbors' rights. *Id.* Landlords also could not terminate tenancies to personally occupy the dwelling units. *Id.* HB 4401, in contrast, prevents only eviction and breach of contract actions for nonpayment. Landlords remain free to initiate proceedings for other lease violations. *See* HB 4401 § 7(3)(a). Oregon landlords also remain free to terminate tenancies so that they or their family can move into the property. *Id.* The stayed superior court decision in

Page 17 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Borger* thus does not establish that HB 4401 so substantially burdens the right of access that intermediate scrutiny should apply.

       **5.**      **Even If Intermediate Scrutiny Applies, House Bill 4401 Meets That Standard.**

If the Court decides to follow the superior court in *Borger* and apply intermediate scrutiny, HB 4401 still survives.  Intermediate scrutiny requires "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective."  *United States v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013).  Intermediate scrutiny does not require that the government's chosen means of regulation be the only available method of achieving the intended goal.  *See Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 213–14 (1997) ("Under intermediate scrutiny, the Government may employ the means of its choosing[.]").

Plaintiffs present a truncated and inaccurate version of the legislative history of HB 4401 in support of their argument that the government has not stated a significant objective for the temporary suspension of legal action against tenants for "no cause" evictions and nonpayment of rent.  HB 4401 was emergency legislation, passed by the Oregon Legislature during special session on December 21, 2020.  HB 4401 amended, and extended, HB 4213, adopted during an earlier special session in June 2020.  HB 4213, which also was emergency legislation, became effective June 30, 2020.  HB 4213 is explicit that its provisions "are appropriate and reasonable to carry out the significant and legitimate public purpose of responding to the declaration of the state of emergency declared by the Governor on March 8, 2020."  HB 4213 § 1(3).  HB 4401 repeats that statement and adds an additional "significant and legitimate public purpose" of "responding to the declaration of a state of emergency issued by the Governor on March 8, 2020

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

for the COVID-19 pandemic or the state of emergency issued by the Governor on September 8, 2020, for wildfires."  HB 4401 § 1(3).  In other words, the legislation itself provides that it serves an important public purpose of protecting Oregonians in response to the COVID-19 pandemic and wildfires that ravaged Oregon in the late summer and early fall of 2020.

The public purpose furthered by the temporary suspension of legal action against tenants for nonpayment of rent figured prominently during consideration and passage of both HB 4213 and HB 4401.  The staff summary presented to legislators for HB 4213 was explicit:  "As a result of the pandemic, tenants impacted financially due to unemployment and lost wages have either missed rent payments or leveraged economic impact payments, savings, and unemployment benefits to meet rent demands."  HB 4213 A, Staff Measure Summary at 2 (available at https://tinyurl.com/m6s283r8).  The summary noted that other states had enacted protections to tenants "to provide temporary relief from evictions . . . during the pandemic."  *Id.*  The summary then concluded that, consistent with this public purpose, "House Bill 4213-A temporarily restricts landlords . . . from actions against tenants and borrowers due to late or nonpayment of rent . . . during the Governor's declared emergency period in response to the COVID-19 pandemic."  *Id.*  The staff summary for HB 4401 similarly detailed the impact the coronavirus pandemic has had on Oregon tenants.  The summary discussed "estimates that between 27,700 and 56,100 Oregon households may be at risk of eviction on January 1, 2021."  HB 4401, Staff Measure Summary at 2 (available at https://tinyurl.com/33u7se5k).

The public purpose also was evident during the hearings on HB 4401.  A work session was held on the bill on December 21, 2020, before a special, bipartisan joint House and Senate committee.  Given the importance of the issue, both Oregon Senate President Peter Courtney and Oregon House Speaker Tina Kotek served on the committee and participated in the discussion on

Page 19 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

the legislation.  During that hearing, Senator Ginny Burdick, a landlord herself who voted in favor of the law, stated that "the most important thing as I saw this bill . . . Number one.  First, and foremost, we have to prevent a rash of evictions after the eviction moratorium that we have now in effect expires.  That was unacceptable and that is the driving force behind this bill." December 21, 2020 Hearing, Joint Committee on the Third Special Session of 2020, Recorded Content at 35:10-35:30 (available at https://tinyurl.com/dtxbhkm4).

Rather than look at the legislative history of HB 4401, Plaintiffs focus on the Governor, and argue that "the Governor's interest" is relevant in determining the *Legislature's* motives for passing HB 4401.  PSJ Motion at 9 (ECF 33 at 13).  Respectfully, Plaintiffs miscomprehend what constitutes legislative history.  The Governor did not draft HB 4401 or its predecessor, HB 4213, and did not submit any kind of statement to the Legislature when she signed those bills.  As a result, Legislative intent is determined by the Legislature's actions and statements, not the Governor's actions and statements.  And, as discussed above, the text of HB 4401, HB 4213, and the legislative history show that the Legislature's purpose in passing the temporary restriction on legal action against tenants for no cause evictions and nonpayment of rent was to advance the public purpose of responding to a state of emergency by "provid[ing] temporary relief from evictions . . . during the pandemic," and "to prevent a rash of evictions."

Although the Governor did not draft HB 4213 or HB 4401, and her role, accordingly, is not material to determining legislative intent, the Governor's emergency declarations referenced in the legislation reinforce the public purpose of HB 4213 and HB 4401.  The March 8, 2020 declaration referenced in HB 4401 is Executive Order 20-03, which declared a general state of

Page 20 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

emergency due to the outbreak of the coronavirus.[6]  Pursuant to her emergency declaration, Governor Brown then adopted an eviction moratorium in Executive Order 20-11.  That order recognized that evictions both increased the potential for spread of COVID-19 (by making it less possible for people to practice physical distancing) and "increase[d] economic hardship and life, health and safety risks for all Oregonians."  Executive Order 20-11 at 1; *see also* Executive Order 20-13 at 2 (determining that further action was necessary to prevent evictions and thereby "slow the spready of COVID-19" and "help avoid overwhelming local and regional healthcare capacity").

Following the passage of HB 4213, Governor Brown rescinded her eviction moratorium on June 30, 2020.  Executive Order 20-30 at 4, ¶ 2(b)(2).  However, in response to the ongoing spread of COVID-19 and the wildfires, Governor Brown reinstated the eviction moratorium on September 28, 2020, effective through the end of December 2020.  Executive Order 20-56. There were multiple reasons for the September 28 order, including:  seeking to prevent the spread of COVID-19; ensuring housing stability following "the destruction and displacement caused by the fires" that placed "additional pressure on housing resources at a time when the state is already dealing with a housing crisis"; and, to "reduce economic hardship and related life, health, and safety risks."  Executive Order 20-56 at 1–3.  In other words, the Governor's executive orders, just like HB 4401 and HB 4213, expressed a clear public purpose behind a temporary suspension of legal actions against tenants for non-payment of rent – to protect the public from COVID-19, a housing crisis, the destruction caused by the fires, and "economic hardship and related life, health, and safety risks."

---

[6] Governor Brown's executive orders are available at https://tinyurl.com/2m73cdbx.

Page 21 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

There can be no doubt that protecting the public during a pandemic and the related economic fallout is an important government interest. *Roman Cath. Diocese of Brooklyn v. Cuomo*, —U.S.—, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID–19 is unquestionably a compelling interest[.]"); *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 440 (1934) ("Whatever doubt there may have been that the protective power of the state, its police power, may be exercised . . . in directly preventing the immediate and literal enforcement of contractual obligations by a temporary and conditional restraint, where vital public interests would otherwise suffer, was removed by our decisions relating to the enforcement of provisions of leases during a period of scarcity of housing."); *cf. Chovan*, 735 F.3d at 1139 ("It is self-evident that the government interest of preventing domestic gun violence is important.").

There is a reasonable fit between HB 4401 and this government interest. HB 4401 lasts for a limited duration and is tied to the length of the state of emergency. HB 4401 applies only to nonpayment eviction and breach of contract proceedings. Landlords are free to evict tenants for a host of other reasons not related to tenants' financial constraints. HB 4401 does not forgive tenants' debts to the landlord; the rent remains due. HB 4401 also creates a landlord assistance fund to help offset the impact of delayed rent payments.

The District of Columbia Court of Appeals concluded that even a much broader eviction filing moratorium, applying to all types of evictions, had a reasonable fit to the important government interest of protecting tenants. Without a moratorium on eviction filings, tenants with past-due rent "might self-evict on a mass scale." Stay Order at 11. Additionally, tenants might "be unable to litigate their cases effectively during the public health emergency." *Id.* at 12. Finally, delaying eviction filings would "not simply . . . stave off the inevitable," but "give tenants time to stabilize and avoid displacement." *Id.* at 13. HB 4401's narrower

Page 22 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

provisions give low-income tenants these same protections.  In sum, HB 4401 is substantially related to the State's interest in protecting the public and therefore passes constitutional muster even under the more demanding (and inapplicable) intermediate scrutiny standard.

### C.    State Defendants Should Have the Opportunity for Discovery.

Plaintiffs' fifth claim for relief fails on threshold jurisdictional issues and on the substantive law.  However, if the Court is inclined to further consider the PSJ Motion, State Defendants should first have the opportunity for discovery.  Under FRCP 56(d), a court may deny a summary judgment motion, defer ruling on it, or allow time for discovery if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to support its opposition.  FRCP 56(d).

As more fully explained in Mr. Berman's concurrently filed declaration, State Defendants have not been able to take discovery.  This is due to the early stage of the case and Plaintiffs' request that the parties delay discovery until after the Court rules on the pending motions to dismiss.  Berman Decl. ¶¶ 4–5.  If permitted time for discovery, State Defendants would serve discovery requests to uncover whether and to what extent Plaintiffs have suffered injury.  *Id.* ¶¶ 6–7.  State Defendants also would attempt to conduct third-party discovery to more fully determine the legislative purpose of HB 4401 and the facts showing the fit between the legislative purpose and HB 4401's provisions.[7]  *Id.* ¶ 8.  FRCP 56(d) affords State Defendants this opportunity.

---

[7] In their motion, Plaintiffs recognize that moving for summary judgment at this juncture does not allow for discovery to show the purpose behind enactment of HB 4401.  PSJ Motion at 7 n.5 (ECF 33 at 11 n.5).  However, Plaintiffs argue that the Governor should not need discovery "to show her purpose in imposing and maintaining" the limits on court actions in HB 4401.  *Id.*  The flaw with Plaintiffs' "no discovery needed" theory is that the Governor did not enact HB 4401 or

Page 23 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

VI.    CONCLUSION

For these reasons, State Defendants respectfully request that the Court deny Plaintiffs'

Motion for Partial Summary Judgment in its entirety or, alternatively, defer ruling on the Motion

for Partial Summary Judgment to allow State Defendants to conduct discovery pursuant to

FRCP 56(d).

DATED this 18th day of May, 2021.

Respectfully submitted,

STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.

By: s/ Megan K. Houlihan
    **Keith Ketterling**, OSB No. 913368
    **Steven C. Berman**, OSB No. 951769
    **Megan K. Houlihan**, OSB No. 161273

209 SW Oak Street, Suite 500
Portland, OR  97204
Telephone:  (503) 227-1600
Facsimile:  (503) 227-6840
Email:     kketterling@stollberne.com
            sberman@stollberne.com
            mhoulihan@stollberne.com

*Special Assistant Attorneys General for Governor*
*Kate Brown and State of Oregon*

---

submit any statement to the Legislature.  She therefore did not create legislative history for that law.

Page 24 - **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**