**JOHN DILORENZO, JR., OSB #802040**
johndilorenzo@dwt.com
**AARON K. STUCKEY, OSB #954322**
aaronstuckey@dwt.com
**EVAN CHRISTOPHER, OSB #183214**
evanchristopher@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

    Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN,** and **CRYSTAL SHERMAN,**<br><br>        **PLAINTIFFS**,<br><br>v.<br><br>**GOVERNOR KATE BROWN,** in her official capacity; **STATE OF OREGON; CITY OF PORTLAND,** an Oregon municipal corporation; and **MULTNOMAH COUNTY OF OREGON,** and Oregon municipal corporation,<br><br>        **DEFENDANTS**. | Case No. 3:20-CV-02226-JR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

    Much of the Governor Brown and the State of Oregon's (the "State Defendants'") Opposition to Plaintiffs' Motion for Partial Summary Judgment (the "Response") simply rehashes arguments the State Defendants made in their motion to dismiss briefing. They continue to claim that this entire case is not justiciable because the Governor has no enforcement role for HB 4401 and Plaintiffs have not shown a threat of enforcement. Without repeating arguments briefed relating to the motion to dismiss, that argument merely proves Plaintiffs'

Page 1 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

point: the absence of any state enforcement mechanism has been the basis of other federal court decisions permitting claims against executive officers.  *See* Plaintiffs' Combined Response to Defendants' Motions to Dismiss, ECF No. 32, at 2–10.  Were the state legislature to pass a law providing that members of a suspect class—LGBTQ+ individuals or members of a certain race—could not sue in state court, and any party sued by such an individual had a private right of action against them, how would the members of the suspect class seek relief in federal court?  They would sue in federal court, and, because of the state's sovereign immunity, they would sue the governor of that state under her obligation to ensure that laws are faithfully executed.  If a court would entertain that suit, then this suit is justiciable.

The State Defendants also make sweeping statements about the weight of federal authority in similar cases raising access claims, suggesting that this Court would be out on a limb if it grants Plaintiffs' motion.  The State Defendants raised these same cases in their motion to dismiss briefing.  But there, as here, they rely on broad generalizations of both those cases and Plaintiffs' claim rather than addressing the nuances of those courts' reasoning and the meaningful differences between the facts and claims alleged in those cases and in this case.  Upon closer inspection, those cases are of no benefit to the State Defendants and instead counsel in favor of granting Plaintiffs' motion.

Finally, the State Defendants suggest, in a footnote, that the relief Plaintiffs seek in their motion is different than that claimed in their prayer for relief, and that this Court should deny Plaintiffs' motion because "Plaintiffs cannot obtain relief on summary judgment that they have not sought in their complaint."  Response at 5 n. 4.  Once again, the State Defendants are mistaken.  *Compare* First Amended Complaint at 23 ("Plaintiffs pray for a judgment . . . [d]eclaring the Eviction Moratoria *or portions thereof* to be invalid and unenforceable [and] . . . [e]njoining Governor Brown . . . from taking any action to implement, enforce, or extend the Eviction Moratoria, or portions thereof[.]") (emphasis added) *with* Plaintiffs' Motion for Partial Summary Judgment, ECF No. 33, at 18 ("This Court should therefore enjoin [the challenged provisions'] operation by ordering Governor Brown to exercise her ongoing, unilateral

Page 2 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

emergency powers[.]"). Plaintiffs' motion therefore describes how the relief requested in their First Amended Complaint may be brought about: if this Court declares the challenged provisions of 2020 House Bill 4401 ("HB 4401") unconstitutional and enjoins the Governor from giving effect to those provisions, the Governor would exercise her existing authority to do so.

Plaintiffs address the remainder of the State Defendants' arguments below. In short, nothing the State Defendants have raised prevents Plaintiffs' lawsuit, or their motion with respect to this claim, from proceeding. Nor do the State Defendants offer any authority requiring this Court to deny Plaintiffs' motion; quite the opposite. Plaintiffs have demonstrated that the limited facts at issue, paired with the applicable law, establish that Plaintiffs are entitled to partial summary judgment on their fifth claim for relief: that the challenged provisions of HB 4401 unconstitutionally abridge Plaintiffs' right to access the courts of this state for redress of their grievances and that this Court should therefore declare those provisions unconstitutional and, as a result, enjoin their further operation.

## ARGUMENT

### A.     Plaintiffs have standing.

The State Defendants raise a grab-bag of potential arguments seeking to deprive this court of jurisdiction over this action. The State Defendants' arguments supposedly addressing standing are not well-founded in the facts pleaded and established by declaration—but, more importantly, they do nothing more than distract from the central issues in dispute. Plaintiffs have standing to pursue these claims, as plainly demonstrated below.

As a threshold matter, there is enough evidence in existing declarations and allegations in the First Amended Complaint to support a ruling on this motion; put simply, Plaintiffs would not file this case and bring this motion if they did not have the factual predicate to support it. However, in an abundance of caution, Plaintiffs have attached two Supplemental Declarations ("Supp. Farhoud Decl." and "Supp. Sherman Decl.") to support the facts Plaintiffs believe are already manifest and clearly alleged in the First Amended Complaint.

Page 3 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Plaintiffs' properties are located in Oregon.  *See* Declaration of Moe Farhoud ("Farhoud Decl.") ¶ 2 (listing specific properties by name, all located in Oregon); Supp. Sherman Decl. ¶ 2. Plaintiffs' properties are therefore all subject to HB 4401.  The back rent owed to Plaintiffs accrued during the emergency period, and Plaintiffs' current or former tenants still owe back rent accrued during the emergency period.  Supp. Farhoud Decl. ¶ 3–4; Supp. Sherman Decl. ¶ 3–4. Plaintiffs are prevented from taking any action on that back rent because of HB 4401.  HB 4401 §§ 7(6), 8(2)(b) and (f).

Contrary to the State Defendants' assertion (*see* Response at 6–7), HB 4401 does not, as a blanket mandate, require landlords to deliver hardship declarations to their tenants.  But, more fundamentally, whether or not Plaintiffs delivered hardship declarations to their tenants has no bearing on Plaintiffs' standing.  HB 4401 applies *either* if a landlord does not provide a copy of the hardship declaration *or* if a tenant returns a signed hardship declaration.  *See* HB 4401 § 7(1). Plaintiffs have standing in either case.  For this reason, the Farhoud entities have standing after receiving signed hardship declarations, *see* Farhoud Decl. § 5, and Plaintiffs Tyler and Crystal Sherman also have standing despite neither providing nor receiving hardship declarations.  *See* Declaration of Crystal Sherman ("Sherman Decl.") ¶ 4.

The State Defendants' remaining arguments are irrelevant either because they are manifestly untrue, *compare* Response at 7 ("Mr. Farhoud does not state one way or the other whether he has complied with HB 4401.") *with* Farhoud Decl. ¶ 5 ("The Entity Plaintiffs have received hardship declarations from 63 current or former tenants."), or because they have no bearing on Plaintiffs' standing.  *See, e.g.,* Response at 7 ("Mr. Farhoud and his companies have already received nearly $200,000 in relief from the federal paycheck protection program."). Even more concerning and less helpful to this Court is the conspiratorial tenor of the State Defendants' arguments: they question the very foundations of this lawsuit, suggesting that Plaintiffs might be attempting to litigate constitutional claims in a federal court without even owning property in Oregon or being subject to the very statute from which they seek relief.  The State Defendants claim these arguments are simply "inferences" drawn from the available

Page 4 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

evidence, *see* Response at 7, which must be viewed in the light most favorable to them as non-moving parties.  But Rule 56 does not stretch so far, and any inferences the Court makes from the available evidence must be *reasonable*.  *See* Response at 5 (citing, *inter alia*, *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996)).  The State Defendants' strained arguments with respect to Plaintiffs' standing are *un*reasonable and are unsupported by the pleadings or declarations on file.  Plaintiffs have standing to pursue this claim because they have leased property to tenants and because those tenants have not paid rent during the emergency period.  Those are the only *factual* predicates necessary for HB 4401 to apply; the rest—that is, the effects of HB 4401 and whether those effects unconstitutionally deny Plaintiffs of their right of access to the courts—is a question of law.[1]  The State Defendants have not created any genuine dispute about those two material facts, and this Court should therefore proceed to the merits of Plaintiffs' motion.

    **B.** **Plaintiffs' claim succeeds on its merits.**

The State Defendants argue several bases for denying Plaintiffs' motion, but every one of those arguments either misunderstands Plaintiffs' claim or misconstrues the applicable law.  Moreover, the State Defendants recycle at least one argument they already raised in their motion to dismiss briefing and to which Plaintiffs have already responded—and that argument also misses the mark.  At bottom, Plaintiffs make a cognizable claim based on well-founded case law showing that they should not be singled out and forced to bear alone the cost of decisions meant to benefit the public at large.

      **1.** **Federal case law supports, rather than forecloses, Plaintiffs' claim because HB 4401 does not work a change in the underlying law but, rather, makes that law inaccessible to only one distinct class.**

The State Defendants argue that the constitutional provisions guaranteeing access to the courts do not guarantee the availability of a certain right or remedy and therefore an "access"

---

[1] While that legal question does bear on Plaintiffs' standing, the State Defendants improperly characterize that determination as a factual question.

Page 5 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

claim is not an appropriate vehicle for challenging a change in the underlying law. *See* Response at 8–9. This is a version of an argument they raised in their motion to dismiss. *See* Defendants Governor Kate Brown and State of Oregon's Motion to Dismiss, ECF No. 18, at 30–31. Indeed, it is an argument Plaintiffs have already addressed. *See* Plaintiff's Combined Response to Defendant's Motions to Dismiss, ECF No. 32, at 36–37.

This argument stumbles off the block because it is premised on a misunderstanding of Plaintiffs' claim; the State Defendants describe a different set of facts and a different claim altogether and then argue in rebuttal to that straw claim. To be clear, Plaintiffs do not allege a denial of their right of access to the courts because Governor Brown signed a bill eliminating eviction actions, eliminating breach-of-contract claims, or creating a complete defense to either. Plaintiffs' claim is based on the impermissible distinction of one class of plaintiffs—landlords— from availing themselves of statutory and common law claims available to every other class of plaintiff. By analogy, if the Governor signed a bill prohibiting any person not born in Oregon from filing a claim for breach of contract in any Oregon court and directing Oregon courts to dismiss those claims, individuals not born in Oregon could allege an "access" claim. In such a case, as here, there would be no change to the underlying substantive law, but it would be rendered unavailable to only a certain class of plaintiffs. That was the situation in *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004): the underlying law remained the same, remedies remained available, but that law and those remedies were rendered inaccessible only to *certain* plaintiffs based on their status as people with disabilities. Plaintiffs in this action are owners of residential rental properties and not individuals with disabilities or individuals born outside of Oregon (*see infra* at part B.3) but the claim remains the same, and it is a viable claim under the U.S. Constitution.

The State Defendants apply similarly misplaced reasoning in arguing that "[t]he right of access also does not protect against all delays in litigation[,]" *see* Response at 9, and analogize to an Iowa residency requirement for bringing divorce actions only after one year of living in the state. *See id.* (citing *Sosna v. Iowa*, 419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975)). The

Page 6 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

State Defendants entirely mischaracterize the holding of *Sosna*: the plaintiff in that case did not claim that the delay from the residency requirement itself constituted a denial of her right of access, and the court did not reject that claim.  Rather, the plaintiff argued that "the failure to provide an individualized determination of residency violates the Due Process Clause of the Fourteenth Amendment[,]" *see* 419 U.S. at 409, and the court rejected *that* argument on grounds unrelated to this matter.  Following that discussion, the court opined—in *dicta*—that the case at bar was distinguishable from a previous court-access precedent because of the delay issue.  *Id.* at 410.  But that was not briefed, nor was it central to the court's holding; indeed, court access claims premised on delay *are* cognizable and make up one of the two broadly defined categories of court access claims described by the Supreme Court in *Christopher v. Harbury*, 536 U.S. 403, 414, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002): claims "turn[ing] either on a litigating opportunity yet to be gained or an opportunity already lost[.]"  *See* 536 U.S. at 413 ("In cases of this sort, the essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs.  *The opportunity has not been lost for all time, however, but only in the short term*; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.") (emphasis added).

Thus, the State Defendants' argument fails for two reasons.  First, even if Plaintiffs alleged a temporary denial, that claim is still cognizable.  But the second, and most critical, reason is because Plaintiffs do not allege a mere delay in their right to access the courts.  They allege a denial of access over what has become an indefinite period of time. [2]  The State Defendants' argument is premised on a misunderstanding of the relevant allegations: Plaintiffs are not temporarily prevented from bringing claims that would be just as effective at a later date.

---

[2] Plaintiffs' deprivation is all the more permanent in light of the passage of 2021 Senate Bill 282, which the Governor signed on May 19, 2021 and which extends the grace period and therefore extends the deprivation of Plaintiffs' court access rights through February of 2022.  This represents only the latest in a long series of extensions of the alleged end of the grace period, which remains a moving target.

Page 7 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Rather, Plaintiffs are being denied rent because they are being forced to house tenants who cannot pay rent and prevented from seeking judgments against those tenants for that back rent. Meanwhile, any resources tenants may have once had to pay their back rent have long been subject to collection by every other class of creditor—because only Plaintiffs and similarly situated landlords cannot bring breach-of-contract claims.  Moreover, it is not only this practical reality that leads to a permanent deprivation; HB 4401, *on its face*, also permanently prohibits Plaintiffs from suing for late fees or collecting interest for the back rent owed to them—to compensate Plaintiffs for the time-value of the money of which they have been deprived over the past year.  Thus, as a legal reality, the deprivation occasioned by HB 4401 is permanent. Preventing Plaintiffs from going to court to seek an adjudication of their rights with respect to tenants deprives Plaintiffs of the amounts owed to them by law, and no later claim can return those amounts to Plaintiffs.

Because Plaintiffs do not seek redress for an underlying change in the substantive law that applies equally to all, and because the injury Plaintiffs claim is not merely temporary but effectively permanent, the State Defendants' citations to federal cases denying other access claims are unavailing.

### 2. *Baptiste*, *Walz*, and *Elmsford* are not relevant here, and the district court in *Elmsford* explains precisely why.

The State Defendants argue that three federal district court cases should control this Court's decision here: *Baptise v. Kennealy*, 490 F. Supp. 3d 353, 383 (D. Mass. Sept. 25, 2020); *Heights Apartments, LLC v. Walz*, --- F. Supp. 3d ----, 2020 WL 7828818 (D. Minn. Dec. 31, 2020); and *Elmsford Apartment Associates, LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. June 29, 2020).  The State Defendants implicitly accuse Plaintiffs of hiding the ball by not discussing these cases (*see* Response at 1), but the reason Plaintiffs did not discuss those cases is that they are simply not relevant.  The court in *Elmsford* explains why.

In *Elmsford*, the landlords argued that another case—*ACA International v. Healey*, 457 F. Supp. 3d 17 (D. Mass. May 6, 2020)—was persuasive authority because in *ACA*,

Page 8 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

> [t]he court found that the plaintiff had demonstrated a likelihood of success on the merits of their Petition Clause claim, explaining that the regulation exceeded the sort of 'mere procedural obstacles' permissible under the Petition Clause *since it precluded the plaintiff's members from obtaining any 'relief . . . through authorized judicial proceedings.'*

469 F. Supp. 3d at 175 (citing *ACA*, 457 F. Supp. 3d at 31–32) (emphasis added).  The court in *Elmsford* went on to explain that that regulation at issue in that case

> is not nearly as broad as that regulation struck down in *ACA*.  *In that case, the attorney general effectively outlawed legal remedies of any kind in any court, state or federal, for a whole class of creditors*[.] . . .  By contrast, [the regulation at bar] suspended one of several avenues by which landlords can seek relief for nonpayment, *while leaving other (if less favored) remedial proceedings for breach of contract (which is exactly what a breach of a lease is) in place.*

*Id.* (emphasis added).  Thus, no violation of the Petition Clause was found in *Elmsford* because the regulation in *Elmsford* left open breach-of-contract claims.  The same was true in both *Walz* and *Baptiste*.  *See* 2020 WL 7828818, at *13 ("First, the EOs do not prohibit the Landlords from bringing a breach of contract claim and obtaining a money judgment in cases where tenants are not paying rent."); 490 F. Supp. at 383 ("The Moratorium . . . does not prevent a landlord from suing a tenant for rent owed.").  In *this case*, HB 4401 has cordoned off every avenue by which Plaintiffs might seek redress of their grievances.

*Elmsford* is instructive here for another reason: the State Defendants claim that no federal court has upheld a pandemic-era access claim and that "Plaintiffs fail to explain why this Court should be the first."  Response at 12.  But the above passages in *Elmsford* discuss in detail the District of Massachusetts's pandemic-era holding in *ACA* that a temporary filing moratorium against a specific class of creditors, the effect of which is "merely to delay a creditor's day in court, while temporarily protecting consumers from a method of debt collection that is uniquely threatening under the circumstances of the pandemic[,]" had a likelihood of violating the Petition Clause of the First Amendment.  457 F. Supp. 3d at 33 ("The court also enjoins the Attorney General from bar[ring] the defined debt collectors from bringing enforcement actions in the state and federal courts of Massachusetts.").  Further, although the district court in *ACA* did not

Page 9 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

expressly walk through the levels of scrutiny for the Petition Clause access claim, the court nonetheless applied intermediate scrutiny to the First Amendment violations at issue in that case and noted that rights under the Petition Clause "demand exacting protection[.]" *Id.* at 30.

The weight of federal authority on which the State Defendants rely therefore does not support their position at all. In fact, those cases may well support Plaintiffs' argument here: while regulations completely curtailing one avenue of relief may not be suspect under the First Amendment, regulations curtailing "a whole class of creditors" from "obtaining any 'relief . . . through authorized judicial proceedings[,]'" *Elmsford*, 469 F. Supp. 3d at 175, violate the First Amendment and must be enjoined.[3]

### 3. This Court should apply intermediate scrutiny, and the challenged provisions of HB 4401 cannot survive intermediate scrutiny.

#### a. This Court should apply intermediate scrutiny because the challenged provisions of HB 4401 completely foreclose any claims in any court and impinge on Plaintiffs' constitutional right to make and enforce contracts.

The State Defendants argue that intermediate scrutiny is not appropriate because federal courts have tended not to apply intermediate scrutiny to access claims based on eviction bans, and the *Borger* opinion is not enough to counter those examples because it has been stayed on appeal by the D.C. Court of Appeals. Response at 14. The State Defendants further argue that Supreme Court precedents applying heightened scrutiny are inapplicable and that this Court should instead rely on the Supreme Court's opinion in *United States v. Kras*, 409 U.S. 434, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973). The State Defendants' arguments are misguided and fail to apprehend the critical differences between the challenged provisions of HB 4401 and enactments challenged in those jurisdictions.

As discussed above, HB 4401 contains a unique provision that has been absent in each of the federal cases on which the State Defendants rely: whereas the provisions in those cases left

---

[3] The complete denial of court access—including the prohibition on all breach-of-contract claims—was notably absent from 2020 House Bill 4213, the predecessor to HB 4401.

Page 10 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

landlords the option to pursue claims for breach of contract, HB 4401 does not.  That is not a distinction without a difference; not only does prohibition of breach-of-contract claims prevent Plaintiffs from seeking *any* relief from the courts, but the right to petition courts for breaches of contract is one of the oldest in recorded history, inherited by America from the English common law, and vouchsafed by the U.S. Constitution.  It is the comprehensive nature of a regulation that eliminates both claims for possession *and* claims for breach of contract that caused the court in *Elmsford* to opine that, were such a regulation before that court, it would likely be enjoined for abridging the right of access to the courts.  469 F. Supp. 3d at 175.

Moreover, this distinction has a bearing on the persuasiveness of the State Defendants' reliance on the D.C. Court of Appeals' stay of the trial court's order in *Borger*.  According to the D.C. Court of Appeals, "claims for a judgment of possession and eviction in the District are defined exclusively and precisely by statute" and thus, "[h]aving been defined by the legislature, these claims can likewise be constricted."  Declaration of Steve Berman ("Berman Decl."), Ex. A at 7–8.  Further, because "[c]laims for possession and eviction are already subject to a litany of procedural limitations[,]" the D.C. Court of Appeals reasoned that "[t]he additional limitation of a filing moratorium for these types of claims does not appear to implicate the right of access to the courts[.]"  Finally, the court expressly premised its conclusions on the notion that "there is [no] constitutional right to evictions on a particular timetable[.]"  *Id.* at 9; *see also id.* at 10 n. 20 (noting only that legislation "compromising the right of access to the courts *to regain possession of one's property from a tenant*" may not be subject to intermediate scrutiny and citing a treatise stating that "judicial process . . . essential to the exercise of fundamental constitutional rights" is subject to heightened scrutiny) (emphasis added).

Plaintiffs' claim does not fall within the reasoning of the D.C. Court of Appeals because HB 4401 goes further than the challenged enactment at issue in *Borger* by restricting Plaintiffs from filing breach-of-contract claims for past-due rent *on top of* preventing Plaintiffs from filing for summary eviction.  In addition, unlike summary eviction, breach-of-contract claims are not creatures of statute, were not created by the legislature, and are not already subject to a "litany"

Page 11 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

of procedural limitations.  Moreover, the right to enter into and enforce contracts *is* expressly protected by both the U.S. and Oregon Constitutions.  *See* U.S. CONST., Art. I, § 10; OR. CONST., Art. I, § 21.  For those reasons, intermediate scrutiny is appropriate for limitations on judicial process for the exercise of that fundamental right.  That is why the district court in *ACA* enjoined a pandemic regulation restricting all access to judicial process, including breach of contract, for one class of creditors and repeated that the right to petition the courts in the context of a breach of contract "demand[s] exacting protection."  457 F. Supp. 3d at 30.

Moreover, the Supreme Court has consistently held that intermediate scrutiny is the norm for access claims.  In addition to its determination in *Lane* that the "fundamental" right of access to the courts "call[s] for a standard of judicial review at least as searching, and in some cases more searching, than the standard that applies to sex-based classifications," 541 U.S. at 529, the Supreme Court recited a similar standard in *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971) ("Prior cases establish, first, that . . . absent *a countervailing state interest of overriding significance*, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.") (emphasis added).  In fact, *Kras* is the exception to this rule, and it is an exception premised specifically on the right at issue in that case: the statutory right to declare bankruptcy.  409 U.S. at 446 ("Bankruptcy is hardly akin to free speech or marriage or to those other rights . . . that the Court has come to regard as fundamental and that demand the lofty requirement of a compelling governmental interest before they may be significantly regulated."); *see also id.* ("There is no constitutional right to obtain a discharge of one's debts in bankruptcy.").

The State Defendants claim that "Plaintiffs' case is far more like [*Kras*] that *Lane*" because "eviction legislation concerns an area of economics and social welfare[.]"  Response at 17.  But the State Defendants once again fail to take into account the full extent of the challenged portions of HB 4401: it is not merely eviction claims that are subject to that statute but, rather, eviction claims *and* breach-of-contract claims.  And, again, contracts are the subject of constitutional protection.  U.S. CONST. Art I, §10.  Moreover, the combined effect of HB 4401 is

Page 12 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

that Plaintiffs cannot bring *any* claims with respect to their rights, which is closer to the access issues in *Lane*—in which people with disabilities literally could not enter the courthouse to bring any claim—than that in *Kras*, which prevented only the filing of one kind of claim. For that reason, and for those explained extensively in Plaintiffs' Motion, *see* ECF No. 33 at 5–7, this Court should apply intermediate scrutiny to the challenged provisions of HB 4401.

>           b.     **The challenged provisions of HB 4401 cannot survive intermediate scrutiny because they do nothing to advance the interests the Governor identifies.**

In demonstrating the proper "fit" for intermediate scrutiny, the defendant must not only establish a "significant" or "substantial" government interest, but it must show that the restriction in question "will in fact alleviate [that interest] to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 768, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993). Further, a challenged enactment must fail intermediate scrutiny if it is underinclusive. *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2375–76, 201 L. Ed. 2d 835 (2018) (citing *Brown v. Entertainment Merchants Assn.*, 564 U.S. 786, 791, 131 S. Ct 2729, 180 L. Ed. 2d 708 (2011)).

The State Defendants contend that the challenged provisions of HB 4401 advance three objectives: (1) preventing mass evictions, Response at 20; (2) preventing the spread of COVID-19, Response at 21; and (3) "reduc[ing] economic hardship and related life, health, and safety risks[.]" *Id.* Those are lofty interests. However, the challenged provisions of HB 4401 fail intermediate scrutiny and violate the constitution because they do nothing to advance those interests. The State Defendants treat Plaintiffs' motion as if it challenges all of HB 4401; that is not the case. Rather, as Plaintiffs made clear in their motion, they ask this Court to enjoin those provisions of HB 4401 preventing the filing of contract claims and the reducing of those claims to judgments. *See* Plaintiffs' Motion for Partial Summary Judgment, ECF No. 33, at 4 (identifying HB 4401 § 7(6) and § 8(2)(b) and (f)); FAC ¶ 66 (identifying the same effects of HB 4401). The interests upon which the State Defendants now attempt to rely are not served by the provisions Plaintiffs challenge in their Fifth Claim for Relief. This is where the *Borger* court's reasoning is especially salient and remains vibrant: the filing moratorium at issue must be viewed

Page 13 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

distinctly from the eviction moratorium, which Plaintiffs' motion does not target. *See* ECF No. 33 at 10 n. 8 (*citing Borger* at 32–33 ("[W]ith the moratorium on actual evictions in place, the District and *amici* have not established the requisite fit between the filing moratorium and [protecting our community from the ravages of COVID-19].")). Importantly, the D.C. Court of Appeals did not take issue with that reasoning and left undisturbed the trial court's ruling that the mere filing of a lawsuit did not prevent mass evictions or arrest the spread of COVID-19. Berman Decl., Ex. A at 11–13.

Plaintiffs preemptively addressed the first two of the State Defendants' asserted interests in their opening motion, *see* ECF No. 33 at 8–10, and the State Defendants' Response makes no effort to show why the challenged provisions (prohibiting actions for money damages) somehow prevent evictions or slow the spread of COVID-19[4] in light of the eviction moratorium and the availability of remote court proceedings, which keep tenants in their homes and out of courthouses. Response at 22.

The last of the State Defendants' stated interests—"reduc[ing] economic hardship and related life, health, and safety risks"—is so vague and broad that it could be used to purportedly justify almost any regulation. However, that interest is insufficient for two reasons. First, it has no basis in the legislative history of HB 4401—the desire to "reduce economic hardship" only appears in the Governor's prior executive orders. *See* Response at 21. And the State Defendants have previously represented to this Court that the Governor's executive orders are not to be considered legislative history for HB 4401. *See* Response at 20 ("The Governor did not draft HB

---

[4] The Governor argues that HB 4401 would survive rational basis review, if applicable, because it helps prevent the spread of COVID-19. *See* Response at 12. She claims this is so because HB 4401 halts nonpayment evictions and "[w]ithout such protections, tenants could be required to vacate their homes and potentially become exposed to COVID-19 in more crowded living situations." *Id.* at 13. As explained herein (and in Plaintiffs' opening Motion, *see* ECF No. 33 at 7–10), the provisions of HB 4401 that Plaintiffs challenge in this motion have nothing to do with non-payment evictions and therefore have nothing to do with preventing the spread of COVID-19. Even if rational basis scrutiny applied, the *filing* moratorium would not satisfy that standard because preventing landlords from merely seeking money judgments (as all other credits remain able to do) has no impact on the spread of COVID-19 as long as the *eviction* moratorium remains in place.

Page 14 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

4401 . . . and did not submit any kind of statement to the Legislature when she signed those bills. As a result, Legislative intent is determined by the Legislature's actions and statements, *not the Governor's actions and statements.*") (emphasis added).  Curiously, despite their prior representations, the State Defendants now seek to rely on the Governor's executive order as the sole support for their claim that the legislature enacted HB 4401 to advance the interest in "reduc[ing] economic hardship and related life, health, and safety risks." *Id.* at 21.  The State Defendants cannot have it both ways.  If, as they have previously told this Court, the Governor's intent behind the executive orders that created the framework for HB 4401 is not probative of the legislature's intent in enacting HB 4401, then the State Defendants fail to raise any legislative history showing that *the legislature* intended HB 4401 to "reduce economic hardship."

Furthermore, to the extent HB 4401's filing moratorium is meant to reduce the economic hardship caused by the pandemic, it is "wildly underinclusive." *Entertainment Merchants Assn.*, 564 U.S. at 802.  The challenged provisions of HB 4401 prevent only one class of creditors from suing tenants; however, those same tenants who are out of work due to the effects of the Governor's closure orders or otherwise and have not paid their rent are still subject to all manner of "economic hardship" brought about by every other class of creditor: credit card companies, debt collectors, healthcare providers, payday lenders, retailers, the list is practically endless.  If the challenged provisions of HB 4401 are meant to prevent all of that "economic hardship," they are a sorry means of doing so.  And this "wild[] underinclusive[ness]" means the challenged provisions cannot survive intermediate scrutiny because the challenged provisions do not properly "fit" the significant governmental interests they were supposedly put in place to address.  *National Institute of Family and Life Advocates*, 138 S. Ct. at 2375.

The eviction moratorium effectively prevents any mass evictions, and Plaintiffs do not challenge that with this motion.  The state courts have long-since transitioned to nearly fully

Page 15 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

remote operations,[5] meaning litigating cases does not contribute to the spread of COVID-19. To the extent the challenged provisions of HB 4401 are meant to prevent all economic hardship that is caused by the COVID-19 pandemic, they are woefully unable to do so on their own.[6] For those reasons, the portions of HB 4401 that prohibit the filing of non-eviction, breach of contract actions cannot survive intermediate scrutiny and must be enjoined.

        C.      **The State Defendants do not need discovery to respond to Plaintiffs' motion, as their Response makes clear.**

The State Defendants' counsel walk a fine line in filing a nearly 30-page response to Plaintiffs' Motion while simultaneously claiming they cannot fully respond to Plaintiffs' Motion absent some discovery. Berman Decl. ¶ 6. As the State Defendants' robust Response makes clear, they need no discovery to present their arguments in response to Plaintiffs' Motion, as Plaintiffs' arguments are not fact-intensive and can be resolved as a matter of law. This Court need look no further than the text of HB 4401 to appreciate the limited facts needed to resolve Plaintiffs' motion: Plaintiffs must merely have tenants who have not paid some rent during the emergency period. That is all that is necessary for HB 4401 to effect an abridgement of Plaintiffs' constitutional rights, and it is effect of HB 4401—a legal question—that is central to Plaintiffs' motion.

Thus, the "facts" the State Defendants hope to discover are irrelevant to whether Plaintiffs' claim succeeds or fails. Plaintiffs addressed every one of those arguments above (showing that the State Defendants did not, in fact, need discovery in order to make those arguments in their Response). The State Defendants claim they need to know where Plaintiffs' properties are located, but they already know (or should know) exactly where the properties are located, as they are all specifically listed by name in the Farhoud Declaration and the

---

[5] Those courts that have resumed in-person appearances have done so only after the determination that the risk of spreading COVID-19 is low enough to allow in-person appearances.

[6] Moreover, the filing moratorium does not *reduce* economic hardship as much as it merely *shifts* the economic hardship from one class of Oregonians—tenants—to another class— many of whom are small landlords.

Page 16 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Supplemental Sherman Declaration. They claim they need to know when past-due rent accrued, but Plaintiffs have already attested that the rent at issue accrued during HB 4401's "emergency period." The State Defendants would ask "why" Plaintiffs have not complied with HB 4401, but, as explained above, all Plaintiffs *have* complied with HB 4401. The final "facts" identified by the State Defendants—relating to whether Plaintiffs have received any state or federal aid or negotiated settlements with individual tenants—truly have no bearing on whether Plaintiffs state a claim for violation of the U.S. Constitution through denial of their right of access to the courts. Nor do the State Defendants require any "detailed information about each tenant" or "the extent that Plaintiffs historically have pursued legal action in court against tenants in the past for payments due[.]" Berman Decl. ¶ 7. There can be no serious question that Plaintiffs are property owners whose tenants have not paid rent. The State Defendants, as part of their ongoing attempt to put off consideration of Plaintiffs' Motion, now seek to raise all types of theoretical or irrelevant factual issues about Plaintiffs' properties—short of asking for the count of the bricks in the foundation and number of timbers in the walls. But summary judgment is only improper where a dispute of *material* fact makes resolution of the claim impossible. Fed. R. Civ. P. 56(a). The only material facts at issue here have been conclusively established and are not subject to serious debate.

Finally, the State Defendants' counsel concedes that intermediate scrutiny may apply to access claims and therefore premises his Rule 56(d) declaration on a need for discovery of "empirical evidence supporting the underlying public purpose of HB 4401's temporary suspension of legal actions against tenants for non-payment of rent." Berman Decl. ¶ 8. To borrow their phrase, the State Defendants' counsel "miscomprehend[s] what constitutes legislative history." Response at 20. Legislative history is not manufactured through depositions after-the-fact, but, rather, is comprised of documents and testimony available to legislators at the time of enactment of the challenged law. Moreover, the State Defendants' Response contains abundant, actual legislative history, proving, once again, that the State Defendants do not need additional facts in order to adequately respond to Plaintiffs' Motion. The State Defendants'

Page 17 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

request for discovery is just the latest attempt to delay the resolution of this matter—*see* State's Motion for Stay, ECF No. 38—while Plaintiffs and the state's other residential housing providers continue to bear the burden of the challenged provisions of HB 4401 alone.

Accordingly, this Court should reject the State Defendants' request to delay resolution of Plaintiffs' Motion for Partial Summary Judgment and should proceed to adjudicate that motion as it has been fully briefed by the parties.

## CONCLUSION

For the reasons stated above, and for those argued in Plaintiffs' opening motion and in their Combined Response to Defendants' Motions to Dismiss, Plaintiffs have shown that the challenged provisions of HB 4401 impermissibly impinge on their right of court access, and this Court should declare those provisions unconstitutional and enjoin their operation.

DATED this 1st day of June, 2021.

> Respectfully submitted,
>
> DAVIS WRIGHT TREMAINE LLP
>
> By: s/ *John DiLorenzo, Jr.*
> John DiLorenzo, Jr. OSB #802040
> Email:  johndilorenzo@dwt.com
> Aaron K. Stuckey, OSB #954322
> Email:  aaronstuckey@dwt.com
> Evan Christopher, OSB #183214
> Email:  evanchristopher@dwt.com
> 1300 SW Fifth Avenue, Suite 2400
> Portland, OR 97201
> Telephone:  (503) 241-2300
> Facsimile:  (503) 778-5299
>
> *Counsel for Plaintiffs*

Page 18 - PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
4834-8950-9610v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax