IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOE FARHOUD, STARK FIRS LIMITED
PARTNERSHIP, ALDER VILLAGE, INC.,
STAR KREST, INC., ASH STREET
COURTYARD LLC, TYLER SHERMAN, and
CRYSTAL SHERMAN,                                    Case No. 3:20-cv-02226-JR

               Plaintiffs,                          FINDINGS AND
                                                   RECOMMENDATION
             v.

GOVERNOR KATE BROWN, in her
official capacity, STATE OF OREGON;
CITY OF PORTLAND, an Oregon
municipal corporation; and MULTNOMAH
COUNTY OF OREGON, an Oregon
municipal corporation,

              Defendants.
_____

RUSSO, Magistrate Judge:

     Now pending before the Court are defendants' motions to dismiss under Fed. R. Civ. P.

12(b)(1) & (6) (ECF 18, 19, & 21), and plaintiffs' Motion for Partial Summary Judgment (ECF

33). For the reasons stated below, the City and County defendants' motions to dismiss should be

granted because plaintiffs' claims against them are moot, and this Court lacks jurisdiction to hear

them. The State defendants' motion to dismiss should be granted because the parties agree the

Defendant State of Oregon should be dismissed from this case, and plaintiffs lack standing to

bring a claim against Governor Brown.

# BACKGROUND

Plaintiffs challenge executive orders issued by defendant Governor Brown (Governor), two bills passed by the Oregon Legislature, and ordinances adopted by both defendants Multnomah County, Oregon ("County") and the City of Portland, Oregon ("City"). Plaintiffs allege those separate actions—under the collective rubric of "Eviction Moratoria"—are unconstitutional and have caused them harm. Although several of these governmental actions have since been rescinded or expired, what follows is a short history of the challenged government action and how the parties arrived here.

## I.    Executive Action to Confront COVID-19 in Oregon

On March 8, 2020, the Governor declared a state of emergency in Oregon due to the public health threat posed by COVID-19. *See* Executive Order ("EO") 20-03. In the following months, the Governor ordered limitations on social gatherings, school closures, bans of on-site consumption of food and drink at restaurants, and postponement of nonurgent medical procedures to conserve personal protective equipment and hospital beds. *See* EO 20-37 (summarizing Governor Brown's response to the pandemic).

On March 23, 2020, the Governor ordered Oregonians to "Stay Home, Save Lives," directing people to stay at home when possible, closing specified retail businesses, and requiring social distancing measures. EO 20-12. The Governor also implemented eviction protections. The first of these protections, implemented by EO 20-11, prohibited law enforcement officers from enforcing residential tenant eviction notices and orders.

On April 1, 2020, the Governor issued EO 20-13, ordering a temporary 90-day moratorium on evictions based on nonpayment of rent. The order did not relieve tenants from the

obligation to pay rent, utility charges, or any other service fees and charges except for penalties arising from nonpayment of rent during the moratorium.

On September 28, 2020, the Governor issued EO 20-56, ordering another temporary moratorium on evictions for nonpayment. The order extended the eviction moratorium through December 31, 2020. Again, the order did not relieve tenants from any payment obligation except for penalties arising from nonpayment during the eviction moratorium period.

On December 17, 2020, the Governor extended the state of emergency through March 3, 2021. EO 20-67. The Governor did not, however, modify the temporary eviction moratorium imposed by EO 20-56. See EO 20-67 § 2(b)(7) (continuing EO 20-56 without modification); see also EO 21-05 § 2(c) (reiterating that EO 20-56 expired on December 31, 2020). Accordingly, the temporary eviction moratorium ordered by the Governor expired on January 1, 2021, and there are currently no executive orders in place limiting or restricting evictions.

## II.    Oregon's Legislative Responses to COVID-19

In three special sessions in 2020, the Oregon Legislature enacted laws to address the impact of the COVID-19 pandemic. Relevant here, the legislature enacted two laws to restrict evictions and provide protections to tenants, House Bill 4213 ("HB 4213") and House Bill 4401 ("HB 4401").

The Legislature passed HB 4213 during the first special session, which became effective June 30, 2020. The substantive provisions of HB 4213 were enacted "to protect [citizens'] public health, safety and welfare," and are of "limited scope and duration." HB 4213 § 1(2).

HB 4213 prohibits landlords from taking specified actions based on a tenant's nonpayment balance during the emergency period of April 1, 2020, through September 30, 2020. HB 4213 §§ 3, 5. Most significantly, HB 4213 prohibits a landlord from evicting a tenant for

nonpayment of rent, and from assessing any fee or penalty on a tenant's nonpayment. HB 4213 §§ 3(2)(a)-(d), 5(2)(a)-(c), 5(3). HB 4213 applies to residential and commercial tenancies.

HB 4213 further establishes that, after the emergency period, tenants with an outstanding nonpayment balance have a six-month grace period, ending on March 31, 2021, to pay the balance. HB 4213 §§ 3(6), 5(4). If, in accordance with HB 4213 § 3(7) or § 5(5), a landlord gives the tenant notice that the emergency period has ended and that the tenant has a nonpayment balance, the six-month grace period is available to the tenant, provided that the tenant notifies the landlord that the tenant intends to use the grace period to pay balances due. HB 4213 §§ 3(8)(a), 5(6)(a). HB 4213 tolls the statute of limitations until March 31, 2021, for landlords' claims against residential tenants based on nonpayment of rent. HB 4213 § 7.

Under HB 4213, if a landlord violates sections 3 or 5 of HB 4213, a tenant may obtain injunctive relief to recover possession or address any other violation of the statute. HB 4213 §§ 3(11), 5(9). A tenant also may recover from the landlord an amount up to three months' periodic rent plus any actual damages. *Id.* By HB 4213's own terms, the operative provisions of HB 4213, Sections 3 and 5, were repealed on March 31, 2021. HB 4213 §§ 4, 6.

On December 21, 2020, the Oregon Legislature then passed HB 4401, and the statute became effective December 23, 2020. HB 4401 modifies HB 4213 as to residential evictions. HB 4401 extends the emergency period for residential tenants specified in HB 4213 until December 31, 2020. HB 4401 § 8. HB 4401 further extends through June 30, 2021, the emergency period, the moratorium on residential evictions for nonpayment, the prohibition on late fees on unpaid rent, and the six-month grace period created by HB 4213, if one of two things occurs: either a landlord fails to deliver to the tenant a notice informing the tenant of the tenant's right to temporary protection against eviction for nonpayment; or the tenant delivers to the landlord a

declaration of financial hardship. HB 4401 § 7(1). The form of notice for the landlord to provide the tenant, and the form of the declaration for the tenant to provide the landlord, are set forth in the law. HB 4401 § 7(1)–(3).

HB 4401 retains the private cause of action for tenants created by HB 4213. If a landlord violates the eviction prohibition in HB 4401, a tenant may obtain injunctive relief to recover possession or address any other violation and may recover from the landlord an amount equal to three months' periodic rent plus any actual damages. HB 4401 § 7(8)(a)(A). The tenant also has a defense to an action for possession by the landlord. HB 4401 § 7(8)(a)(B). Like HB 4213, HB 4401 creates no other enforcement mechanism and gives no independent enforcement authority to the Governor.

Section 8 of HB 4401 makes further changes to HB 4213. For example, HB 4401 adds a provision that if a tenancy terminates before the end of the grace period, a landlord may claim from the security deposit or last month's rent deposit an amount to repay the unpaid rent balance that accrued during the emergency period. See HB 4401 § 8 (adding a new § 3(6)(a) to HB 4213). The bill extends the statute of limitations for a landlords' claim against a residential tenant based on nonpayment of rent through July 2, 2021. HB 4401 § 17. The eviction moratorium extension in HB 4401, including the private right of action, were repealed effective July 1, 2021. HB 4401 § 23.

In addition to providing protections for tenants, HB 4401 establishes a landlord compensation fund to compensate residential landlords for 80 percent of the past-due rent of qualified tenants. HB 4401 § 2(1). Landlords must apply to take advantage of the fund and voluntarily agree to forgive the remaining 20 percent of the unpaid rent due from qualified tenants. HB 4401 § 2(1)(a)–(d). In other words, the compensation fund is entirely optional;

landlords have no obligation to waive any part of unpaid rent that accrues during the emergency period.

HB 4213 and HB 4401 do not require landlords to provide housing free of charge. Although HB 4213 and HB 4401 protect tenants from fees and penalties for late payments, nothing in HB 4213 or HB 4401 relieves a tenant of the obligation to pay all duly owed rent. HB 4213 and HB 4401 only extend the time-period for a tenant to pay. Moreover, the eviction moratorium in HB 4213, as amended by HB 4401, applies only to evictions for nonpayment of rent due to loss of income arising after the outbreak of the pandemic and resulting economic downturn. HB 4213, as modified by HB 4401, does not prohibit for-cause evictions for reasons other than nonpayment of rent, such as for participating in illegal activity or the tenant's violation of statutory duties. *See, e.g.*, Or. Rev. Stat. ("ORS") § 90.325 (setting forth tenant duties); ORS § 90.369 (discussing acts and omissions justifying termination of tenancy). As HB 4401 makes explicit, a tenant "can still be evicted for violations of the rental agreement, other than nonpayment of rent." HB 4401 § 7(3)(a).

### III.    Procedural Background

Here, plaintiffs challenge City, County, state executive, and state legislative actions, which plaintiffs collectively refer to as "Eviction Moratoria." Compl. ¶ 2. As discussed in further detail below, the bulk of the relevant Eviction Moratoria implemented by the City and County, and state executive have been rescinded or expired.

Plaintiffs bring five claims against the City, County, the State, and the Governor. First, plaintiffs assert a violation of the Contracts Clause, Article I, Section 10 of the United States Constitution. Compl. ¶¶ 34–41. Second, plaintiffs assert violations of the Fifth and Fourteenth Amendments to the United States Constitution based on an alleged "per se taking" of plaintiffs'

property without just compensation. Compl. ¶¶ 42–49. Third, plaintiffs assert a violation of the

Fourteenth Amendment, which appears to be a substantive due process claim, based on allegedly

confiscatory price controls that fail to provide plaintiffs a "fair and reasonable" return on their

properties. Compl. ¶¶ 3, 50–57. Fourth, plaintiffs assert a violation of the Fourth and Fourteenth

Amendments based on a supposed "seizure" of Plaintiffs' property. Compl. ¶¶ 1, 3, 58–64.

Finally, plaintiffs assert a violation of the right of access to the courts guaranteed by the First and

Fourteenth Amendments. Compl. ¶¶ 65–73.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a case for

"lack of subject-matter jurisdiction." When a defendant correctly identifies a jurisdictional

defect, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A defendant may raise

justiciability issues such as sovereign immunity, mootness, and standing through a motion to

dismiss under FRCP 12(b)(1). *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2

(9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be

raised in either a Rule 12(b)(1) or 12(b)(6) motion."); *Rosemere Neighborhood Ass'n v. U.S.*

*Envtl. Prot. Agency*, 581 F.3d 1169, 1172–73 (9th Cir. 2009) (mootness); *Alexander v. Kujok*,

158 F. Supp. 3d 1012, 1017 (E.D. Cal. 2016) (standing).

The plaintiff has the burden to establish that subject matter jurisdiction is proper. *See*

*Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778-779 (9th Cir. 2000). To meet this

burden, the plaintiff must show "affirmatively and distinctly the existence of whatever is

essential to federal jurisdiction." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499

(9th Cir. 2001), *overruled on other grounds, Hertz Corp. v. Friend*, 559 U.S. 77, 82 (2010). A

motion to dismiss for lack of subject matter jurisdiction may be a facial attack, where the

allegations of the complaint are insufficient on their face to invoke federal jurisdiction, or a factual attack, where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citation and quotation marks omitted).

## DISCUSSION

The Court should consider defendants' threshold challenges to Article III standing first, without ruling on plaintiffs' motion for partial summary judgment. *See Gerlinger v. Amazon.com Inc., Borders Grp., Inc.,* 526 F.3d 1253, 1255 (9th Cir. 2008) (noting that Article III standing is "a jurisdictional prerequisite to the consideration of any federal claim"). The Court should grant defendants' motions to dismiss. Plaintiffs' claims against the City and County are moot, and plaintiffs lack standing to proceed on their claims against the Governor.

### I.      City and County's Motions to Dismiss

#### a.  *Mootness Legal Standards*

Federal courts are courts of limited jurisdiction, such that, to proceed in this forum, plaintiffs must present a live "case" or "controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). A federal court must decide mootness before it can assume jurisdiction. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). "The starting point for analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *Rice*, 404 U.S. at 246). "[A] suit becomes moot, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)); *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1115-1116 (9th Cir. 2020) ("Mootness is a jurisdictional issue, and

federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists.") (citations and quotation marks omitted).

In particular, claims for equitable relief become moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citation and internal quotations omitted). Where, as here, defendants voluntarily cease the challenged conduct, a plaintiff must show "that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 854-55 (9th Cir. 1999) (noting "capable of repetition but evades review" exception applies only if "there is a reasonable expectation that the plaintiffs will be subjected to [the offensive conduct] again").[1]

Governmental defendants like the City and County bear a lighter burden to demonstrate mootness because the Court should presume, they cease their challenged actions in good faith. A legislative action ceasing the activity at the heart of a controversy "creates a presumption the action is moot, unless there is a reasonable expectation that the legislative body is likely to enact the same or substantially similar legislation in the future." *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1197 (9th Cir. 2019). This presumption, rooted in governmental good faith, makes legislative action distinct from voluntary cessation by a private or non-legislative actor. *Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983

---

[1] Plaintiffs do not address the capable of repetition but evading review exception in their response to the City and County defendants' motions to dismiss. *See generally* ECF 32. For the exception to apply, a plaintiff must prove that there is a reasonable expectation or a demonstrated probability that "materially similar" circumstances will recur. *See People Not Politicians Oregon v. Fagan*, No. 6:20-CV-01053-MC, 2021 WL 2386118, at *2 (D. Or. June 10, 2021). Because neither the record nor plaintiffs' response shows such an expectation or probability, the Court should find the capable of repetition, but evading review exception does not salvage their mooted claims against the City and County.

F.3d 411, 419 (9th Cir. 2020)("the voluntary cessation of challenged acts by a private party is not entitled to the presumption of good faith enjoyed by legislative bodies"). Whether the legislative enactment removes the activity in question, as opposed to amends the law or ordinance for continuing in substantial similar form, is material. *Cuviello v. City of Vallejo*, 944 F.3d 816, 824 (9th Cir. 2019). Here, there is no dispute that the City and County are governmental actors, or that they have removed the City and County actions plaintiffs challenge in their complaint. Therefore, the Court should begin its analysis from the baseline presumption that these activities are not likely to recur.

### b. *Plaintiffs' Claims Against the City and County Defendants Are Moot*

Both the City and County move to dismiss plaintiffs' claims for declaratory and injunctive relief because this Court lacks jurisdiction to hear them. The City argues that the Ordinances plaintiffs challenge—189890 and 190156—have both expired, rendering plaintiffs' claims against the City moot. ECF 21 at 8. The County likewise notes that Multnomah County Ordinances 1282, 1284, and 1287 and the Chair's Executive Order have been rescinded or repealed by subsequent legislative action by the Multnomah County Board, culminating with Ordinance 1292. ECF 19 at 7. The City and County both argue that plaintiffs fail to rebut the presumption that repeal, or expiration of the challenged ordinances is in good faith with evidence that the City or County is likely to reenact such an ordinance. Plaintiffs counter that it is defendants' "heavy burden" to show that they cannot reasonably be expected to enact similar tenant protections. ECF 32 at 21.

Instead of imposing a high burden on the City and County entities to demonstrate mootness, the Court "should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision, or in allowing it to expire." *Glazing Health*, 941

F.3d at 1199. The standard is not, as plaintiffs contend, whether the City or County has met a "heavy burden" of showing that the challenged ordinances will not be reenacted. Instead, the Court must presume that the expiration of the ordinances "will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id*. It is plaintiffs' burden to show—with evidence "in the record"—that "there is a reasonable expectation of reenactment." *Id.*; *see also Rentberry, Inc. v. City of Seattle*, 814 F. App'x 309 (9th Cir. 2020), cert. denied sub nom. *Rentberry, Inc. v. City of Seattle, Washington*, 141 S. Ct. 1061 (2021) (finding case moot because "[a]ppellants have not met their burden of showing a "reasonable expectation" that [city-defendant] will enact a same or similar ordinance in the future."). Plaintiffs have not made such a showing. Plaintiffs assert only "that [the defendants] have done it before is the best evidence that they will do it again." ECF 32 at 22. But this is no evidence at all, and certainly not the kind of "record" evidence *Glazing Health* requires to rebut the presumption that the City and County have rescinded the challenged ordinances in good faith. Because plaintiffs failed to produce such evidence, the Court should find the claims against the City and County moot under *Glazing Health*.

Plaintiffs' attempt to differentiate the burdens in the mootness doctrine based upon whether the challenged action flows from an ordinance or a statute should not convince the Court otherwise. To begin with, none of the cases plaintiffs cite rely on a standard that discounts the weight of legislative actions taken by local governments. *See* ECF 32 at 21 (citing *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) and *Bell v. City of Boise*, 709 F.3d 890, 898–99 & n. 13 (9th Cir. 2013)). And in *Glazing Health*, decided after *Rosebrock* and *Bell*, the Ninth Circuit explained that it was following the direction of other circuits that "have interpreted *City of Mesquite* 'to support the rule that repeal of a contested *ordinance* moots a plaintiff's injunction

request, absent evidence that the City plans to or already has reenacted the challenged law or one substantially similar.'" 941 F.3d at 1198 (quoting *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) (emphasis added)). In short, the presumption of mootness applies to lawsuits involving municipal ordinances that have been repealed or expired, just as it applies to other legislative actions. *See, e.g.*, *Rentberry*, 814 F App'x at 309 ("Appellants have not met their burden of showing a 'reasonable expectation' that Seattle will enact a same or similar ordinance in the future."); *Hordon v. Kitsap Cty. Sheriff's Office*, No. 20-5464 RJB, 2020 WL 3266213, at *2 (W.D. Wash. June 17, 2020) (finding claim moot where local government had eliminated through legislative action the allegedly unconstitutional rule and "[t]here is no showing that the Port of Kingston will reenact it during the pendency of this litigation."). Therefore, in light of *Glazing Health*, the Court should not alter its analysis because the City and County defendants are not statewide actors.

As noted above, plaintiffs do not raise or grapple with the capable of repetition but evading review exception in their briefing, but the Court will nevertheless address it here because of the recent developments in County regulation related to COVID-19.[2] Although the Court could decide the mooted claims against the City and County if they are "capable of repetition but evading review," that rule "applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (citation omitted); *Bear Gulch Solar, LLC v. Montana Pub. Serv. Comm'n*, 775 F. App'x 295, 297 (9th Cir. 2019).

---

[2] The State of Oregon also recently enacted a stopgap provision that provides a 60-day safe harbor from eviction to renters who provide notice to their landlord that they are seeking rental assistance from the State. SB 278 (2021). Because the claims against the State and Governor should be dismissed for failure to plead an injury traceable to, or redressable by the Governor, the Court does not consider whether SB 278 affects the mootness analysis.

Plaintiffs have not made such a showing. And while the County has recently enacted a similar renter-protection Ordinance while the motions to dismiss have been pending, the new Ordinance 1296 is a temporary 90-day eviction safe harbor for renters who can show they have applied for rental assistance with the State, not an absolute bar on evictions like those plaintiffs' challenge in their Complaint. *See* Multnomah County Ordinance 1296, https://multco-web7-psh-files-usw2.s3-us-west-2.amazonaws.com/s3fs-public/1296%20%281%29.pdf (last visited July 13, 2021). If anything, Ordinance 1296 shows that the COVID-19 crisis is slackening, regulation of landlords lessening, and the County is on its way back to the *status quo ante*, rather than likely to renew the expired eviction moratoria plaintiffs challenge here. Because plaintiffs did not and cannot make the showing they are likely to be subjected to the "same illegality" in the future, the County's recent passage of Ordinance 1296 should not change the Court's mootness analysis.

Ultimately, because the City and County Ordinances that form the basis of plaintiffs' claims have expired or been repealed, and because plaintiffs have not offered any evidence that they are likely to be reenacted, the Court should find these claims are moot, and dismiss all claims against the City and County.

## II.    State Defendants' Motion to Dismiss

### 1.    Claims Against the State of Oregon Should be Dismissed Under the Eleventh Amendment and By Agreement of the Parties

As an initial matter, the Court should dismiss all claims against the defendant State of Oregon because plaintiffs are barred from suing the State in federal Court under the Eleventh Amendment. *See* U.S. Const. Amend. XI; *Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89, 98 (1984). Plaintiffs "concede that the State may now be dismissed" on this basis. ECF 32 at 2. The Court should therefore dismiss all claims against the State.

**2. Claims Against Governor Brown Should be Dismissed for Lack of Standing**

***Claims Based on HB 4401 Are Not Fairly Traceable to Governor Brown, nor Redressable by the Governor***

Whether for lack of redressability or traceability, the Court should find plaintiffs' claims based on HB 4401 do not have a sufficient nexus to the Governor tup support plaintiffs' standing to sue her in federal court.[3] "Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Communications Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). To establish Article III standing, a plaintiff must show that (1) he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (internal quotation marks omitted). A failure to meet any one of these three criteria constitutes a "lack of Article III standing [and] requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Id.*

*A. Plaintiffs' Claims Are Not Fairly Traceable to Governor Brown*

Governor Brown challenges plaintiffs' Complaint on the grounds it does not allege harms fairly traceable to any of her conduct, and that plaintiffs therefore lack Article III standing. "To survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a 'line of

---

[3] Because the Court should dismiss the Complaint for lack of standing, rather than failure to state a claim, this Findings and Recommendation does not analyze what effect, if any, the Supreme Court's recent decision in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) has on the sufficiency of plaintiffs' allegations under the Takings Clause.

causation' between defendants' action and their alleged harm that is more than 'attenuated.' A causal chain does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible.'" *Maya*, 658 F.3d at 1070 (internal citations and alterations omitted). If it appears that plaintiff's alleged injuries are the result of conduct of a third person not a party-defendant, or the result of other circumstances not within the control of the defendant, then there is not a sufficient causal nexus between the plaintiff's alleged injuries and the defendant's challenged conduct. *See Native Vill. of Kivalina v. Exxon–Mobil Corp.,* 696 F.3d 849, 867 (9th Cir.2012); *Jarlstrom v. City of Beaverton,* No. 3:14-CV-00783-AC, 2014 WL 5462025, at *11 (D. Or. Oct. 27, 2014). It is well established that "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir.1998); *see also Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 714 F.2d 946, 953 (9th Cir.1983) (governor's "general duty to enforce California law ... does not establish the requisite connection between him and the unconstitutional acts" alleged in suit claiming de jure segregation of city school system).

This case is directly analogous to another challenge to COVID-19 remedial measures enacted by the Oregon legislature, *Axos Bank v. Rosenblum*, 2020 WL 7344594 (D. Or. Dec. 14, 2020). The Court should find it lacks standing to adjudicate this dispute for the same reasons found in *Axos Bank*. There, the plaintiff brought an as-applied challenge to House Bill 4204 ("HB 4204") against the Attorney General. HB 4204 created a temporary moratorium on mortgage foreclosures. HB 4204 was companion legislation to HB 4213 (the first eviction moratorium) and was enacted contemporaneously with HB 4213. In *Axos Bank*, the plaintiff alleged that the statute unconstitutionally interfered with the plaintiff's ability to foreclose on

commercial loans and to collect late fees from the borrowers and guarantors. The plaintiff in *Axos Bank* alleged claims similar to the claims alleged by plaintiffs here—seeking equitable relief under 42 U.S.C. § 1983 for, among other things, alleged Contracts Clause and Due Process violations.

Chief Judge Hernández ruled that the plaintiff lacked standing to challenge the statute and that any decision on the merits of the case would be an impermissible advisory opinion. 2020 WL 7344594, at *2. Judge Hernández reasoned that the statute did not confer any express authority on the Attorney General to enforce HB 4204. Rather, the statute was "designed to be enforced through its private right of action," and only the commercial borrowers and guarantors—who were not parties to the case—could enforce the private right. *Id.* at * 3. The plaintiff thus could not sustain any direct injury from an action by the Attorney General, as required to establish standing and an actual case or controversy. *Id.*

As with the statute at issue in *Axos Bank*, the laws challenged here—HB 4213 and HB 4401—create a mechanism for enforcement: the private right of action. *See* HB 4401 § 7(8)(A)(a) ("If a landlord violates this section or section 3, chapter 13 [of HB 4213], [a] tenant may obtain injunctive relief to recover possession or address any other violation and may recover from the landlord an amount equal to three months' periodic rent plus any actual damages"). It is specifically a private right of action, provided to private parties, and there is no language suggesting the Governor could enforce HB 4213 or HB 4401 against plaintiffs. As such, because plaintiffs cannot establish a causal link between the harm HB 4401 causes them and any action by Governor Brown, they cannot seek a remedy against the Governor in federal court. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976) ("[A] federal court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury

that results from the independent action of some third party not before the court."); *see also*

*Church v. Missouri*, 913 F.3d 736 (8th Cir. 2019) (holding that the Missouri governor's general

enforcement authority or ability to appoint members of the Missouri State Public Defender's

Commission was not a basis for an *Ex parte Young* action against the governor to compel an

increase in Missouri's indigent defense budget); *Hund v. Cuomo*, 2020 WL 6699524 (S.D.N.Y.

2020) (holding that New York State Governor Cuomo was immune from suit under Eleventh

Amendment because he did not have enforcement authority over the challenged governmental

restrictions limiting public gatherings in response to the COVID-19 pandemic).

Plaintiffs rely primarily on *Los Angeles County Bar Association v. Eu,* for the proposition

that claims may proceed against a governor when the challenged statute "is simply not the type

of statute that gives rise to enforcement proceedings." 979 F.2d 697, 704 (9th Cir. 1992).

Plaintiffs argue that under a statute like HB 4401 it is enough that the Governor is "giving effect"

to the challenged statute, as long as the Governor has some "specific connection to the

challenged statute." *Id*. In *Eu*, the defendant-governor had sufficient "connection" to the

challenged law because if the court ordered an increase in the number of judges, then the

California legislature would likely authorize more judicial positions in Los Angeles County, and

the governor would then "have a legal duty to fill those positions." *Id*. Unlike in *Eu*, however,

here the Governor plays no role in how the HB 4401 is executed, she has no enforcement

capacity under the statute and any supervisory role she serves over the Oregon Housing and

Community Services Department ("OHCS"), to whom HB 4401 grants the administrative

responsibility, is unrelated to the challenged provisions of the statute. *See* Compl. ¶ 29 (ECF 17

at 11) (describing the "effects on the existing Eviction Moratoria" implemented by HB 4401).[4] And, unlike *Eu*, granting plaintiffs their requested relief would not trigger any corresponding action on the part of the Governor down the line. Because *Eu* does not stretch as far as plaintiffs suggest, the Court should find it does not support Article III standing in this case.

In sum, since this case is directly analogous to *Axos Bank*, and the alleged injuries are not fairly traceable to the Governor in any way, the Court should dismiss plaintiffs' claims against her for lack of standing.

### B. Plaintiffs' Alleged Harms Are not Redressable by the Governor

Redressability under Article III concerns the "likelihood that the requested relief will redress the alleged injury," not whether there are circumstances in which the defendant could redress the injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). "To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). "Redressability does not require certainty, but only a substantial likelihood that the injury will be redressed by a favorable judicial decision." *Bellon*, 732 F.3d at 1146. A plaintiff "need not show that a favorable decision will relieve his every injury." *Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 525 (2007) (internal citation omitted).

---

[4] Moreover, the Governor's supervision of an agency is the type of general oversight that the Ninth Circuit held was insufficient to satisfy Article III. *S. Pac. Transp. Co. v. Brown*, 651 F.2d 613, 615 (9th Cir. 1980) ("The attorney general's power to direct and advise does not make the alleged injury fairly traceable to his action[.]").

Here, plaintiffs have not demonstrated that their requested relief would redress their alleged injury. *See* ECF 17 at 23. The prayer for relief against the Governor is twofold: a prohibitory injunction preventing the Governor from enforcing the Eviction Moratoria or a mandatory injunction requiring her to "implement a plan to adequately compensate Plaintiffs and all others similarly situated for their rental losses." *Id.* As discussed in further detail above, the Governor does not have an enforcement role under HB 4401, so relief in the form of an injunction preventing the Governor from enforcing HB 4401 would have no effect on plaintiffs' alleged harms. *See Ctr. for Biological Diversity v. Export-Import Bank of the U.S.*, — F.3d —, 2018 WL 3149770, at *5 n.2 (9th Cir. June 28, 2018) (noting that "causation and redressability are two sides of the same coin.") (internal quotation marks omitted). The Governor does not enforce HB 4401's provisions under the statute's terms; the statute grants that right to private renters, so the prohibitory injunctive relief plaintiffs seek could not redress their alleged injuries.

Plaintiffs requested mandatory injunctive relief also fails to meet the redressability standard set by Article III. Plaintiffs argue that they have standing because the Court can compel the Governor to declare HB 4401 inoperative or exercise her emergency powers to do "anything the Legislative Assembly can do" after a state of emergency is declared. ECF 32 at 16. According to plaintiffs, under ORS 401.192(1), the Governor has "vast authority [that] includes the power to set aside existing laws if their operation would impair application of her emergency orders." *Id.* Plaintiffs' argument goes too far, however, and asks too much of a federal court.

Under the circumstances here, principles of federalism should prevent the Court from ordering relief that would require the Governor to override HB 4401 and supplant it with a policy of plaintiffs' choosing. Principles of federalism "have applicability where injunctive relief is sought ... against those in charge of an executive branch of an agency of state or local

governments," *Rizzo v. Goode*, 423 U.S. 362, 380 (1976), as well as where declaratory relief is sought against such officials. S*ee, e.g., Jacobson v. Tahoe Reg'l Planning Agency*, 566 F.2d 1353, 1366 (9th Cir. 1977), aff'd in part, rev'd in part on other grounds sub nom. *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979). In particular, the Ninth Circuit has explained that "[p]rinciples of federalism counsel against" awarding "affirmative injunctive and declaratory relief" that would require state officials to repeal an existing law and enact a new law proposed by plaintiffs. *M.S. v. Brown*, 902 F.3d 1076, 1089 (9th Cir. 2018) (citing *Lake Country Estates*). That is exactly what plaintiffs seek here. Plaintiffs also ask the Governor to exceed the typical scope of her emergency powers: that those powers "be exercised in a manner consistent with the reason for which they are granted; that is, they must be exercised to address the declared emergency." *Elkhorn Baptist Church v. Brown*, 366 Or. 506, 525 (2020). Compelling the Governor to somehow declare HB 4401 inoperative, and for the Court to craft its own remedy and force the Governor to enact it to override state policy would be inconsistent with the very reasons and purposes the Governor declared an emergency in the first place, and outside the scope of the power of a federal court.

Therefore, the Court should further find plaintiffs lack standing to bring claims against the Governor because their requested prohibitory injunctive relief is incapable of remedying the alleged harms, and any mandatory injunction would violate the principles of federalism as articulated by the Ninth Circuit in *Brown*.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss should be granted (ECF 18, 19, 21); plaintiffs' motion for partial summary judgment should be denied as moot (ECF 33); and the parties' requests for oral argument are denied as unnecessary.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 26th day of July, 2021.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge

Page 21 – FINDINGS AND RECOMMENDATION