**JOHN DILORENZO, JR., OSB #802040**
johndilorenzo@dwt.com
**AARON K. STUCKEY, OSB #954322**
aaronstuckey@dwt.com
**EVAN CHRISTOPHER, OSB #183214**
evanchristopher@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

    Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MOE FARHOUD, STARK FIRS LIMITED PARTNERSHIP, ALDER VILLAGE, INC., STAR KREST, INC., ASH STREET COURTYARD LLC, TYLER SHERMAN,** and **CRYSTAL SHERMAN,**<br><br>                **PLAINTIFFS**,<br><br>v.<br><br>**GOVERNOR KATE BROWN,** in her official capacity; **STATE OF OREGON; CITY OF PORTLAND,** an Oregon municipal corporation; and **MULTNOMAH COUNTY OF OREGON,** and Oregon municipal corporation,<br><br>                **DEFENDANTS**. | Case No. 3:20-CV-02226-JR<br><br>**PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**<br><br>**ORAL ARGUMENT REQUESTED** |

    Plaintiffs Moe Farhoud, Stark Firs Limited Partnership, Alder Village, Inc., Star Krest, Inc., Ash Street Courtyard LLC, Tyler Sherman and Crystal Sherman ("Plaintiffs") respectfully submit this Objection to Magistrate Judge Russo's Findings and Recommendation, ECF No. 54 (the "F&R"), entered July 26, 2021.

### INTRODUCTION

    Plaintiffs object to the F&R on several grounds. First, the F&R incorrectly dismissed Plaintiffs' claims against Defendant Multnomah County (the "County") on the grounds that the

Page 1 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

County's illegal conduct was not likely to recur, notwithstanding the County's reenactment—during the pendency of the very motions in question—of another local eviction moratorium. The F&R specifically reasoned that any recurrence was unlikely because "the COVID-19 crisis is slackening, regulation of landlords lessening, and the County is on its way back to the *status quo ante*[.]" F&R at 13.

Second, the F&R made several incorrect determinations with respect to Plaintiffs' standing to pursue claims against Defendant Governor Kate Brown. The F&R reasoned that Plaintiffs failed to establish two elements of standing with respect to the Governor: traceability and redressability. However, in reaching that conclusion, the F&R failed to address two of Plaintiffs' three alternative arguments, including Plaintiffs' strong showing of authority in support of those arguments; ignored the Governor's ongoing emergency powers and the effect of those powers on the traceability analysis; declined to address the Supreme Court's watershed change in Fifth Amendment takings law,[1] including the procedural implications of a successful challenge to a state's taking in federal court; and incorrectly relied on an inapposite decision out of this district with little bearing on the central standing question raised in this litigation.[2] Further, recent action of the United States Supreme Court subsequent to the date of the F&R casts grave doubt on the F&R's conclusions.

Finally, in addition to its critical omissions discussed above, the F&R addressed the narrowest possible grounds, failing to discuss the merits of any of Plaintiffs' claims. Plaintiffs object to that failure and, because their arguments on the merits have gone entirely unaddressed by this Court, rely on their existing briefing on the merits and incorporate that briefing here. *See* Plaintiffs' Combined Response to Defendants' Motions to Dismiss, ECF No. 32 and Plaintiffs'

---

[1] *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, --- L. Ed. 2d --- (2021).

[2] The F&R also fails to discuss, or even mention, that 2020 House Bill 4401 ("HB 4401") departed from prior iterations of the statewide eviction moratorium by prohibiting housing providers from suing tenants in breach-of-contract for rent obligations incurred during the moratorium.

Page 2 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Motion for Partial Summary Judgment, ECF No. 33.  Plaintiffs have strong claims on the merits, and those claims should be fully explored and adjudicated by this Court and should not have been summarily dismissed at such a preliminary stage.

## ARGUMENT

### A. Plaintiffs object to the F&R's conclusion that Plaintiffs' claims against the County should be dismissed for mootness.

As a general matter, a defendant's voluntary cessation of challenged conduct is not sufficient to moot claims based on that conduct, as the defendant would be free to resume the conduct as soon as the case is issued.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).  However, federal courts treat the voluntary cessation of challenged conduct by government bodies "with more solicitude . . . than similar action by private parties." *Am. Cargo Transp. Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010).  "Therefore, in determining whether a case is moot, [courts] should presume that the repeal . . . of legislation will render an action challenging the legislation moot, *unless there is some reasonable expectation that the legislative body will reenact the challenged provision or one similar to it*." *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (emphasis added).  In determining whether a "reasonable expectation" that similar legislation will be enacted exists, courts "are particularly wary of legislative changes made in direct response to litigation." *Cuviello v. City of Vallejo*, 944 F.3d 816, 824 (9th Cir. 2019) (citing *Glazing Health*, 941 F.3d at 1199).

Furthermore, where the governing body in question repeals the challenged ordinance but later reenacts a similar ordinance causing similar harm, a claim is not moot merely because the new legislation disadvantages plaintiffs "to a lesser degree" than the original.  *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 662–63, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993); *see also Cuviello*, 944 F.3d at 824 ("If the amended ordinance threatens to harm a plaintiff in the same fundamental way—even if to a lesser degree—the plaintiff will still have a live claim for prospective relief.").

Page 3 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The F&R concluded that Plaintiffs' claims against the County and Defendant City of Portland (the "City") were moot because the County repealed the ordinances enacting the local eviction moratoria, and the City's eviction moratoria was automatically repealed by operation of the County's repeal.  F&R at 10.  The F&R reached this conclusion based on the holding in *Glazing Health*, 941 F.3d at 1197, that legislative action ceasing the complained-of conduct "creates a presumption the [instant] action is moot, unless there is a reasonable expectation that the legislative body is likely to enact the same or substantially similar legislation in the future." The F&R reached this conclusion notwithstanding the fact (as County counsel had previously apprised the Court) that the County enacted on July 8, 2021 a new 90-day, countywide eviction moratorium for tenants who have merely applied for (but may not necessarily be qualified to receive) rent relief.  *See* F&R at 13; *see also* Declaration of John DiLorenzo ("DiLorenzo Decl."), Ex. 1 (copy of July 8, 2021 letter).  The County's July 8, 2021 eviction moratorium is Ordinance No. 1296.

The F&R erred in its reliance on the *presumption* created by the County's repeal of Ordinance Nos. 1282, 1284, and 1287 that the County's offending conduct would not recur. Indeed, that conduct *did* recur when the County enacted Ordinance No. 1296.  The F&R held that no "reasonable expectation" existed for two reasons: (1) Ordinance No. 1296 was not "substantially similar" to Ordinance Nos. 1282, 1284, and 1287, and (2) "the COVID-19 crisis is slackening, regulation of landlords lessening, and the County is on its way back to the *status quo ante*, rather than likely to renew the expired eviction moratorium plaintiffs challenge here." F&R at 13.  The F&R is incorrect on both counts.

Ordinance No. 1296 is an uncompensated, countywide eviction moratorium; it prevents landlords, including Plaintiffs, from filing claims for eviction or for repayment of past-due rent in any court and does so for the very same reasons that the County imposed its original eviction moratorium.  *See* DiLorenzo Decl., Ex. 1 at 4 ("This action is necessary to avoid mass evictions for non-payment of rent directly attributed to the lingering impacts of COVID-19 pandemic [sic], promote housing stability, and protect the health and safety of community members[.]").  That

Page 4 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

the eviction moratorium imposed by Ordinance No. 1296 is of limited duration is of no moment; all of the eviction moratoria at issue in this litigation were intended to be of limited duration, and nearly all of them still remain in effect.  That makes Ordinance No. 1296 *more* substantially similar to the County's prior ordinances, not less.  Thus, the F&R wrongly concluded that Ordinance No. 1296 is not merely a reenactment of Ordinance Nos. 1282, 1284, and 1287, even though it is one that harms Plaintiffs "to a lesser degree" than the original ordinances.  *Glazing Health*'s presumption regarding mootness is not the applicable authority here—it is *Cuviello*'s rule, citing the Supreme Court's opinion in *Ne. Fla. Chapter of Associated Gen. Contractors*, that a case is not moot when the governing body repeals an ordinance and later enacts a watered down version of the same ordinance, causing the same harm.  The question here is not whether there is a "reasonable expectation" that the County will reenact substantially similar legislation— because the County already *did* reenact substantially similar legislation; the only question is one of degree.  For that reason, Plaintiffs' claims against the County are not moot, and the presumption of *Glazing Health* does not apply.

However, even if this Court disagrees and finds that *Glazing Health* does apply, the F&R was wrong to find that no "reasonable expectation" exists that the County will reenact a countywide eviction moratorium.  The County rescinded its original moratorium partially in response to this litigation, making that repeal inherently suspect.  *See* Regular Meeting of Multnomah County Board of County Commissioners, comments of Comm. Lori Stegmann (Jan. 14. 2021, 14:12–43) ("What are the repercussions if we don't rescind?  And, along that same lines [sic], what kind of legal liability do we have, do we not have?").[3]  Moreover, the Board of County Commissioners conditioned its repeal of Ordinance Nos. 1282, 1284, and 1287 specifically on its authority to reenact a countywide moratorium in the event that would become necessary.  *See id.* (describing Board's ability to reenact moratorium if necessary); *see also*

---

[3] Live-recorded video and audio of the January 14, 2021 Regular Meeting of the Board of County Commissioners is available at https://www.youtube.com/watch?v=saqMfk_94Jo.

Page 5 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

comments of Comm. Jessica Vega Peterson, (20:22–43) (same).  Similar comments were enough for the Supreme Court to refuse to dismiss an appeal as moot in *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n. 11, 102 S. Ct. 1070, 71 L. Ed. 152 (1982).

Additionally, although Plaintiffs appreciate that the Court could not have predicted that the Delta variant of COVID-19 would reach such dire levels, the factual predicates underlying the F&R's conclusion that the County is not likely to reimpose restrictions on landlords have dramatically changed.  *See* Douglas Perry, *Oregon again sets COVID-19 record, with 2,971 cases; Gov. Brown warns of ICUs filling up: 'We are all at risk'*, OREGONIAN/OREGONLIVE.COM (Aug. 20, 2021); Sara Cline, *Oregon hospitals near breaking point as COVID-19 surges*, OREGON PUBLIC BROADCASTING (Aug. 19, 2021).  Indeed, the County has displayed a renewed willingness to impose countywide restrictions above-and-beyond what is required at the state level.  *See* Ted Sickinger, *Multnomah County to require masks starting Friday, governor calls for others to follow*, OREGONIAN/OREGONLIVE.COM (Aug. 9, 2021).  Thus, while the Court could not necessarily have predicted this, it was nonetheless error for the F&R to premise its holding on the notion that the COVID-19 crisis is "slackening" and that County regulations are "lessening."

The County's enactment of Ordinance No. 1296 is enough, on its own, to keep Plaintiffs' claims against the County in this Court.  And, even if that was not enough, the County's ulterior motives in rescinding the Ordinance, its stated intention to reenact the Ordinance if necessary, and the changing circumstances resulting from the Delta variant create a "reasonable expectation" that the County will impose new measures unconstitutionally restricting Plaintiffs' rights as alleged in the First Amended Complaint.  For that reason, the F&R should not have dismissed Plaintiffs' claims against the County, and Plaintiffs' object to the F&R's conclusion to that end.

Page 6 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**B.   Plaintiffs object to the F&R's conclusion that the harms flowing from the statewide eviction moratorium are not "fairly traceable" to the Governor and that the Governor cannot redress those harms pursuant to an order from this Court.**

The F&R concluded that Plaintiffs have failed to demonstrate two elements of standing necessary to proceed against Governor Brown in federal court: traceability and redressability. That is, while no Defendant claimed that Plaintiffs have not alleged a cognizable injury resulting from the underlying moratoria, the F&R found that there is no possible legal path for Plaintiffs to pursue any remedy for its claims in federal court.

**1.   Plaintiffs' injury is fairly traceable to Governor Brown because she is constitutionally mandated to execute the laws of this state, because there is a substantial public interest at stake, and because she is the architect of the statewide moratorium.**

In their Combined Response to Defendants' Motion to Dismiss, ECF No. 32, Plaintiffs raised three separate reasons why their injury is fairly traceable to Governor Brown. *Id.* at 4–7. The F&R addressed only one of those. That is, the F&R determined that the Ninth Circuit's decision in *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992) that the then-Governor of California was a proper defendant in a suit over the constitutionality of a statute enacted by the California State Assembly was inapplicable because the statute at issue in *Eu* did not have any means of enforcement, whereas HB 4401 is enforceable through private rights of action. F&R at 16–18. The F&R analogized to another recent case in this district, *Axos Bank v. Rosenblum*, No. 3:20-cv-01712-HZ, 2020 WL 7344594 (D. Or. Dec. 14, 2020), in which plaintiffs sought an injunction preventing the Oregon Attorney General from giving effect to a state law that also relied on a private right of action for its enforcement.

Plaintiffs object to the F&R's conclusion on this basis. With respect to *Axos Bank*, the Attorney General is not the Governor, and the Attorney General's relationship to the foreclosure moratorium is critically different from the Governor's relationship to the eviction moratorium. The Governor has broad executive authority far exceeding the Attorney General's, and she has a constitutional obligation to see that state law is enforced. *See* OR. CONST., Art. V, § 10. This is especially true in the context of an ongoing emergency, pursuant to which the Governor can

Page 7 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

unilaterally exercise all of the legislative power typically vested in the Legislative Assembly. *See generally* ORS 401.165–401.204; ORS 401.192 ("All rules and orders issued under authority conferred by ORS 401.165 to [401.204] shall have the full force and effect of law both during and after the declaration of a state of emergency. All existing laws, ordinances, rules and orders inconsistent with ORS 401.165 to [401.204] shall be inoperative during the period of time and to the extent such inconsistencies exist.") Furthermore, through use of those emergency powers, the Governor designed and enacted the first statewide eviction moratorium by executive fiat, and the legislature modeled HB 4401 on that first moratorium and employed that moratorium's same structure and mechanisms. *Axos Bank* is therefore inapposite because the Attorney General does not have anything approaching the Governor's authority over or connection with the foreclosure moratorium.

Moreover, the notion that a state can enact a plainly unconstitutional law enforceable by private right of action that could not be enjoined by the federal courts is anathema to the federal system. If the Legislative Assembly passed, and the Governor signed, a statute providing that only white people can bring lawsuits in state courts, directing courts to dismiss the cases of any non-white litigants, and creating a cause of action of white people against any non-white person that seeks to unlawfully sue a white person in state court, under the reasoning of the F&R, that statute could not be challenged in federal court. That cannot be the intent of the federalism that undergirds American democracy and guarantees a baseline of constitutional rights to its citizens, often in the face of impermissible state action. And if any person is the appropriate party to hale into court for such an action, that person is the Governor of the offending state. Otherwise, the legislature could shield the state from federal court scrutiny by merely providing for a private right of action as the enforcement mechanism rather than relying on the state's executive branch.

The appropriateness of suing state governors in these circumstances has been recognized by other federal circuit courts, and Plaintiffs raised that authority in their Combined Response to Defendants' Motions to Dismiss, ECF No. 32. The F&R failed to address either those arguments or the authorities supporting them. Under *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656,

Page 8 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

665 n. 5 (6th Cir. 1982), the Sixth Circuit held that the existence of a "substantial public interest . . . places a significant obligation upon the Governor to use [her] general authority to see that state laws are enforced[,]" and, for that reason, a state governor can be a proper defendant in an action to enjoin operation of the law at issue. Without restating their earlier briefing, *see* ECF No. 32 at 15–16, Plaintiffs object that the F&R never addressed this issue and incorporate their earlier briefing into this objection. The rule of law in *Allied Artists* is not binding on this Court, but it remains good law and persuasive reasoning.

Even more relevant, but likewise unaddressed in the F&R, is the Sixth Circuit's more recent holding in *Boler v. Earley*, 865 F.3d 391, 413 (6th Cir. 2017). The plaintiffs in *Boler* sought to hold their government accountable through their governor—and, as here, the Michigan governor in *Boler* was invested with emergency powers conferring on him the broad lawmaking authority typically reserved to the state legislature. In *Boler*, the court collapsed the traceability and redressability inquiries into one element, explaining that because the residents of Flint, Michigan were seeking "to direct the Governor's conduct in providing services to [p]laintiffs affected by the Flint water crisis[,]" "*Ex parte Young* applies to the claims made against Governor Snyder[.]" *Id.* at 413. The same reasoning applies here: Plaintiffs' injuries are traceable to Governor Brown precisely because Governor Brown has the power to alleviate those injuries; by "taking care" that HB 4401 is faithfully executed and allowing that law to remain in effect, the Governor is perpetuating Plaintiffs' harm. The F&R failed to address this reasoning or explain why neither *Allied Artists* nor *Boler* permits Plaintiffs to seek redress against Governor Brown for their acknowledged injuries.

Plaintiffs ask this Court to consider, in addition to *Allied Artists* and *Boler,* the Supreme Court's recent decision action in *Pantelis Chrysafis, et al. v. Lawrence K. Marks*, No. 21A8 (Aug. 12, 2021).[4] At issue in *Chrysafis* was an eviction moratorium very similar to HB 4401, except that the moratorium in *Chrysafis* was not nearly as restrictive because it still allowed

---

[4] A true and correct copy of the Court's action is attached as Exhibit 2 to the DiLorenzo Decl.

Page 9 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

landlords to sue tenants to recover past-due rent, whereas HB 4401 does not. *See* Plaintiffs' Partial Motion for Summary Judgment, ECF No. 33. The *Chrysafis* moratorium halted eviction proceedings upon the filing of an attestation of financial hardship and prevented landlords from challenging a tenant's attestation. DiLorenzo Decl., Ex. 2 at 1. Critically, the moratorium in *Chrysafis* also relied on the private acts of litigants and did not contain any executive enforcement mechanism. *Id.*

The Supreme Court took the extraordinary step of enjoining operation of the *Chrysafis* moratorium. *Id.* at 2. The Supreme Court reasoned that the scheme allowing tenants to halt eviction proceedings on the filing of a hardship declaration and preventing landlords from raising any challenges to a hardship declaration "violates the Court's longstanding teaching that ordinarily 'no man can be a judge in his own case' consistent with the Due Process Clause." *Id.* at 1.

The offending provisions in *Chrysafis* are present in the existing statewide moratorium.[5] In addition, HB 4401, 2020 House Bill 4213 ("HB 4213"), and 2021 Senate Bill 278 ("SB 278")[6] extend the effect of Oregon's statewide eviction moratorium at least to the end of September and prevent landlords from suing tenants for past-due rent through February of 2022, whereas the moratorium in *Chrysafis* would have only remained in place for another three weeks. *Id.* at 2. Moreover, the plaintiffs in *Chrysafis* sued the Chief Administrative Judge of the Courts of New York State, but the Chief Administrative Judge had no affirmative enforcement role under the moratorium at issue there, and that moratorium was enacted by the state legislature.

---

[5] *See* HB 4401 § 7 (6) ("The court shall enter a judgment dismissing a complaint for possession filed under [ORS chapter 105] before the end of the grace period based solely on a nonpayment balance if the court determines that . . . at any time during or prior to the first appearance, the tenant has signed and delivered to the landlord a copy of the [hardship] declaration[.]"); § 7 (7) ("A landlord may not . . . [c]hallenge the accuracy of a tenant's declaration under this section in a proceeding under [ORS chapter 105.]").

[6] Plaintiffs informed this Court of the passage of SB 278 in a June 30, 2021 letter, a true and correct copy of which is attached as Exhibit 3 to the DiLorenzo Decl.

Page 10 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

While *Chrysafis* carries limited precedential power, it is nonetheless a powerful statement from the Supreme Court that ongoing statewide eviction moratoria which cease the functions of eviction courts and deny landlords access to judicial redress of their grievances violate the U.S. Constitution and should not be allowed to remain in effect.

>   2.  **Governor Brown can redress Plaintiffs' harm without raising the kind of federalism concerns described in the F&R because Plaintiffs do not seek to supplant HB 4213 with affirmative legislation.**

In finding that Plaintiffs' harms could not be redressed by an order of this Court directed to Governor Brown, the F&R raised two concerns: (1) that Governor Brown actually would not have the power the comply with an order of this Court because of limitations in ORS 401.192(3) permitting only an exercise of authority in response to the emergency declaration, and (2) that even if Governor Brown had the power to comply with an order of this Court, this Court should not make such an order because of federalism concerns.  F&R at 18–20.

Plaintiffs object to the F&R's conclusion that ordering changes to HB 4401 or enjoining operation of certain pieces of that statute, *see* Plaintiffs' Motion for Partial Summary Judgment, ECF No. 33 (seeking an order enjoining operation only of the provisions of HB 4401 preventing Plaintiffs from seeking breach-of-contract judgments in state courts), would not satisfy the standard under ORS chapter 401 that the Governor's emergency powers "be exercised to address the declared emergency."  *See Elkhorn Baptist Church v. Brown*, 366 Or. 506, 525, 466 P.3d 30 (2020).  The F&R takes an unnecessarily cabined view of the emergency caused by COVID-19. Tenants are not the only Oregonians affected; the economic devastation the pandemic and the Governor's and legislature's response have caused has been acutely felt by landlords, including Plaintiffs.  The evidence of Plaintiffs' economic distress is found not only in this lawsuit but the enactment of SB 278 as well as in provisions of HB 4213, two statutes dedicating state funding to landlords due to concerns that landlords will be unable to remain housing providers because of the government response to the pandemic.  Thus, there is ample evidence before this Court that taking even limited steps to address the unconstitutional aspects of HB 4401 would "address the

Page 11 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

declared emergency" and therefore fall within the Governor's statutory emergency powers under ORS chapter 401.[7]

Additionally, the F&R's analysis of the redressability issue suffers from an overly broad characterization of Plaintiffs' requested relief.  From the outset, the F&R analyzed whether the Court could order Governor Brown to "override HB 4401 and supplant it with a policy of plaintiffs' choosing."  F&R at 19.  The F&R then proceeded to recite authority explaining that federal courts should not "require state officials to repeal an existing law and enact a new law proposed by plaintiffs."  *Id.* at 20.  Although Plaintiffs did seek injunctive relief that the Court order the Governor to enact a system of compensation for landlords, that was not Plaintiffs' *sole* prayer for relief, nor did Plaintiffs even move for that specific form of injunctive relief in the motions pending before the Court.  If this Court enjoins Governor Brown from giving effect to certain provisions of HB 4401, like the court access prohibitions Plaintiffs sought to enjoin in their Motion for Partial Summary Judgment, ECF No. 33, that order, which the Governor could effectuate by executive order through her emergency powers, would allow the courts and existing laws of this state to move forward in their normal course, Plaintiffs' harm would will be redressed, and this Court will not have ordered any kind of affirmative relief.  Federal courts regularly enjoin the operation of unconstitutional state statutes without creating concerns over federalism.  That is relief for which Plaintiffs prayed in their First Amended Complaint, for which Plaintiffs moved in their Motion for Partial Summary Judgment, and that nonetheless received short shrift in the F&R.  Plaintiffs therefore object to the F&R's conclusion that this Court could not have granted any of Plaintiffs' requested relief without raising federalism concerns and that Plaintiffs' clams therefore were not redressable.

---

[7] If the Governor had the power to unilaterally *impose* the moratorium, surely she has the power to repeal it.

Page 12 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## CONCLUSION

For all of the reasons explained above, the F&R erred in its conclusions and failed to fully address the arguments and authority Plaintiffs advanced in their Combined Response to Defendants' Motion to Dismiss and Motion for Partial Summary Judgment. Plaintiffs ask this Court to review those arguments anew and address both the threshold and merits arguments in light of these objections.

DATED this 20th day of August, 2021.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: s/ *John DiLorenzo, Jr.*
John DiLorenzo, Jr. OSB #802040
Email: johndilorenzo@dwt.com
Aaron K. Stuckey, OSB #954322
Email: aaronstuckey@dwt.com
Evan Christopher, OSB #183214
Email: evanchristopher@dwt.com
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

*Counsel for Plaintiffs*

Page 13 - PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATION
4841-9493-2726v.7 0110295-000018
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax